IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. |
| v. | ) |
| | ) |
| DENNIS E. HECKER | ) |
| | ) |
| Defendant. | ) |

**COMPLAINT FOR DETERMINATION OF
NONDISCHARGEABILITY OF CERTAIN DEBTS**

Chrysler Financial Services Americas LLC ("Chrysler Financial") brings this Complaint against Dennis E. Hecker ("Hecker") in order to obtain a determination that certain debts owed by Hecker to Chrysler Financial are nondischargeable pursuant to section 523(a) of the Bankruptcy Code because Hecker used false pretenses, made false representations, committed fraud, defalcation, and embezzlement, and inflicted a willful and malicious injury to Chrysler Financial and its property, in order to obtain money from and take money belonging to Chrysler Financial. In support of this Complaint, Chrysler Financial alleges as follows:

**I. Parties**

1.  Plaintiff Chrysler Financial is a Delaware limited liability company with a principal place of business in Farmington Hills, Michigan. It is a successor in interest to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC.

2. Defendant Hecker, on information and belief, is a resident and citizen of Minnesota. He is the Debtor in the above-captioned Chapter 7 bankruptcy case, which he commenced on June 4, 2009.

## II. Jurisdiction

3. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) because it is a civil proceeding that arises under 11 U.S.C. § 523(a).

## III. Venue

4. Venue lies in this district pursuant to 28 U.S.C. § 1409(a), in that this proceeding arises under 11 U.S.C. § 523(a) and Hecker's bankruptcy case is pending in this district.

## IV. Core Status

5. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) because it seeks a determination as to the dischargeability of certain debts.

## V. Basis for Non-Dischargeability

6. Under a series of Loan Agreements, Chrysler Financial loaned Hecker and a number of entities that he owns or controls (collectively, the "Hecker Borrowers") hundreds of millions of dollars. Although some amounts were loaned for other related business purposes (*e.g.*, financing real estate used for the operations of the Hecker Borrowers), Chrysler Financial's loans principally financed the purchase of vehicles that the Hecker Borrowers would in turn sell or lease to customers. Hecker personally guaranteed repayment of all the amounts loaned by Chrysler Financial to each Hecker Borrower under any of the Loan Agreements.

7. The business of each of the Hecker Borrowers is controlled in all material respects by Hecker. Each of the actions described and complained of herein was taken by Hecker, or at Hecker's specific or implicit direction, with Hecker possessing knowledge that

2

such actions (i) violated Chrysler Financial's rights and interests under the various documents and agreements governing the Chrysler Financial loans, and (ii) would cause direct and material damage to Chrysler Financial.

8. In the summer and fall of 2008, Hecker and the other Hecker Borrowers stopped making payments of principal and interest required by the Loan Agreements. In addition, Hecker directed the Hecker Borrowers to stop turning over to Chrysler Financial proceeds generated by the sale of vehicles financed by Chrysler Financial, contrary to the Loan Agreement provisions making those proceeds the property of Chrysler Financial.

9. As a result of those breaches of the Loan Agreements and resulting payment defaults, in November and December 2008, Chrysler Financial accelerated the amounts due under the Loan Agreements. Ex. A (11/13/08 Ltr.); Ex. B (12/16/08 Ltr.). When Hecker and the other Hecker Borrowers did not pay the accelerated indebtedness, Chrysler Financial took two actions.

10. First, Chrysler Financial exercised its rights under the Loan Agreements to seize, foreclose against, and sell collateral pledged to it by the Hecker Borrowers—which includes the vehicles financed by Chrysler Financial, all proceeds derived from those vehicles, and virtually all other assets of the Hecker Borrowers (including real estate subject to ongoing judicial foreclosure actions). Through those efforts, which continue, Chrysler Financial has recovered millions of dollars, but as we explain below, hundreds of millions still remain due from Hecker.

