# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Bankruptcy Case No: 09-50779-RJK** |
| **DENNIS E. HECKER,** | ) | |
| | ) | **Chapter 7** |
| **Debtor.** | ) | |
| | ) | |
| | ) | |
| **CHRYSLER FINANCIAL SERVICES AMERICAS LLC,** | ) | **Adversary Proceeding No.: 09-05019** |
| | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DENNIS E. HECKER,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR STAY

## <u>INTRODUCTION</u>

Debtor/Defendant Dennis Hecker moves to stay this Adversary Proceeding because the United States Attorney for the District of Minnesota has convened a Grand Jury to determine whether to issue a criminal indictment against the Hecker based on the allegations contained Plaintiff Chrysler Financial Services Americas LLC's Complaint.  At in paragraphs 14-25 of the Complaint, Plaintiff alleges that Hecker presented to Plaintiff "a forged, doctored" ***unexecuted*** contract between Hyundai Motor America and Walden Fleet Services II, Inc., an automobile

1

dealership Hecker owned, for Walden to purchase approximately 4,800 new Hyundai vehicles.  Despite the fact that Plaintiff did not and never had a lending relationship with Walden Fleet Services II, Inc. (as Plaintiff confirmed in an email to Hecker), Plaintiff nonetheless claims it relied on this allegedly "a forged, doctored" **_unexecuted_** contract with Walden in extending a $65,000,000 loan to a wholly different entity Hecker owned, Rosedale Leasing, Inc.  As set forth below, Debtor/Defendant Dennis Hecker requests that the Court stay this Adversary Proceeding until the U.S. Attorney concludes either the Grand Jury investigation or any criminal proceedings arising out of the Grand Jury investigation.

### STATEMENT OF FACTS

1. **In Paragraphs 14-25 of the Complaint, Plaintiff Chrysler Financial Services Americas LLC Alleges That Debtor/Defendant Hecker Presented to Plaintiff An Allegedly "Forged, Doctored" Unsigned Agreement Between One of Hecker's Leasing Companies and Hyundai Motors of America for the Leasing Company to Purchase $70,000,000 in Vehicles From Hyundai Motors of America Which Plaintiff Chrysler Financial Services Americas LLC Financed.**

    In paragraphs 14-25 of the Complaint, Plaintiff Chrysler Financial Services Americas, LLC ("Plaintiff") alleges that Debtor/Defendant Hecker ("Hecker") presented a "forged, doctored" unexecuted agreement to Plaintiff in November, 2007 for one of Hecker's leasing companies to purchase vehicles from Hyundai Motors of America and Plaintiff "justifiably relied" on this document to finance the purchase of those vehicles.  Plaintiff alleges that Hecker committed fraud under 11 U.S.C. §523 (a)(2)(A) and seeks to have $15,187,000 of Hecker's debt to Plaintiff declared non-dischargeable.  This Statement of Facts will provide

background regarding the purchasing and financing of automobiles from automobile manufacturers by automobile leasing companies or dealerships and the financing of those purchases.

By way of background as set forth in the Complaint, Hecker owned numerous automobile dealerships and leasing companies which would annually purchase new vehicles from automotive manufacturers.  In addition, Hecker owned Advantage Rent-A-Car which would annually purchase thousands of new cars for the rental car agency through the dealerships and leasing companies Hecker owned.  Similarly to most leasing companies and dealerships in the United States, Hecker's leasing companies and dealerships would purchase new automobiles from automobile manufacturers under either "at risk" agreements or "repurchase" agreements.

Under a "repurchase" agreement, the automobile manufacture would guarantee to "repurchase" any vehicles the leasing companies or dealerships would purchase if the leasing companies or dealerships are unable to sell the vehicles after a certain period of time (i.e., nine months). As a result of the automobile manufacturer's repurchase obligation, the price at which the automobile manufacturers would repurchase the unsold vehicles would be less than the price at which the leasing companies or dealerships originally purchased the vehicles from the automobile manufacturers. Likewise, because of the "repurchase" guarantee, the price at which the automobile manufacturers

originally sold the vehicles to the leasing companies or dealerships would be at a

higher price than if the agreement did not provide for a "repurchase" guarantee.

Under an "at risk" agreement, the leasing companies and dealerships would

simply purchase the vehicles from the automobile manufacturers outright -- in

other words, the leasing companies and dealerships would bear the risk of selling

the vehicles. Because an "at risk" agreement did not contain a "repurchase"

guarantee, the price at which the automobile manufacturers would sell the vehicles

to the leasing companies or dealerships would be less than the price at which the

automobile manufactures would sell the vehicles to the leasing companies or

dealerships under a "repurchase" agreement.

Like most leasing companies and dealerships around the United States, the

leasing companies and dealerships Hecker owned would finance the purchase of

new vehicles from automobile manufacturers through automobile financing

companies such as Plaintiff or GMAC.  When automobile financing companies

such as Plaintiff or GMAC would finance a leasing company's or dealership's

purchase of newly manufactured vehicles from automobile manufacturers,

Plaintiff or GMAC would obtain a security agreement from the leasing company

or dealership. The security agreement created a security interest in favor of

Plaintiff or GMAC not only on each vehicle financed, but also on any contractual

rights to payment the leasing company or dealership would have from the

automobile manufacturer including, but not limited to, any "repurchase" guarantee

the automobile manufacturer provided under a "repurchase" agreement as described above.

