# UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**DENNIS E. HECKER**                                    **Case No. 09-50779-RJK**

      **Debtor.**                                    **Chapter 7**

---

**CHRYSLER FINANCIAL
SERVICES AMERICAS LLC,**

         **Plaintiff,**                **ADV Pro. No. 09-05019**

**vs.**

**DENNIS E. HECKER**

        **Defendant.**

---

## HECKER'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF STAY

---

### INTRODUCTION

Since the original filing of the motion to stay, ongoing developments indicate that the criminal investigations of Defendant and his companies will be concluded by spring 2010. Defendant is now seeking a stay of all pending adversarial matters for a period of six (6) months in order to protect his constitutionally protected Fifth Amendment rights against self-incrimination while he is undeniably under criminal investigation. There is no longer an extraordinary form of relief sought in the form of an indefinite extension. Contrary to Plaintiff's memorandum opposing a stay, Defendant did not make any "deliberate strategic decision to litigate this case." [pg. 1] Instead, as set forth specifically below, ONLY after Plaintiff informed Defendant that it fully intended to engage in discovery during conversations requesting an

extension of time in which to respond to the Complaint did Defendant take steps to engage in discovery.  Plaintiff's deliberate misstatements of critical facts relative to discovery cannot support its first objection.

After Plaintiff served notices of taking depositions, Defendant moved for a stay.  Plaintiff ignored the motion for a stay and moved forward with a deposition of a former employee of Defendant.  This former employee testified that she had taken information stored on her desktop computer by using an USB flash drive and without Hecker's knowledge.   (Bowser Depo at p. 107, attached to Skolnick Affidavit)  Further, she provided the stolen electronically stored information to Plaintiff Chrysler Financial's lawyers. (Id. at  pp. 84-85).   The electronically stored information taken by the employee consisted of over 200,000 pages of information. (Affidavit of Skolnick).   This information included all emails sent to Hecker.  Defendant was forced by Plaintiff to engage in discovery in order to not waive his ability to ask questions to a critical witness that was subpoenaed by Plaintiff and to assert his objections to outstanding written discovery.

Second, Plaintiff's unsubstantiated argument that somehow each day that passes Defendant is spending monies that "will be lost to Chrysler Financial forever" establishes prejudice to Plaintiff is without merit.  [See pg. 2]  This argument is rank speculation based on nothing more than tabloid articles and other false newspaper or media accounts of Defendant's actions and purported expenditures.   Plaintiff's debt is not going to change and Defendant's financial status is not about to change during the next six months.  Plaintiff argues money, while Defendant argues his basic constitutional rights - - which interests are paramount to any monetary claims of Plaintiff.

More importantly, when facts are at issue, an affidavit or verification is required.  What

actual verified facts or "evidence" does Plaintiff have to claim that Defendant is spending monies belonging to creditors or the bankruptcy estate? What verified facts or "evidence" does Plaintiff have that Defendant is going to have more monies available to pay it now than he may have six months from now? Or ever? There exists no legal authority that makes it the burden of Defendant to prove that there is no prejudice to Plaintiff, as argued by Plaintiff.

As set forth below, Defendant has met his burden of establishing the legal and factual basis to a short-term, six month stay of the adversarial matters.

## RELEVANT MATERIAL FACTS

*1.*    ***FACT - Plaintiff Refused to Extend the Time to Respond to the Complaint and Conduct Discovery.***

Plaintiff would have this Court believe that Defendant deliberately decided to litigate this case before "suddenly deciding to seek a stay." Instead, it was at all times Plaintiff who started this lawsuit, who refused to postpone discovery or voluntarily allow an extension of time in which to Answer the Complaint, and aggressively pursued discovery. Plaintiff insisted on taking the deposition of Defendant's former employee, Cindy Bowser ("Bowser"), and obtained reproductions of documents stolen by Bowser. See Skolnick Aff. at Ex. D. Plaintiff subpoenaed documents from other critical parties, as set forth herein.

Defendant sought the stay after learning that a Grand Jury was convened, in session and taking testimony from witnesses. In addition, the U.S. Attorney confirmed that Hecker was a target of the investigation which specifically included the same transactions that Chrysler Financial alleged in its adversarial complaint and involving Hyundai Capital financing. Due to the recent adversarial complaints, Defendant's counsel believes Hecker being forced to testify could jeopardize his Fifth Amendment rights. For example, Plaintiff subpoenaed the records of another adversarial party, Hyundai Capital American ("Hyundai"), Plaintiff subpoenaed records

stolen by one of Defendant's former employees and noted her deposition, and continued to subpoena former employees of Defendant who had also stolen business records.

The chronology of facts set forth in the Declaration of Plaintiff's counsel, Nicholas N. Nierengarten ("Nierengarten"), in part, provides the following critical dates and events that have all directly impacted Defendant and necessitates the request for a stay:

June 17, 2009 - The Minnesota State Patrol launched its criminal investigation into the Denny Hecker Automotive Group, which was released by the Director of Communications. (Decl. of Nierengarten, Ex. 1)

News Media Coverage documents that Hecker offices and homes are raided as part of a State investigation alleging that Defendant failed to pay state taxes, license fees or issue car Titles - - all of which Defendant has consistently denied. (Id. at Exs. 2 - 10)

July 8, 2009 - Plaintiff files its adversarial complaint against Hecker

July 9, 2009 - The FBI launches its own investigation after reviewing Plaintiff's Complaint

July 28, 2009 - Mr. Mohrman files motion for expedited relief to extend time to answer Complaint after Plaintiff refuses to provide an extension: **Plaintiff would agree to extend the time to Answer the Complaint only if Defendant Dennis Hecker would agree that Plaintiff could serve written discovery on Mr. Hecker on August 10, 2009 while I am out on vacation**. …I asked Mr. Grinnell whether I and Mr. Hecker could also receive an extension on answering these written discovery responses beyond the 30 days provided under the Rules for the 10 days time while I was out on vacation. Mr. Grinnell said that his client would not agree to such an extension on discovery. [emphasis added] (See Mohrman Declaration of Record at ¶ 9, as appended to Skolnick Aff., Ex. B)

July 29, 2009 - Search Warrant issued. (See Decl.. of Nierengarten, Ex. 14)

Again, news coverage documents the additional searches. (Id. at Exs. 11, 12, and 13)

July 30, 2009 - The Court issues an Order Extending Time for Hecker to Answer the Complaint after Plaintiff refused to provide an extension

Aug. 21, 2009 - Defendant Answers Complaint

Aug. 27, 2009 -   Defendant serves written discovery since Mr. Grinnell stated that he was about to serve discovery as of August 10th coupled with the refusal to extend time for discovery (See Decl. of Nierengarten)

Aug. 28, 2009-   Plaintiff serves extensive discovery on Defendant, as threatened during July 2009 (including Requests for Admissions)

Sept. 2, 2009 -   Plaintiff noted the deposition of Defendant's former employee Cindy Bowser ("Bowser") and (See Skolnick Aff. at Ex. C)

Sept. 8, 2009 -   Plaintiff serves subpoena duces tecum on Bowser (Id. at Ex. D)

Sept. 9, 2009 -   Plaintiff serves subpoena duces tecum on Hyundai Motor America (Id. at Ex. E)

Sept. 15, 2009 - Defendant files motion for stay

Sept. 16, 2009-  Bowers Deposition taken despite pending motion for stay and Defendant's request that the deposition be postponed

Sept. 18, 2009 - Plaintiff serves subpoena duces tecum on Steve Leach (See Skolnick Aff. at Ex. F)

Sept. 23, 2009 - Defendant serves notice of taking depositions.  (Ex. 15 to Decl. of Nierengarten)

Sept. 28, 2009 - Plaintiff responds to Defendant's outstanding discovery asserting the pending motion for stay and does not provide complete answers (Skolnick Aff. at Ex. A.)

Plaintiff's counsel has a short term memory issue when it comes to Defendant's newly retained counsel.  Mr. Skolnick postponed all pending depositions noted by Defendant until after this stay motion is decided.  (Affidavit of Skolnick).

Thus, it remains undisputed that since Plaintiff started this lawsuit, there have been additional and ongoing searches of Defendant's businesses and homes.  See e.g., Declaration of Nierengarten.

### 2. FACT - Defendant is the Target of an Ongoing Criminal Investigation involving BOTH Plaintiff and Hyundai.

Plaintiff admits the following critical fact:

"[e]ven before Chrysler Financial commenced this adversary proceeding, it was apparent that Hecker was the target of a wide-ranging criminal investigation." [pg. 3]

Additionally, Plaintiff acknowledges that, "the day after Chrysler Financial filed its adversarial proceeding, the news media reported that the FBI would be interested in the Hyundai allegations." [pgs. 3-4] In fact, Plaintiff admits that the purpose of the later raids of Defendant's businesses and homes was "with the specific goal of locating evidence related to Chrysler Financial's funding of Hecker's operations and Hecker's relationship with Hyundai." [pg. 4] As learned from Cindy Bowser's deposition, she turned over to the FBI the documents she had taken from her employer and discussed specifically with the FBI, the Chrysler Financial claims, the Hyundai financing and the tax, title and license issues. (See Bowser Depo at pp. 124 -128, which is attached to Skolnick Affidavit).

### 3. FACT – Plaintiffs that Filed Adversarial Actions Rely on Factually-Related Federal Criminal Investigations.

As evidenced by Plaintiff's own memorandum and submissions, the day after it filed its adversarial complaint, the FBI began its investigation and Defendant was within weeks subjected to further subpoenas of his business locations and homes.

Plaintiff's subpoena issued against Hyundai included a definition section that defines "Hecker" and "Hecker Related Entity" rather generally and broadly to include "any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives, or anyone acting on their behalf." See Skolnick Aff. at Ex. E, p. 3 "Rosedale" and "Walden" have similarly broad and

encompassing definitions.  Id. at pp. 3-4.

## LEGAL ARUGMENT

Defendant incorporates by reference his prior legal arguments submitted to this Court and further provides the following in response to Plaintiff's objections.

**I.      DEFENDANT ESTABLISHED A LIMITED STAY IS APPROPRIATE UNDER THE CIRCUMSTANCES.**

Plaintiff acknowledges in its first paragraph Defendant's Fifth Amendment rights against self-incrimination, but relies entirely upon the "adverse inference" doctrine when a party refuses to testify in a civil matter.  Incredulously, Plaintiff argues on page 2 of its memorandum that, "…Hecker outlined the thrust of his defense in the Answer, and Hecker plainly could present that defense without testifying."  In other words, Plaintiff is now dictating Defendant's legal strategy and ignoring entirely his rights to properly defend himself and the obvious conflict that exists when there are concurrent criminal allegations arising from the same exact facts.  The problem is rather clear.  By arguing to this Court that Defendant can merely assert his rights under the Fifth and not testify, there arises a negative inference of guilt - - an improper shifting of the burden of proof that has ramifications in the pending criminal investigations.

The proper legal analysis for the initial granting of a stay is found in the case of *Allstate Insurance Co. v. Alivio Chiropractic Clinic, Inc. et al.*, F. Supp.2d, 2008 WL 1945157 (D. Minn.).  As in the case at bar, a Grand Jury was impaneled, Defendant was informed that he is the target of criminal investigations by the United States Attorney General for the District of Minnesota, search warrants were issued for the business premises of the Defendant, and Defendant's counsel has met with authorities regarding the investigation.  Defendant's motion for stay was granted based on the foregoing undisputed facts coupled with the existence of same claims and same issues raised in both cases.

Plaintiff in *Allstate supra*, brought a motion to lift the stay one year later after no criminal charges were brought. The Court provided a detailed analysis of the relevant factors to consider when deciding the issue of whether or not a stay should be issued. The following standard of review was provided:

> The Fifth Amendment to the United States Constitution provides that no person "shall be Compelled in any criminal case to be a witness against himself. *United States Constitution Amend. V*. Notably, the Amendment not only protects an individual against being involuntarily called as a witness against himself in a criminal prosecution, but also privileges him not to answer official questions, that are put to him in any other proceeding, civil or criminal, formal or informal, when the answers might incriminate him in future criminal proceedings. Id. at *2 Citing, Lefkowitz v. Turley, 414 U.S. 70, 77 (1973).
>
> A Court may, in its discretion, grant a stay of a pending civil matter in order to avoid interfering with a criminal investigation, see, *Lunde v. Helms*, 898 F.2d 1343, 1345 (8th Cir. 1990), or to preserve the ability of a defendant to assert his Fifth Amendment privilege in a pending criminal proceeding involving the same subject matter. (other citations omitted) [emphasis added]

Id.

"To warrant a stay, defendant must make a strong showing either that the two proceedings are so interrelated that he cannot protect himself at the civil trial by selectively invoking his Fifth Amendment privilege * * * or that the two trials will so overlap that effective defense of both is impossible." Id. at *3 *quoting Koester v. American Republic Investments, Inc.*, 11 F.3d 818, 823 (8th Cir. 1993). The Court must consider the particular circumstances of each case taking into account the competing interests that are involved in each case. Id. Defendant has met this burden, as did the Defendant in *Allstate, supra,* when the motion for stay was originally granted. Nowhere in the decision does the Court refer to the motion for stay as an "extraordinary" form of relief.

As previously set forth by Defendant on pages 11 through15 of its memorandum, the following five factors must be considered:

1) the interests of the plaintiffs in proceeding expeditiously with this litigation or any particular aspect of it;

2) the burden which any particular aspect of the proceedings may impose on the defendants;

3) the convenience of the court in the management of its cases, and the efficient use of judicial resources;

4) the interests of persons not parties to the civil litigation; and

5) the interests of the public in the pending civil and criminal litigation.

