# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) |
| | ) **Bankruptcy Case No: 09-50779-RJK** |
| **DENNIS E. HECKER,** | ) |
| | ) **Chapter 7** |
| Debtor. | ) |
| | ) |
| | ) |
| **CHRYSLER FINANCIAL** | ) **Adversary Proceeding No.: 09-05019** |
| **SERVICES AMERICAS** | ) |
| **LLC,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| **DENNIS E. HECKER,** | ) |
| | ) |
| Defendant | ) |
| | ) |

## NOTICE OF HEARING AND MOTION FOR AN ORDER DISQUALIFICATION OF COUNSEL

**TO:** Plaintiff Chrysler Financial Services Americas, LLC and its counsel, Nicholas Nierengarten and Stephen Grinnell of Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 S. 8th St., Minneapolis, Minnesota 55402 and Mayer Brown LLP, Howard Roin and Stuart Rozen, 71 South Wacker Drive, Chicago, Illinois, 60606.

    1. Defendant Dennis E. Hecker ("Hecker"), by and through his undersigned counsel, moves for the relief requested below and gives notice of hearing.

    2. The Court will hold a hearing on this motion at 10:30 a.m., on November 25, 2009, in Courtroom 8 West, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota before the Honorable Robert J. Kressel.

1

3. Any response to this motion must be filed and delivered not later than November 20, 2009 which is three days before the time set for the hearing (excluding Saturdays, Sundays, and holidays), or filed and served by mail not later than November 16, 2009, which is seven days before the time set for the hearing (excluding Saturdays, Sundays, and holidays).

4. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334, Fed. R. Bankr. P. 5005, 7007 and 9013 and Local Rules 7007-1 and 9013-1 *et seq*.

5. These motions arise under 11 U.S.C. §§ 523 and Fed. R. Bankr. P. 7007, 7026, 9013 and Local Rules 7007-1 and 9013-2. This motion is filed under Fed. R. Bankr. P. 7007, 7026, 9013, and 9014 and Local Rules 7007-1 and 9013-1 *et seq*. Defendant Hecker requests the relief specified below.

## MOTION

6. Defendant Hecker moves this Court for an Order to disqualify Plaintiff's counsel based on their conduct in refusing to return stolen email communications and documents of Mr. Hecker undeniably protected by the attorney-client privilege. Plaintiff's counsel has refused to return the privileged documents, threatened to conduct their own privilege review, and improperly disclosed these communications to additional parties despite knowing they are protected by the attorney-client privilege—all conduct that threatens a continuing taint upon this litigation.

7. This Motion is based on the Defendant Hecker's Memorandum of Law in Support of the Motion and the Affidavit of William R. Skolnick, which are concurrently filed in accordance with Local Rule 9006-1 (b).

8. The Court is authorized to grant this relief as an exercise of its equitable powers expressed in 11 U.S.C. § 105(a), Fed. R. Bankr. P. 7026 and by applicable federal case law.

Respectfully Submitted,

Dated: November 10, 2009                 **SKOLNICK & SHIFF, P.A.**


/e/ William R. Skolnick
William R. Skolnick #137182
LuAnn M. Petricka #18505X
527 Marquette Avenue South, #2100
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
petricka@visi.com

**ATTORNEYS FOR DENNIS E. HECKER**

# UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**DENNIS E. HECKER**

**Case No. 09-50779-RJK**

**Debtor.**

**Chapter 7**

---

**CHRYSLER FINANCIAL
SERVICES AMERICAS LLC,**

**Plaintiff,**

**ADV Pro. No. 09-05019**

vs.

