## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

## CHRYSLER FINANCIAL SERVICES LLC'S MOTION TO ESTABLISH PROTOCOL FOR REVIEW OF E-MAILS

TO:    Defendant and his counsel, William R. Skolnick, Skolnick & Shiff, 2100 Rand Tower, 527 Marquette Ave South, Minneapolis, MN 55402.

1.    Plaintiff Chrysler Financial Services Americas LLC ("Chrysler Financial"), by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

2.    The Court will hold a hearing on this Motion on November 25, 2009, at 10:30 a.m., or as soon thereafter as counsel can be heard, before the Honorable Robert J. Kressel, Courtroom 8 West, 300 South Fourth Street, Minneapolis, Minnesota.

3.    Any response to this Motion must be filed and served by delivery not later than November 20, 2009, which is three (3) days before the time set for the hearing

(excluding Saturdays, Sundays and holidays), or filed and served by mail not later than November 13, 2009 which is seven (7) days before the time set for the hearing (excluding Saturdays, Sundays and holidays).  UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.    This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § § 157 and 1334, Fed. R. Bankr. P. 5005, 7007, and 9013, and Local Rules 7007-1 and 9013-1-2.

5.    This Motion arises under Fed. R. Bankr. P. 7026 and 7037 and Fed. R. Civ. P. 26 and 37.  This Motion is filed under Fed. R. Bankr. P. 7007, 7026, 7037 and 9014, and Local Rules 7007-1, 7037-1 and 9013-1-2..

6.    Chrysler Financial moves the Court for an Order to establish a protocol to screen for privileged communications certain e-mails produced to Chrysler Financial in this adversary proceeding by a third party witness pursuant to subpoena.  The facts on which this Motion is based are set forth in Chrysler Financial's Memorandum of Law (the "Memorandum") accompanying and supporting this Motion.

7.    As more fully described in the Memorandum, and in accordance with Local Rule 7037-1, prior to bringing this Motion counsel for Chrysler Financial attempted on multiple occasions to confer and otherwise communicate with counsel for the Defendant in an effort to resolve and address the present dispute.  Unfortunately, Defendant has refused to engage Chrysler Financial in meaningful discussions regarding a mutually agreeable protocol for reviewing the e-mails in question, and the parties have accordingly reached an impasse.

8.     This Motion is based on the facts and law set forth in the Memorandum, the Affidavit of Nicholas N. Nierengarten and the exhibits thereto, and all of the files and proceedings herein.

9.     Chrysler Financial respectfully requests that this Court grant the Motion and enter its order establishing a protocol for reviewing the subject e-mails in the form proposed by Chrysler Financial.

WHEREFORE, Chrysler Financial respectfully requests that this Court grant the Motion and enter an order establishing a protocol for reviewing the subject e-mails.

Dated: November 10, 2009

GRAY, PLANT, MOOTY, MOOTY &
  BENNETT, P.A.

By  */e/ Stephen F. Grinnell*
    Nicholas N. Nierengarten (#79169)
    nicholas.nierengarten@gpmlaw.com
    Stephen F. Grinnell (#37928)
    stephen.grinnell@gpmlaw.com
    500 IDS Center
    80 South Eighth Street
    Minneapolis, Minnesota 55402
    Telephone: 612-632-3040
    Facsimile: 612-632-4040

    MAYER BROWN LLP
    Howard J. Roin (admitted pro hac vice)
    Stuart M. Rozen (admitted pro hac vice)
    71 South Wacker Drive
    Chicago, Illinois 60606
    Telephone: 312-782-0600
    Facsimile: 312-701-7711

GP:2672509 v2

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | |
| AMERICAS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 09-05019 |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF CHRYSLER FINANCIAL IN SUPPORT OF MOTION TO ESTABLISH PROTOCOL FOR REVIEW OF E-MAILS

Pursuant to a subpoena, Plaintiff Chrysler Financial Services Americas LLC obtained from Cindy Bowser—a former employee of one of the businesses formerly controlled by Debtor-Defendant Dennis E. Hecker ("Hecker")—a collection of e-mails that she received while working as Hecker's assistant. Recognizing that some of those e-mails could be subject to an attorney-client privilege claim, Chrysler Financial has not examined the e-mails since it received them. Chrysler Financial did, however, provide a disc containing the e-mails to Hecker and ask that Hecker prepare a privilege log identifying the e-mails over which he claims attorney-client privilege. Hecker agreed to do so, but he never delivered the promised privilege log. Now, Hecker insists that Chrysler Financial turn over to him its copy of the disc containing the Bowser e-mails and claims that Chrysler Financial's attorneys have somehow breached their ethical

1

duties and violated federal criminal laws by retaining the e-mails pending resolution of the privilege issues.