11. Second, Chrysler Financial filed suit against Hecker in the Minnesota state district court for Hennepin County (Case No. 27-CV-09-2152), alleging breach of contract based on Hecker's failure to honor his personal guarantees and repay the accelerated indebtedness of the Hecker Borrowers. On April 27, 2009, the court in that suit entered judgment against Hecker for

the full amount requested: $476,925,874.60, plus attorneys' fees and minus any net amounts realized through the sale of collateral. Ex. C (4/27/09 Order). Hecker has not satisfied that judgment, despite service of a writ of execution. Ex. D (unsatisfied writ of execution).

12. After deducting net amounts recovered from the liquidation of Chrysler Financial's collateral, Hecker still owes $364,880,913.42 to Chrysler Financial under the April 27, 2009 state court judgment, as of June 4, 2009.

13. Of the $364,880,913.42 that Hecker still owes to Chrysler Financial, $83,070,987 should be determined to be nondischargeable under section 523(a) of the Bankruptcy Code. Hecker, for himself and/or the Hecker Borrowers, obtained that $83,070,987 through the use of false pretenses, false representations, fraud, defalcation, and embezzlement in the ways described below.

### A. The "Hyundai" Forgery and Fraud

14. Hecker personally presented to Chrysler Financial a forged, doctored document and made other misrepresentations to Chrysler Financial in order to obtain $65 million in loan advances from Chrysler Financial. Hecker has not repaid, and Chrysler Financial has not otherwise recovered, $15,187,000 of those loan advances. Hecker's obligation to pay the unrecovered $15,187,000 to Chrysler Financial should be determined to be a nondischargeable debt for money or an extension of credit obtained by false pretenses, a false representation, or actual fraud (other than a statement about the debtor's or an insider's financial condition) within the meaning of Section 523(a)(2)(A) of the Bankruptcy Code.

15. Specifically, in November 2007, Hecker personally requested financing from Chrysler Financial to purchase over 5,000 vehicles from Hyundai Motor America ("Hyundai"). The Hyundai vehicles sought by Hecker were to be purchased by one of Hecker's wholly-owned

4

businesses, Rosedale Dodge Inc. ("Rosedale Dodge"), and then leased to rental car companies, including one wholly-owned by Hecker.

16.     In support of his request for financing, Hecker *personally* presented to Chrysler Financial two letter offers—one dated November 6, 2007, the other dated November 7, 2007—purporting to be from Hyundai. Ex. E (11/6/07 Hyundai Ltr.); Ex. F (forged 11/7/07 Hyundai Ltr.). Hecker counter-signed both letters, confirming his acceptance of the purported Hyundai offers.

17.     The November 7, 2007 letter (Ex. F) appeared to be an offer from Hyundai to sell 4,855 vehicles to a business wholly-owned by Hecker and, as an inducement to the prospective purchaser and its financing sources, guaranteed that Hyundai would repurchase vehicles returned within a year from delivery for a set price. Ex. F (forged 11/7/07 Hyundai Ltr.). (Vehicles that Hyundai promised to repurchase were referred to as "Guaranteed Units"). Hyundai's repurchase guarantee on the Guaranteed Units would have benefited Chrysler Financial by helping protect it against the risk that Hecker and Rosedale Dodge would be unable repay a vehicle's financed purchase price out of the proceeds earned on the sale of the vehicle.

18.     In direct reliance on Hecker's representations—including in the November 7, 2007 letter and in a series of Security Agreements later submitted to obtain loan advances—Chrysler Financial financed the purchase of 4,257 Hyundai vehicles, believing that they were "Guaranteed Units"; that is, that Chrysler Financial had the protection afforded by Hyundai's repurchase obligation to secure repayment of the amounts it loaned.