In its Complaint, Plaintiff alleges that in mid November, 2007, Hecker presented to Plaintiff a copy of an unexecuted letter agreement between Hyundai Motor America and Walden Fleet Services II, Inc., a leasing company Hecker either solely owned or in which Hecker held the majority interest ("Walden"), pursuant to which Walden would purchase 4,855 vehicles from Hyundai Motor America, consisting of ten different models, at various prices for each model as set forth in the unexecuted letter agreement. *See,* Exhibit F attached to the Complaint. It is important to point out that Exhibit F is not a final executed contract because it is unsigned by Hyundai Motor America. Plaintiff alleges that this letter agreement attached as Exhibit F to the Complaint was a "repurchase" agreement. Plaintiff further alleges that Hecker "doctored" the first page of the November 7, 2007 unexecuted letter agreement. Plaintiff alleges that the actual draft letter agreement between Hyundai Motor America and Walden which Plaintiff alleges Hecker "forged" or "doctored" provided that Walden would only purchase 605 vehicles from Hyundai. *See,* Exhibit G attached to the Complaint. Plaintiff alleges that in fact Hecker ultimately entered into a signed contract with Hyundai Motor America dated November 20, 2007 to purchase 4,250 Hyundai vehicles under an "at risk" agreement. *See,* Exhibit H to the Complaint. Finally, Plaintiff alleges it justifiably relied on the unexecuted draft November 7, 2007 letter agreement between Hyundai Motor America and Walden (Exhibit F) in providing financing for

5

Walden to purchase the 4,250 vehicles from Hyundai Motor America under the

November 20, 2007 executed letter agreement (Exhibit H) over the course of late

2007 and early 2008.

Prior to describing the grand jury proceedings the U.S. Attorney for the

District of Minnesota has convened to look into these allegations, Hecker wishes

to point out three facts which are important to his defense against Plaintiff's claims

in this Adversary Proceeding. First, as set forth above, the November 7, 2007

letter agreement Plaintiff alleges Hecker "doctored" is not a final signed contract.

As the Court will note on page 8 of Exhibit F, the letter agreement is not signed by

Hyundai Motor America.  Plaintiff is claiming that it justifiably relied on an

unsigned agreement between Walden and Hyundai Motor America to provide over

$70,000,000 to finance Walden's purchase of the 4,250 vehicles under the

November 20, 2007 "at risk" agreement.  Second, the allegedly "forged" or

"doctored" November 7, 2007 unsigned agreement is between Hyundai Motor

America and *Walden*. However, Plaintiff never had a lending relationship with

*Walden*. Attached as Exhibit I to the Complaint is Plaintiff's 13 page, single

spaced, two column Master Loan and Security Agreement Plaintiff entered into

with Hecker and several leasing companies and dealerships Hecker owned.

Attachment A, along with several "Additional Borrower Addendum" attached to

the Master Loan and Security Agreement, lists every leasing company and

dealership Hecker owned with whom Plaintiff had a lending relationship.

However, *Walden* is not listed as a leasing company or dealership to whom

Plaintiff provided financing.  Finally, Plaintiff's lending officer in charge of the

Hecker entity account, Mr. John Bowker, sent Hecker a November 19, 2007 e-

mail confirming that he fully understood that Plaintiff could not extend financing

to Walden.  *See,* Exhibit 1 to the William F. Mohrman Declaration.

### 2. The U.S. Attorney for the District of Minnesota has Convened a Grand Jury to Review The Allegations in Plaintiff's Complaint Regarding The Allegedly "Doctored" Document.

Hecker's attorneys have recently learned that the U.S. Attorney for the

District of Minnesota has convened a Grand Jury to investigate the allegations

contained in paragraphs 14 -25 of Plaintiff's Complaint regarding the allegedly

"doctored" document and determine whether these allegations give rise to the

issuance of a criminal indictment.  First, the U.S. Attorney for the District of

Minnesota served a subpoena on Hecker's attorney requesting numerous

documents from each and every leasing company or dealership Hecker owned.

*See,* Exhibit 2 to the Mohrman Declaration.  More specifically, paragraphs 1, 2

and 3 of the documents requested in the subpoena specifically seek documents

related to "Chrysler Financial" and "Hyundai Motor America" and, more

specifically, requests any "altered or forged documents created by Hecker,

Hecker's entities, or anyone working for or with the Hecker/Hecker's entities."

Second, on September 16, 2009, Plaintiff deposed Ms. Cindy Bowser,

Hecker's former executive assistant, pursuant to a Notice of Taking Deposition in

the above captioned action. In her testimony, Ms. Bowser specifically confirmed

that she had testified before the Grand Jury on September 14, 2009 and that the

7

U.S. Attorney for the District of Minnesota made specific inquiry regarding the allegedly "doctored" document attached as Exhibit F to Plaintiff's Complaint. *See,* Mohrman Declaration.

### 3. Six Other Creditors of Hecker Have Filed Adversary Proceedings Against Hecker Making Allegations of Fraud and Seeking To Have Over $68,000,000 in Debt Declared Non-Dischargeable.

Six other Hecker Creditors have filed Adversary Proceedings in this bankruptcy case against Hecker alleging Hecker engaged in fraud and seeking to have over $68,300,000 in debt declared non-dischargeable under 11 U.S.C. §523: (i) *U.S. Bank, N.A. v. Hecker,* Adversary No. 09-05040 filed September 14, 2009 (seeking a non-dischargeability determination on $11,000,000 in debt); (ii) *Hyundai Capital America v. Hecker,* Adversary No. 09-05041 filed September 14, 2009 (seeking a non-dischargeability determination on $20,000,000 in debt); (iii) *Cornerstone Bank, et al v. Hecker,* Adversary No. 09-05035 filed September 10, 2009 (seeking a non-dischargeability determination on $12,743,733 in debt); (iv) *Vision Bank v. Hecker,* Adversary No. 09-05037 filed September 14, 2009 (seeking a non-dischargeability determination on $7,122,744 in debt); (v) *Alliance Bank v. Hecker,* Adversary No. 09-05038 filed September 14, 2009 (seeking a non-dischargeability determination on $5,247,445 in debt); and (vi) *Gelco Corporation v. Hecker,* Adversary No. 09-05039 filed September 14, 2009 (seeking a non-dischargeability determination on $12,380,049 in debt).