Id. at *3 *citing Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324 (9th cir. 1995) and *White v. Mapco Gas Products, Inc*. 116 F.R.D. 498, 502 (E.D. Ark. 1987).

In *Allstate, supra*, Judge Patrick J. Schiltz granted Defendant's motion to stay upon the recommendation of the Magistrate taking into account each of the above factors. However, one year later when it appeared that very little progress had been observable in the pending investigation, the Court concluded then that "any criminal prosecution remains purely conjectural at this point." Id. at *3. Again, Defendant is not seeking an indefinite stay as the Defendant in *Allstate, supra*.

A. **DEFENDANT NEVER WAIVED HIS FIFTH AMENDEMENT RIGHTS BY INTERPOSING AN ANSWER OR ENGAGING IN DISCOVERY AFTER PLAINTIFF STATED IT WOULD NOT ALLOW ANY EXTENSIONS AND INTENDED TO PURSUE DISCOVERY.**

Plaintiff's first argument of waiver is without merit and ignores entirely the actual facts relating to discovery. As previously set forth, the following facts establish that Defendant never waived his rights: a) Plaintiff forced Defendant's newly retained counsel for this matter at the time to file an expedited motion for an extension of time in which to respond to its Complaint; b) Plaintiff also refused to agree to an extension of time in which to conduct discovery; c) Plaintiff's counsel attempted to negotiate the ability to serve its discovery early or

on August 10, 2009, in exchange for an extension; and d) Plaintiff's counsel aggressively pursued discovery. Defendant's actions were in direct response to Plaintiff's actions rather than any deliberate litigation strategy at the time.

Further, it is undisputed that Defendant reserved his rights against self-incrimination in response to the written discovery of Plaintiff. See Skolnick Aff. at Ex. A. It is also undisputed that Defendant attempted to postpone the deposition of Bowser, but was unsuccessful.

The case law cited by Plaintiff is factually distinguishable. In *Norbank v. Kroh (In re Kroh),* 87 B.R. 1004, 1005-6 (Bankr. W.D. Mo. 1988), the debtor invoked his Fifth Amendment rights early on and THEN chose to waive his rights by filing an answer <u>and</u> providing answers to interrogatories. The debtor filed a motion to stay at the time of trial, thereby making the timing of the motion critical in the Court's analysis. The dicta of the Court provide:

> ……..in this adversary action he filed an answer to the complaint and answers to interrogatories. He did not invoke his Fifth Amendment in *either* answer, <u>but instead provided complete responses</u>. [emphasis added]

<u>Id</u>. The analysis of the Court is fact specific and mentioned in the procedural posture of the case before the findings of fact section of the decision, thereby not providing any in depth legal analysis for Plaintiff's position.

Unlike the Defendant in *Norbank supra*, Defendant Hecker objected to each of the interposed written discovery requests on the basis that he was seeking a protective order and had a pending motion to stay. See Skolnick Aff. at Ex. A. Thus, Defendant undeniably reserved his Fifth Amendment rights in responding to outstanding discovery, which Plaintiff neglects to disclose to the Court. There was no providing of complete detailed responses to written discovery. Moreover, Defendant's Answer contains mainly denials and to the extent he was able

to respond to specific allegations he did so without waiving any Fifth Amendment rights.  Nor did Defendant flip flop on asserting his Fifth Amendment rights as the Defendant in *Norbank*.

Similarly, Plaintiff's cited case of *State Farm Mut. Auto. Ins. Co v. CPT Medical Services, P.C.*, 375 F. Supp.2d 141, 158 (E.D. N.Y. 2005) involved the failure of Defendant to reserve his rights in responding to written discovery.  Moreover, the following factors resulted in the Court denying an application for stay of discovery:  1)  Defendant failed to demonstrate that the issues were similar in both proceedings;  2) Defendant was requesting an indefinite stay;  3) the Plaintiff needed the Defendant to conduct discovery since he was central to the alleged RICO scheme and discovery would be impeded affecting several other named defendants;  4) Defendant failed to invoke his rights and privileges in responding to written discovery thereby evidencing a clear waiver;  5)  the Court needed to move the case along;  and 6) public policy was in favor of denying the stay since insurance fraud and its impact on the costs of insurance was at issue.  None of the above factors are present in the pending case.

Plaintiff's other non-binding legal authority found in *In Re Anderson*, 349 B.R. 448 (E.D. Va. 2006) is not on point for the position that somehow Defendant was "dilatory" and, therefore, not entitled to a stay.  To the contrary, from the very beginning counsel for Defendant sought an extension of time in which to conduct discovery, as well as answer the Complaint.  To request a continuance of discovery while a motion is pending for a protective order in the form of a stay is merely exercising his legal rights - - not dilatory behavior.

The facts of *In Re Anderson* warrant comment.  First, the record revealed that Defendant agreed to a scheduling order setting the matter on for hearing and at the time had been under indictment for more than nine months.  Id. at 459.  Second, Defendant waited to move for a stay more than three months after the scheduling order was issued and one year after his indictment.

Id. Obviously, the Defendant was fully aware of his Fifth Amendment dilemma no later than the time in which he had been indicted, which is certainly not the situation for Defendant Hecker. To equate the Defendant of *In Re Anderson, supra*, to Defendant Hecker is neither warranted nor justified by the actual facts of the pending case.

Plaintiff is unable to cite to any legal authority in this jurisdiction for its waiver argument, which speaks for itself.

**B.    PLAINTIFF'S PURPORTED PREJUDICE FOR MONEY IS SECONDARY TO DEFENDANT'S CONSTITUTIONAL RIGHTS.**

Plaintiff asserts that it will be unduly prejudiced and relies entirely upon speculation rather than verified facts.   In fact, Plaintiff concedes that Defendant is unable to pay amounts it claims are due and owing, as evidenced by the pending bankruptcy proceeding.

Unlike the legal authority cited by Plaintiff on this issue, Plaintiff already has a judgment against Defendant and is not prejudiced by a short delay in the pending proceedings.  Plaintiff's primary objections centered around an indefinite request for a stay, which is not now the situation in this case.  Thus, there is no prejudice by an undue delay and the ramifications that would flow from an indefinite extension.  Plaintiff has already engaged in basic discovery and will not be prejudiced by any witnesses disappearing or memories fading six months from now.

It is entirely improper for Plaintiff to argue in its responsive motion that somehow Defendant is not complying with the legal requirements of bankruptcy, thereby making pages 12 through14 improper argument that should be stricken.

**C.    PRACTICAL CONSIDERATIONS SUPPORT A STAY**

There have not been any scheduling orders issued in this or the other adversary actions. Neither the Plaintiff nor any of the other Plaintiffs have stated any estimate as to how long discovery will reasonably take.  There are no trial dates set.  It borders on the impossible that this

case and all the other adversary actions would be tried within the next six months.  The short stay requested most likely will not delay the trial.

## C.   THE BALANCING OF INTERESTS FAVORS A LIMITED STAY

The balancing of interests weights in favor of Defendant.  In the case of *In Re Marceca*, 131 B.R. 774 (SD. N.Y. 1991), the Court granted a motion of stay until the earlier of four months or the decision of the United States Attorney to decline to prosecute debtor.  The Court recognized that a complete stay of pending civil action until the outcome of a related criminal proceeding was an extraordinary remedy.  Id. at 778.  However, in a situation where the debtor was at a pre-indictment stage and may not be indicted if the investigation fails to uncover any criminal conduct, the Court concluded that, ".. the plaintiff's right to proceed expeditiously is not substantially impaired by a limited delay, whereas the debtor's fifth amendment rights would be seriously jeopardized if he is required to defend the bankruptcy litigation while he is a target of a federal criminal investigation concerning the same facts which are involved in the bankruptcy litigation."  Id.  This is exactly the situation for Defendant Hecker.

Additionally in the case of *White v. Mapco Gass Products, Inc.*,  116 F.R.D. 498 (E.D. Ark. 1987) (an anti-trust case where a stay was granted during Grand Jury investigation), the balancing of competing interests justified a stay of discovery until the completion of the Grand Jury's investigation.  The follow factors were found to exist warranting the stay:  1) the Grand Jury indictment could benefit Plaintiff by limiting the scope of discovery;  2)  the Defendant would benefit from the stay by being able to prepare for the defense of possible criminal action; 3) denial of the stay could jeopardize the privilege against self-incrimination; and 4) the resolution of related criminal investigations could eliminate much of the district court's work in the civil action.

In the case of *Walsh Securities, Inc. v. Cristo Property Management, Ltd.*, 7 F. Supp. 2d 523 (D. New Jersey 1998), the Court granted a stay of proceedings concluding that in certain circumstances the interests of justice require the Court to exercise its discretion in favor of a stay. Again, the Court found that the balancing of interests weighed more favorable for the Defendant when the issues in the criminal and civil matters overlapped and there was a pending criminal investigation. At issue were alleged fraudulent real estate transactions. Plaintiff's interest in an expeditious proceeding came second to the constitutional rights of the Defendant. The Court recognized the stay of discovery in order to avoid serious Fifth Amendment concerns about self-incrimination.

## CONCLUSION

Based on the foregoing, Defendant's motion for a stay should be granted for up to a six month period of time.

Dated:      October 20, 2009      **SKOLNICK & SHIFF, P.A.**

**/e/ William R. Skolnick_____**
William R. Skolnick #137182
LuAnn M. Petricka #18505X
527 Marquette Avenue South, #2100
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
petricka@visi.com

ATTORNEYS FOR DENNIS E. HECKER

**UNITES STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In re:

**DENNIS E. HECKER**                                    **Case No. 09-50779-RJK**

      **Debtor.**                                              **Chapter 7**

---

**CHRYSLER FINANCIAL**                                 **ADV Pro. No. 09-05019**
**SERVICES AMERICAS LLC,**

        **Plaintiff,**

vs.

**DENNIS E. HECKER**

        **Defendant.**

---

**AFFIDAVIT OF WILLIAM R. SKOLNICK**

---

STATE OF MINNESOTA  )
                       ) ss.
COUNTY OF HENNEPIN )

      William R. Skolnick hereby deposes as follows:

      1.   That I am the attorney of record for Defendant Dennis E. Hecker ("Hecker"), and am

providing this Affidavit concurrently with Defendant's Reply Memorandum in support of his

motion for a stay.  The facts contained herein are based on my personal knowledge.

      2.   That attached hereto are true and accurate reproductions of the following referenced

Exhibits in Defendant's Reply:

        Exhibit A               Debtor-Defendant's Combined Responses to outstanding
                                      Interrogatories, Requests For Production of Documents
                                      And Requests for Admissions dated 9/28/09.

| Exhibit B | Declaration of William Mohrman in Support of Motion for Stay dated 7/28/09 |
| Exhibit C | Notice of Taking Deposition of Cindy Bowser dated 9/2/09 |
| Exhibit D | Subpoena Duces Tecum ("SDT") to Bowser dated 9/8/09 |
| Exhibit E | Notice of SDT and SDT to Hyundai Motor America dated 9/9/09 |
| Exhibit F | Notice of SDT and SDT to Steve Leach dated 9/18/09 |

3. That upon being retained I learned that counsel for Plaintiff, Stephen Grinnell, refused to allow any extensions of time in which to conduct discovery and that he intended to aggressively pursue discovery.

4. That discovery was undertaken by Defendant's prior counsel in direct response to Mr. Grinnell's statements that he would be serving his discovery on August 10, 2009 or shortly thereafter. Mr. Grinnell refused to stay discovery pending the decision on Defendant's pending motion, thereby resulting in the noting of depositions by Defendant - - none took place.

5. That in order to make certain the Trustee was aware of my intentions and knowing full well that the deposition would more likely than not need to be rescheduled, I served a Notice of Taking Deposition and SDT on the Bankruptcy Trustee on October 8, 2009. Aside from serving the SDT, I have not actively engaged in any discovery since the filing of this motion.

6. That I have recently learned the status of the criminal investigation from defense counsel for Mr. Hecker, and have been informed that criminal charges, if any, would be filed the first part of 2010. Accordingly, I am seeking a six month stay and not an indefinite stay.

7. On September 16, 2009, the Plaintiff took the deposition of Cindy Bowser. Attached hereto are true and accurate copies of pages 84, 85, 87, 107, 124 - 128 of the Bowser deposition.

8. The information taken by Ms. Bowser was provided to me on disc. I sent the disc to be copied and received an analysis that it consisted of 202,490 pages of information and would cost at $.09 per page over $18,000. Attached hereto as Exhibit G is a copy of the analysis.

FURTHER YOUR AFFIANT SAITH NOT.

William R. Skolnick

Sworn and subscribed to before me
A Notary Public this 20th day of
October 2009.

[Notary Public]





LUANN M. PETRICKA
Notary Public-Minnesota
My Commission Expires Jan 31, 2010

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:<br><br>DENNIS E. HECKER,<br><br>      Debtor.<br><br>CHRYSLER FINANCIAL<br>SERVICES AMERICAS LLC,<br><br>      Plaintiff,<br><br>v.<br><br>DENNIS E. HECKER,<br><br>      Defendant. | **Bankruptcy Case No: 09-50779-RJK**<br><br>**Chapter 7**<br><br><br>**Adversary Proceeding No.: 09-05019** |

### DEBTOR-DEFENDANT DENNIS E. HECKER'S COMBINED RESPONSES TO PLAINTIFF'S FIRST SET OF CONTINUING INTERROGATORIES, FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND FIRST SET OF REQUESTS FOR ADMISSIONS TO DEFENDANT

TO:    Chrysler Financial Services Americas LLC through its attorney Stephen F. Grinnell, Gray, Plant, Mooty, P.A, 500 IDS Center, 80 South Sixth Street, Minneapolis, Minnesota 55402.