**DENNIS E. HECKER**

**Defendant.**

---

## HECKER'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL

---

## <u>INTRODUCTION</u>

Chrysler's attorneys possess stolen email communications and documents that are subject to Mr. Hecker's attorney-client privilege. These documents were illegally obtained by a former employee of Mr. Hecker. Despite having notice that these documents are privileged, Chrysler's counsel has refused to return them, threatened to conduct their own privilege review, and has disclosed the information to additional parties. By refusing to return the privileged documents, and possibly reviewing them, Chrysler's counsel breached the ethical duties imposed by the Code of Professional Responsibility. The Court has the authority, and duty, to address these violations. Because Chrysler's counsel has had access to Mr. Hecker's privileged documents, their involvement in this case imposes the threat of continuing taint on the litigation.

Accordingly, the Court should remove the taint by disqualifying Chrysler's counsel.

## RELEVANT MATERIAL FACTS

**A.    Ms. Bowser Steals Privileged And Confidential Documents Then Produces Them Without Regard For Their Privileged Nature.**

During the summer or fall of 2008, Ms. Cindy Bowser, Mr. Hecker's Executive Assistant, began systematically duplicating and redirecting Mr. Hecker's email communications into a file for her own use. (See Bowser Depo. at 138–39). Ms. Bowser misappropriated numerous email communications, along with their attached documents. (Bowser Depo. at 118). She copied these communications without regard for whether they were subject to the attorney-client privilege, or otherwise confidential. (Id. at 119–20). Ms. Bowser copied these emails and documents for her own future benefit. (Id. at 107).

Ms. Bowser was never authorized by Mr. Hecker, or anyone representing him, to take his attorney-client privileged communications. (Id. at 131). Nor was she ever authorized to provide these records to any third parties, yet prior to the end of her employment with Mr. Hecker, Ms. Bowser transferred all of the emails and documents she had misappropriated from her work computer to her own flash drive. (Id. at 131, 120–21). She then transferred the files on the flash drive to her personal laptop. (Id. at 148). Despite no longer being an employee, and never having the authority to do so, Ms. Bowser maintained these files on her personal computer. (Bowser Depo. at 107).

Upon receiving a subpoena duces tucem from Chrysler Financial Services Americas, LLC, (hereinafter "Chrysler"), Ms. Bowser produced her laptop with instructions how to copy all of the emails and documents she had stolen. (Id. at 106). She produced all of these documents without regard to whether they were subject to the attorney-client privilege. (Id. at 131). In arranging for the production of these documents, Chrysler's counsel, Mr. Nierengarten,

contacted Ms. Bowser, but failed to inform her that she should not produce privileged documents. (Id. at 101–02).

**B.    Chrysler's Counsel Is Put On Notice That The Documents Were Stolen And Contain Privileged Information Yet Refuses To Return The Documents.**

During Ms. Bowser's deposition, her testimony indicated both that the documents were stolen, and that many were likely privileged. (See Bowser Depo. at 119–20, 131). Based on Ms. Bowser's testimony, Mr. Hecker's attorney instructed Mr. Nierengarten not to review the documents, and demanded that they be returned. (Id. at 132). After the deposition, Mr. Hecker's attorney, Mr. Mohrman, sent a letter to Mr. Nierengarten dated September 18, 2009, demanding that the stolen and privileged documents not be reviewed, and that they be returned to Mr. Hecker. (See Skolnick Aff. at Ex. A) In response, not only did Mr. Nierengarten refuse to return the documents, but tellingly, he threatened to conduct his own privilege review. (See Skolnick Aff. at Ex. B). In addition to refusing to return the privileged documents, and threatening to conduct his own privilege review, Mr. Nierengarten has disseminated the privileged documents to additional parties. (See Skolnick Aff. at Ex. C).

From the start, Chrysler's counsel has made no efforts to protect or respect Mr. Hecker's attorney-client privilege. Despite repeated demands to return the privileged documents, Chrysler's counsel has failed to do so. They have threatened to conduct a review of the documents, if they have not already, and they have passed Mr. Hecker's privileged documents on to additional parties. As recently as October 28, 2009, Chrysler's lawyers, Mr. Nierengarten and Mr. Roin refused to return the documents and insisted that they would conduct their own review for privileged documents. (See Skolnick Affidavit at ¶ 3) Despite being advised by Defendant's lawyer that the stolen information obtained hundreds of attorney client privileged communications, Chrysler's lawyers refused to return the information without reviewing it.