Hecker is wrong. Chrysler Financial and its attorneys have acted legally and ethically in handling the Bowser e-mails. Hecker has cited no legal or ethical rules to contrary. Chrysler Financial and its attorneys have not looked at the e-mails. And they have repeatedly sought guidance from Hecker as to which e-mails are potentially privileged. Moreover, Hecker's unproven claim that Bowser acted wrongfully in retaining the e-mails after resigning does not somehow protect the e-mails from discovery. The relevance of the e-mails to this suit is undisputed. Chrysler Financial thus is entitled to discovery of the e-mails, subject to attorney-client privilege claims.

Because Hecker now refuses to prepare the necessary privilege log unless and until Chrysler Financial turns over its copy of the Bowser e-mail disc, Chrysler Financial asks the Court to establish a protocol for conducting a privilege review that will allow Chrysler Financial to examine the non-privileged Bowser e-mails. In particular, Chrysler Financial proposes that potentially privileged e-mails be electronically identified by searching for the names and e-mail addresses of Hecker's lawyers and that Hecker then prepare a privilege log for any of those identified e-mails over which he claims an attorney-client privilege. The procedures proposed by Chrysler Financial will ensure that relevant discoverable material is available for timely use in the pending litigation, while at the same time preserving Hecker's ability to claim attorney-client privilege for identified materials.

## BACKGROUND

In this litigation, Chrysler Financial alleges that $83 million of Hecker's debt is nondischageable because: (1) Hecker misappropriated over $67 million in proceeds from vehicle

sales owed and belonging to Chrysler Financial (Compl. ¶¶ 26-34); and (2) Hecker owes Chrysler Financial over $15 million that he obtained by using a forged offer letter to defraud Chrysler Financial into financing the purchase of certain misrepresented Hyundai vehicles (Compl. ¶¶ 14-25). In the course of discovery for its litigation against Hecker, Chrysler Financial subpoenaed Cindy Bowser, a former assistant to Hecker, to obtain her deposition and any relevant documents in her possession. 9/8/09 Subpoena (Ex. 2). Chrysler Financial served Hecker's attorney with the subpoena and the related deposition notice and document request (9/8/09 e-mail from Nierengarten (Ex. 3)), and Hecker asserted no objection.

In response to the subpoena, on September 10, 2009, Bowser made available (among other items) an electronic folder of e-mails and other electronic information stored on her laptop computer, which she identified as being responsive to Chrysler Financial's subpoena. 9/10/09 e-mail from Bowser (Ex. 4). The very next day, counsel for Chrysler Financial alerted Hecker's attorney that Bowser had produced documents and e-mails in response to Chrysler Financial's subpoena and offered to make the production available to Hecker's attorney. 9/11/09 e-mail from Nierengarten (Ex. 5). On September 14, 2009, Hecker's attorney requested a copy of the production, which he retrieved the next day. 9/14/09 e-mail from Nierengarten (Ex. 6); Nierengarten Decl. ¶ 8. Because it understood that the emails (or at least some of them) were to or from Hecker, but not knowing more about them, Chrysler Financial decided to act cautiously in order to ensure that any information subject to attorney-client privilege would be protected. Accordingly, neither Chrysler Financial nor its attorneys reviewed the e-mails. Nierengarten Decl. ¶ 6.

Bowser's deposition went forward on September 16, 2009, after Hecker failed to stop it with a last minute motion to stay discovery on Fifth Amendment grounds. At her deposition,

Bowser testified that she was an addressee on all of the e-mails she had produced. Bowser Dep. 119, 147 (Ex. 7). She explained that IT personnel for Hecker's businesses set up her e-mail account so that she would receive copies of all of the e-mails sent by or to Hecker. *Id.* at 86, 119. Bowser recalled that among the e-mails she produced were ones containing "a variety of Hyundai information" suggesting "something is not right here." *Id.* at 114; see also *id.* at 118 (e-mails contained "Chrysler information" and "Hyundai information"); *id.* at 138 (started collecting e-mails with things "that I didn't think were right" when "things started to happen with Chrysler"). Not having reviewed the produced e-mails, however, Chrysler Financial did not ask Bowser about any of those obviously relevant e-mails.

Bowser further testified that, in the spring of 2009 (while she was still employed by one of Hecker's companies), she copied the e-mails from her desktop computer to a flash drive and from the flash drive to her personal laptop. *Id.* at 120-21, 147-48. Although she stated that no one told her she could reveal attorney-client privileged records to third parties, she said that she did not know whether any of the e-mails contained such records. *Id.* at 131-32. And she offered no testimony that she received any instruction prohibiting her from retaining or disclosing e-mails that she received at work.