19.     In truth, however, the November 7, 2007 letter (Ex. F) that Hecker personally delivered to Chrysler Financial in which Hyundai appeared to promise to repurchase 4,855 vehicles was a forged and doctored document: it did not represent an offer that Hyundai had

5

made, and it did not reflect an actual transaction. As Chrysler Financial later discovered, the reality was that, on or about November 7, 2007, Hyundai sent to Hecker a letter proposing to sell 605 Guaranteed Units, *not* 4,855 Guaranteed Units, as Hecker had represented to Chrysler Financial. Ex. G (actual 11/7/07 Hyundai Ltr.). The November 7, 2007 letter that Hecker signed and presented to Chrysler Financial was a doctored version of Hyundai's actual November 7, 2007 letter in which the first page of the actual letter was altered so that it appears to promise that Hyundai would repurchase 4,855 Guaranteed Units rather than the 605 Guaranteed Units Hyundai actually agreed to repurchase. *Compare* Ex. F (forged 11/7/07 Hyundai Ltr). *with* Ex. G (actual 11/7/07 Hyundai letter).

20.     Accordingly, of the 4,257 Hyundai vehicles that Chrysler Financial financed based on Hecker's representations that they were Guaranteed Units, only 605 were in fact Guaranteed Units. Thus, as a result of Hecker's forgery and fraudulent misrepresentation, Chrysler Financial financed the $65 million purchase of 3,652 vehicles that it had been tricked into believing Hyundai was contractually obligated to repurchase. As Hecker knew, Chrysler Financial would not have provided the $65 million in financing for the purchase of those 3,652 vehicles had it known that Hyundai had not agreed to repurchase them.

21.     Because Hecker has not repaid the loan for all of the vehicles that he misrepresented as Guaranteed Units and there was no repurchase guarantee on those vehicles, Chrysler Financial has not been able to recover $15,187,000 loaned to Hecker's Rosedale Dodge as a result of Hecker's fraud and forgery.

22.     Further, by tricking Chrysler Financial into believing that 3,652 vehicles were Guaranteed Units (that is, that Hyundai had agreed to repurchase them), Hecker was able to retain cash incentives of between $4,100 and $4,500 per vehicle (totaling no less than $15

million) that Hyundai paid precisely because it had not guaranteed the vehicles' residual values. Ex. H (11/20/07 Hyundai letter). Hecker was also able to secure for those 3,652 vehicles the lower (by approximately $128 per vehicle) monthly payments to Chrysler Financial that applied to Guaranteed Units.

23. As Hecker was well aware, had Chrysler Financial understood the true nature of the Hyundai transaction it would have (a) financed a much smaller number of vehicles; (b) required Hecker to cause Rosedale Dodge to pay to Chrysler Financial the incentive amounts paid by Hyundai; and (c) adjusted the required monthly loan payments to account for the increased risk resulting from the fact that Hyundai had not agreed to repurchase the vehicles.

24. When Hecker presented the November 7, 2007 letter to Chrysler Financial, he knew it was a doctored and forged document, and he did so with a fraudulent intent to induce Chrysler Financial to extend more credit than it otherwise would have extended.

25. The $15,187,000 that Hecker obtained through his false representation and his use of a doctored and forged document, and that was not repaid, represents Chrysler Financial's damages from Hecker's fraudulent conduct, and therefore should be determined to be a non-dischargeable debt.

B. Embezzlement and Defalcation of Vehicle Proceeds

26. Since at least the fall of 2008, Hecker—through his businesses—has misappropriated tens of millions of dollars in proceeds from the sale of thousands of vehicles financed by Chrysler Financial. Under the Loan Agreements, those proceeds were the property of Chrysler Financial, and Hecker owed Chrysler Financial a fiduciary duty to hold the proceeds in trust for and promptly pay them to Chrysler Financial. Instead, Hecker deliberately and maliciously kept and diverted (or directed his businesses to keep and divert) the proceeds. Such

7

conduct constitutes defalcation by a fiduciary and embezzlement, and also a willful and malicious injury to Chrysler Financial and its property. Consequently, the sale proceeds Hecker misappropriated from Chrysler Financial should be determined to be nondischargeable debts under Sections 523(a)(4) and (a)(6) of the Bankruptcy Code.