As a result of the U.S. Attorney for the District of Minnesota convening a Grand Jury to investigate the allegations contained in Plaintiff's Complaint, as well

as the other Adversary Proceedings filed against Hecker in the last two weeks

seeking to obtain declarations that over $68,300,000 in Hecker's debt is non-

dischargeable, Hecker moves that this Court stay this Adversary Proceeding in

order that Hecker can fully and effectively exercise his rights under the U.S.

Constitution including, but not limited to, his rights under the Fifth Amendment.

## LEGAL ANALYSIS

### A. A Stay is Necessary To Preserve Hecker's Fifth Amendment Rights.

This Bankruptcy Court has the discretion to stay this Adversary Proceeding

as a result of the Grand Jury investigation the U.S. Attorney initiated to seek an

indictment against Hecker based on the allegations contained in Plaintiff's

Complaint. *Amsave Credit Corporation v. Marceca (In re Marceca)*, 131 B.R.

774, 778 (Bkrtcy.S.D.N.Y. 1991).  In *Amsave Credit,* the Bankruptcy Court for the

Southern District of New York granted a stay in an adversary proceeding even

though the *Amsave Credit* debtor had not yet been indicted.  In its opinion, the

*Amsave Credit* Court specifically addressed the dilemma and difficulty a debtor

faces who is both the defendant in a non-dischargeability action under 11 U.S.C.

§523 based on allegations of fraud and the target of a grand jury investigation

arising out of the fraud allegations. More specifically, the *Amsave Credit* Court

discussed how a debtor facing a non-dischargeability adversary proceeding under

11 U.S.C. §523 based on allegations of fraud is different from a defendant in a

civil action because of the civil defendant's ability to file bankruptcy and

discharge civil judgments:

9

> A pre-indictment stay of an adversary proceeding objecting to a debtor's discharge in bankruptcy is especially appropriate. In a nonbankruptcy civil action, a defendant might have to risk civil liability in order to protect exposure to criminal punishment. However, an individual debtor in a bankruptcy case, who is also a target of a criminal investigation, might be required to relinquish a fifth amendment privilege against self-incrimination in order to avoid losing a discharge in bankruptcy which would expose the debtor to continuing liability to all prepetition creditors.

*Amsave Credit*, 131 B.R. at 778.

As set forth below, the Eighth Circuit grants this Court the discretion to issue a stay in this Adversary Proceeding based on the U.S. Attorney convening a Grand Jury investigation to determine whether to issue a criminal indictment based on the allegations contained in Plaintiff's Complaint.

### B. <u>The Eight Circuit Has Specifically Recognized This Court's Authority to Grant A Stay To Preserve Hecker's Fifth Amendment Rights</u>.

The Eighth Circuit has specifically held that while bankruptcy courts of the Eighth Circuit have no affirmative obligation to stay proceedings in the face of parallel criminal proceedings, such relief may be granted under the broad equitable powers granted to courts under 11 U.S.C. §105.  *In re Hale*, 980 F.2d 1176, 1178 (8th. Cir. 1992).  Courts in other circuits also recognize the authority of district courts and bankruptcy courts to stay civil proceedings when a parallel criminal proceeding is pending or threatened arising out of the same facts as the civil or bankruptcy proceeding applying either a five factor or six factor test.  *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F. Supp. 2d 6 (D. Conn. 2002) (granting stay)(2nd Circuit)(applying five factor test); *Doe v. City of Chicago*, 360 F. Supp. 2d 880 (N.D. Ill. 2005)(granting stay)(7th Circuit)(applying six factor test).

Although the Eighth Circuit has not specifically adopted either the five factor or six factor test, the facts surrounding this Motion meet either test.

### 1. **The Five Factor Test Favors a Stay**.

The five factor test requires to Court to weigh five competing interests in determining whether to issue the stay:

(a)     the interest of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay;

(b)     the burden which any particular aspect of the proceedings may impose on defendants;

(c)     the convenience of the court in the management of its cases, and the efficient use of judicial resources;

(d)     the interests of persons not parties to the civil litigation; and,

(e)     the interest of the public in the pending civil and criminal litigation.

*Keating v. OTS,* 45 F.3d 322, 324 (9th Cir.1995).  *See also White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D.Ark. 1987).

District Courts in the Eighth Circuit have used the five factor test, but the Eighth Circuit has not yet addressed the issue of which test is most appropriate. *White v. Mapco Gas Products, Inc.*, 116 F.R.D. 498, 502 (E.D.Ark. 1987).

In applying the five factors, these courts hold that courts "must be given serious consideration" in the balancing of interests the implication of the right against self-incrimination under the Fifth Amendment.  *Brock v. Tolkow,* 109 F.R.D. 116 (E.D.N.Y.1985). The existence of a real and appreciable risk of self-incrimination is at the core of the Court's inquiry.  *Wehling v. C.B.S.*, 608 F.2d

1084, 1088-89 (5th Cir. 1979); *U.S. v. Koredel*, 397 U.S. 1 (1970); *Brumfield v. Shelton*, 727 F.Supp. 282, 283 (E.D. La. 1989).