### <u>GENERAL OBJECTIONS</u>

The Defendant objects to the broad scope and vague phrasing of these discovery

requests to the extent their meaning is impossible to understand. Nonetheless, the

Defendant will respond to these discovery requests based on his understanding of the

discovery requests.

1



EXHIBIT

A

The Defendant also objects to these discovery requests to the extent they request information subject to the attorney client and/or work product privilege.

The Defendant also objects to Plaintiff's request for supplementation beyond that required under the Federal Rules of Civil Procedure.

The Defendant further objects to these Interrogatories as contention interrogatories. Discovery has just commenced on this matter and the Defendant reserves the right to later amend his responses based on information that becomes available.

The Defendant further objects to each interrogatory to the extent that it seeks information already known to Plaintiff or its counsel, already in the possession of Plaintiff or its counsel, or available to Plaintiff from documents in its own files or from public sources, on the ground that the interrogatory is unnecessary, unduly burdensome and expensive, and constitutes annoyance, harassment, and oppression of the Defendant.

The Defendant objects to each interrogatory to the extent that it purports, through definitions or otherwise, to impose burdensome duties on the Defendant beyond those which are applicable under the Minnesota Rules of Civil Procedure.

The Defendant objects to each interrogatory to the extent it seeks non-party confidential information, because such information, to the extent it exists, cannot be produced by the Defendant, it will be deemed not in the Defendant's possession or control. Such information will need to be sought from the applicable non-party.

In those instances where the Defendant objects to an interrogatory as being vague and ambiguous, not withstanding and without waiving this objection, as the Defendant is able to ascertain the nature of information being requested, the Defendant will make reasonable efforts to answer the interrogatory in question.

The Defendant objects to each interrogatory to the extent that it seeks information not in the Defendant's possession, custody, or control on the grounds that it is unduly burdensome and oppressive.

All of these objections are incorporated into each response below, whether or not stated below.

Subject to the General Objections outlined above and the more specific objections set forth below, the Defendant responds as follows:

## RESPONSES TO INTERROGATORIES SET I

**INTERROGATORY NO. 1**     With respect to each paragraph of the Complaint that was denied or for which You made affirmative allegations and for each affirmative defense set forth in the Answer:
      (a) State any and all facts that support, negate, or otherwise relate to the denial, affirmative allegations or affirmative defense;
      (b) Identify all persons having knowledge of said facts and describe the substance of their knowledge; and
      (c) Identify all documents that support, negate, or otherwise relate to the denial, affirmative allegations or affirmative defense.

**RESPONSE NO. 1.**     Subject to the general objections, Defendant further objects to this Interrogatory as a contention interrogatory and discovery has just commenced in this action.  In addition, Defendant further objects to this Interrogatory as burdensome in requesting that Defendant describe "any and all facts."  Subject to these objections, Defendant further objects to responding to this Interrogatory until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**INTERROGATORY NO. 2:**  With respect to the letter addressed to Walden Fleet Services II dated November 7, 2007, which is attached to Plaintiff's First Set of Requests for Admissions as Exhibit F, ("Hyundai Letter"):

3

(a) Identify all persons who were aware of the Hyundai Letter, had any involvement in the preparation of the Hyundai Letter, or had any role in delivering the letter to Chrysler Financial;

(b) Describe the role, actions, and knowledge of each such person relating to the Hyundai Letter;

(c) Describe all communications relating to the Hyundai Letter, any letter from Hyundai dated in or around November 2007 offering to sell vehicles to You, Your purchase of any vehicles from Hyundai in November 2007 or thereafter, or any loan or advance that You sought or received from Chrysler Financial in order to purchase any vehicles from Hyundai in November 2007 or thereafter.

**RESPONSE NO. 2.** Subject to the general objections, Defendant further objects

to this Interrogatory as a contention interrogatory and discovery has just

commenced in this action. In addition, Defendant further objects to this

Interrogatory as burdensome in requesting that Defendant describe "any and all

facts." Subject to these objections, Defendant further objects to responding to

this Interrogatory until the Court rules on Defendant's Motion to Stay this action

and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c),

currently pending for hearing on October 7, 2009.


**INTERROGATORY NO. 3**: Identify all communications and persons with knowledge relating to any failure to pay Chrysler Financial any of the proceeds due to Chrysler Financial from the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial.

**RESPONSE NO. 3.** Subject to the general objections, Defendant further objects

to this Interrogatory as a contention interrogatory and discovery has just

commenced in this action. In addition, Defendant further objects to this

Interrogatory as burdensome in requesting that Defendant describe "all

communications." Subject to these objections, Defendant further objects to

responding to this Interrogatory until the Court rules on Defendant's Motion to

Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**INTERROGATORY NO. 4:**  With respect to the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial and for which the Hecker Borrowers did not remit all of the proceeds due Chrysler Financial from the sale or other disposition, identify all accounts at any financial institution that ever held any proceeds from such sales or other disposition.

**RESPONSE NO. 4.**     Subject to the general objections, Defendant further objects to this Interrogatory as a contention interrogatory and discovery has just commenced in this action.  Subject to these objections, Defendant further objects to responding to this Interrogatory until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**INTERROGATORY NO. 5:** Identify all communications relating to and persons who have knowledge of any limitations that Chrysler Financial placed on the availability of loans or advances for the purchase of vehicles that Chrysler Motors did not manufacture or vehicles that the manufacturer did not promise to repurchase.

**RESPONSE NO. 5.**     Subject to the general objections, Defendant further objects to this Interrogatory as a contention interrogatory and discovery has just commenced in this action.  In addition, Defendant further objects to this Interrogatory as vague in failing to define "limitations that Chrysler Financial placed on the availability of loans or advances for the purchase of vehicles that Chrysler Motors did not manufacture or vehicles that the manufacturer did not promise to repurchase." If Plaintiff will clarify the information Plaintiff is requesting, Defendant will respond. Subject to these objections, Defendant further objects to responding to this Interrogatory until the Court rules on

Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.


**INTERROGATORY NO. 6**: Identify each expert You expect to call at trial as an
expert witness and for each such expert provide the following:
      (a) State the subject matter on which the expert is expected to testify;
      (b) State the substance of the facts and opinions to which the expert is
          expected to testify and the grounds for each opinion; and
      (c) Identify all documents consulted, reviewed or relied upon by the expert in
          forming each opinion.

**RESPONSE NO. 6.**      Subject to the general objections, Defendant further objects

to this Interrogatory to the extent it requests information beyond that required

under Rule 7026, incorporating Fed. R. Civ. P. 26.  Subject to these objections,

Defendant further objects to responding to this Interrogatory until the Court rules

on Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.


## RESPONSES TO REQUEST FOR PRODUCTION OF DOCUMENTS SET I

**REQUEST NO. 1:**   All documents identified in response to Plaintiff's First Set of
Continuing Interrogatories to Defendant.

**RESPONSE NO. 1.**      Subject to the general objections and objections set forth to

Plaintiff's First Set of Continuing Interrogatories, Defendant further objects to

responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 2:**   All documents supporting, negating, or otherwise relevant to Defendant's denial of or affirmative allegations in response to any allegation set forth in the Complaint.

**RESPONSE NO. 2.**       Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 3:**   All documents supporting, negating, or otherwise relevant to Defendant's affirmative defenses set forth in the Answer to the Complaint.

**RESPONSE NO. 3.**       Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 4:**   All documents supporting, negating, or otherwise relevant to Defendant's denial or qualified admission of any of Chrysler Financial's First Set of Requests for Admission.

**RESPONSE NO. 4.**       Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 5:**   All documents that describe Hecker's direct or indirect ownership interest in Walden and any of the Hecker Borrowers, including but not limited to articles of formation, organization or incorporation; stock, membership, partnership certificates or other evidences of ownership; stock or membership registers, logs or records; operating agreements, shareholder or member control agreements, and corporate or other organization minute books or similar records of meetings of shareholders, members or partners.

**RESPONSE NO. 5.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 6:**   All documents that describe the identities, duties, functions, and
roles of the directors, officers, and management of Walden or any of the Hecker
Borrowers.

**RESPONSE NO. 6.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 7:**   All documents reflecting any Hecker Borrower's sale or other
disposition of any vehicle, in or after June 2008, that the Hecker Borrower purchased
with funds loaned or advanced by Chrysler Financial.

**RESPONSE NO. 7.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 8:**   All documents relating to the failure of any Hecker Borrower to
pay to Chrysler Financial any of the proceeds due to Chrysler Financial that any
Hecker Borrower received from the sale or other disposition of any vehicle, in or after
June 2008, that any Hecker Borrower purchased with funds loaned or advanced by
Chrysler Financial.

**RESPONSE NO. 8.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 9:**   All documents relating to the disposition or use of any proceeds due to Chrysler Financial but unpaid that any Hecker Borrower received from the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial, including but not limited to all documents reflecting deposits into, withdrawals from, or the balances from time to time of any account at any financial institution that ever held such proceeds and the monthly statements for such accounts.

**RESPONSE NO. 9.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 10:**   All documents related to any negotiations concerning or offer made or purportedly made by Hyundai in or about November 2007 to January 2008 to sell vehicles to You, including but not limited to (a) contracts entered into as a result, and (b) communications with Chrysler Financial concerning such offers, negotiations or contracts.

**RESPONSE NO. 10.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 11:**   All documents related to any request for, negotiations concerning, or receipt of financing from Chrysler Financial for the purchase of vehicles from Hyundai by You from 2006 or thereafter.

**RESPONSE NO. 11.**     Subject to the general objections, Defendant further objects

to responding to this Request as overbroad in requesting documents from 2006

through the present.  Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 12:** All copies of all or any portion of any letter or purported letter dated November 7, 2007 that offers or purports to offer to sell Hyundai vehicles to Walden.

 **RESPONSE NO. 12.**   Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 13:** All documents related to any modifications that You made or caused to be made to a November 7, 2007 letter from Hyundai offering to sell vehicles to Walden, a copy of which is attached to Chrysler Financial's First Set of Requests for Admission as Exhibit 1.

 **RESPONSE NO. 13.**   Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 14:** All documents reflecting Hecker's whereabouts or activities between November 1, 2007 and November 30, 2007, including but not limited to diaries, calendars, Microsoft Outlook calendars or other electronic calendars, credit or debit card receipts, and flight logs or plans.

 **RESPONSE NO. 14.**   Subject to the general objections, Defendant further objects

to this Request as seeking information not related to the claims and defenses in

this action nor reasonably calculated to lead to the discovery of admissible

evidence. Defendant also objects to this Request as burdensome in seeking all

documents regarding Defendant's "whereabouts." If Plaintiff will explain the

relevance of this Request, Defendant will respond. Subject to these objections,

Defendant further objects to responding to this Request until the Court rules on

Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.

**REQUEST NO. 15:** All documents related to Your receipt of cash incentives from Hyundai for vehicles that You purchased from Hyundai in 2007 or 2008 using funds loaned or advanced by Chrysler Financial.

**RESPONSE NO. 15.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 16:** All documents related to any limitations that Chrysler Financial placed on the availability of loans or advances for the purchase of vehicles that Chrysler Motors did not manufacture or vehicles that the manufacturer did not promise to repurchase.

**RESPONSE NO. 16.** Subject to the general objections, Defendant objects to this

Request as vague in failing to define "limitations that Chrysler Financial placed

on the availability of loans or advances for the purchase of vehicles that Chrysler

Motors did not manufacture or vehicles that the manufacturer did not promise to

repurchase." If Plaintiff will clarify the documents Plaintiff is requesting,

Defendant will respond. Subject to these objections, Defendant further objects to

responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 17:** All documents related to the termination or resignation of Steve Leach, Dick Page, Molly Kaplan, or Cyndi Bowser, including but not limited to all documents reflecting the terms of any severance, retirement, or other compensation agreements or payments.

**RESPONSE NO. 17.** Subject to the general objections, Defendant further objects

to this Request as seeking information not related to the claims and defenses in

this action nor reasonably calculated to lead to the discovery of admissible

evidence. Subject to these objections, Defendant further objects to responding to

this Request until the Court rules on Defendant's Motion to Stay this action and

for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c),

currently pending for hearing on October 7, 2009.

**REQUEST NO. 18:** All documents related to Your negotiation with Hyundai for the purchase of vehicles from or after 2006.

**RESPONSE NO. 18.** Subject to the general objections, Defendant further objects

to this Request as seeking information not related to the claims and defenses in

this action nor reasonably calculated to lead to the discovery of admissible

evidence to the extent it seeks information related to purchases of vehicles in

2006. Subject to these objections, Defendant further objects to responding to this

Request until the Court rules on Defendant's Motion to Stay this action and for a

protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently

pending for hearing on October 7, 2009.

**REQUEST NO. 19:** All documents consulted, reviewed or relied upon by any expert You expect to call at trial.

**RESPONSE NO. 19.**    Subject to the general objections, Defendant further objects

to this Request to the extent it requests information beyond that required under

Rule 7026, incorporating Fed. R. Civ. P. 26.  Subject to these objections,

Defendant further objects to responding to this Request until the Court rules on

Defendant's Motion to Stay this action and for a protective order under Rule

·7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.

**REQUEST NO. 20**:  Any report, summary or analysis prepared by any expert You
expect to call at trial relating to or supporting the opinions of such expert in this
matter.

**RESPONSE NO. 20.**    Subject to the general objections, Defendant further objects

to this Request to the extent it requests information beyond that required under

Rule 7026, incorporating Fed. R. Civ. P. 26.  Subject to these objections,

Defendant further objects to responding to this Request until the Court rules on

Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.