Chrysler's lawyer's wrongful conduct was compounded when they purposely provided the information to others. The stolen information that Chrysler has had in its possession since mid September contains privileged attorney client communications about the very disputes between Chrysler and the Defendant. (See Skolnick Aff. at ¶ 2) It also contains information privileged by the statutory spousal privilege and medical privilege. Chrysler has been in contact with counsel for Hyundai and Cornerstone Bank to plan "strategy". (See Skolnick Aff.at ¶ 5) It is not known what information Chrysler has shared with other parties and/or their counsel that are adverse to Defendant. Chrysler's counsels' actions threaten a continuing taint on this litigation which can only be removed by their disqualification.

## LEGAL ARUGMENT

Chrysler's counsel possesses improperly obtained evidence. The evidence consists of emails and documents stolen by a former employee of Mr. Hecker. Not only are many of these documents subject to the protection of the attorney-client privilege, but they were stolen in violation of several federal statutes and in abrogation of the employee's duties to her employer. It is incumbent on the Court to maintain the integrity of these proceedings, and Counsels' unethical conduct in regard to these communications threatens that integrity. Accordingly, the Court should disqualify Chrysler's counsel to avoid the appearance of impropriety.

### I. Federal District Courts Have The Inherent Authority To Supervise The Bar Practicing Before Them.

"A Federal District Court has the inherent authority and responsibility to regulate and supervise the bar practicing before it." Olson v. Snap Products, Inc., 183 F.R.D. 539, 541 (D.Minn. 1998)(citing Jenkins v. Missouri, 931 F.2d 470, 484 (8th Cir. 1991)). "Pursuant to this inherent authority, a Court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in

litigation before it, becomes complicit in the misconduct." Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 324 (S.D.N.Y. 1997). Accordingly, the Court has "inherent authority to sanction a party who attempts to use in litigation material improperly obtained outside of the discovery process." Id.

When determining the appropriate remedy for these abuses, the Court has broad discretion that includes assessment of attorneys fees, monetary sanctions, disqualification of counsel, and dismissal of the action. Olson, 183 F.R.D. at 541. However, because of the potential for abuse, motions for disqualification are subject to strict judicial scrutiny. Id. at 541–42 (quoting Harker v. C.I.R., 82 F.3d 806, 808 (8th Cir. 1996)). That said, the Courts must strictly enforce the Code of Professional Responsibility. Id. at 542. This is necessary because "[t]he dynamics of litigation are far to subtle, the attorney's role in that process far to critical, and the public's interest in the outcome is far too great to leave room for even the slightest doubt concerning the ethical propriety of a lawyer's representation in a given case." Richards v. Jain, 168 F.Supp.2d 1195, 1209 (W.D. Wash. 2001)(quoting Emle Indus., Inc. v. Patentex, Inc., 478 F.2d 562, 571 (2nd Cir. 1973)). Accordingly, "any legitimate doubts, which are created by the movant's proffer, must be resolved in favor of disqualification." Olson, 183 F.R.D. at 542.

## II. Disqualification Is The Only Sanction That Will Remove The Threat Of Continuing Taint From This Litigation.

Disqualification of an attorney is an ethical, not legal matter, which involves the public's interest along with the parties'. In Re Potash Antitrust Litigation, 1993 WL 543013 At * 16 (D.Minn. 1993)(citations omitted). The Court must consider its "duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." Id. (citations omitted). Accordingly, "disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial." Id. (citing In re Wirebound

Boxes Antitrust Litigation, 724 F.Supp. 648, 652 (D.Minn. 1989)). In this case, the threat of continuing taint exists because counsel was privy to privileged information, and acquiesced in Ms. Bowser's violations of the Stored Communications Act, the Computer Fraud and Abuse Act, and her duties to her employer. Therefore, disqualification of counsel is the appropriate remedy.