At Bowser's deposition, Hecker's attorney "instructed" counsel for Chrysler Financial to not look at the Bowser e-mails, pledging "I will instruct you exactly which documents [are privileged], and I'm going to demand that they [any privileged documents] be returned to us." *Id.* at 132. Two days later, on September 18, 2009, Hecker's attorney demanded that Chrysler Financial "return" the disc containing the Bowser e-mails to his office, claiming that Bowser supposedly admitted that the e-mails "were illegally taken from the Hecker entities." 9/18/09 Ltr. from Mohrman (Ex. 8). He also reiterated that Chrysler Financial should not review the e-

mails "until a privilege review can be conducted." *Id.* Counsel for Chrysler Financial responded the same day, pointing out that Bowser never testified that the documents were illegally taken or even that they contained privileged material. 9/18/09 Ltr. from Nierengarten (Ex. 9). Chrysler Financial's counsel further requested that Hecker either produce a privilege log by September 25 or supply a list of attorneys and law firms representing Hecker so that Chrysler Financial could electronically screen the e-mails for potentially privileged documents. *Id.* As the privilege issue was not resolved, Chrysler Financial and its attorneys continued to refrain from any substantive review of the emails. Nierengarten Decl. ¶ 10.

It was not until almost a week later, on September 24, that Hecker's attorney replied to Chrysler Financial's letter, representing that some of the Bowser e-mails contained privileged information and stating that "we are in the process of reviewing the documents at this time and I anticipate being able to identify the privileged documents by the end of next week or the following week." 9/24/09 Ltr. from Mohrman (Ex. 10). Hecker's counsel also repeated his request that Chrysler Financial not review the Bowser e-mails. *Id.* Chrysler Financial and its attorneys continued to refrain from examining the Bowser e-mails (or even screening them to identify potentially privileged communications). Nierengarten Decl. ¶ 12. But although it has been more than seven weeks since Hecker received the Bowser emails, and a month since his counsel was supposed to deliver a privilege log, the promised privilege log was never delivered to Chrysler Financial. *Id.* ¶ 21.

Meanwhile, the bankruptcy trustee had subpoenaed Chrysler Financial, asking for production by October 7, 2009 of "[a]ll CDs, hard drives and all other documents or electronic storage devices containing any e-mail records or transmissions to which Dennis E. Hecker was a party from January 1, 2008 to date." 9/17/09 Subpoena (Ex. 14). On September 22, 2009,

counsel for Chrysler Financial alerted Hecker's attorneys to the subpoena, advising that "as it is required to do, Chrysler Financial intends to comply with the Subpoena absent entry of an order prohibiting it from doing so." 9/22/09 Ltr. from Grinnell (Ex. 15). Hecker did not respond to that letter, apparently made no effort to obtain an order prohibiting Chrysler Financial from producing the Bowser e-mails, and no such order was entered. Chrysler Financial therefore complied with the Trustee's subpoena and produced the e-mails on October 13, 2009, but it specifically advised the Trustee that Hecker had previously claimed that some of the e-mails were privileged even though he failed to object to the subpoena. 10/13/09 Ltr. from Nierengarten (Ex. 16).

In a series of communications between October 23, 2009 and November 2, 2009, a new attorney for Hecker—William Skolnick—abandoned his predecessor's promise to prepare a privilege log so that Chrysler Financial could exclude from its review any potentially privileged Bowser e-mails. 11/2/09 Fax Ltr. from Skolnick (Ex. 12); Nierengarten Decl. ¶¶ 13-14. Instead, he stated that he will not prepare a privilege log until Chrysler Financial turns over its copy of the disc containing the e-mails. 11/2/09 Fax Ltr. from Skolnick (Ex. 12). Hecker's attorney also claimed that the disc contains "hundreds and possibly thousands" of e-mails and attachments protected by the attorney-client privilege. *Id.* And most ominously, Hecker's counsel threatened Chrysler Financial's attorneys with criminal and ethical liability for allegedly secretly obtaining the e-mails, supposedly knowing Bowser stole them from her employer, and then improperly giving them to the Trustee, all purportedly in violation of largely unspecified ethical duties and federal criminal laws. *Id.* As counsel for Chrysler Financial noted in a November 2, 2009 letter

to Hecker's counsel, that account of Chrysler Financial's actions is complete fiction. 11/2/09 Ltr. from Nierengarten (Ex. 13).[1]

First, Chrysler Financial did not keep the e-mails a secret. It served on Hecker's attorney the subpoena request to Bowser for electronically stored information. 9/8/09 e-mail from Nierengarten (Ex. 3). And the day after Bowser produced the e-mails, Chrysler Financial made them available to Hecker's attorney. 9/10/09 e-mail from Bowser (Ex. 4); 9/11/09 e-mail from Nierengarten (Ex. 5).