27. The Loan Agreements that Hecker—both individually and on behalf of the Hecker Borrowers—entered into in order to obtain the loans from Chrysler Financial provide that whenever a vehicle financed by Chrysler Financial is sold, the proceeds are the property of Chrysler Financial, and that Hecker and the Hecker Borrowers are fiduciaries who hold the proceeds in trust for Chrysler Financial and must promptly pay the proceeds to Chrysler Financial to the extent necessary to pay off the balance owed on the sold vehicle.

28. The Master Loan Agreement between Chrysler Financial, Hecker, and other Hecker Borrowers provides:

> **Obligations to Pay-Over Collateral Proceeds to Lender; Trust Relationship.** Borrower shall promptly pay-over and deliver to Lender all proceeds (less any amounts that may be retained by Borrower as provided below), in any form, derived from the sale or lease of Borrower's Financed Inventory or Equipment or in any way derived from any of Borrower's Collateral. Once received by Borrower, *such proceeds* (whether in the form of checks, drafts, credit card drafts, or otherwise) *shall be the property of Lender*, and at all times *while Borrower may hold such cash or cash-equivalent proceeds* (whether directly or in the form of deposits in Borrower's designated Operating Account, or in any other deposit account with any depository institution), *Borrower shall do so "in trust" for and on behalf of Lender. Borrower intends that there be a true trust relationship between Borrower and Lender, with Borrower assuming full fiduciary duties, responsibilities, and obligations to and in favor of Lender.*

Ex. I at 4 (Master Loan Agmt.) (emphasis added).

29. The Fleet Leasing Agreement—which Hecker executed on behalf of Rosedale Dodge and personally guaranteed—similarly required payment to Chrysler Financial, "forthwith upon demand, the unpaid principal amount of each Advance with respect to any vehicle that is removed from service of [Rosedale Dodge] for any reason, including, without limitation the sale,

8

destruction or confiscation thereof." Ex. J at 3 (Fleet Lease Agmt. § 3(g)).  And the Security Agreement entered for each vehicle financing Advance under the Fleet Leasing Agreement expressly provides that all sale proceeds will be "*h[e]ld in trust for and to pa[id] promptly unto [Chrysler Financial].*" Ex. K (Security Agmt. § 3) (emphasis added).

30.  Notwithstanding these unambiguous obligations, beginning in the fall of 2008, Hecker Borrowers—at Hecker's direction—simply stopped paying sale proceeds on financed vehicles to Chrysler Financial and instead diverted them to their own use.

31.  Thus, after selling 1,390 vehicles financed under the Master Loan Agreement, fifteen different Hecker Borrowers, at Hecker's direction, misappropriated $29,989,913 in sale proceeds belonging to Chrysler Financial.

32.  Similarly, after selling 2,653 vehicles financed under the Fleet Leasing Agreement, Hecker's Rosedale Dodge, at Hecker's direction, misappropriated $37,894,074 in sale proceeds belonging to Chrysler Financial.

33.  These deliberate misappropriations of the proceeds from vehicle sales constituted (a) a defalcation while acting in a fiduciary capacity; (b) embezzlement and theft, in that the proceeds were diverted for Hecker's purposes, notwithstanding that the proceeds were the property of and held in trust for Chrysler Financial; (c) a fraudulent deprivation of Chrysler Financial's right to the proceeds; and (d) a willful and malicious injury to Chrysler Financial and its property.  Consequently, the $67,883,987 that Hecker misappropriated should be determined to be a non-dischargeable debt.

34.  Indeed, in connection with the bankruptcy of a car dealer to whom Hecker (through one of his businesses) loaned money to purchase inventory, Hecker successfully argued that the dealer's failure to pay over sale proceeds on financed vehicles was an act of fraud that

precludes discharge of the obligation to make such payments. *Ward v. Rosedale Leasing, LLC (In re Ward)*, No. 06-2004, 2006 WL 2583208, at *3 (D. Minn. Sept. 7, 2006); Ex. L at 11-12, 16 (Hecker Trial Test.). Thus, when it was his proceeds that had been misappropriated, Hecker himself recognized that a borrower's debt for the misappropriated proceeds is not dischargeable in a bankruptcy. That principle is equally applicable to Hecker's misappropriation of proceeds here.