With respect to the first factor, Plaintiff undoubtedly has a right to expeditious resolution of its claims against Defendant Hecker.  However, this right is not absolute, and may be trumped by the pending criminal investigation.. *Bridgeport Harbour Place I, LLC v. Ganim,* 269 F.Supp.2d 6, 8 (D.Conn.2002). Plaintiff has no urgent need to proceed with this adversary proceeding.  There is no deadline for Plaintiff to collect from Hecker.  This is a simple monetary damages case.  Plaintiff faces no appreciable prejudice from the potential delay of this Adversary Proceeding.  Hecker recently filed for protection under the jurisdiction of this Court. Hecker is bankrupt and almost 60 years old.  Simply put, it is extremely unlikely that Hecker would ever be able to earn $15,000,000 – after taxes – to satisfy a non-dischargeability determination in this case, assuming Plaintiff is successful.  Delay will not affect Plaintiff's ability to collect from Hecker in any way.  In fact, the Grand Jury investigation may be beneficial to Plaintiff.  The investigation could reveal new issues, streamline the discovery process, or solidify the parties' settlement positions.  *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F.Supp.2d 6, 9 (D.Conn. 2002).  Chrysler would not be prejudiced by a stay of this Adversary Proceeding.

Conversely, with respect to the second factor, allowing this Adversary Proceeding to advance simultaneously to the Grand Jury investigation is exceptionally prejudicial to Hecker.  The ongoing Grand Jury investigation into

12

the allegations contained in Plaintiff's Adversary Complaint forces Hecker to face a classic "Hobson's Choice." If Hecker testifies in his own defense in the Adversary Proceeding, Hecker must waive his Fifth Amendment privilege against self-incrimination. If Hecker exercises his Fifth Amendment right against self-incrimination and refuses to testify, the exercise of Fifth Amendment rights could potentially be held against him in this Adversary Proceeding by this Bankruptcy Court.

The prevailing rule is that the Fifth Amendment does not ordinarily forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them. *See, e.g. Baxter v. Palmigiano,* 425 U.S. 308, 318, 96 (1976); *Lefkowitz v. Cunningham,* 431 U.S. 801, 808, n. 5(1977); *Mitchell v. U.S.*, 526 U.S. 314, 328 (1999).

Plaintiff's claims against Hecker are for (1) false pretenses, false representation, or actual fraud, (2) embezzlement, and (3) willful and malicious injury to Plaintiff's property. Each of these three claims against Hecker implicate Hecker's intent and knowledge. Hecker's testimony will be vital to his defense. Hecker's knowledge of the validity of certain documents, or Hecker's intent in making certain representations to Plaintiff can best be established only through Hecker's testimony. If Hecker is inhibited from testifying on his own behalf, his defense to Plaintiff's claims will be significantly hampered.

Also, there are currently seven Adversary Proceedings against Hecker, including the above captioned Adversary Proceeding, seeking that Hecker's debts

totaling over $158,000,000 be declared non-dischargeable. If all of these
Adversary Proceedings continue, Hecker may be forced to choose between fully
defending himself in these Adversary Proceedings in order to avoid non-
dischargeable debts of over $158,000,000.00 or spending his resources defending
himself against potential criminal felony charges arising out of the same facts
alleged in this Adversary Proceeding.

With respect to the final three factors, these three factors have limited
applicability to this Court's inquiry in this Motion; however, to the extent they are
useful, these factors support Hecker's position.  A stay of this Adversary
Proceeding is in the Court's interest because it may streamline discovery in the
adversary proceeding.  *Bridgeport Harbour Place I, LLC,* 269 F.Supp.2d at 9.  The
outcome of the criminal investigation could clarify the parties' positions and make
a settlement agreement more likely. Further, this Court will not be forced to deal
with the possible complications of continual Fifth Amendment issues.  Staying this
Adversary Proceeding until the conclusion of the criminal investigation will
greatly simplify the Adversary Proceeding.

With respect to third parties, a stay of this Adversary Proceeding will not
affect the rights of creditors not party to this Adversary Proceeding.  However,
discovery in this Adversary Proceeding could impede the United States' criminal
investigation.  Further, discovery could touch on the Fifth Amendment rights of
third parties who are not parties to this Adversary Proceeding, but who may be

targets of the Grand Jury investigation.  *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 532 (S.D.W.Va. 2005).  This factor also favors a stay.

Finally, the public has no real interest in this Adversary Proceeding. Plaintiff is not a public institution.  However, the public has a very real interest in the resolution of the criminal investigation.  It is in the public interest to allow the criminal investigation to proceed.  Courts have generally found that it is in the public interest to stay civil proceedings in order to allow investigation into potential criminal liability.  *Ashworth v. Albers Medical, Inc.*, 229 F.R.D. 527, 532 (S.D.W.Va. 2005).  This factor favors a stay.

Based on the five-factor test, this Adversary Proceeding against Hecker must be stayed pending the resolution of the Grand Jury investigation into the facts alleged in Plaintiff's Adversary Complaint.  This is especially true as courts have ruled that the most important factor to consider is the risk of self-incrimination to the debtor/defendant.  Because this Adversary Proceeding concerns the same facts as are presently being investigated by the grand jury, civil discovery will necessarily implicate Hecker's Fifth Amendment rights.  Hecker may be faced with the "Hobson's Choice" to exercise his Fifth Amendment right to be free from self-incrimination by refusing to testify in this Adversary Proceeding, including in discovery, and thus accept the adverse inferences that follow, or to not exercise his Fifth Amendment rights and risk any adverse inferences or evidence which could arise in any criminal proceeding.