**REQUEST NO. 21**:  The Curriculum Vitae or resume for any expert You expect to call
at trial.

**RESPONSE NO. 21.**    Subject to the general objections, Defendant further objects

to this Request to the extent it requests information beyond that required under

Rule 7026, incorporating Fed. R. Civ. P. 26.  Subject to these objections,

Defendant further objects to responding to this Request until the Court rules on

Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.

**REQUEST NO. 22**:  All documents relating to the November, 2007 meeting between
You and representatives of Plaintiff, as alleged in paragraphs 15 – 17 and 19 of Your
Answer.

   **RESPONSE NO. 22.**      Subject to the general objections, Defendant further objects

   to responding to this Request until the Court rules on Defendant's Motion to Stay

   this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

   P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 23**:  All documents relating to your allegations in paragraph 20 of Your
Answer, including but not limited to the November 19, 2007 email from John Bowker
to Hecker and any related emails, documents, or other communications.

   **RESPONSE NO. 23.**      Subject to the general objections, Defendant further objects

   to responding to this Request until the Court rules on Defendant's Motion to Stay

   this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

   P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 24**:  Any forensic audit or other accounting analysis of You or the
Hecker Borrowers in or after June, 2008.

   **RESPONSE NO. 24.**      Subject to the general objections, Defendant further objects

   to this Request to the extent it requests information beyond that required under

   Rule 7026, incorporating Fed. R. Civ. P. 26.  If Plaintiff will clarify this Request,

   Defendant will respond to the clarification.  Subject to these objections,

   Defendant further objects to responding to this Request until the Court rules on

   Defendant's Motion to Stay this action and for a protective order under Rule

7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on

October 7, 2009.

**REQUEST NO. 25**: All documents relating to the allegations in paragraph 30 of Your Answer, including but not limited to the allegation relating to "Plaintiff's breach of promises made to Hecker in conjunction with Hecker purchasing Advantage Rent a Car …."

RESPONSE NO. 25.    Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

## RESPONSES TO REQUESTS FOR ADMISSIONS SET I

**REQUEST NO. 1**:    Admit that Hecker received the letter addressed to Walden Fleet Services II, Inc. ("Walden II") from Hyundai dated November 7, 2007, a copy of which is attached hereto as Exhibit G.

RESPONSE NO. 1.    Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 2**:    Admit that Exhibit G offered to sell 605 Hyundai vehicles to Walden II and repurchase any of those vehicles returned within a year from delivery.

RESPONSE NO. 2.    Subject to the general objections, Defendant further objects

to this Request as "vague" in that it states "Exhibit G" made an offer. Subject to

these objections, Defendant further objects to responding to this Request until the

Court rules on Defendant's Motion to Stay this action and for a protective order

under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for
hearing on October 7, 2009.

**REQUEST NO. 3:**    Admit that Exhibit G is a true and correct copy of the November 7,
2007 letter actually received by Hecker from Hyundai.

**RESPONSE NO. 3.**    Subject to the general objections, Defendant further objects
to responding to this Request until the Court rules on Defendant's Motion to Stay
this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.
P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 4:**    Admit that Exhibit G is genuine, authentic, and a true and correct
copy of the original.

**RESPONSE NO. 4.**    Subject to the general objections, Defendant further objects
to responding to this Request until the Court rules on Defendant's Motion to Stay
this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.
P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 5:**    Admit that Exhibit G is admissible at trial in this matter for all
purposes.

**RESPONSE NO. 5.**    Subject to the general objections, Defendant further objects
to responding to this Request until the Court rules on Defendant's Motion to Stay
this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.
P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 6:**    Admit that Exhibit G was altered to create Exhibit F, a letter
addressed to Walden II purportedly from Hyundai dated November 7, 2007.

**RESPONSE NO. 6.**    Subject to the general objections, Defendant further objects
to this Request as "vague" in that it fails to define "altered." If Plaintiff will

further clarify this Request, Defendant will respond. Subject to these objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 7:** Admit that Exhibit F states that Hyundai offered to sell 4,855 Hyundai vehicles to Walden II and repurchase any of those vehicles returned within a year from delivery.

**RESPONSE NO. 7.** Subject to the general objections, Defendant further objects to this Request to the extent that Exhibit F contains certain language that speaks for itself. Subject to these objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 8** Admit that Hyundai never made the offer set forth in Exhibit F.

**RESPONSE NO. 8.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 9:** Admit that Hecker caused Exhibit G to be altered to create Exhibit F.

**RESPONSE NO. 9.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 10:** Admit that Hecker delivered Exhibit F to representatives of Chrysler Financial.

    **RESPONSE NO. 10.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 11:** Admit that Exhibit F is a true and correct copy of the letter Hecker actually delivered to representatives of Chrysler Financial.

    **RESPONSE NO. 11.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 12:** Admit that Exhibit F is genuine, authentic, and a true and correct copy of the original.

    **RESPONSE NO. 12.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 13:** Admit that Exhibit F is admissible at trial in this matter for all purposes.

    **RESPONSE NO. 13.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 14:** Admit that at the time Hecker delivered Exhibit F to representatives of Chrysler Financial he knew that Hyundai had offered to sell and repurchase (if returned within a year from delivery) only 605 Hyundai vehicles pursuant to Exhibit G, not 4,855 vehicles.

**RESPONSE NO. 14.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 15:** Admit that Hecker delivered Exhibit F to representatives of Chrysler Financial in order to induce Chrysler Financial to loan money to a Hecker Related Entity for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE NO. 15.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 16:** Admit that Chrysler Financial relied on Exhibit F in loaning money to a Hecker Related Entity for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE NO. 16.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009. Subject to these

objections, Defendant denies Request No. 16.

**REQUEST NO. 17:** Admit that a Hecker Related Entity used money loaned by Chrysler Financial to purchase Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE NO. 17.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 18:** Admit that Hecker knew that Chrysler Financial financed a Hecker Related Entity's purchase of more than 3,600 Hyundai vehicles believing that there was an agreement for Hyundai to repurchase them, when in reality there was no such agreement.

**RESPONSE NO. 18.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 19:** Admit that neither Hecker nor any Hecker Related Entity repaid the entire amount that Chrysler Financial loaned for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE NO. 19.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 20:** Admit that Hecker owes to Chrysler Financial the unrepaid portion of the amount that Chrysler Financial loaned for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE NO. 20.** Subject to the general objections, Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 21:** Admit that Hecker and certain Hecker Related Entities entered into a Master Loan and Security Agreement, a copy of which is attached hereto as Exhibit I.

**RESPONSE NO. 21.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 22:** Admit that Exhibit I is genuine, authentic, and a true and correct copy of the original.

**RESPONSE NO. 22.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 23:** Admit that Exhibit I is admissible at trial in this matter for all purposes.

**RESPONSE NO. 23.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 24:** Admit that Hecker Borrowers received proceeds from the sale or other disposition of vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE NO. 24.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 25**:  Admit that some or all of the proceeds that Hecker Borrowers
received from the sale or other disposition of vehicles that they had purchased using
money borrowed from Chrysler Financial under Exhibit I were the property of
Chrysler Financial.

**RESPONSE NO. 25.**     Subject to the general objections, Defendant further objects

to this Request as vague in failing to define the word "property." Subject to these

objections, Defendant further objects to responding to this Request until the

Court rules on Defendant's Motion to Stay this action and for a protective order

under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for

hearing on October 7, 2009.  Subject to these objections, Defendant denies

Request No. 25.

**REQUEST NO. 26**:  Admit that Exhibit I required Hecker Borrowers to hold in trust for
Chrysler Financial some or all of the proceeds that Hecker Borrowers received from
the sale of vehicles that they had purchased using money borrowed from Chrysler
Financial under Exhibit I.

**RESPONSE NO. 26.**     Subject to the general objections, Defendant further objects

to this Request to the extent that Exhibit I contains certain language that speaks

for itself.  Subject to these objections, Defendant further objects to this Request

as calling for a legal conclusion to the extent it seeks to have Defendant admit

that he was a fiduciary of Plaintiff's as the term fiduciary is used in 11 U.S.C.

§523.  Subject to these objections, Defendant further objects to responding to this

Request until the Court rules on Defendant's Motion to Stay this action and for a

protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently

pending for hearing on October 7, 2009. Subject to these objections, Defendant

denies he was a fiduciary of Plaintiff's as that term is used in 11 U.S.C. §523.

**REQUEST NO. 27**: Admit that Exhibit I required Hecker Borrowers to promptly pay
over and deliver to Chrysler Financial some or all of the proceeds that Hecker
Borrowers received from the sale or other disposition of vehicles that they had
purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE NO. 27.** Subject to the general objections, Defendant further objects

to this Request to the extent that Exhibit I contains certain language that speaks

for itself. Subject to these objections, Defendant further objects to responding to

this Request until the Court rules on Defendant's Motion to Stay this action and

for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c),

currently pending for hearing on October 7, 2009.

**REQUEST NO. 28**: Admit that Hecker Borrowers did not pay over or deliver to
Chrysler Financial all proceeds due Chrysler Financial that Hecker Borrowers
received from the sale or other disposition of certain vehicles that they had purchased
using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE NO. 28.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 29**: Admit that Hecker directed Hecker Borrowers to not pay-over or
deliver to Chrysler Financial all proceeds due Chrysler Financial that Hecker
Borrowers received from the sale or other disposition of certain vehicles that they had
purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE NO. 29.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 30**: Admit that Hecker Borrowers did not pay over or deliver to Chrysler Financial approximately $29,989,913 in proceeds due to Chrysler Financial that Hecker Related Entities received from the sale or other disposition of certain vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE NO. 30.** Subject to the general objections, Defendant further objects

to this request as vague in failing to define "approximately." Defendant further

objects to this Request because the information regarding what Plaintiff was

owed under the lending agreements with Plaintiff is not information under the

control of Defendant. Defendant further objects to responding to this Request

until the Court rules on Defendant's Motion to Stay this action and for a

protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently

pending for hearing on October 7, 2009.

**REQUEST NO. 31**: Admit that Hecker owes to Chrysler Financial the proceeds due to Chrysler Financial that Hecker Borrowers received from the sale or other disposition of certain vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I, but that they did not pay to Chrysler Financial.

**RESPONSE NO. 31.** Subject to the general objections, Defendant further objects

to this request as vague in failing to define "owes." Defendant further objects to

responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 32**: Admit that Rosedale Dodge Inc. ("Rosedale Dodge") entered into a Lease Financing Agreement, a copy of which is attached hereto as Exhibit J.

**RESPONSE NO. 32.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 33:**  Admit that Exhibit J is genuine, authentic, and a true and correct
copy of the original.

   **RESPONSE NO. 33.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 34:**  Admit that Exhibit J is admissible at trial in this matter for all
purposes.

   **RESPONSE NO. 34.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 35:**  Admit that Rosedale Dodge received proceeds from the sale or
other disposition of vehicles that it had purchased using money borrowed from
Chrysler Financial under Exhibit J.

   **RESPONSE NO. 35.**     Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 36:** Admit that Rosedale Dodge entered into a Security Agreement, an example of which is attached as Exhibit K, each time it receive an advance under Exhibit J.

**RESPONSE NO. 36.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 37:** Admit that Exhibit K is genuine, authentic, and a true and correct copy of the original.

**RESPONSE NO. 37.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 38:** Admit that Exhibit K is admissible at trial in this matter for all purposes.

**RESPONSE NO. 38.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 39:** Admit that the Security Agreements that Rosedale Dodge entered when it borrowed money from Chrysler Financial under Exhibit J required Rosedale Dodge to hold in trust for and promptly pay to Chrysler Financial some or all of the proceeds that Rosedale Dodge received from the sale or other disposition of vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE NO. 39.** Subject to the general objections, Defendant further objects

to this Request to the extent that Exhibit J contains certain language that speaks

for itself. Subject to these objections, Defendant further objects to this Request

as calling for a legal conclusion to the extent it seeks to have Defendant admit

that he, or Rosedale Dodge, Inc., was a fiduciary of Plaintiff's as the term

fiduciary is used in 11 U.S.C. §523. Subject to these objections, Defendant

further objects to responding to this Request until the Court rules on Defendant's

Motion to Stay this action and for a protective order under Rule 7026,

incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7,

2009. Subject to these objections, Defendant denies he was a fiduciary of

Plaintiff's as that term is used in 11 U.S.C. §523.

**REQUEST NO. 40**: Admit that Rosedale Dodge did not pay to Chrysler Financial all
proceeds due Chrysler Financial that Rosedale Dodge received from the sale or other
disposition of certain vehicles that it had purchased using money borrowed from
Chrysler Financial under Exhibit J.

**RESPONSE NO. 40.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 41**: Admit that Hecker directed Rosedale Dodge to not pay to Chrysler
Financial all proceeds due Chrysler Financial that Rosedale Dodge received from the
sale or other disposition of certain vehicles that it had purchased using money
borrowed from Chrysler Financial under Exhibit J.

**RESPONSE NO. 41.** Subject to the general objections, Defendant further objects

to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 42:**  Admit that Rosedale Dodge did not pay to Chrysler Financial approximately $37,894,074 in proceeds due to Chrysler Financial that Hecker Related Entities received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE NO. 42.**  Subject to the general objections, Defendant further objects to this request as vague in failing to define "approximately." Defendant further objects to this Request because the information regarding what Plaintiff was owed under the lending agreements with Plaintiff is not information under the control of Defendant.  Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 43:**  Admit that Hecker owes to Chrysler Financial the proceeds due to Chrysler Financial that Rosedale Dodge received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J, but that Rosedale Dodge did not pay to Chrysler Financial.

**RESPONSE NO. 43.**  Subject to the general objections, Defendant further objects to this request as vague in failing to define "owes." Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay this action and for a protective order under Rule 7026, incorporating Fed. R. Civ. P. 26 (c), currently pending for hearing on October 7, 2009.