A. Disqualification is the Appropriate Remedy when Counsel is Exposed to Privileged Information.

When an attorney has had access to privileged information, such information "cannot be unlearned." Cargill Inc. v. Budine, 2007 WL 1813762, at *13 (E.D. Cal.). Accordingly, this "continuing taint" is likely to be present where an attorney has had access to privileged information. See Richards v. Jain, 168 F.Supp.2d 1195, 1200 (W.D. Wash. 2001)(quotation omitted)(Holding that disqualification was "necessary to remedy the substantial taint placed on any future proceedings by the possession and review of the [information]." Id.). "There can be no doubt that the spirit of the ethical norms adhered to in this district, if not the letter of the Rules of Professional Conduct themselves, precludes an attorney from acquiring, inadvertently or otherwise, confidential or privileged information about his adversary's litigation strategy." MMR/Wallace Power & Industrial, Inc. v. Thames Assoc., 764 F.Supp 712, 718 (D. Conn. 1991). In such cases, "[e]ven an appearance of impropriety may, under the appropriate circumstances, require prompt remedial action by the court." Id.

**1. Counsel had an Affirmative Duty to Return the Privileged Documents.**

It has been established in the Federal Court in Minnesota that when an attorney receives privileged documents, "he has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents." Arnold v. Cargill Inc., 2004 WL 2203410 at * 10 (D.Minn)(citing Richards, 168 F.Supp.2d at 1200–01). In Arnold, plaintiffs' attorneys received a box containing privileged documents from a former employee of Cargill. Id. The Court

concluded that the appropriate course of action upon learning the box contained privileged documents would have been to return them without review to Cargill. Id. Instead, the attorneys "blatantly risked the appearance of impropriety" by conducting their own review. Id. In the present case, Chrysler's counsel has refused to return the documents they know to be privileged.

Moreover, Chrysler's counsel has feigned ignorance, denying that a duty to return the privileged documents exists. In the Richards case, when faced with similar denials by counsel, the court wrote that counsel's "suggestion in his response letter . . . and at oral argument that an attorney in possession of attorney-client documents has no obligation except to give copies back or otherwise disclose possession of the documents shocks the conscience of this court." Richards, 168 F.Supp.2d, at 1201. In that case, as in this one, counsel was in possession of a disk that contained numerous emails, many of which were privileged communications. See id. at 1199. There the court concluded that counsel "had an affirmative duty not to review the contents of the Disk and to return the Disk." Id. at 1201.

## 2. Counsel Improperly Conducted, or Threatened to Conduct its own Privilege Review.

Counsel has no right to conduct its own privilege review of an opposing party's privileged documents. See Arnold, 2004 WL 2203410 at *10; see also Richards, 168 F.Supp.2d, at 1200–01. Allowing counsel to conduct its own privilege review would improperly put counsel "in the sole position of determining what is confidential and privileged." See Cargill Inc. v. Budine, 2007 WL 1813762 at * 12 (E.D. Cal.). Accordingly, it was wholly inappropriate for Chrysler's counsel to assert that it would conduct its own privilege review.

Reviewing the privileged documents, even if the review is not in depth, is grounds for disqualification. See Richards, 168 F.Supp.2d at 1206–07. Thus if Chrysler's counsel has followed through with these threats, disqualification is appropriate. Even if counsel maintains

that they have not acquired privileged information, their possession of the documents and threat to review them creates the appearance of impropriety.  See MMR/Wallace Power & Industrial, Inc., 764 F.Supp. at 726–27 (holding that even when counsel provided affidavits asserting that they had not received confidential information, the possibility alone that confidences had been breached necessitated disqualification).