Second, whether Bowser "stole" the e-mails is still very much disputed. The e-mails were sent to Bowser. Bowser Dep. 119, 147 (Ex. 7). And no evidence has been offered (from Bowser's deposition or otherwise) that she was prohibited from retaining the e-mails or turning them over if subpoenaed.

Third, Chrysler Financial produced the Bowser e-mails to the Trustee because it was required to do so by the trustee's subpoena. And Chrysler Financial told Hecker's attorneys that it would do so unless Hecker obtained a court order prohibiting production of the e-mails. 9/22/09 Ltr. from Grinnell (Ex. 15). Hecker and his attorneys chose not to seek and did not obtain such an order.

Fourth, counsel for Chrysler Financial has not remotely breached any ethical standard or violated any federal criminal law. Mr. Skolnick has refused to identify any ethical duty counsel supposedly breached, but he did claim that Chrysler Financial's counsel violated the Stored

---

[1] Since then, moreover, Hecker's attorney has been broadcasting—to the Trustee and other parties that he (wrongly) believes to have received the Bowser e-mails from Chrysler Financial—his completely unfounded allegations that Chrysler Financial possession and dissemination of the Bowser e-mails is "illegal and unethical." 11/9/09 Ltr. to Burton (Ex. 19); 11/9/09 Ltr. to Leventhal (Ex. 20).

Communications Act or the Electronic Communications Privacy Act.[2] As we show below, that claim is meritless. Chrysler Financial's counsel's conduct has been perfectly lawful and appropriate. Contrary to Hecker's attorney's speculative and unsupported accusations, Chrysler Financial's counsel has never reviewed the Bowser e-mails and has offered Hecker numerous opportunities to identify and protect any e-mails containing attorney-client privileged material. Nierengarten Decl. ¶ 21; 9/11/09 e-mail from Nierengarten (Ex. 5); 9/18/09 Ltr. from Nierengarten (Ex. 9); 9/22/09 Ltr. from Grinnell (Ex. 15).

Hecker's attorney's rhetoric aside, there is no basis for Hecker's demand that Chrysler Financial turn over the disc containing the Bowser e-mails. The only legitimate concern Hecker ever raised—which Chrysler Financial has always respected—is the protection of attorney-client privileged material. And because Hecker refuses to produce a privilege log, that concern is best and most expeditiously addressed through a protocol under which the e-mails would be electronically searched for attorney and law firm names and e-mail addresses, the identified e-mails would be electronically segregated, and Hecker would prepare a privilege log for any of the identified e-mails that actually contain privileged material.

## ARGUMENT

### I.     Chrysler Financial Is Entitled To Have The Bowser E-mails.

There is no merit to Hecker's claim that Chrysler Financial must return the disc containing the Bowser e-mails. Subject to Hecker's attorney-client privilege claims—which are properly addressed through the protocol proposed in Part II below—Chrysler Financial has every right to possess those e-mails.

---

[2] In an October 28 telephone call, Mr. Skolnick claimed that counsel had violated 18 U.S.C. § 2701, the Stored Wire and Electronic Communications Act. Nierengarten Decl. ¶ 14. In his November 2 letter recounting that telephone call, however, Mr. Skolnick asserted that he warned that counsel had potential criminal and civil responsibility under the Electronic Communications Privacy Act, 18 U.S.C. § 2511. 11/2/09 fax Ltr. from Skolnick (Ex. 12).

First, the Bowser e-mails are plainly discoverable in this litigation. Under the plain language of Fed. R. Civ. P. 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Bowser expressly testified that the e-mails contained "Chrysler information" (Bowser Dep. 118 (Ex. 7)) and "a variety of Hyundai information" suggesting "something is not right here" (*id.* at 114)—information plainly relevant to at least Chrysler Financial's claim regarding Hecker's forgery of a Hyundai letter offer. Hecker has never denied the relevance of the e-mails. And Hecker has never claimed that all of the e-mails are privileged. Chrysler Financial thus may obtain discovery of the Bowser e-mails that are not privileged.

For that reason, it does not matter that Chrysler Financial obtained the e-mails from someone who Hecker believes "stole" the e-mails—even if Hecker, rather than the entity that employed Bowser, could complain about the alleged theft. Hecker would have to produce the e-mails himself. And we know that he has them because Chrysler Financial gave them to his attorneys and Bowser testified that she never deleted any work e-mails. But, of course, experience teaches that Hecker cannot be trusted to fulfill his discovery obligations. Hiding behind a motion to stay discovery based on his alleged Fifth Amendment rights, Hecker refused to properly respond to Chrysler's discovery requests for months. 9/28/09 Hecker Discovery Resps. (Ex. 17). Then, after the motion to stay was denied, Chrysler Financial's counsel contacted Hecker's counsel and requested that Hecker provide substantive responses to its written discovery and responsive documents by October 30, 2009. Nierengarten Decl. ¶ 13. Hecker's counsel committed to get back Chrysler Financial's counsel by November 2, 2009. *Id.* He did not do so and to this day has not provided any substantive responses to Chrysler

Financial's discovery or any documents. *Id.* ¶ 22.[3]  Demanding the disc containing the Bowser

e-mails is nothing more than a continuation of Hecker's efforts to prevent Chrysler Financial

from discovering the information that it is entitled to discover.