## VI. Request for Non-Dischargeablity of Debts

### COUNT 1
### (11 U.S.C. § 523(a)(2)(A): false pretenses, false representation, or actual fraud)

35. Chrysler Financial restates and realleges paragraphs 1-34 as if fully set forth herein.

36. As described in Part V.A. (¶¶ 14-25), *supra*, Hecker owes a debt of $15,187,000 for money and an extension of credit that he obtained by false pretenses, false representations, and actual fraud when he used a doctored and forged document and made other misrepresentations to get financing to purchase certain Hyundai vehicles.

37. Hecker's above-described use of false pretenses, false representations, and actual fraud to obtain money and an extension of credit consisted entirely of conduct other than a statement respecting Hecker's or an insider's financial condition.

38. Based upon the foregoing, $15,187,000 of Hecker's debt to Chrysler Financial is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

### COUNT 2
### (11 U.S.C. § 523(a)(4): defalcation by a fiduciary and embezzlement)

39. Chrysler Financial restates and realleges paragraphs 1-34 as if fully set forth herein.

40. As described in Part V.B. (¶¶ 26-34), *supra*, Hecker owes a debt of $67,883,987 resulting from his defalcation while acting in a fiduciary capacity and embezzlement of vehicle sale proceeds that belonged to Chrysler Financial.

41. Based on the foregoing, $67,883,987 of Hecker's debt to Chrysler Financial is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

## COUNT 3
**(11 U.S.C. § 523(a)(6): willful and malicious injury to Chrysler Financial's property)**

42. Chrysler Financial restates and realleges paragraphs 1-34 as if fully set forth herein.

43. As described in Part V.B. (¶¶ 26-34), *supra*, Hecker owes a debt of $67,883,987 for willfully and maliciously injuring Chrysler Financial and its property by misappropriating the proceeds from vehicle sales, despite the fact that the proceeds were held in trust for and the property of Chrysler Financial.

44. Based on the foregoing, $67,883,987 of Hecker's debt to Chrysler Financial is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, Plaintiff Chrysler Financial prays that this Court determine that $83,070,987 of Hecker's debt to Chrysler Financial is nondischargeable and for all such other relief as may be deemed appropriate or just.

Respectfully submitted.

Dated: July 8, 2009

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.

By /e/ Stephen F. Grinnell
   Nicholas N. Nierengarten (#79169)
   Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
   Howard J. Roin (admitted pro hac vice)
   Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

GP:2610988 v2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

## CERTIFICATE OF SERVICE

I, Stephen F. Grinnell, hereby certify that on July 8, 2009, I caused a Summons and Complaint for Determination of Nondischargeability of Certain Debts to be served upon the following:

Dennis E. Hecker
PO box 1017
Crosslake, MN 56442

Clinton E. Cutler
Fredrikson & Byron, P.A.
200 South 6th Street, Ste. 4000
Minneapolis, MN 55402

Randall L. Seaver
12400 Portland Ave. So.
Burnsville, MN 55337

U.S. Trustee
1015 U.S. Courthouse
300 South 4th Street
Minneapolis, MN 55415

William F. Mohrman
Mohrman and Kaardal, P.A.
33 South 6th Street, Ste. 4100
Minneapolis, MN 55402-3601

by depositing a true and correct copy thereof in the United States Mail, postage prepaid, in Minneapolis, Minnesota.

2

Dated: July 8, 2009					GRAY, PLANT, MOOTY
							  MOOTY & BENNETT, P.A.

							  /e/  Stephen F. Grinnell
							Stephen F. Grinnell (#37928)

GP:2610659 v1