15

## 2.   **The Six Factor Test Also Favors a Stay.**

If this Court instead prefers the six factor test used by some federal courts,

Hecker is still entitled to a stay of this Adversary Proceeding.  The six factor test

balances the following factors:

      (a)     the extent to which the issues in the civil and criminal cases overlap;

      (b)     the status of the criminal proceedings, including whether any
               defendants have been indicted;

      (c)     the plaintiff's interests in expeditious civil proceedings weighed
               against the prejudice to the plaintiff caused by the delay;

      (d)     the burden on the defendants;

      (e)     the interests of the court; and

      (f)     the public interest.

*Walsh Securities, Inc. v. Cristo Prop. Mgmt. Ltd.,* 7 F.Supp.2d 523 (D.N.J.1998)

(citing *Trustees of Plumbers and Pipefitters Nat'l Pension Fund v. Transworld*

*Mech., Inc. .,* 886 F.Supp. 1134, 1138 (S.D.N.Y.1995).

Under the six factor test, the first factor is the most important.  *Walsh*

*Securities*, at 527.  When the same facts are at issue in the criminal investigation

and the civil proceeding, not only are the defendant's Fifth Amendment rights

implicated, but there is a risk that civil discovery will be used to circumvent

criminal discovery limitations. *See S.E.C. v. Chestman,* 861 F.2d 49, 50 (2d

Cir.1988).

The second factor also favors Hecker's position.  The fact that no criminal

indictment is pending is not relevant.  A "pre-indictment stay of an adversary

proceeding objecting to a debtor's discharge in bankruptcy is especially appropriate." *Amsave Credit Corporation v. Marceca (In re Marceca)*, 131 B.R. 774, 778 (Bkrtcy.S.D.N.Y. 1991); *U.S. v. Certain Parcel of Land, Moultonboro*, 781 F.Supp. 830 (D.N.H.1992); *U.S. v. Certain Real Property*, 751 F.Supp. 1060 (E.D.N.Y.1989); *Brock*, 109 F.R.D. 116. The Second Circuit has ruled that a district court exercised sound discretion by staying a civil trial until the United States Attorney declined to prosecute, and then proceeding with the trial thereafter. *Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir.1986).

Further, "prejudice to the debtor's fifth amendment rights is more acute in the bankruptcy context because of the liberality of discovery procedures in civil litigation as contrasted with the limited discovery allowable under the Federal Rules of Criminal Procedure." *Amsave Credit Corporation v. Marceca (In re Marceca)*, 131 B.R. 774, 778, *citing In re Ahead By A Length, Inc.*, 78 B.R. 708 (Bankr.S.D.N.Y.1987). Although no indictments have resulted from the U.S. Attorney's Grand Jury investigation of Hecker, the Grand Jury is investigating the same factual transaction that forms the basis of Plaintiff's Adversary Complaint. Thus, the status of the Grand Jury investigation also supports Hecker's position.

With respect to the third factor, as set forth above, Plaintiff faces no particular injury from delay. Courts have ruled that generalized harm from a delay in receiving relief is not enough to establish prejudice to Plaintiff. Rather, Plaintiff must show some unique harm. *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F.Supp.2d 523, 528 (D.N.J. 1998). The unique harm

17

generally includes "the dissipation of assets or an attempt to gain an unfair advantage from the stay." *In re Adelphia Communications Securities Litigation*, 2003 WL 22358819, 4 (E.D.Pa. 2003). In this case, Plaintiff cannot show any unique harm. There is no possibility that Hecker's assets will be allowed to dissipate since he is currently under this Court's jurisdiction and there are no facts suggesting that Hecker is attempting to gain any unfair advantage from the requested stay. Plaintiff will not be prejudiced by the delay.

Conversely, under the fourth factor, Defendant Hecker faces a significant burden if this Adversary Proceeding goes forward parallel to the criminal investigation. Hecker may be hindered in his ability to assert his Fifth Amendment privileges. The charges against Hecker involve Hecker's intent. If Hecker does not testify to his intent on the basis of Fifth Amendment privilege, his silence may be held against him by this Court. Hecker's testimony is essential to establishing Hecker's defenses to Plaintiff's claims in the Adversary Complaint. Further, Hecker will be forced to reveal his criminal defense strategies during participation in the adversary proceeding, which would be an unfair advantage to the prosecution. Hecker should not be faced with the potential burden of deciding whether to put on an inadequate defense in either the adversary or criminal proceeding.

Under the fifth factor, the Court also has an interest in promoting judicial efficiency. A stay allows the Court to efficiently manage its caseload. If this Court grants the stay, the Court will not be required to deal with Hecker's

18

privilege objections during the adversary proceedings, and the outcome of the criminal investigation could encourage a settlement. Staying this Adversary Proceeding would preserve judicial resources, and streamline the issues of the case. *Walsh Securities,* 7 F.Supp.2d at 528. This factor weighs in favor of a stay.

Finally, under the sixth factor, the public's interest will be better served if the issues are litigated in only one proceeding, in the criminal process. Any interest the public has in punishing fraud will be better protected in a criminal proceeding. *Volmar Distribs., Inc. v. New York Post Co., Inc.,* 152 F.R.D. 36, 40 (S.D.N.Y.1993) (citing *Brock v. Tolkow,* 109 F.R.D. 116, 121 (E.D.N.Y.1985). The public also has an interest in ensuring the criminal discovery process is not subverted. *Bridgeport Harbour Place I, LLC v. Ganim*, 269 F.Supp.2d 6, 10 (D.Conn. 2002) This factor militates in favor of staying the proceeding.