**REQUEST NO. 44.**  Admit that approximately $13,800,000 is the unrepaid portion of the amount that Chrysler Financial loaned for the purchase of Hyundai vehicles pursuant to a November 2007 letter agreement with Hyundai.

**RESPONSE NO. 44.**  Subject to the general objections, Defendant further objects to this request as vague in failing to define "owes." Defendant further objects to responding to this Request until the Court rules on Defendant's Motion to Stay

this action and for a protective order under Rule 7026, incorporating Fed. R. Civ.

P. 26 (c), currently pending for hearing on October 7, 2009.

AS TO OBJECTIONS TO INTERROGATORIES, RESPONSES TO THE REQUESTS FOR PRODUCTION OF DOCUMENTS AND RESPONSES TO REQUESTS FOR ADMISSIONS:

MOHRMAN & KAARDAL, P.A.

DATED: September 28, 2009

William F. Mohrman Bar No. 168816
Erick G. Kaardal, Bar No. 229647
33 South Sixth Street, Suite 4100
Minneapolis, MN 55402
(612) 341-1074
ATTORNEYS FOR DEFENDANT DENNIS
E. HECKER

## AFFIDAVIT OF SERVICE

STATE OF MINNESOTA   )
                         ) ss.
COUNTY OF HENNEPIN  )

      Mary Gynild, of the City of Minneapolis, County of Hennepin, State of Minnesota, being affirmed on oath, says that on the 28th day of September, 2009 she served the following:

- Debtor-Defendant Dennis E. Hecker's Combined Responses to Plaintiff's First Set of Continuing Interrogatories, First Set of Requests for Production of Documents and First Set of Requests for Admissions to Defendant

on the following party in this action, by faxing a true and correct copy thereof, directed to the below-referenced attorney at the last known fax number, by emailing a true and correct copy thereof, directed to the below-referenced attorney at the last known email address and by mailing a true and correct copy thereof, enclosed in an envelope, postage for first class mail prepaid, and by depositing same at the post office in Minneapolis, Minnesota, and directed to the following at the last known address:

Nicholas N. Nierengarten
Stephen F. Grinnell
Gray, Plant, Mooty
80 South Sixth Street, 500 IDS Center
Minneapolis, Minnesota 55402
Facsimile: 612-632-4040
Email: nicholas.nierengarten@gpmlaw.com
Email: stephen.grinnell@gpmlaw.com'

                                     Mary Gynild

Subscribed and affirmed to before me
this 28th day of September, 2009.

Notary Public

HEIDI E SHANKLIN
Notary Public
Minnesota
My Commission Expires January 31, 2011

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | |
| | **Bankruptcy Case No: 09-50779-RJK** |
| DENNIS E. HECKER, | |
| | **Chapter 7** |
| Debtor. | |
| | |
| CHRYSLER FINANCIAL | **Adversary Proceeding No.: 09-05019** |
| SERVICES AMERICAS | |
| LLC, | |
| | |
| Plaintiff, | |
| | |
| v. | |
| | |
| DENNIS E. HECKER, | |
| | |
| Defendant | |

---

## DECLARATION OF WILLIAM F. MOHRMAN IN SUPPORT OF DEFENDANT'S MOTION FOR AN ORDER AUTHORIZING EXPEDITED RELIEF AND FOR AN ORDER EXTENDING THE TIME FOR DEFENDANT TO EITHER FILE AN ANSWER TO PLAINTIFF'S COMPLAINT OR FILE A MOTION UNDER FED. R. BANKR. P. 12 BY FOURTEEN DAYS

---

I, William F. Mohrman, after being first duly sworn, deposes and states as

follows:

1.    I am an attorney at Mohrman & Kaardal, P.A. and make this

Declaration in Support of Defendant Dennis E. Hecker's Motion for

Expedited Relief and for an Order Extending the Time in which

1



Defendant must file an Answer to the Complaint or file a Motion under Fed. R. Bankr. P. 12 primarily as a result of a family vacation I have scheduled from August 5 through August 19, 2009.

2. Plaintiff has filed a complaint against Debtor/Defendant Dennis E. Hecker seeking to have approximately $90,000,000 of the approximate $450,000,000 owes Plaintiff declared non-dischargeable under 11 U.S.C. §523. The Summons was issued on July 8, 2009 and, under Fed. R. Bankr. P. 12, the Answer is due on August 7, 2009.

3. Debtor/Defendant Dennis E. Hecker is in process of formally retaining me as his attorney in this matter and I anticipate finalizing this process this week.

4. On behalf of the Debtor/Defendant Dennis E. Hecker, I am moving to extend the time in which to Answer the Complaint for 14 days because I will be departing on an out of town vacation from approximately noon on Wednesday, August 5, 2009 and returning to the office on the morning of Thursday, August 20, 2009. The vacation is an annual trip I have taken with my wife and two children, age 8 and 11, to New Jersey where I grew up. We are traveling by car from Minnesota and will be staying at a house on the New Jersey shore which we rented with family friends from New York who also have children from August 8 to August 15. The rent

2

payment for the vacation home has been fully paid. Finally, on August 16 and 17, my family and I will be spending two days with former neighbors of mine when I grew up and who our family sees annually when we visit New Jersey.

5.    The Summons and Complaint were served on me via mail according to the certificate of service on July 8, 2009 and I believe were received in my office on July 9, 2009. Since the service of the Summons and Complaint, I have been extremely busy, not only on matter for Mr. Hecker, but also on other matters. On July 3, 2009, I appeared in front of Hennepin County District Court Judge Regina Chu on cross summary judgment motions in a state court declaratory judgment action which had been filed in February and on which the parties agreed to file cross summary motions prior to discovery. Judge Chu not only denied the motions at the hearing, she set the matter on for trial starting July 20, 2009 advancing the case on the calendar because it was a declaratory judgment action. I spent much of the weeks of July 6 and 13 in preparation for trial and on July 20 and 21, I tried the case in front of Judge Chu.

6.    In addition, I have spent time with Mr. Hecker preparing for his first meeting of creditors which was held on July 15, 2009.

7.    As I am preparing this Declaration, this week I have had to prepare and file Motions for Amended Findings and a New Trial in a

complex family law matter and responsive papers on a summary judgment motion which will be heard on Thursday July 30, 2009 at 2:00 in Wright County. Finally, I will be leaving the state on August 2, 2009 to take depositions in Harrisburg, Pennsylvania on August 3, 2009 and not returning until August 4, 2009.

8.   In additions to these work responsibilities and the general responsibilities of an attorney, I am also the head coach of Plymouth Wayzata Baseball Association baseball team which involved running practices and coaching the players in a year end tournament which was held this weekend.

9.   As a result of this schedule, I contacted Plaintiff's counsel, Stephen Grinnell, on Friday, July 24, 2009, to request a two week extension to Answer, move or otherwise respond to the Complaint. Mr. Grinnell responded by telephone on July 27, 2009 stating that Plaintiff would agree to extend the time to Answer the Complaint only if Defendant Dennis Hecker would agree that Plaintiff could serve written discovery on Mr. Hecker on August 10, 2009 while I am out on vacation. I told Mr. Grinnell that one of the reasons I was asking for an extension to Answer was to not have any concerns that any discovery would be commenced in my absence. Nonetheless, I asked Mr. Grinnell whether I and Mr. Hecker could also receive an extension on answering these written discovery requests beyond the

4

30 days provided under the Rules for the 10 days time I was out on vacation. Mr. Grinnell said that his client would not agree to such an extension on discovery.

10.    Our law firm currently has six attorneys employed with the firm. The principal attorney who will be assisting me is Mr. Erick Kaardal. Mr. Kaardal will also be out of the office from August 4 to August 17 on vacation with his wife and eight children.

11.    Finally, neither Mr. Grinnell nor his colleague, Mr. Neirengarten, articulated any reason to me why their client would need to expedite these proceedings or would in any way be prejudiced by a two week extension to Answer the Complaint. Also, it is my understanding that Plaintiff is no longer originating any loans and is in the process of liquidating. Therefore, I do not understand any urgency from a business standpoint for Plaintiff not to stipulate to an extension.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated July 28, 2009

s/William F. Mohrman

_____

William F. Mohrman

## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

*In Re:*

*Dennis E. Hecker,*

<table>
<tr><td></td><td>Bankruptcy Case No.: 09-50779 RJK</td></tr>
<tr><td>*Debtor.*</td><td>Chapter 7 Case</td></tr>
</table>

*Chrysler Financial Services Americas LLC*          Adversary Proceeding No.: 09-05019

*Plaintiff,*

*v.*          **CERTIFICATE OF SERVICE**

*Dennis E. Hecker,*

*Defendant.*

I hereby certify that on July 28, 2009, I caused the following documents:

- *Notice of Hearing and Motion for an Order Authorizing Expedited Relief and for an Order Extending the Time for Defendant to Either file an Answer to Plaintiff's Complaint or File a Motion Under Fed. R. Bankr. P. 12;*
- *Declaration of William F. Mohrman in Support of Defendant's Motion; and*
- *Proposed Order on Defendant's Motion.*

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

Stephen F Grinnell    stephen.grinnell@gpmlaw.com

I further certify that I caused a copy of the foregoing documents and the notice of electronic filing to be mailed by first class mail, postage paid, to the following non-ECF participants:

*Nicholas N. Nierengarten*
*Gray, Plant, Mooty & Bennett*
*500 IDS Center,80 S 8th St*
*Minneapolis, MN 55402*


Dated: July 28, 2009                    **s/ William F. Mohrman**
                                        William F. Mohrman

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF TAKING DEPOSITION

TO:     Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman and Erick G.
Kaardal, MOHRMAN & KAARDAL, P.A., 33 South Sixth Street, Suite 4100,
Minneapolis, MN 55402

**PLEASE TAKE NOTICE** that, pursuant to Bankruptcy Rules 7030 and 9016

incorporating Fed.R.Civ.P. 30 and 45, Plaintiff, Chrysler Financial Services Americas LLC, will

take the deposition of Cindy Bowser by stenographic and audiovisual means, at the offices of

Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 South 8th Street, Minneapolis,

Minnesota 55402 on September 10, 2009 at 1:00 p.m., and thereafter by adjournment until the

same shall be completed.

1



Dated: September 2, 2009

GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.

By

Nicholas N. Nierengarten (#79169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

GP:2629252 v3

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In Re:                                    ) Case No. 09-50779
                                          )
DENNIS E. HECKER,                         ) Chapter 7
                                          )
                 Debtor.                  ) Hon. Robert J. Kressel
                                          )
_____ )
                                          )
CHRYSLER FINANCIAL SERVICES               )
AMERICAS LLC,                             )
                                          )
                 Plaintiff,               )
                                          ) Adv. Pro. No. 09-05019
          v.                              )
                                          )
DENNIS E. HECKER,                         )
                                          )
                 Defendant.               )

## SUBPOENA DUCES TECUM IN
## AN ADVERSARY PROCEEDING

To: **Cindy Bowser, 13792 43rd Bay, St. Michael, MN  55376.**

| ☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding. | |
|---|---|
| PLACE OF DEPOSITION<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN  55402 | DATE AND TIME<br><br>September 16, 2009    9:30 a.m. |
| ☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):  See attached Amended Notice of Taking Deposition and Request for Production of Documents with Attachment 1. | |
| PLACE<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN  55402 | DATE AND TIME<br><br>September 11, 2009    1:00 p.m. |
| ☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
| PREMISES | DATE AND TIME |

1


EXHIBIT

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure,

| | DATE |
|---|---|
| *signature* | September 8, 2009 |
| Attorney for Plaintiff | |
| ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER | |
| Nicholas N. Nierengarten, 500 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, (612) 632-3040. | |

\* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____        _____
                        DATE                                           SIGNATURE OF SERVER

                                                                _____
                                                                ADDRESS OF SERVER
_____

Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P 45(a)(1)(A)(iv),

Fed.R.Civ.P (c) and (d) provide as follows:

**(c) Protecting a Person Subject to a Subpoena.**

**(1) Avoiding Undue Burden or Expense; Sanctions.**

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

3

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

## (d) Duties in Responding to Subpoena.

### (1) Producing Documents or Electronically Stored Information.

These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

### (2) Claiming Privilege or Protection.

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

### NOTICE OF SUBPOENA *DUCES TECUM*
### FOR PRODUCTION OF DOCUMENTS AND
### ELECTRONICALLY STORED INFORMATION

TO:  Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman, Esq.,
Erick G. Kaardal, Esq., and Gregory M. Erickson, Esq., MOHRMAN &
KAARDAL, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402

PLEASE TAKE NOTICE that, pursuant to Bankruptcy Rules 7034 and 9016

incorporating Fed.R.Civ.P. 34 and 45, Plaintiff, Chrysler Financial Services Americas

LLC, will serve the attached subpoena *duces tecum* on Hyundai Motor America for the

production of documents and electronically stored information its possession, custody or

control identified in Exhibit A to the subpoena. Responsive documents and electronically

stored information are to be produced at the offices of Mayer Brown LLP, 350 South

1



Grand Avenue, 25th Floor, Los Angeles, CA 90071-1503 on September 21, 2009 at

10:00 a.m. and thereafter until the same shall be completed.

Dated: September 9, 2009

GRAY, PLANT, MOOTY, MOOTY &
BENNETT, P.A.