### 3.  Counsel Disseminated Privileged Information in Violation of the Federal Rules of Civil Procedure.

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, if privileged information is produced in response to a subpoena, the party receiving it may not disclose it.  Rule 45(d)(2)(B) provides, in part, that when a party receives information subject to a claim of privilege, it "must not use or disclose the information until the claim is resolved." (emphasis added).  Despite knowing that much of the information was privileged, Chrysler's counsels' letter of September 22, 2009 clearly indicated that they were going to disclose the documents to a third party.  (See Skolnick Aff. Ex.C.).  This disclosure was in violation of Rule 45, and further exhibits Chrysler's counsels' disregard for Mr. Hecker's attorney-client privilege and the integrity of this proceeding.

### 4.  Even the Appearance of Impropriety is Sufficient to Warrant Disqualification.

"A party has an 'interest in a trial free from even the *risk* that confidential information has been unfairly used against it.'"  Arnold, 2004 WL 2203410 at *5 (quoting United States v. Agosto, 675 F.2d 965, 969 (8th Cir. 1982)) (emphasis in original).  Additionally, the Court has a "duty to maintain public confidence in the legal profession" and a "duty to insure the integrity of the judicial proceedings."  Id.  Accordingly, "[e]ven the appearance of impropriety may, under certain circumstances, require prompt remedial action by the court."  MMR/Wallace Power &

Industrial, Inc., 764 F.Supp. at 718. When the risk exists that privileged information may be unfairly used, disqualification is the appropriate remedial action. See Arnold, 2004 WL 2203410 at *13.

In the present case, Chrysler's counsel should have informed Ms. Bowser that she could not disclose privileged communications. See id. at *7 (citing FleetBoston Robertson Stephens, Inc. v. Innovex, Inc., 172 F.Supp.2d 1190, 1195 (D.Minn. 2001)). As a result of this failure, Chrysler's counsel obtained privileged documents. Once counsel obtained these privileged documents they had an affirmative ethical duty to return them unreviewed. Instead, they threatened to conduct their own improper privilege review, and disclosed the information to additional parties. Counsel has made no meaningful effort to protect Mr. Hecker's confidences. See id. at *8 (holding that when counsel made no effort to protect opposing party's confidences and thereby acquired confidential information Minnesota Rule of Professional Conduct 4.4 was violated).

Counsels' conduct certainly gives rise to the appearance of impropriety. Moreover, any suggestion that counsel has not gained an advantage rings hollow in light of "their undeniable interest in preserving any tactical advantage they may have garnered." MMR/Wallace Power & Industrial, Inc., 764 F.Supp. at 726. Thus any self-serving contention that they did not review the privileged information is of little value. See Arnold, 2004 WL 2203410 at * 8 ("the Court's concern that the privileged and confidential information was indeed disclosed and discussed, is not assuaged by [counsels'] assertions to the contrary"). Thus, disqualification of counsel is the only way to remove the threat of continuing taint from these proceedings.

B. Counsel Acquiesced in Violations of the Stored Communications Act and the Computer Fraud and Abuse Act.

Ms. Bowser surreptitiously copied and misappropriated emails and documents, many of

which were privileged, from Mr. Hecker's computer system. These actions were conducted in excess of her authority and for her own benefit. Her conduct undoubtedly implicates the Stored Communications Act and the Computer Fraud and Abuse Act. At least as early as the date of Ms. Bowser's deposition, Chrysler's counsel was put on notice of these improprieties. Not only has counsel refused to return the privileged information, but they have actively disseminated it to additional parties. Again, counsels' actions threaten to work a continuing taint on this litigation which can only be removed through their disqualification. Additionally, as these documents were obtained improperly, it is within the Court's power to preclude any of them from being entered into evidence. Pursuant to its inherent authority, "a court must be able to sanction a party that seeks to introduce improperly obtained evidence; otherwise the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct." Fayemi v. Hambrecht & Quist, Inc., 174 F.R.D. 319, 324 (S.D.N.Y. 1997).