Second, Chrysler Financial has done everything required, and more, to respect Hecker's

attorney-client privilege.  In order to ensure that Hecker was properly informed of its Bowser

discovery, Chrysler Financial served a subpoena on Bowser, copying Hecker's attorney.  9/8/09

Subpoena (Ex. 2); 9/8/09 e-mail from Nierengarten (Ex. 3).  Then, after Bowser produced the e-

mails, Chrysler Financial immediately made them available to Hecker's attorney.  9/10/09 e-mail

from Bowser (Ex. 4); 9/11/09 e-mail from Nierengarten (Ex. 5).  Since then, Chrysler Financial

and its attorneys have not reviewed any of the e-mails while they await the long-promised and

never-delivered privilege log that would allow them to return, sequester, or destroy any allegedly

privileged e-mails.  Nierengarten Decl. ¶ 21; Bowser Dep. 132 (Ex. 7); 9/24/09 Ltr. from

Mohrman (Ex. 10).

Federal Rule of Civil Procedure 26(b)(5)(B) controls what a party that receives allegedly

privileged information must do.  In relevant part, that rule provides, "If information produced in

discovery is subject to a claim of privilege . . . , the party making the claim may notify the party

that received the information of the claim and the basis for it.  After being notified, a party must

promptly return, sequester, or destroy the specified information and any copies it has."  As the

advisory committee notes to the rule explain, the required notice "should be as specific as

possible in identifying the information and stating the basis for the claim."  Fed. R. Civ. P.

26(b)(5), adv. comm. notes, 2006 Amend.  Because Hecker has yet to identify any privileged e-

---

[3]  Based on similar obstruction of discovery, the Judge overseeing Mr. Hecker's dissolution
proceeding recently admonished Mr. Hecker for his "failure to provide adequate information
about his complete financial picture" notwithstanding a court order to so and required him to do
so ("sworn to under oath") on pain of sanctions.  11/6/09 Order (Ex. 21).

mails or the basis for any privilege claim with any specificity whatsoever, it is extremely doubtful that Hecker has even provided the notice that would trigger Chrysler Financial's obligation to return, sequester, or destroy any Bowser e-mails. But even if Hecker did supply the required notice, Chrysler Financial has satisfied any Rule 26(b)(5)(B) obligations by sequestering the e-mails pending receipt of a privilege log and resolution of Hecker's attorney-client privilege claims.[4]

Finally, Hecker's counsel's accusation that Chrysler Financial somehow breached ethical duties and violated federal criminal laws in handling the Bowser e-mails is meritless. The careful approach taken by Chrysler Financial's attorneys to review and disclosure of those e-mails belies the unsupported charge that they breached unspecified ethical duties. Nor is there any merit to Hecker's attorney's assertion that Chrysler Financial somehow violated either the Stored Wire and Electronic Communications Act (SWECA) or the Electronic Communications Privacy Act (ECPA).

The SWECA makes it a crime to "(1) intentionally access[ ] without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed[ ] an authorization to access that facility; and thereby obtain[ ], alter[ ], or prevent[ ] authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a). Obviously, neither Chrysler Financial nor its attorneys did any of those things—they never accessed a facility through which an electronic communication service

---

[4] Chrysler Financial, of course, did produce the Bowser e-mails to the bankruptcy trustee, but it did so pursuant to a subpoena and after Hecker did not even try to stop production of the e-mails despite having notice of the subpoena and an opportunity to object. 9/22/09 Ltr. from Grinnell (Ex. 15); 10/13/09 Ltr. from Nierengarten (Ex. 16). Hecker thereby waived any objection to Chrysler Financial's production of the Bowser e-mails to the bankruptcy trustee. *See, e.g.,* *Uzzell v. Teletech Holdings, Inc.*, 2007 WL 4358315, at *1 (W.D. Wash. Dec. 7, 2007); *Ins. Corp. of Hanover v. Vantage Prop. Mgmt., L.L.C.*, 2006 WL 1131759, at *1 (W.D. Mo. Apr. 26, 2006).