The six factor test, just like the five factor test, uses various factors to attempt to balance the equities. The prejudice to Hecker of parallel adversary and criminal proceedings continuing is great. Hecker could be forced to disclose his criminal litigation strategies to the prosecution before he is ready. Further, by testifying as to his intent, Hecker would waive his Fifth Amendment right to be free from self-incrimination. In short, if this Adversary Proceeding is not stayed, Hecker may be forced to choose between defending himself in the criminal proceeding and defending himself in this Adversary Proceeding. This is unfair to Defendant Hecker. Plaintiff will not be prejudiced by a delay. Under both tests

currently in use in the federal circuits, a stay of this Adversary Proceeding is in the

interests of justice.

DATED:   September 22, 2009          MOHRMAN & KAARDAL, P.A.


                                    s/ William F. Mohrman
                                    _____
                                    William F. Mohrman Bar No. 168816
                                    Erick G. Kaardal, Bar No. 229647
                                    James R. Magnuson, Bar. No. 389084
                                    33 South Sixth Street, Suite 4100
                                    Minneapolis, MN  55402
                                    (612) 341-1074

                                    ATTORNEYS FOR DEFENDANT DENNIS E.
                                    HECKER

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Bankruptcy Case No: 09-50779-RJK** |
| **DENNIS E. HECKER,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| **CHRYSLER FINANCIAL** | ) | **Adversary Proceeding No.: 09-05019** |
| **SERVICES AMERICAS** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **DENNIS E. HECKER,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## DECLARATION OF WILLIAM F. MOHRMAN IN SUPPORT OF
## DEFENDANT'S MOTION FOR A STAY

I, William F. Mohrman, after being first duly sworn, deposes and states as

follows:

1.     I am an attorney at Mohrman & Kaardal, P.A. and make this

Declaration in Support of Defendant Dennis E. Hecker's Motion for

a Stay based on the pending Grand Jury investigation.

1

2.      Attached as Exhibit 1 to this Declaration is a true and correct copy of

a November 19, 2007 e-mail from Mr. John Bowker, an employee of

Plaintiff's, to Hecker.

3.      Attached as Exhibit 2 to this Declaration is a true and correct copy of

a Subpoena the U.S. Attorney for the District of Minnesota served

on Defendant Hecker.

4.      On September 16, 2009, Plaintiff's attorneys deposed Ms. Cindy

Bowser pursuant to Notice of Taking Deposition.  I attended the

deposition on behalf of Debtor/Defendant Dennis E. Hecker.  Ms.

Bowser testified during the deposition that she is the former

executive assistant for Mr. Hecker.  Ms. Bowser also testified that

she had received a subpoena from the Grand Jury the U.S. Attorney

convened to investigate Mr. Hecker compelling her testimony before

the Grand Jury.  Ms. Bowser testified in her deposition that she

appeared before and provided testimony to the Grand Jury on

September 14, 2009.  Ms. Bowser further testified in her deposition

that in the Grand Jury room the Assistant U.S. Attorney examined

Ms. Bowser regarding Exhibit F attached to the Adversary

Complaint and Plaintiff's allegations that Exhibit F had been

"forged" or "doctored."

5.      Relevant pages of Ms. Bowser's deposition transcript will be

provided to the Court prior to the hearing on Defendant's Motion.

2

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 22, 2009

s/William F. Mohrman

_____

William F. Mohrman

Subj:       **Risk Programs**
Date:       12/17/2007 1:11:34 P.M. Central Daylight Time
From:       jb83@chryslerfinancial.com
To:         RPage@dennyhecker.com
CC:         sleach@dennyhecker.com, heckerauto@aol.com, tschwartz@dennyhecker.com,
            Cheryl.helfricht@waldenauto.com, Cheryl.helfricht@waldenauto.com,
            mjc20@chryslerfinancial.com

Dick,

We are receiving funding packages on "Risk" units for Hyundai, Chrysler, and GM units.

In order to process, we need to know the terms of the purchase. Could you provide the agreements you
negotiated with these manufacturers.

Thanks,

John


John W. Bowker
Chrysler Financial
National Accounts Manager
27777 Inkster Road
Farmington Hills, MI  48334
CIMS 405-23-05
248-427-6509
248-219-8001 (Cell)
248-427-6569 (Fax)
jb83@chryslerfinancial.com

%AO110 (Rev 12/89) Subpoena to Testify before Grand Jury       NAE : ds    USAO   2009R00247     ORIGINAL    Snider:IRS

# UNITED STATES DISTRICT COURT

STATE AND _____ DISTRICT OF _____ MINNESOTA

TO:   Denny Hecker's Automotive Group, Inc.
      and any other entity owned or controlled
      by Dennis E. Hecker

**SUBPOENA TO TESTIFY
BEFORE GRAND JURY**

SUBPOENA FOR:
☐ PERSON      ☒ DOCUMENT(S) OR OBJECT(S)

YOU ARE HEREBY COMMANDED to appear and testify before the Grand Jury of the United States District Court at the place, date, and time specified below.

| PLACE | COURTROOM |
|---|---|
| 308 U.S. Courthouse<br>300 South Fourth Street<br>Minneapolis, MN 55415 | GRAND JURY ROOM |
| | DATE AND TIME<br>September 14, 2009 @ 9:00 a.m. |

YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):*

See attachment!

Compliance with this subpoena may be achieved by appearing before the Grand Jury on the date and time specified with the records; or by providing the requested documents to Special Agent Shauna Snider, Internal Revenue Service, Criminal Investigations Division, 250 Marquette Avenue, Suite 560, Minneapolis, MN 55401, (651) 767-3246.