By
Nicholas N. Nierengarten (#19169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

GP:2639534 v2

2

| UNITED STATES BANKRUPTCY COURT<br>CENTRAL DISTRICT OF CALIFORNIA | FOR COURT USE ONLY |
|---|---|
| In re:<br>DENNIS E. HECKER .<br><br>                    Debtor<br><br>CHRYSLER FINANCIAL SERVICES AMERICAS LLC<br><br>                    Plaintiff | |
| | **SUBPOENA IN AN ADVERSARY PROCEEDING** |
| v.<br>DENNIS E. HECKER | Case No.*: 09-50779 (USBC, District of Minnesota) |
| | |
|                    Defendant | Chapter: 7 |
| To: HYUNDAI MOTOR AMERICA | Adv. Proc. No.*: 09-05019 (USBC, D. Minn.) |

☐    YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above adversary proceeding.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☐    YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding.

| PLACE OF TESTIMONY | DATE AND TIME |
|---|---|
| | |

☒    YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):    See Exhibit A attached hereto.

| PLACE<br>Mayer Brown LLP, 350 S. Grand Ave., Ste. 2500, Los Angeles, CA 90071 | DATE AND TIME<br>September 21, 2009, 10:00 a.m. |
|---|---|

☐    YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)<br><br>Attorney for Chrysler Financial Services Americas LLC | DATE<br>September 9, 2009 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER<br>Matthew H. Marmolejo, Mayer Brown LLP, 350 S. Grand. Ave, Ste. 2500, Los Angeles, CA 90071  (213) 229-9500 | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

American LegalNet, Inc.<br>www.FormsWorkflow.com

28808184

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER _____

ADDRESS OF SERVER _____

_____

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises—or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause(c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an un retained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the

subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it. The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

American LegalNet, Inc.
www.FormsWorkflow.com

28808184

<u>**Exhibit A**</u>

## I.   <u>DEFINITIONS</u>

For purposes of interpreting or construing the scope of these Definitions, Instructions, and Document Requests, the terms used shall be given their most expansive and inclusive interpretation. Any singular form of any word shall be construed to include the plural and any plural form shall be read to include the singular. Any past tense of a verb shall be construed to include the present tense and any present tense shall be construed to include the past tense.

1.   The terms "and" and "or" used in any Document Request in the disjunctive or conjunctive shall be read as necessary to make the Document Request more inclusive.

2.   The terms "any" and "all" shall be considered to include "each" and "each and every."

3.   The term "communication" means any and all writings, oral communications, electronic mail ("email"), text messaging, conversations, conversations by telephone, discussions, agreements, statements, conclusions, meetings, and any contact, oral or written, formal or informal, at any time or place, and under any circumstances whatsoever in which information of any nature was transmitted or exchanged in any form from one person to another.

4. The term "document" shall mean any written, printed, typed, drawn, or other graphic matter of any kind or nature, all photographic matter, all recorded or taped matter, all electronically stored information or data (including emails and attachments, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audiovisual recordings, text messages, and voicemail (regardless of the manner, method or platform for storage)), all drafts of the foregoing, and all copies and notations on the foregoing, as well as all copies of documents by whatever means made in the possession, custody or control of the deponent.

5. The term "person" or "persons" includes, but is not limited to, not only natural persons, but also firms, partnerships, limited partnerships, corporations (including all divisions, departments or other units thereof), limited liability companies, proprietorships, joint ventures, organizations, group of natural persons, or other associations separately identifiable, whether or not such association has a separate juristic existence in its own right.

6. The term "produce" means to make available the document or things requested herein for inspection and copying, including electronically stored information, and to separate such documents into and label them to correspond with the categories set forth in these Document Requests, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

7. "You" or "Your" means the deponent and employees, attorneys, agents, representatives and anyone acting on behalf of deponent.

8. "Chrysler Financial" means Chrysler Financial, its predecessors (including but not limited to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

9. "Hecker" means Dennis E. Hecker and any employee, attorney, agent, representative or anyone acting on his behalf.

10. "Hecker Related Entity" means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives or anyone acting on their behalf.

11. "Hyundai" means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

12. "Rosedale" means Rosedale Dodge, Inc., Rosedale Dodge LLC, Rosedale Fleet Leasing II LLC, Rosedale Leasing LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on their behalf.

3

13. "Walden" means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc. (f/k/a Denwal Management Inc.), Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

## II.    INSTRUCTIONS

1.    If any documents responsive to the following Document Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.  If documents cannot be located, describe with particularity the efforts made to locate the documents and the specific reasons for their disappearance or unavailability.  If documents exist that are not available to you, state where the documents are located, including the name, title, and address of their present custodian to the best of your knowledge.

2.    All documents, not privileged, which are in the possession, custody, or control of the deponent are to be produced.

3.     If you object to any Document Request on the basis of attorney-client privilege, work-product doctrine, or any other privilege, provide the following for each document withheld or redacted material:

    (a)   Describe the document, communication or redacted material withheld from production (without revealing information itself privileged or protected);

    (b)   State the date of the document, communication or redacted material;

    (c)   State the subject matter of the document, communication or redacted material;

    (d)   Identify of all persons who authored, transmitted, received or reviewed the document, communication or redacted material; and

    (e)   State the privilege claimed for such document, communication or redacted material and the basis for such claim.

4.     Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

5.     Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P. 45(a)(1)(C), all electronically stored information is to be produced in its native format.

## III.   DOCUMENT REQUESTS

All correspondence, drafts, emails and other documents (including electronically stored documents) from January 1, 2007 to date relating to any negotiations, communications, contracts or agreements between Hyundai and Hecker, Hecker Related Entity, Rosedale or Walden concerning the sale of

Hyundai vehicles under any risk or repurchase programs, including but not limited to any vehicles to be financed by Chrysler Financial.

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In Re:                              ) Case No. 09-50779
                                    )
DENNIS E. HECKER,                   ) Chapter 7
            Debtor.                 )
                                    ) Hon. Robert J. Kressel
_____     )
                                    )
CHRYSLER FINANCIAL SERVICES          )
AMERICAS LLC,                        )
                                    )
            Plaintiff,               )
                                    )
      v.                            ) Adv. Pro. No. 09-05019
                                    )
DENNIS E. HECKER,                    )
            Defendant.               )
                                    )

## AFFIDAVIT OF SERVICE

I hereby certify that on September 9, 2009, I caused the following Notice of Subpoena *Duces Tecum* for Production of Documents and Electronically Stored Information relative to Hyundai Motor America to be served upon William F. Mohrman, Esq., Erick G. Kaardal, Esq., Gregory M. Erickson, Esq., Mary Gynild (Administrative Assistant) and Mary Fincham (Administrative Assistant), Mohrman & Kaardal, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, Minnesota 55402, by forwarding true and correct copies *via* U.S. Mail upon William F. Mohrman, Esq., Erick G. Kaardal, Esq. and Gregory M. Erickson, Esq. at the address indicated, above, and *via* email transmission to mohrman@mklaw.com, kaardal@mklaw.com, erickson@mklaw.com, gynild@mklaw.com and fincham@mklaw.com.



Pam E. Phillips

Subscribed and sworn to before me
this 9th day of September, 2009.

_____
Notary Public

TERRI LYNN LUZOVICH
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2012

GP:2640717 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In Re:                                        ) Case No. 09-50779
                                              )
DENNIS E. HECKER,                             ) Chapter 7
                                              )
      Debtor.                     ) Hon. Robert J. Kressel
_____               )
                                              )
CHRYSLER FINANCIAL SERVICES                   )
AMERICAS LLC,                                 )
                                              )
      Plaintiff,                  )
                                              ) Adv. Pro. No. 09-05019
      v.                          )
                                              )
DENNIS E. HECKER,                             )
                                              )
      Defendant.                  )

## NOTICE OF SUBPOENA *DUCES TECUM*
## FOR PRODUCTION OF DOCUMENTS AND
## ELECTRONICALLY STORED INFORMATION

TO:    Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman, Esq.,
        Erick G. Kaardal, Esq., and Gregory M. Erickson, Esq., MOHRMAN &
        KAARDAL, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402

        PLEASE TAKE NOTICE that, pursuant to Bankruptcy Rules 7034 and 9016

incorporating Fed.R.Civ.P. 34 and 45, Plaintiff, Chrysler Financial Services Americas

LLC, will serve the attached subpoena *duces tecum* on Steve Leach for the production of

documents and electronically stored information his possession, custody or control

identified in Exhibit A to the subpoena. Responsive documents and electronically stored

information are to be produced at the offices of Gray Plant Mooty, Mooty & Bennett,

1



EXHIBIT

F

P.A. on September 28, 2009 at 10:00 a.m. and thereafter until the same shall be completed.

Dated: September 18, 2009

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.

By _____
Nicholas N. Nierengarten (#79169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| ——————————————— | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

### SUBPOENA DUCES TECUM IN
### AN ADVERSARY PROCEEDING

To: STEVE LEACH, c/o Robert J. Hennessey, Lindquist & Vennum, P.L.L.P., 4200 IDS Center, 80 South 8th St., Minneapolis, MN 55402

| |
|---|
| ☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See attached Exhibit A. |

| PLACE | DATE AND TIME |
|---|---|
| Gray, Plant, Mooty, Mooty & Bennett, P.A. 500 IDS Center, 80 South Eighth Street Minneapolis, MN 55402 | September 28, 2009    10:00 a.m. |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| | DATE |
|---|---|
| | |
| Attorney for Plaintiff | September __ , 2009 |
| ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER | |
| Nicholas N. Nierengarten, 500 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, (612) 632-3040. | |

\* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

# PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

## Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P 45(a)(1)(A)(iv), Fed.R.Civ.P (c) and (d) provide as follows:

(c) Protecting a Person Subject to a Subpoena.

(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction which may include lost earnings and reasonable attorney's fees on a party or attorney who fails to comply.

(2) Command to Produce Materials or Permit Inspection.

(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) Quashing or Modifying a Subpoena.

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.

(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:

(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) Form for Producing Electronically Stored Information Not Specified. if a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.

(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) Claiming Privilege or Protection.

(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) Information Produced. if information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt

The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

# Exhibit A

## I. DEFINITIONS

For purposes of interpreting or construing the scope of these Definitions, Instructions, and Document Requests, the terms used shall be given their most expansive and inclusive interpretation. Any singular form of any word shall be construed to include the plural and any plural form shall be read to include the singular. Any past tense of a verb shall be construed to include the present tense and any present tense shall be construed to include the past tense.

1. The term "document" shall mean any written, printed, typed, drawn, or other graphic matter of any kind or nature, all photographic matter, all recorded or taped matter, all electronically stored information or data (including emails and attachments, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audiovisual recordings, text messages, and voicemail (regardless of the manner, method or platform for storage)), all drafts of the foregoing, and all copies and notations on the foregoing, as well as all copies of documents by whatever means made in the possession, custody or control of the deponent.

2. The term "produce" means to make available the document or things requested herein for inspection and copying, including electronically stored information, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

3.     "Chrysler Financial" means Chrysler Financial, its predecessors (including but not limited to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

4.     "Hecker" means Dennis E. Hecker and any employee, attorney, agent, representative or anyone acting on his behalf.

5.     "Hecker Related Entity" means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives or anyone acting on their behalf.

6.     "Hyundai" means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

7.     "Rosedale" means Rosedale Dodge, Inc., Rosedale Dodge LLC, Rosedale Fleet Leasing II LLC, Rosedale Leasing LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on their behalf.

8.     "Walden" means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc. (f/k/a Denwal Management Inc.), Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing

Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

## II. INSTRUCTIONS

1.    If any documents responsive to the following Document Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.

2.    Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

3.    Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P. 45(a)(1)(C), all electronically stored information is to be produced in its native format unless otherwise agreed to.

## III. DOCUMENT REQUESTS

**REQUEST NO. 1:** All documents (including electronically stored information) relating to any request for, negotiations concerning or financing provided by Chrysler Financial to Hecker or any Hecker Related Entity for the purchase or acquisition of vehicles from Hyundai.

**REQUEST NO. 2:** All documents (including electronically stored information) relating to any transfer, use or disposition of proceeds from the sale or other disposition of vehicles by Hecker or any Hecker Related Entity for which Chrysler Financial provided financing and for which proceeds of sale or other disposition were not remitted to Chrysler Financial at any time from and after August 1, 2008.

:

**REQUEST NO. 3:** All documents in any way relating to your termination of employment or separation from Hecker or any Hecker Related Entity after November 1, 2007.

**REQUEST NO. 4:** All documents in any way relating to Dick Page's termination of employment or separation from Hecker or any Hecker Related Entity after November 1, 2007.

GP:2642195 v1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| DENNIS E. HECKER, | ) | |
| Debtor. | ) | Chapter 7 |
| | ) | Hon. Robert J. Kressel |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | |
| AMERICAS LLC, | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 09-05019 |
| DENNIS E. HECKER, | ) | |
| Defendant. | ) | |
| | ) | |

## AFFIDAVIT OF SERVICE

I hereby certify that on September 18, 2009, I caused the following Notice of

Subpoena *Duces Tecum* for Production of Documents and Electronically Stored Information

relative to Steve Leach to be served upon:

William F. Mohrman, Esq.    mohrman@mklaw.com
Erick G. Kaardal, Esq.     kaardal@mklaw.com
Gregory M. Erickson, Esq.    erickson@mklaw.com
Mary Gynild (Administrative Assistant) gynild@mklaw.com
Mary Fincham (Administrative Assistant) fincham@mklaw
Mohrman & Kaardal, P.A.
33 South Sixth Street, Suite 4100
Minneapolis, Minnesota 55402

Matthew R. Burton, Esq.    mburton@losgs.com
Leonard, O'Brien, Spencer, Gale & Sayre, Ltd.
100 South Fifth Street, Suite 2500
Minneapolis, MN 55402

by forwarding true and correct copies *via* U.S. Mail and email upon same at the indicated addresses.

Pam E. Phillips

Subscribed and sworn to before me
this 18th day of September, 2009.