### 1. Ms. Bowser Violated the Stored Communication Act, 18 U.S.C. § 2701, by Accessing Mr. Hecker's Emails.

Ms. Bowser's copying and theft of Mr. Hecker's email communications likely violated the Stored Communications Act (hereinafter "SCA"). The SCA provides both criminal and civil liability for one who improperly accesses emails. Section 2701 imposes criminal liability on anyone who:

(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or

(2) intentionally exceeds an authorization to access that facility;

and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

18 U.S.C. § 2701 (a)(1)(2). In addition to criminal liability, the SCA also provides a civil cause

of action. Under § 2707 one injured by a violation of the SCA may recover damages, including attorney's fees, from the party who violated the Act. See 18 U.S.C. § 2707.

Accordingly, "a person violates the SCA if she accesses an electronic communication service, or obtains an electronic communication while it is still in electronic storage, without authorization." Pure Power Boot Camp v. Warrior Fitness Boot Camp, 587 F.Supp.2d 548, 555 (S.D.N.Y. 2008). In Pure Power Boot Camp, an employer accessed her employee's personal email accounts and thereby copied and printed the employee's emails. Id. at 552. While the roles here are reversed, the actions are analogous. Ms. Bowser clearly exceeded any authority she may have had when she accessed and copied Mr. Hecker's emails for her own use.

Furthermore, in Pure Power Boot Camp, the Court noted that absent the violation of the SCA, all of the emails would have been subject to discovery. Id. at 569. Even so, as a sanction for the violation, the Court excluded all of the emails for anything other than impeachment purposes. Id. at 571. In the present case, excluding the emails would also be appropriate, but it is not a complete remedy due to the fact that counsel had access to so many privileged communications. See Cargill Inc., 2007 WL 1813762 at * 13 (noting that when counsel has learned privileged information, it cannot be unlearned). Consequently, disqualification of counsel would be a more appropriate remedy in this case.

### 2. Ms. Bowser Violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, by Accessing Mr. Hecker's Emails.

Ms. Bowser's copying and theft of Mr. Hecker's emails also likely violated the Computer Fraud and Abuse Act (hereinafter "CFAA"). The CFAA is primarily a criminal statute aimed broadly at "computer hacking." Condux International v. Haugum, 2008 WL 5244818 at * 1(D. Minn. 2008). It also provides a limited civil cause of action. See 18 U.S.C. 1030 (g). Although the statute criminalizes a wide array of conduct, the most relevant here is under § (a)(2)(C). That

section is violated when a person without proper authorization accesses a "protected computer" and thereby obtains information. See Condux International, at * 3. A "protected computer" is one that "is used in or affecting interstate of foreign commerce or communication." 18 U.S.C. 1030(e)(2)(B). A connection to the internet may be all that is necessary to fall within the definition of a "protected computer." In United States v. Trotter, 478 F.3d 918, (8th Cir. 2007), the court wrote that "[w]ith a connection to the internet, the . . . computers were part of a system that is inexorably intertwined with interstate commerce." Id. at 921 (internal quotation omitted).

The civil cause of action provided by § 1030(g) is more narrowly tailored than the criminal provisions. There is some disagreement, however, over just what the scope of the civil provision is. The District Court for the District of Minnesota has interpreted it quite narrowly, holding that "one cannot bring a civil action based on provisions other than § 1030(a)(5)." Cenveo Corp. v. Celumsolutions Software GMBH & Co KG, 504 F.Supp.2d 574, 580 (D.Minn. 2007)(citing McLean v. Mortg. One & Fin. Corp., 2004 WL 898440, at *2 (D.Minn)); but c.f. Theofel v. Farey-Jones, 359 F.3d 1066, 1078 (9th Cir. 2003) (holding that a violation of § 1030(a)(2)(C) supports a civil action).