is provided. There also is no reason to think that Bowser violated the SWECA—she had authorization to access her own e-mails. Bowser Dep. 86, 119, 147 (Ex. 7); *see, e.g.*, *Lasco Foods, Inc. v. Hall & Shaw Sales, Marketing & Consulting, LLC*, 600 F. Supp. 2d 1045, 1049 (E.D. Mo. 2009) (employees did not violate SCA where employer granted them "virtually unrestricted access to its information"); *Sherman & Co. v. Salton Maxim Housewares, Inc.*, 94 F. Supp. 2d 817 (E.D. Mich. 2000) ("[w]here a party consents to another's access to its computer network, it cannot claim that such access was unauthorized."); *Am. Computer Trust Leasing v. Jack Farrell Implement Co.*, 763 F. Supp. 1473, 1495 (D. Minn. 1991) ("the defendants consented to [counterclaim-defendant's] access and cannot now claim that such access was unauthorized"). Moreover, Bowser fits well within the express SWECA exception for conduct "by a user of [a wire or electronic] service with respect to communications of or intended for that user" (18 U.S.C. § 2701(c)(2)), given that she was a user of the e-mail system and an intended recipient of the produced e-mails. Bowser Dep. 86, 119, 147 (Ex. 7).

The ECPA makes it a crime to "intentionally intercept[ ], endeavor[ ] to intercept, or procure[ ] any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The statute also makes it a crime to "intentionally disclose[ ], or endeavor[ ] to disclose, to any person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection." 18 U.S.C. § 2511(1)(c). The key preliminary question under the ECPA is whether the accused "intercepted" the communication. In cases involving the alleged interception of e-mails, courts have uniformly held that a prohibited interception occurs only if the e-mail is obtained, captured, or redirected at the same time the e-mail is being transmitted. *See, e.g.*, *Fraser v. Nationwide*

*Mut. Ins. Co.*, 352 F.3d 107, 113 (3d Cir. 2004) ("Every circuit court to have considered the matter has held that an 'intercept' under the ECPA must occur contemporaneously with transmission."); *United States v. Steiger*, 318 F.3d 1039, 1050 (11th Cir. 2003) ("a contemporaneous interception—*i.e.*, an acquisition during 'flight'—is required to implicate the [ECPA] with respect to electronic communications."); *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 462 (5th Cir. 1994) ( "Congress did not intend for 'intercept' to apply to 'electronic communications' when those communications are in 'electronic storage.'").  That means Chrysler Financial did not "intercept" any of the Bowser e-mails and that Bowser could have done so only when those e-mails came to her as a result of the way Hecker's IT department set up the e-mail system.

Moreover, any such "interception" of e-mails by Bowser could not violate the ECPA. The statute expressly provides:

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person *is a party to the communication* or where one of the parties to the communication has given *prior consent to such interception* unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added).  As an intended recipient of the e-mails, Bowser qualifies as "a party to the communication."  And since every indication is that Hecker knew about and consented to her receipt of the e-mails—Bowser was Hecker's assistant, Hecker's company's IT department set up the e-mail system so that Bowser would receive Hecker's e-mails, and Hecker has never denied knowledge or consent—a party to the communications gave "prior consent to such interception."  *See United States v. Corona-Chavez*, 328 F.3d 974, 978 (8th Cir. 2003); *United States v. Horr*, 963 F.2d 1124, 1125 (8th Cir. 1992).  Because Bowser

thus did not violate the ECPA, any disclosure of the Bowser e-mails by Chrysler Financial could not have violated the ECPA.

Under the ECPA and the SWECA, moreover, "[g]ood faith reliance on a subpoena is a complete defense." *McCready v. eBay, Inc.*, 453 F.3d 882, 892 (7th Cir. 2006); *see* 18 U.S.C. §§ 2520(d)(1) & 2707(e). Both Bowser and Chrysler Financial produced the Bowser e-mails in response to and in reliance on valid subpoenas to which Hecker has never objected. 9/8/09 Subpoena (Ex. 2); 9/17/09 Subpoena (Ex. 14). For numerous reasons, therefore, Chrysler Financial plainly did not violate the SWECA or the ECPA.

In sum, there is no basis for requiring Chrysler Financial to give up possession of the disc containing the Bowser e-mails.

## II. Chrysler Financial's Proposed Protocol Is The Best And Most Expeditious Way To Resolve Hecker's Attorney-Client Privilege Claims.