☐  *Please see additional information on reverse.*

This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| CLERK | DATE |
|---|---|
| Richard D. Sletten<br>(By) Deputy Clerk | July 30, 2009 |

| This subpoena is issued on application<br>of the United States of America<br><br>UNITED STATES ATTORNEY | NAME, ADDRESS AND PHONE NUMBER OF ASSISTANT U.S. ATTORNEY<br>Nicole A. Engisch<br>300 SOUTH FOURTH STREET, SUITE 600<br>MINNEAPOLIS, MN 55415      (612) 664-5600 |

* If not applicable, enter "none"

AO110 (Rev. 12/89) Subpoena to Testify Before Grand Jury

ATTACHMENT FOR DENNY HECKER'S AUTOMOTIVE GROUP ET AL.

For the period beginning January 1, 2006, and continuing through the present, all documents and records, in whatever form and at whatever location, as follows:

1. Documents and records reflecting or related to financing from Chrysler Financial for the financing of vehicles, including fleet lease vehicles. Such documents and records to include:

    a. supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of vehicles used as collateral for loans;

    b. any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from Chrysler Financial;

    c. documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

    d. agreements and other documents regarding vehicles purchased from Chrysler Motors, Hyundai Motor America, Toyota, GM, Suzuki, Nissan, and Mitsubishi, including those purchased under guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases;

    e. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f. any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    g. any "Chrysler" file maintained by Dennis Hecker or his employees;

1

    h.  any documents, including a Rolodex, of Chrysler contacts;

    i.  documents reflecting or related to any financial transactions with respect to payments by Chrysler Financial in or about November and December 2007.

2. Documents and records reflecting or related to Hyundai Motor America with respect to purchase or leasing of vehicles, including fleet lease vehicles. Such documents and records to include:

    a.  documents reflecting and related to any agreements between any of Hecker's entity and Hyundai Motor America, including supply agreements and agreements pursuant to guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases.

    b.  documents related to the alleged fraudulently obtained floor plan(s) agreement(s) or financing approved in November 2007;

    c.  any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    d.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    e.  any "Hyundai" or "Hyundai Motor" file maintained by Dennis Hecker or his employees;

    f.  documents reflecting or related to any financial transactions with respect to payments by Hyundai Motor America in or about November and December 2007.

3. Documents and records reflecting or related to Hyundai Motor Finance Company with respect to financing of vehicles. Such documents and records to include

2

   a.  supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of vehicles used as collateral for loans;

   b.  any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from Hyundai Motor Finance Company;

   c.  documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

   d.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

   e.  any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

   f.  any "Hyundai Motor Finance" file maintained by Dennis Hecker or his employees;

   g.  documents reflecting or related to any financial transactions with respect to payments by Hyundai Motor Finance Company in or about February and August 2008.

4.   Documents and records reflecting or related to Mitsubishi with respect to purchase or leasing of vehicles, including fleet lease vehicles. Such documents and records to include:

   a.  documents reflecting and related to any agreements between any of Hecker's entity and Mitsubishi, including supply agreements and agreements pursuant to guaranteed repurchase or guaranteed depreciation programs (e.g., "GDP" program) and risk purchases.

    b.  documents related to an alleged fraudulently obtained floor plan(s) agreement(s) or financing approved in or about 2002-2003

    c.  documents related to transaction fees or advertising-time credits or discount credits for commercial TV air time;

    d.  any altered or forged documents, including invoices, bills of sale, or other documents, created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    e.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f.  any "Mitsubishi" file maintained by Dennis Hecker or his employees.

5.    Documents and records reflecting or related to GE Capital, Gelco Corporation, GE Fleet and/or VFS Financing, Inc. with respect to purchase or leasing of vehicles, including fleet lease vehicles, as well as with respect to financing for a Bombardier Challenger aircraft and aircraft equipment. Such documents and records to include:

    a.  supply agreements, loan agreements, invoices, financial statements, security agreements, promissory notes, personal guarantees, financing packets, funding packages, payment schedules, and listing of airplane(s), airplane equipment and/or vehicles used as collateral for loans;

    b.  any other documents submitted by Hecker, Hecker's entities or anyone working for or with Hecker, with respect to obtaining financing from GE Capital, Gelco Corporation, GE Fleet and/or VFS Financing, Inc;

    c.  documents reflecting or related to payment histories, including the source of payment, by Hecker/Hecker's entities;

4

    d. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    e. any altered or forged documents created by Hecker, Hecker's entities, or anyone working for or with Hecker/Hecker's entities;

    f. any "GE Capital," "Gelco Corporation," "GE Fleet" and/or "VFS Financing, Inc" file maintained by Dennis Hecker or his employees.

6. Documents and records reflecting or relating to the purchase and/or sale and use of airplanes by Dennis E. Hecker and/or Hecker's entities. Such documents and records to include:

    a. documents reflecting and related to purchase agreements for planes, loan applications, cancelled checks for loan issuance, appraisals, loan payment history, flight logs, payments made to pilots, mechanics and others for use of the plane, and correspondence between buyer(s) and seller(s).

    b. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

7. Documents and records reflecting or related to Advantage Rent-A-Car, including Southwest-Tex Leasing Co., ARC Venture Holding, and Advantage Touch. Such documents and records to include:

    a. financial statements, financial projections, statements of revenues and expense, and assessment of profitability of each rental car business location, including spreadsheet projections provided to Chrysler Financial in November 2007;

    b. documents reflecting or related to repairs or reimbursement for repairs;

    c.  documents reflecting or related to complaints by State Farm, Advantage Touch and/or any other insurance company with regard to alleged fraudulent claims;

    d.  documents reflecting or related to the National Association of Attorneys General Task Force on Car Rental Industry Advertising and Practices and its "Final Report and Recommendations of the National Association of Attorneys General Task Force on Car Rental Industry Advertising and Practices";

    e.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes;

    f.  any "Advantage Rent-A-Car" file maintained by Dennis Hecker or his employees.