Notary Public

JODEE L. MARBLE
NOTARY PUBLIC – MINNESOTA
My Commission Expires Jan. 31, 2010

GP:2645837 v1

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - -

```
In Re:                      ) Case No. 09-50779

DENNIS E. HECKER,           ) Chapter 7
                            )
            Debtor,         ) Hon. Robert J. Kressel
------------------------)
CHRYSLER FINANCIAL           )
SERVICES AMERICAS LLC        )
                            )
            Plaintiff,      )
                            )
        v.                  ) Adv. Pro. No. 09-05019
                            )
DENNIS E. HECKER             )
                            )
            Defendant.      )
```

- - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION

The following is the videotaped
deposition of CINDY BOWSER, taken before Jean F.
Soule, Notary Public, Registered Professional
Reporter, pursuant to Notice of Taking
Deposition, at the offices of Gray, Plant, Mooty,
Mooty & Bennett, P.A., 500 IDS Center, 80 South
Eighth Street, Minneapolis, Minnesota, commencing
at 9:32 a.m., Wednesday, September 16, 2009.

\*    \*    \*

## Page 2

1  APPEARANCES:
2
   On Behalf of the Plaintiff:
3
   Nicholas N. Nierengarten, Esquire
4  Kelly Hoversten, Esquire
   GRAY, PLANT, MOOTY, MOOTY
5  & BENNETT, P.A.
   500 IDS Center
6  80 South Eighth Street
   Minneapolis, Minnesota 55402
7  Phone: (612) 632-3040
   nicholas.nierengarten@gpmlaw.com
8
   and
9
   Howard J. Role, Esquire
10 (appeared via speakerphone)
   MAYER BROWN LLP
11 71 South Wacker Drive
   Chicago, Illinois 60606
12 Phone: (312) 782-0600
   e-mail: hrole@mayerbrown.com
13
   and
14
   John Tracy, Esquire
15 (appeared via speakerphone)
   In-House Counsel, Chrysler
16 Financial Services American LLC
   e-mail: j6000@chryslerfinancial.com
17
   On Behalf of the Defendant:
18 William F. Mohrman, Esquire
   MOHRMAN & KAARDAL, P.A.
19 33 South Sixth Street
   Suite 4100
20 Minneapolis, Minnesota 55402-3601
   Phone: (612) 341-1074
21 e-mail: mohrman@mklaw.com
22
   Also Present: Mr. Dennis Hecker
23
24 The Videographer: Mr. Don Carl
25

## Page 3

### PROCEEDINGS

2  Whereupon, the deposition of CINDY BOWSER was
3  commenced at 9:32 a.m. as follows:
4
5         * * *
6  THE VIDEOGRAPHER: This is the
7  video operator speaking, Don Carl of Depo
8  International, Incorporated.
9  Today's date is Wednesday,
10 September 16th, in the year 2009. The time is
11 now approximately 9:32 a.m. We're at 500 IDS
12 Center, 80 South Eighth Street, Minneapolis,
13 Minnesota, to take the video deposition of
14 Ms. Cindy Bowser.
15 Will counsel please voice identify
16 themselves for the video record?
17 MR. NIERENGARTEN: This is Nick
18 Nierengarten. I represent Chrysler Financial.
19 MR. HOVERSTEN: Kelly Hoversten,
20 also on behalf of Chrysler Financial.
21 MR. MOHRMAN: William Mohrman on
22 behalf of Denny Hecker.
23 THE VIDEOGRAPHER: Would the court
24 reporter please administer the oath?
25

## Page 4

1         * * *
2  CINDY BOWSER,
3  after having been first duly sworn,
4  deposes and says under oath as follows:
5
6         ***
7  MR. NIERENGARTEN: Let the record
8  reflect, also, that Mr. Dennis Hecker is in the
9  room.
10
11         EXAMINATION
12 BY MR. NIERENGARTEN:
13 Q.   Good morning, Ms. Bowser.
14 A.   Good morning.
15 Q.   How are you?
16 A.   Fine.
17 MR. MOHRMAN: Before the deposition
18 starts, I just want to note on the record that
19 I'm reserving my right to redepose Ms. Bowser
20 after production of documents from — from
21 Chrysler Financial in this case.
22 Go ahead, Mr. Nierengarten.
23 MR. NIERENGARTEN: You can reserve
24 your right, and we'll reserve our right to object
25 to any further deposition of Ms. Bowser.

## Page 5

1  BY MR. NIERENGARTEN:
2  Q.   Ms. Bowser, do you know a gentleman
3  by the name of Steve Leach?
4  A.   Yes, I do.
5  Q.   How do you know him?
6  A.   I used to work for him originally
7  back in I think about 1995 to 1997, at Walden
8  Leasing.
9  Q.   All right. Have you worked for him
10 more recently?
11 A.   No.
12 Q.   All right. Did you meet with an
13 attorney for Mr. Leach recently?
14 A.   Mr. Leach's attorney came out to my
15 house about three weeks to a month ago.
16 MR. MOHRMAN: Can you identify the
17 lawyer?
18 MR. NIERENGARTEN: Counsel, I'll
19 ask the questions. You can ask your questions on
20 your time. But it is a good point.
21 BY MR. NIERENGARTEN:
22 Q.   What was the attorney's name?
23 A.   I believe it was Bob, is it
24 Hennessey.
25 Q.   Hennessey?

Page 82

1    Q.    So you --
2    A.    They were not on there originally.
3    Q.    That's not your handwriting on
4  there --
5    A.    No.
6    Q.    -- I take it?
7    A.    No.
8    Q.    So far as you know, somebody at the
9  FBI may have put that on there?
10    A.    Right.
11        MR. MOHRMAN: Objection,
12  speculation, foundation.
13  BY MR. NIERENGARTEN:
14    Q.    Now, I'd like you to take a look at
15  the Exhibit 4, it's BOWSER008.
16    A.    Uh-huh.
17    Q.    And take a look at the top
18  right-hand side. There are some what appear to
19  be handwritten initials on the document?
20    A.    Uh-huh.
21    Q.    Do you see what I'm referring to?
22    A.    Yes.
23    Q.    All right. Do you recognize those
24  initials?
25    A.    Yes.

Page 83

1    Q.    And whose initials --
2        MR. MOHRMAN: Objection.
3  BY MR. NIERENGARTEN:
4    Q.    -- are they?
5        MR. MOHRMAN: Foundation.
6        THE WITNESS: Denny's.
7        MR. MOHRMAN: Same --
8  BY MR. NIERENGARTEN:
9    Q.    And how do you know that?
10        MR. MOHRMAN: Please,
11  Mr. Nierengarten. Objection, foundation. Go
12  ahead.
13        THE WITNESS: Just from the years
14  of working with him.
15  BY MR. NIERENGARTEN:
16    Q.    And, then, on Exhibit 5,
17  BOWSER0014, and again at the top there appear to
18  be some initials in the upper right-hand
19  corner --
20    A.    Uh-huh.
21    Q.    -- of the document. Do you see
22  that?
23    A.    I do.
24    Q.    Do you recognize those initials?
25        MR. MOHRMAN: Same objection,

Page 84

1  foundation.
2        THE WITNESS: Yes, I do.
3  BY MR. NIERENGARTEN:
4    Q.    Okay. And whose initials are they?
5    A.    Denny's.
6    Q.    And how do you know that?
7    A.    From years of working with him.
8    Q.    Are there any other paper documents
9  that you have in your possession that would be
10  responsive to the subpoena?
11    A.    No.
12    Q.    All right. Now, Ms. Bowser, you
13  also produced some e-mails in response to
14  Chrysler Financial's subpoena?
15    A.    Uh-huh.
16    Q.    Is that accurate?
17    A.    Yes.
18    Q.    All right. And can you relate to
19  us how you delivered those e-mails to Chrysler
20  Financial in response to the subpoena?
21    A.    They took them off my computer.
22    Q.    Okay. Did someone come to your
23  house?
24    A.    Yes.
25    Q.    And do you have a recollection of

Page 85

1  who came to your house?
2    A.    It was a service. I don't -- I
3  don't remember the name of the service.
4    Q.    All right. A messenger service --
5    A.    Right.
6    Q.    -- of some kind? And what
7  happened?
8    A.    That they took it and brought it
9  back later that day.
10    Q.    And what did this service take from
11  you?
12    A.    My computer.
13    Q.    Is it a laptop or --
14    A.    It was a laptop.
15    Q.    All right. And did you somehow
16  designate materials that were on your computer
17  that were responsive to the subpoena?
18    A.    Yeah. There -- I mean, there was a
19  file folder, but they had my entire computer.
20    Q.    All right. Let me show you this.
21        (Whereupon, Deposition Exhibit
22  No. 12 was marked for identification, and a copy
23  is attached and hereby made a part of this
24  deposition.)
25  BY MR. NIERENGARTEN:

22   (Pages 82 to 85)

**Page 86**

1  Q.  I've shown you, Ms. Bowser,
2  Exhibit 12.
3  A.  Uh-huh.
4  Q.  Which is a photocopy of a Post-it:
5  A.  Uh-huh.
6  Q.  Do you have that in front of you?
7  A.  Yes.
8  Q.  Is that your handwriting?
9  A.  It is.
10  Q.  All right. Can you explain for us
11  what you meant when you wrote these words down on
12  the Post-it?
13  A.  Those were the files that I had
14  that you were interested in viewing.
15  Q.  All right. And so this is how to
16  find those files on your laptop?
17  A.  That's correct.
18  Q.  All right. Can you relate to us
19  how you obtained possession of these e-mails?
20  A.  Ah, through work, um, our IT guy
21  had set it up. Molly and I had access to
22  e-mails, passwords, things like that; and so this
23  was e-mails that would be sent, copied to me.
24  Q.  And you collected them on your
25  laptop?

**Page 87**

1  A.  Yes.
2  Q.  All right. And these are --
3  A.  No, not -- excuse me, no, not on my
4  laptop. I collected them on my desktop at work,
5  and then I had transferred them onto a flash
6  drive.
7  Q.  All right. And were these e-mails
8  work-related e-mails?
9  A.  Yes.
10  Q.  And do you have a recollection of
11  when you started to receive these e-mails?
12  A.  Um, I believe it was in 2008. I
13  don't remember when it was set up that way.
14  Q.  All right. Just --
15  MR. MOHRMAN: Vague as to e-mails.
16  BY MR. NIERENGARTEN:
17  Q.  As best you recall, it was 2008?
18  A.  Yeah.
19  Q.  All right, okay.
20  MR. NIERENGARTEN: I'm going to
21  take a short break.
22  THE WITNESS: Okay.
23  MR. NIERENGARTEN: But I think
24  we're probably close to being done.
25  THE WITNESS: All right.

**Page 88**

1  MR. NIERENGARTEN: So let's take
2  ten minutes.
3  THE VIDEOGRAPHER: Going -- going
4  off the video record. The time is now
5  approximately 11:19 a.m.
6  (Break from 11:19 to 11:39.)
7  THE VIDEOGRAPHER: We're back on
8  the video record. The time is now approximately
9  11:39 a.m.
10  MR. NIERENGARTEN: Ms. Bowser,
11  that's all the questions I have at this time. I
12  reserve the right, of course, to ask you some
13  follow-up questions after Mr. Mohrman is done
14  with his examination; and I want to thank you for
15  taking the time to come here today to testify.
16  That's all I have for now. Thank you.
17  MR. MOHRMAN: Would you mark that,
18  please?
19  THE COURT REPORTER: Sure.
20  (Whereupon, Deposition Exhibit
21  No. 13 was marked for identification, and a copy
22  is attached and hereby made a part of this
23  deposition.)
24
25  * * *

**Page 89**

1  EXAMINATION
2  BY MR. MOHRMAN:
3  Q.  Good morning, Ms. Bowser.
4  A.  Good morning.
5  Q.  My name is Bill Mohrman. I
6  represent Mr. Hecker in this proceeding.
7  I'm first going to show you what
8  I've had marked as Deposition Exhibit 13, which
9  is a multipage document. The first page is a
10  September 8th, 2009 letter from Mr. Nierengarten
11  to you.
12  A.  Uh-huh.
13  Q.  A two-page letter. The third page
14  is a subpoena, which is a four-page document;
15  and, then, the last six pages of Exhibit 13 are a
16  notice of taking deposition to which an exhibit
17  is attached. Can you take a look at it for a
18  minute?
19  MR. NIERENGARTEN: Counsel, do you
20  have a copy for me?
21  MR. MOHRMAN: I do not.
22  MR. NIERENGARTEN: Well, we
23  provided you copies. Could you provide copies to
24  us?
25  MR. MOHRMAN: I will, I just don't

**Depo International, Inc.**
**(763) 591-0535 or (800) 591-9722 admin@depointernational.com**

Page 106

1  Q.  Whose handwriting is on that?
2  A.  That's mine.
3  Q.  Okay.  And was that a Post-it note
4  that you put on the laptop?
5  A.  Yes.
6  Q.  And that was an instruction to --
7  from you to Mr. Nierengarten to tell him what
8  folder to look for to get the information that
9  was responsive to the subpoena; is that right?
10  A.  Yes.
11  MR. NIERENGARTEN: Objection.  Give
12  me a chance to assert an objection.
13  THE WITNESS: Okay.
14  BY MR. MOHRMAN:
15  Q.  With regard to the documents
16  contained in the orange folder, at -- at the time
17  that the courier came out to your home a week
18  ago, you were no longer employed by any of the
19  Hecker entities; is that correct?
20  A.  Correct.
21  MR. NIERENGARTEN: Objection.
22  BY MR. MOHRMAN:
23  Q.  Could you tell me why you would
24  have in your possession those documents after
25  your employment with the Hecker entities?