Regardless of whether the civil provision applies, Ms. Bowser's conduct clearly implicates the criminal provisions. In accessing Mr. Hecker's emails and making copies for her own benefit, Ms. Bowser violated § 1030(a)(2)(C). Accordingly, the Court should sanction Chrysler's counsel, lest "the court, by allowing the wrongdoer to utilize the information in litigation before it, becomes complicit in the misconduct." Fayemi, 174 F.R.D., at 324.

## CONCLUSION

Based on the foregoing, Defendant's motion to disqualify counsel should be granted.


Respectfully Submitted,


Dated:     November 10, 2009     **SKOLNICK & SHIFF, P.A.**


    /e/ William R. Skolnick
William R. Skolnick #137182
LuAnn M. Petricka #18505X
527 Marquette Avenue South, #2100
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
petricka@visi.com

ATTORNEYS FOR DENNIS E. HECKER

In re:

**DENNIS E. HECKER**                                        Case No. 09-50779-RJK

                    **Debtor.**                                        **Chapter 7**

---

**CHRYSLER FINANCIAL**                                    ADV Pro. No. 09-05019
**SERVICES AMERICAS LLC,**

                    **Plaintiff,**

vs.

**DENNIS E. HECKER**

                    **Defendant.**

---

## AFFIDAVIT OF WILLIAM R. SKOLNICK

---

STATE OF MINNESOTA )
                                    ) ss.
COUNTY OF HENNEPIN )

    William R. Skolnick hereby deposes as follows:

    1.   That I am the attorney of record for Defendant Dennis E. Hecker ("Hecker"), and provide this Affidavit in support of Defendant's motion to disqualify. The facts contained herein are based on my personal knowledge.

    2.   The disc containing emails and documents provided by Cindy Bowser ("Bowser") to Chrysler 's lawyers contain in excess of 200,000 pages. I have reviewed only a few thousand of these documents due to the time constraints I am under in the various Hecker cases. However, I know for a fact that there are hundreds of attorney client privileged communications contained

on that disc, including privileged documents relating to the dispute with Chrysler.

3. After obtaining this information, I informed Mr. Howard Roin and Mr. Nicolas Nierengarten of the fact that indeed the emails stolen by Ms. Bowser including hundreds of privileged communications. In a telephone conference on October 28, 2009, I demanded the return of the disc and explained that the only reason I would limit my claim to "hundreds of privileged communications and not thousands" was due to the fact I have not had the time to go through all 200,000 plus pages of them. Mr. Roin and Mr. Nierengarten wanted to set up a "protocol" for their review of the information and stated they would prepare a privilege log. However, I informed them that their failure to return the disc and all copies was illegal and unethical. I explained that despite the magnitude of the task, it was only appropriate for me to prepare a privilege log. They disagreed.

4. I know that Chrysler's lawyers prepared a copy of the disc and sent it to the Trustee.

5. I do not know the identities of those that received the Bowser information from Chrysler nor how many copies of it were made and distributed. However, I have been advised that Chrysler has met with other counsel for adversarial plaintiffs to plan "strategy" and offered Chrysler's assistance in pursuing the other Plaintiffs' cases against Defendant.

6. That attached hereto are true and accurate reproductions of the following referenced Exhibits in Defendant's Memorandum in support of the motion to disqualify counsel:

|  |  |
|---|---|
| Exhibit A | The September 18, 2009 Mohrman letter to Nierengarten |
| Exhibit B | The September 18, 2009 Nierengarten letter to Mohrman. |
| Exhibit C | The September 22, 2009 Nierengarten letter to Mohrman. |
| Exhibit D | The September 24, 2009 Mohrman letter to Nierengarten. |
| Exhibit E | The November 2, 2009 Skolnick letter to Nierengarten. |

| Exhibit F | The November 2, 2009 Nierengarten letter to Skolnick. |
| Exhibit G | Accurate and true copies of pages from the Cindy Bowser deposition taken on September 16, 2009. |

7.  Attached hereto are the unpublished cases cited in Mr. Hecker's Memorandum of

Law in Support of Motion to Disqualify Counsel.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
William R. Skolnick

Subscribed and sworn before me
this 10th day of November, 2009.