Since it obtained the Bowser e-mails, Chrysler Financial has consistently acknowledged that Hecker has the right to protect from discovery any e-mails that contain attorney-client privileged material. *See, e.g.*, 9/18/09 Ltr. from Nierengarten (Ex. 9). And it has patiently waited eight weeks for Hecker to supply the privilege log that his attorneys have more than once promised to provide in accord with Fed. R. Civ. P. 26(b)(5)(B). Bowser Dep. 132 (Ex. 7); 9/24/09 Ltr. from Mohrman (Ex. 10). Reneging on those promises, Hecker's attorney now flatly refuses to provide the necessary privilege log until some unidentified time after Chrysler Financial gives up possession of the disc containing the Bowser e-mails. 11/2/09 Fax Ltr. from Skolnick (Ex. 12). Reluctantly, Chrysler Financial has concluded that the time has come for the Court to impose a protocol for preparing the necessary privilege log and reviewing the Bowser e-mails.

Chrysler Financial proposes the following protocol:

1.     Within 7 days after entry of the order establishing the protocol, Hecker will provide to Chrysler Financial the names and e-mail addresses of all lawyers and law firms that represented Hecker during the period in question;

2.     Without examining content of any Bowser e-mail, Chrysler Financial will then have a third-party vendor electronically search the Bowser e-mails to identify e-mails addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker.

3.     After that search process is complete, the third-party vendor will provide to Hecker and Chrysler Financial a list of the Bowser e-mails that are addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker.

4.     Chrysler Financial may examine the content Bowser e-mails that are not addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker.

5.     If Chrysler Financial discovers information protected by the attorney-client privilege in any of the Bowser e-mails that are not addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker, it will comply with the rules governing inadvertent disclosures.

6.     Pending the resolution of Hecker's attorney-client privilege claims, Chrysler Financial will not examine the content of the Bowser e-mails that are addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker.

7.     Within 14 days after Hecker receives the list of the Bowser e-mails that contain the lawyer and law firm names and e-mail addresses supplied by Hecker, Hecker will provide to Chrysler Financial a privilege log identifying the Bowser e-mails that Hecker claims are protected by the attorney-client privilege.

7.	Chrysler Financial may examine the content of any Bowser e-mails that do not appear on the privilege log supplied by Hecker.

8.	Within 7 days after it receives the privilege log supplied by Hecker, Chrysler Financial will return, continue to sequester, or destroy the Bowser e-mails identified on the privilege log.

9.	At any time after it receives the privilege log supplied by Hecker, Chrysler Financial may challenge Hecker's claim of attorney-client privilege over any Bowser e-mails identified on the privilege log.

With this protocol in place, Hecker's attorney-client privilege will be protected and Chrysler Financial will receive the discovery to which it is entitled. Plus, the protocol promises to resolve Hecker's attorney-client privilege claims expeditiously and with certainty. The proposed protocol is the most appropriate solution for the parties' dispute over the Bowser e-mails. *See generally* Fed. R. Evid. 502(b), adv. comm. notes ("Depending on the circumstances, a party that uses advanced analytical software applications and linguistic tools in screening for privilege and work product may be found to have taken 'reasonable steps' to prevent inadvertent disclosure."); *Medtronic Sofamor Danek, Inc. v. Michelson*, 229 F.R.D. 550, 559-60 (W.D. Tenn. 2003) (imposing discovery protocol involving electronic screening for privileged material).

## III.	The Parties Have Conferred And Attempted To Resolve Their Differences, But They Have Not Been Able To Do So.

In compliance with Local Rule 7037-1, Chrysler Financial makes its motion to establish a protocol for reviewing the Bowser e-mails only after the parties have conferred and attempted to resolve their differences on the subject. At the same time that it served the Bowser subpoena on Hecker, Chrysler Financial proposed a discovery conference to be held following Bowser's deposition. 9/8/09 e-mail from Nierengarten (Ex. 3). Hecker's attorney refused and then stated

at Bowser's deposition that he would "instruct" Chrysler Financial on which Bowser e-mails were privileged and would confirm his position on the discovery conference in writing. Bowser Dep. 132-33 (Ex. 7). Over the following weeks, the parties conferred on the subject through letters (*see* pp. 4-5, *supra*), and, for a time, it appeared that the parties were in agreement that Hecker would promptly supply a privilege log. Bowser Dep. 132 (Ex. 7); 9/24/09 Ltr. from Mohrman (Ex. 10). But when no privilege log was provided, Chrysler Financial's lawyers again requested a discovery conference. 10/22/09 e-mail from Nierengarten (Ex. 11). A pair of telephone discussions and an exchange of letters made it clear that Hecker's newest lawyer did not intend to supply the promised privilege log, but instead had chosen to inflexibly demand "return" of the Bowser e-mails and threaten Chrysler Financial with criminal, civil, and ethical charges. 11/2/09 Fax Ltr. from Skolnick (Ex. 12); *see* pp. 6-7, *supra*. Despite the efforts to confer and agree about the handling of the Bowser e-mails, the parties are at an impasse.