8.  Documents and records reflecting or related to the financial condition of Hecker's entities. Such documents and records to include:

    a.  documents and records reflecting and related to periodic financial/net worth statements, statements of income and/or expenses, books, records, receipts, invoices, bank account records, account applications, deposit statements/slips, notes, checks, invoices and/or bills, journals, ledgers, credit card billing statements and receipts, calendars, billings, agreements, contracts, safe deposit box records and keys;

    b.  documents and records reflecting an related to cash receipts and cash disbursements, any other financial records relating to any of Hecker's entities;

    c.  checking account ledgers, including hand-prepared documents;

    d.  documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

9. Documents and records reflecting or relating to any of Hecker's entities failure to pay state sales tax and/or failure to pay off any customer's liens on trade in vehicles. Such documents records to include:

   a. documents and records reflecting or relating to customer complaints taken by Dennis E. Hecker, Hecker's entities and/or any employees regarding sales taxes not being paid and/or liens not being paid; and

   b. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

10. Documents and records reflecting or relating to any transfer of money and assets by Hecker and/or certain of Hecker's entities to other Hecker's entities and/or any third party, including such transfers that were made with intent to hinder, delay or defraud creditors of the transferring entities. Such documents and records to include:

   a. documents reflecting or related to wire transfers or other payments and transfers of money;

   b. documents reflecting or related to any fixed asset listings of Hecker/Hecker's entities;

   c. documents reflecting or related to any closing files or other documents relating to the sale of any Hecker dealerships, including but not limited to Inver Grove Toyota;

   d. documents reflecting or related to communications, including memoranda, letters, emails, faxes, notes.

11. Documents and records reflecting or relating to personnel files which show job titles, dates of employment, duties and responsibilities, location where employed, personnel issues, and contact information for employees of Dennis E. Hecker and/or Hecker's entities;

7

employment agreements, severance agreements, confidentiality agreements, and non-compete agreements.

12. Documents and records reflecting or relating general ledgers and accounting software for Hecker's entities.

13. Documents and records reflecting or relating to bank records for Hecker's entities from 2006 to the present.

14. Documents and records reflecting or relating to any accounting audit including forensic accounting audit.

15. Cash over $10,000.

The terms "Hecker's entities" includes but is not limited to Rosedale Fleet Leasing II LLC, Rosedale Dodge, Inc., Walden Fleet Services II, Inc., Denny Hecker's Automotive Group, Inc., Walden Investment, LLC, and Southwest-Tex Leasing Co., Inc., d/b/a Advantage Rent-A-Car, Den-Star of Minnesota, LLC, and all other entities owned and controlled by Denny E. Hecker.

The terms "document(s)" and "record(s)" includes all the foregoing items of evidence in whatever form and by whatever means such documents, their drafts, or their modifications have been created or stored, including, but not limited to, any handmade form (such as drawing, writing, painting, with any implement or surface, directly or indirectly); any photographic form (such as prints, slides, videotapes, photocopies); any mechanical form (such as printing or typing) and any electronic or magnetic form (such as tape recordings, cassettes, compact discs, information on an electronic or magnetic storage device).

8

**THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: | |
| **DENNIS E. HECKER,** | **CERTIFICATE OF SERVICE** |
| Debtor. | |
| _____ | |
| **CHRYSLER FINANCIAL SERVICES,** | **Bankruptcy Case No: 09-50779-RJK** |
| **AMERICAS LLC,** | **Chapter 7 Case** |
| Plaintiff, | |
| v. | **Adversary Proceeding No.: 09-05019** |
| **DENNIS E. HECKER,** | |
| Defendant. | |

I hereby certify that on September 22, 2009, I caused the following document:

- Memorandum of Law in Support of Motion for Stay;
- Declaration of William F. Mohrman in Support of Motion for Stay; and
- Proposed Order;

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

- Stephen F Grinnell     stephen.grinnell@gpmlaw.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants: None.


Dated: September 22, 2009                     **s/ William F. Mohrman_____**
                                                William F. Mohrman

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | **Bankruptcy Case No: 09-50779-RJK** |
| **DENNIS E. HECKER,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **CHRYSLER FINANCIAL** | ) | **Adversary Proceeding No.: 09-05019** |
| **SERVICES AMERICAS** | ) | |
| **LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DENNIS E. HECKER,** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## ORDER ON DEFENDANT'S MOTION FOR AN ORDER STAYING THE ADVERSARY PROCEEDING UNTIL THE CONCLUSION OF THE CRIMINAL INVESTIGATION OF DEFENDANT HECKER

This matter came before the Court for hearing on October 7, 2009 upon Defendant's Motion For An Order Staying the Adversary Proceeding Until the Conclusion of the Criminal Investigation of Defendant Hecker.  William F. Mohrman appeared for Defendant.  Stephen Grinnell appeared for Plaintiff.  Based on the parties' submissions, as well as the oral arguments of counsel,

**IT IS HEREBY ORDERED**:

1.  Defendant's Motion to stay the adversary proceeding until the

1

conclusion of the criminal investigation into the facts that form the basis

for the adversary complaint is GRANTED.

2.  This matter is stayed until the conclusion of criminal proceedings

against Defendant Hecker.

Dated:  September 22, 2009

_____
The Honorable Robert J. Kressel
Chief Judge
United States Bankruptcy Court