Page 107

1  A.  Because I knew that this was going
2  to be a huge issue, and I was not going to be the
3  one to take a fall for any type of documents that
4  were altered.
5  Q.  Did you inform Mr. Hecker that you
6  had removed those documents from the Hecker
7  entities headquarters when you left your
8  employment?
9  A.  I did not remove them.  I made
10  copies.
11  Q.  I understand that.  Let me rephrase
12  the question.
13  Did you inform Mr. Hecker that you
14  had made copies of those documents and had
15  removed them to your home?
16  A.  No.
17  Q.  Did you inform anybody with the
18  Hecker entities that you had done that?
19  A.  Yes, I did.
20  Q.  Who?
21  A.  Molly Kaplan, she knew that I had a
22  file folder of the copies.
23  Q.  When did you inform Ms. Kaplan that
24  you had done that?
25  A.  Just prior to me leaving.

Page 108

1  Q.  Did you keep a copy of these
2  documents when you were employed with the Hecker
3  entities at your workstation at the Hecker
4  entities?
5  A.  Yes.
6  MR. NIERENGARTEN: Objection.  You
7  may answer.
8  THE WITNESS: Yes.
9  BY MR. MOHRMAN:
10  Q.  Where did you keep them?
11  A.  They were in our -- Molly and my
12  area.  We had file cabinets there, and so every
13  manufacturer, everything was filed in that area.
14  Q.  Were the documents that you
15  produced today kept in separate folders in those
16  files?
17  A.  No.
18  Q.  Okay.  Were these particular
19  documents all kept in the same folder?
20  A.  Yes.
21  Q.  Were there any other documents in
22  that particular folder other than the ones that
23  you copied and took from the Hecker entities?
24  A.  No.
25  Q.  Was the orange folder that you

Page 109

1  currently have in your possession, was that the
2  folder that was used to maintain these documents
3  in the file cabinet at the Hecker entities?
4  A.  No.
5  Q.  Where did you get the orange
6  folder?
7  A.  From my home.
8  Q.  When you -- so you had all of these
9  documents that have been marked as Exhibits 2
10  through 11 in a separate folder in your file
11  cabinet in the area that you and Molly worked at,
12  correct?
13  A.  Correct.
14  Q.  Was there a label on that folder?
15  A.  It just said Hyundai.
16  Q.  And how did you get these
17  particular documents that you produced pursuant
18  to the subpoena, and what I'm wondering is, did
19  you physically go into the folder marked Hyundai
20  in the file cabinet and make copies of them and
21  then take those copies with you?
22  MR. NIERENGARTEN: Objection,
23  leading.
24  THE WITNESS: Yes.
25  BY MR. MOHRMAN:

28 (Pages 106 to 109)

Page 122

1    Q.    Where did you testify?
2    A.    At the district courthouse.
3    Q.    Who examined you?
4    A.    Nicole, I don't recall her last
5 name, assistant district attorney.
6    Q.    How long -- what time did you enter
7 the grand jury room?
8    A.    Um, it must have been around 10:30.
9    Q.    And what time did you leave the
10 grand jury room?
11    A.    Just prior to 11:00.
12    Q.    So you were in there about a half
13 hour?
14    A.    Yeah, I'd say, maybe a little less.
15    Q.    What questions did Nicole ask you?
16    A.    It was all on --
17    MR. NIERENGARTEN: Before you
18 answer that, Ms. Bowser, I just -- I'm not your
19 attorney. I don't know if the U.S. attorney gave
20 you any instructions about your testimony. But
21 if the U.S. attorney did, I'd just bear that in
22 mind in answering the question.
23    MR. MOHRMAN: You know,
24 Mr. Nierengarten, you keep saying you're not
25 giving legal advice to the witness, and now it

Page 123

1 sounds like you are; and I would inform you that
2 witnesses have an absolute right to disclose what
3 testimony they've given before a grand jury.
4    MR. NIERENGARTEN: They may or may
5 not, Mr. Mohrman.
6    MR. MOHRMAN: It's --
7    MR. NIERENGARTEN: I'm only saying
8 if --
9    MR. MOHRMAN: No. I'm telling you
10 as a lawyer --
11    MR. NIERENGARTEN: You're
12 interrupting me.
13    MR. MOHRMAN: You're correct. I'm
14 sorry. Go ahead, Mr. Nierengarten.
15    MR. NIERENGARTEN: All right. Now,
16 all I'm saying, Mr. Mohrman, is if there was an
17 instruction given by the AUSA, and I don't know
18 whether there was such an instruction, that
19 Ms. Bowser ought to reflect on that before
20 responding to your question. Other than that, go
21 ahead.
22    MR. MOHRMAN: Mr. Nierengarten, and
23 I presume you know this as a lawyer, witnesses
24 who testify in grand jury proceedings, they are
25 under no obligation to keep that testimony

Page 124

1 private. The people -- everybody else is, the
2 grand jury members are and the U.S. attorney is,
3 until or if an indictment is issued, but not the
4 witness. That happens all the time.
5    MR. NIERENGARTEN: I don't think we
6 need to debate it. All I'm saying is she ought
7 to reflect on it. So, go ahead.
8 BY MR. MOHRMAN:
9    Q.    Ms. Bowser, what questions did
10 Ms. -- or did Nicole ask you?
11    A.    Similar to yours.
12    Q.    I want you to tell me what you
13 remember?
14    MR. NIERENGARTEN: I'm going to
15 object to this line of questioning as entirely
16 inappropriate, completely irrelevant.
17    THE WITNESS: You know, I'll
18 consult with Nicole to make sure that I can say
19 exactly what was said in the courtroom.
20 BY MR. MOHRMAN:
21    Q.    Okay. I want to be very clear with
22 you. Are you refusing to answer my question?
23    A.    No, I'm not.
24    Q.    You're refusing to answer it right
25 now?

Page 125

1    A.    Right now I am.
2    Q.    I'm telling you I'm going to call
3 you back here to complete it, because I believe
4 that you have absolutely no grounds to not answer
5 those questions.
6    MR. NIERENGARTEN: And I'll just --
7 Are you done?
8    MR. MOHRMAN: Yes.
9    MR. NIERENGARTEN: And I'll note
10 for the record that we object to this line of
11 questioning as grossly inappropriate, it's
12 completely irrelevant and a waste of time. If
13 you attempt to call Ms. Bowser back, we will
14 object.
15    MR. MOHRMAN: Whatever.
16 BY MR. MOHRMAN:
17    Q.    Ms. Bowser, have you ever had any
18 discussions with any FBI agents?
19    A.    I have.
20    Q.    Tell me what you've discussed with
21 them?
22    A.    Hyundai documents.
23    Q.    When did you meet with the FBI
24 agents?
25    A.    Um.

**Depo International, Inc.**
**(763) 591-0535 or (800) 591-9722 admin@depointernational.com**

**Page 126**

1    MR. NIERENGARTEN: Before you
2  answer that, again, objection on grounds of
3  relevance.
4    MR. MOHRMAN: That's fine.
5    THE WITNESS: This summer, I
6  couldn't tell you when.
7  BY MR. MOHRMAN:
8    Q.   Did they come out to your home?
9    A.   No.
10   Q.   Where did you meet with them?
11   A.   **I did meet with them at the state**
12 **patrol facility, and, then, also the district**
13 **attorney's office.**
14   Q.   Where is the district attorney's
15 office?  What do you mean by that?
16   A.   **I — I went to the courthouse**
17 **downtown here.  They were all in a room there.**
18   Q.   The state courthouse?
19   A.   Yes.
20   Q.   How long did you meet with them?
21   A.   **Too long, a couple hours or more.**
22   Q.   And they asked you about the
23 Hyundai documents that you've discussed here this
24 morning, correct?
25   A.   Yes.

**Page 127**

1    MR. NIERENGARTEN: Objection,
2  leading.
3    MR. MOHRMAN: Did you get her
4  answer?
5    THE REPORTER: Uh-huh.
6  BY MR. MOHRMAN:
7    Q.   Did they -- did you discuss
8  anything else with them?
9    A.   **Not that I really recall.  It was**
10 **mainly focused on that.**
11   Q.   Did they talk about tax, title,
12 license fees, whether those were paid?
13   A.   **A little bit, but I — I was never**
14 **in the dealership, so I really couldn't comment**
15 **on any of that.**
16   THE VIDEOGRAPHER: You have about
17 approximately two minutes left on this disk.
18 BY MR. MOHRMAN:
19   Q.   Did you — did the FBI agents or
20 any of the other state officials that you were
21 meeting with ask you whether or not Mr. Hecker
22 ever admitted to falsifying any documents?
23   A.   No.
24   Q.   Did you tell them that Mr. Hecker
25 admitted that to you?

**Page 128**

1    A.   No.
2    Q.   Did you ever overhear Mr. Hecker
3  saying anything admitting that he had falsified
4  any documents?
5    A.   No.
6    Q.   Do you have an understanding that
7  one of the allegations in this lawsuit that
8  Chrysler Financial has brought is that there was
9  a draft letter agreement between Hyundai Motor
10 and one of the Hecker entities that had been
11 doctored or forged, are you aware of that?
12   A.   Yes.
13   Q.   Okay.  And is it your understanding
14 that the document that's alleged to be doctored
15 or forged was the document that Ms. Kaplan
16 prepared?
17   A.   Yes.
18   Q.   Have you ever heard Mr. Hecker say
19 anything which indicated that he had any
20 involvement in doctoring that or forging or
21 otherwise altering that document?
22   A.   No.
23   Q.   Do you have any e-mails from
24 Mr. Hecker which suggests that he did that?
25   A.   No.

**Page 129**

1    Q.   You first became aware of this
2  issue in mid-November of 2007, correct?
3    A.   Correct.
4    THE VIDEOGRAPHER: I need to change
5  the disk.  Going off the video record.  The time
6  is now approximately 12:22 p.m.  This is the end
7  of disk No. 1.
8    (Break from 12:22 to 1:29.)
9    THE VIDEOGRAPHER: We're back on
10 the video record.  The time is approximately
11 1:29 p.m.  This is the beginning of disk No. 2.
12 BY MR. MOHRMAN:
13   Q.   Are you ready, Ms. Bowser?
14   A.   Yes.
15   Q.   When you worked for the Hecker
16 entities, did anyone from the Hecker entities
17 ever authorize you to waive the attorney-client
18 privilege for any of the Hecker entities or for
19 Denny Hecker personally?
20   MR. NIERENGARTEN: Objection, vague
21 and ambiguous, lack of foundation.
22   THE WITNESS: I really don't
23 understand the attorney-client privilege.
24 BY MR. MOHRMAN:
25   Q.   Okay.  Let me ask the question this

33 (Pages 126 to 129)

# Discovery Summary by Catalogy(0910-120i)

*Please note that these page counts are approximate.*

| Item Type | Count By Category | Total Size(Byte) | Page Count |
|---|---|---|---|
| Microsoft Outlook Express E- | 21,700 | 419,210,945 | 21,700 |
| Graphics | 2,330 | 132,972,173 | 2,375 |
| HTML | 19 | 4,394,896 | 62 |
| Microsoft Excel | 563 | 43,325,510 | 6,373 |
| Microsoft PowerPoint | 16 | 4,077,102 | 69 |
| Microsoft Word | 622 | 38,516,213 | 3,656 |
| Other | 75 | 16,115,549 | 1,168 |
| PDF | 828 | 234,079,848 | 3,501 |
| Spreadsheet | 2 | 22,692 | 2 |
| Text | 6,196 | 520,935,852 | 96,980 |
| Unknown | 1,019 | 103,379,362 | 61,402 |
| Word Processor | 51 | 412,395 | 91 |
| XML | 177 | 20,040,628 | 5,111 |
| <Undefined category> | 3 | (not counted) | |
| Email Totals | 21,700 | 419,210,945 | 21,700 |
| File Totals | 11,901 | 1,118,272,220 | 180,790 |
| Grand Totals | 33,601 | 1,537,483,165 (1.43GB) | 202,490 |

# Discovery Errors

| Container document | |
|---|---|
| Total: | 205 |
| Node Level Discovery Errors | 0 |
| Item Level Discovery Errors | 205 |
| Indexing Exceptions | 0 |



EXHIBIT

tabbies

G

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

Dennis E. Hecker                                           BKY No. 09-50779 RJK

        Debtor.

---

Chrysler Financial Services
Americas LLC,

        Plaintiff,

                                Adversary No. 09-05019

v.

Dennis E. Hecker,

        Defendant.

---

## CERTIFICATE OF SERVICE

---

      **I HEREBY CERTIFY** that on October 20, 2009, I caused **HECKER'S REPLY MEMORANDUM OF LAW SUPPORT OF STAY; AFFIDAVIT OF WILLIAM R. SKOLNICK** to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following listed below:

US Trustee                    ustpregion12.mn.ecf@usdoj.gov
Clinton E. Cutler             ccutler@fredlaw.com, mdavis@fredlaw.com
Randall L. Seaver             rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com
William F. Mohrman            mohrman@mklaw.com
Stephen F. Grinnell           stephen.grinnell@gpmlaw.com
Nicholas N. Nierengarten      nicholas.nierengarten@gpmlaw.com

Dated: October 20, 2009          **SKOLNICK & SHIFF, P.A.**

                                 /e/ William R. Skolnick
                                 William R. Skolnick #137182
                                 LuAnn M. Petricka #18505X
                                 2100 Rand Tower
                                 527 Marquette Avenue South
                                 Minneapolis, MN 55402
                                 (612) 677-7600
                                 wskolnick@skolnick-shiff.com
                                 **ATTORNEY FOR DENNIS E. HECKER**