_____
Notary Public

ZACHARY MEYER PUCHTEL
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

| In Re: | ) | |
|---|---|---|
| | ) | **Bankruptcy Case No: 09-50779-RJK** |
| **DENNIS E. HECKER,** | ) | |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| | ) | |
| **CHRYSLER FINANCIAL** | ) | **Adversary Proceeding No.: 09-05019** |
| **SERVICES AMERICAS LLC,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **DENNIS E. HECKER,** | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISQUALIFY COUNSEL

This matter came before the Court for hearing on November 25, 2009 upon
Defendant's Motion To Disqualify Counsel. William R. Skolnick appeared for
Defendant. Nicholas N. Nierengarten appeared for Plaintiff. Based on the parties'
submissions, as well as the oral arguments of counsel,

**IT IS HEREBY ORDERED**:

1.  Defendant's Motion to Disqualify Plaintiff's Counsel is GRANTED. The
    law firm of Gray, Plant, Mooty, Mooty & Bennett, P.A. and all of its
    attorneys are hereby disqualified from representing the Plaintiff in this
    case due to their ethical violations and tainting of the litigation.

2.  Defendant's Motion to Disqualify Plaintiff's Counsel is GRANTED. The

1

law firm of Mayer Brown LLP and all of its attorneys are hereby disqualified from representing the Plaintiff in this case due to their ethical violations and tainting of the litigation.

3.     Within five (5) days of this Order, Plaintiff's lawyers must disclose to this Court and Defendant's counsel the identities of everyone they provided a copy of the Bowser information.

4.     Within ten (10) days of this Order, Plaintiff's lawyers must recover all copies of the Bowser information along with affidavits of the recipients stating that all copies of the Bowser information were returned to the Defendant's counsel.

5.     Defendant is awarded the sum of $ _____ as and for attorney fees relating to this motion as a sanction for the conduct of Plaintiff's attorneys.

6.     In the event, the Plaintiff's counsel fails to fulfill all of their obligations in this Order, the Court will entertain a motion for further sanctions.

Dated:  November ___, 2009

_____
The Honorable Robert J. Kressel
Chief Judge
United States Bankruptcy Court

In re:

Dennis E. Hecker                                    BKY No. 09-50779 RJK

        Debtor.

---

Chrysler Financial Services
Americas LLC,

        Plaintiff,

                                Adversary No. 09-05019

v.

Dennis E. Hecker,

        Defendant.

---

## CERTIFICATE OF SERVICE

---

    **I HEREBY CERTIFY** that on November 10, 2009, I caused the following **NOTICE OF HEARING AND MOTION FOR AN ORDER DISQUALIFICATION OF COUNSEL; HECKER'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL; AFFIDAVIT OF WILLIAM R. SKOLNICK; PROPOSED ORDER ON DEFENDANT'S MOTION TO DISQUALIFY COUNSEL**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following listed below:

| | |
|---|---|
| US Trustee | ustpregion12.mn.ecf@usdoj.gov |
| Clinton E. Cutler | ccutler@fredlaw.com, mdavis@fredlaw.com |
| Randall L. Seaver | rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com |
| William F. Mohrman | mohrman@mklaw.com |
| Stephen F. Grinnell | stephen.grinnell@gpmlaw.com |
| Nicholas N. Nierengarten | nicholas.nierengarten@gpmlaw.com |

Dated: November 10, 2009        **SKOLNICK & SHIFF, P.A.**

/e/ William R. Skolnick

William R. Skolnick #137182
LuAnn M. Petricka #18505X
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
**ATTORNEY FOR DENNIS E. HECKER**