## CONCLUSION

For the foregoing reasons, Chrysler Financial respectfully asks that the Court grant its motion and order the parties to follow the discovery protocol proposed by Chrysler Financial.

Dated: November 10, 2009

GRAY, PLANT, MOOTY, MOOTY &
  BENNETT, P.A.


By  __/e/  Stephen F. Grinnell__
    Nicholas N. Nierengarten (#79169)
    nicholas.nierengarten@gpmlaw.com
    Stephen F. Grinnell (#37928)
    stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402
Telephone:  612-632-3040
Facsimile:  612-632-4040

MAYER BROWN LLP
    Howard J. Roin (admitted pro hac vice)
    Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois  60606
Telephone:  312-782-0600
Facsimile:   312-701-7711

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff. | ) |
| Plaintiff, | ) Adv. Pro. No.  09-5019 |
| v. | ) |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | |
| Defendant. | |

---

## CERTIFICATE OF SERVICE

I, Stephen F. Grinnell , hereby certify that on November 10, 2009, I caused the following:

1. Chrysler Financial Services LLC's Motion to Establish Protocol for Review of E-Mails;
2. Memorandum of Chrysler Financial in Support of Motion to Establish Protocol for Review of E-Mails;
2. Declaration of Nicholas N. Nierengarten; and
3. Proposed Order Establishing Protocol for Review of E-Mails.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | |
|---|---|
| William R. Skolnick | wskolnick@skolnick-shiff.com |
| Matthew R. Burton | mburton@losgs.com |
| Randall L. Seaver | rlseaver@fullerseaverramette.com, |
| | rseaver@ecf.epiqsystems.com |

I further certify that I caused a copy of the foregoing documents to be mailed by first class mail, postage paid, to the following non-ECF participants:

Dennis E. Hecker
P.O. Box 1017
Crosslake, MN 56442

Dated:  November 10, 2009

GRAY, PLANT, MOOTY
  MOOTY & BENNETT, P.A.

  /e/  Stephen F. Grinnell
Stephen F. Grinnell (#37928)

GP:2675741 v1

2

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

## ORDER ESTABLISHING
## PROTOCOL FOR REVIEW OF E-MAILS

At Minneapolis, Minnesota, this ____ day of November, 2009.

The above-entitled matter came on before the Court on a motion to Establish Protocol for Review of E-mails ("Motion") filed by Plaintiff Chrysler Financial Services Americas LLC ("Chrysler Financial"). Appearances were noted in the record.

Based upon the Motion, the arguments of counsel and all of the files, records and proceedings herein, it is hereby ORDERED:

1. The Motion is granted and Defendant Dennis E. Hecker ("Hecker") and Chrysler Financial shall follow the following procedures with respect to screening and reviewing the Bowser emails (as defined in the Motion):

(A)     Within 7 days after the entry of this Order, Hecker shall provide to Chrysler Financial the names and e-mail addresses of all lawyers and law firms that represented Hecker during the period in question;

(B)     Without examining content of any Bowser e-mail, Chrysler Financial shall then have a third-party vendor electronically search the Bowser e-mails to identify e-mails addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker;

(C)     After that search process is complete, the third-party vendor shall provide to Hecker and Chrysler Financial a list of the Bowser e-mails that are addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker.

(D)     Chrysler Financial may examine the content of Bowser e-mails that are not addressed to from the lawyer and law firm names and e-mail addresses supplied by Hecker;

(E)     If Chrysler Financial discovers information protected by the attorney-client privilege in any of the Bowser e-mails that are not addressed to from the lawyer and law firm names and e-mail addresses supplied by Hecker, it shall comply with the rules governing inadvertent disclosures;

(F)     Pending the resolution of Hecker's attorney-client privilege claims, Chrysler Financial shall not examine the content of the Bowser e-mails that are addressed to or from the lawyer and law firm names and e-mail addresses supplied by Hecker;

(G)     Within 14 days after Hecker receives the list of the Bowser e-mails that are not addressed to from the lawyer and law firm names and e-mail addresses supplied

by Hecker, Hecker shall provide to Chrysler Financial a privilege log identifying the Bowser e-mails that Hecker claims are protected by the attorney-client privilege;

(H)     Chrysler Financial may examine the content of any Bowser e-mails that do not appear on the privilege log supplied by Hecker;

(I)     Within 7 days after it receives the privilege log supplied by Hecker, Chrysler Financial shall return, continue to sequester, or destroy the Bowser e-mails identified on the privilege log; and

(J)     At any time after it receives the privilege log supplied by Hecker, Chrysler Financial may challenge Hecker's claim of attorney-client privilege over any Bowser e-mails identified on the privilege log.

Dated: November __, 2009                    BY THE COURT:


                                            _____
                                            Robert J. Kressel
                                            United States Bankruptcy Judge