IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-50779 |
| DENNIS E. HECKER, | ) | Chapter 7 |
| Debtor. | ) | Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC, | ) | |
| Plaintiff, | ) | Adv. Pro. No.: 09-05019 |
| v. | ) | |
| DENNIS E. HECKER, | ) | |
| Defendant. | ) | |

**DECLARATION OF NICHOLAS N. NIERENGARTEN**

I, Nicholas N. Nierengarten, declare and state as follows:

1. I am an attorney with the law firm of Gray, Plant, Mooty, Mooty & Bennett, P.A., and am one of the attorneys representing Plaintiff Chrysler Financial Services Americas LLC ("Chrysler Financial") in the above-entitled action.

2. Chrysler Financial noticed the deposition of Cindy Bowser, a former employee of Mr. Hecker's companies who had been an assistant to Mr. Hecker, which included a subpoena for the production of documents. Attached hereto as Exhibit 1 is a true and correct copy of a September 8, 2009 letter from me to William F. Mohrman,

Mr. Hecker's counsel at the time, with the Amended Notice of Taking Deposition and Request for Production of Documents relating to Ms. Bowser attached.

3. Attached hereto as Exhibit 2 is a true and correct copy of a letter from me to Ms. Boswer dated September 8, 2009 with copies to Mr. Mohrman and other professionals in his office working on the matter, with attached Subpoena *Duces Tecum* In An Adversary Proceeding ("Subpoena").

4. Attached hereto as Exhibit 3 is a true and correct copy of my email to Mr. Mohrman dated September 8, 2009 forwarding a copy of my letter to Ms. Bowser and attached Subpoena.

5. Attached hereto as Exhibit 4 is a true and correct copy of an email string relating to the Subpoena starting with an email from Ms. Bowser to me dated September 10, 2009.

6. On September 10, 2009, Ms. Bowser made available (among other items) her laptop computer, which she identified as containing an electronic folder of emails and other electronic information responsive to the Subpoena. Chrysler Financial made arrangements to have the identified electronic folder copied by an outside vendor. Because the contents of the electronic folder were unknown, Chrysler Financial and its counsel did not review any of the emails or other electronic information.

7. Attached hereto as Exhibit 5 is a true and correct copy of an email dated September 11, 2009, from me to Mr. Mohrman and other professionals in his office advising them that Chrysler Financial received documents from Ms. Bowser in response

to its Subpoena and making them available to Hecker's counsel for inspection and copying.

8. Attached hereto as Exhibit 6 is a true and correct copy of an email from Mr. Mohrman to me dated September 14, 2009 responding to my email dated September 11, 2009 and my responsive email dated September 14, 2009. In the afternoon of September 15, 2009, Mary Gynild from Mr. Mohrman's office picked up the disk containing the Bowser emails and other documents made available by Chrysler Financial.

9. Ms. Bowser was deposed in this matter on September 16, 2009. Attached hereto as Exhibit 7 are true and correct copies of selected pages from Ms. Bowser's deposition. During the course of the deposition, I asked Ms. Bowser narrowly focused questions directed to establishing foundation for the electronic information she produced in response to the Subpoena. I did not ask Ms. Bowser any questions regarding the contents of the emails or other electronic information produced in response to the Subpoena.

10. Attached hereto as Exhibit 8 is a true and correct copy of a letter from Mr. Mohrman to me dated September 18, 2009. After receiving this letter—which asserted (incorrectly) that Ms. Bowser had admitted that the electronic folder she produced to Chrysler Financial contains communications protected by the attorney-client privilege— Chrysler Financial and its attorneys continued to refrain from reviewing the documents contained in the electronic production.

11. Attached hereto as Exhibit 9 is a true and correct copy of a letter from me to Mr. Mohrman dated September 18, 2009.

12. Attached hereto as Exhibit 10 is a true and correct copy of a letter from Mr. Mohrman to me dated September 24, 2009. After receiving this letter—which asserted that the Bowser electronic production contains attorney client communications—Chrysler Financial and its attorneys continued to refrain from reviewing the documents contained in the electronic production.

13. Attached hereto as Exhibit 11 is a true and correct copy of an October 22, 2009 email from me to William Skolnick, Mr. Hecker's current attorney, requesting a discovery conference. On October 23, 2009 (following the Court's denial of Hecker's motion to stay Chrysler Financial's non-dischargeability action), Howard Roin and I contacted Mr. Skolnick to discuss a number of discovery issues. For example, we told Mr. Skolnick that Hecker's refusal to answer any of Chrysler Financial's written discovery on the grounds that Hecker had moved for a stay of the case was wholly improper, and in any event was moot after the Court denied Hecker's Fifth Amendment stay motion. Mr. Skolnick said he intended to file amended responses to the written discovery. Although Chrysler Financial proposed that the responses be provided by October 30, 2009, Mr. Skolnick committed to get back to us by Monday, November 2, 2009. Another issue we discussed was Chrysler Financial's desire that Hecker provide a privilege log identifying any allegedly privileged emails or to reach agreement with Chrysler Financial on a protocol for electronically screening the Bowser emails for

potentially privileged materials. Mr. Skolnick, however, refused to provide a privilege log or reach any such agreement. Instead, during the call, Mr. Skolnick accused Chrysler Financial and its attorneys of violating a some unspecified criminal law by subpoenaing Ms. Bowser's emails.

14. On October 28, 2009, Mr. Roin and I had another telephone call with Mr. Skolnick relative to discovery issues in the pending matter, including the emails produced by Ms. Bowser in response to Chrysler Financial's Subpoena. During the course of the conversation, Mr. Skolnick belligerently and repeatedly accused Chrysler Financial, Mr. Roin, and me of violating a criminal law by subpoenaing Ms. Bowser's emails. He accused Chrysler Financial of receiving "stolen property" and asserted "you better get a lawyer." In response to Mr. Roin's inquiry as to what criminal statute supposedly had been violated, Mr. Skolnick initially refused to identify any statute, saying instead "Look bow tie, you need a lawyer, and I'm not going to be your lawyer." (The reference to "bow tie" apparently was a reference to Mr. Roin, who wore a bow tie at the court hearing on Mr. Hecker's stay motion.) After Mr. Roin and I repeatedly asked Mr. Skolnick to identify any criminal statutes allegedly violated, Mr. Skolnick ultimately identified only one statute: 18 U.S.C. § 2701, the Stored Wire and Electronic Communications Act. Mr. Skolnick also accused Mr. Roin and me of violating unspecified Minnesota ethical rules by reviewing the emails produced by Ms. Bowser because they contained attorney-client communications. Despite our repeated requests, however, Mr. Skolnick did not identify any ethical standard that had supposedly been

violated, but instead asserted, "you can read about it in the complaint I'm filing with the board." We reiterated to Mr. Skolnick that we were not aware of any statute or rule that we had violated and that neither Chrysler Financial nor its attorneys had reviewed the emails or other electronic documents produced by Ms. Bowser in response to the Subpoena.

15. Attached hereto as Exhibit 12 is a true and correct copy of a letter from Mr. Skolnick to me dated November 2, 2009.

16. Attached hereto as Exhibit 13 is a true and correct copy of a letter from me to Mr. Skolnick dated November 2, 2009.

17. Attached hereto as Exhibit 14 is a true and correct copy of a September 17, 2009, letter from Matthew R. Burton, counsel for the panel Trustee in the Hecker bankruptcy, to Stephen F. Grinnell with attached Subpoena for Rule 2004 Examination.

18. Attached hereto as Exhibit 15 is a true and correct copy of a September 22, 2009, letter from Mr. Grinnell to Mr. Mohrman, Hecker's attorney at the time, enclosing the Trustee's Subpoena for a Rule 2004 Examination of Chrysler Financial.
Mr. Grinnell's letter notified Hecker's counsel that the Trustee's subpoena sought production of emails to which Hecker was a party (which includes those Chrysler Financial received from Ms. Bowser), and advised that unless Hecker took steps to quash the subpoena, Chrysler Financial would be required to produce the requested emails to the Trustee.

19. Hecker's counsel never responded to the Grinnell letter and apparently made no effort to quash the subpoena.

20. On October 13, 2009, Chrysler Financial complied with the Trustee's subpoena. Attached hereto as Exhibit 16 is a true and correct copy of a letter from me to Mr. Burton dated October 13, 2009.

21. Because Hecker's counsel asserts that the Bowser emails contain some privileged communications, and because there has been no agreement on a protocol to screen out privileged communications, neither Chrysler Financial nor its attorneys have reviewed the emails or other electronic documents that Ms. Bowser produced. Although Mr. Hecker's prior counsel promised to produce a privilege log, that was never done, and Mr. Hecker's current counsel has refused to produce a privilege log for the electronically stored information produced by Ms. Bowser in response to the Subpoena, instead demanding that Chrysler Financial deliver its copy of the Bowser emails to Mr. Hecker. Mr. Hecker's counsel also has refused to provide a list of attorneys so that Chrysler Financial could electronically screen the Bowser emails for potential attorney-client communications.

22. Attached hereto as Exhibit 17 is a true and correct copy of a letter from Mr. Mohrman to me dated September 28, 2009, with attached Debtor-Defendant Dennis E. Hecker's Combined Responses to Plaintiff's First Set of Continuing Interrogatories, First Set of Requests for Production of Documents and First Set of

Requests for Admission to Defendant. To date, Mr. Hecker has not provided any substantive information or documents in response to Chrysler Financial's discovery.

23. Attached hereto as Exhibit 18 is a true and correct copy of a letter from me to Mr. Skolnick dated November 6, 2009.

24. Attached hereto as Exhibit 19 is a true and correct copy of a November 9, 2009 letter from Mr. Skolnick to Matthew Burton.

25. Attached hereto as Exhibit 20 is a true and correct copy of a November 9, 2009 letter from Mr. Skolnick to Seth Leventhal, one of the attorneys representing Hyundai Capital in its adversary proceeding against Mr. Hecker.

26. Attached hereto as Exhibit 21 is a true and correct copy of an Order dated November 6, 2009 in *In re the Marriage of Tamitha Dawn Hecker and Dennis Earl Hecker,* Hennepin County Court File No. 27-FA-08-2731.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 10, 2009.

Nicholas N. Nierengarten

GP:2674611 v2



500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

September 8, 2009

***VIA* UNITED STATES MAIL AND EMAIL**

William F. Mohrman, Esq.
Mohrman & Kaardal
33 South Sixth Street, Suite 4100
Minneapolis, MN 55402-3601

Re: *In Re: Dennis E. Hecker, Debtor,* U.S. Bankruptcy Case No. 09-50779
*Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Mr. Mohrman:

Enclosed herewith and served upon you, in accordance with applicable rules, please find Amended Notice of Taking Deposition and Request for Production of Documents relative to Cindy Bowser.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/pep/Enclosure/GP:2640091 v1

c: Erick G. Kaardal, Esq. (*via* email w/enc.)
Gregory M. Erickson, Esq. (*via* email w/enc.)
Mary Gynild (*via* email w/enc.)
Mary Fincham (*via* email w/enc.)
Howard J. Roin, Esq. (*via* email w/enc.)
Stephen F. Grinnell, Esq. (*via* email w/enc.)



**EXHIBIT 1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 09-05019 |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER | ) | |
| | ) | |
| Defendant. | ) | |

**AMENDED NOTICE OF TAKING DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO: Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman, Erick G. Kaardal, and Gregory M. Erickson, MOHRMAN & KAARDAL, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402

**PLEASE TAKE NOTICE** that, pursuant to Bankruptcy Rules 7030 and 9016 incorporating Fed.R.Civ.P. 30 and 45, Plaintiff, Chrysler Financial Services Americas LLC, will take the deposition of Cindy Bowser by stenographic and audiovisual means, at the offices of Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 on September 16, 2009 at 9:30 a.m., and thereafter by adjournment until the same shall be completed. Pursuant to Bankruptcy Rules 7030, 7034 and 9016 incorporating Fed.R.Civ.P. 30(2), 34(c) and 45(a), Cindy

Bowser is requested to produce the documents and electronically stored information in her possession, custody or control identified in Attachment 1 attached hereto and made a part hereof on September 11, 2009 at 1:00 p.m.

Dated: September 8, 2009

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.

By ______________________
Nicholas N. Nierengarten (#79169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

## ATTACHMENT 1

## SUBPOENA *DUCES TECUM* – DOCUMENT REQUESTS

### I. DEFINITIONS

For purposes of interpreting or construing the scope of these Definitions, Instructions, and Document Requests, the terms used shall be given their most expansive and inclusive interpretation. Any singular form of any word shall be construed to include the plural and any plural form shall be read to include the singular. Any past tense of a verb shall be construed to include the present tense and any present tense shall be construed to include the past tense.

1. The term "document" shall mean any written, printed, typed, drawn, or other graphic matter of any kind or nature, all photographic matter, all recorded or taped matter, all electronically stored information or data (including emails and attachments, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audiovisual recordings, text messages, and voicemail (regardless of the manner, method or platform for storage)), all drafts of the foregoing, and all copies and notations on the foregoing, as well as all copies of documents by whatever means made in the possession, custody or control of the deponent.

2. The term "produce" means to make available the document or things requested herein for inspection and copying, including electronically stored information, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

3. "Chrysler Financial" means Chrysler Financial, its predecessors (including but not limited to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

4. "Hecker" means Dennis E. Hecker and any employee, attorney, agent, representative or anyone acting on his behalf.

5. "Hecker Related Entity" means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives or anyone acting on their behalf.

6. "Hyundai" means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

7. "Rosedale" means Rosedale Dodge, Inc., Rosedale Dodge LLC, Rosedale Fleet Leasing II LLC, Rosedale Leasing LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on their behalf.

8. "Walden" means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f'/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc. (f/k/a Denwal Management Inc.), Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

## II. INSTRUCTIONS

1. If any documents responsive to the following Document Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.

2. Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

3. Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P. 45(a)(1)(C), all electronically stored information is to be produced in its native format unless otherwise agreed to.

## III. DOCUMENT REQUESTS

**REQUEST NO. 1**: All documents (including electronically stored information) pertaining to Hecker or any Hecker Related Entity, including but not limited to:

(a) any request for, negotiations concerning or financing provided by Chrysler Financial to Hecker or any Hecker Related Entity for the purchase or acquisition of vehicles from Hyundai;

(b) any transfer, use or disposition of proceeds from the sale or other disposition of vehicles by any Hecker Related Entity for which Chrysler Financial provided financing and for which proceeds of sale or other disposition were not remitted to Chrysler Financial at any time from and after August 1, 2008.

**REQUEST NO. 2**: All documents pertaining to any false or misleading statements or representations, altered or forged documents, or fraud involving Hecker or any Hecker Related Entity with respect to financing provided by Chrysler Financial, including the originals of any such documents.

**REQUEST NO. 3**: All documents relating to the termination of or separation from employment of any employee of Hecker or Hecker Related Entity after December 1, 2008.

GP:2640084 v1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re:<br>DENNIS E. HECKER,<br>Debtor. | ) Case No. 09-50779<br>)<br>) Chapter 7<br>)<br>) Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC,<br>Plaintiff,<br>v.<br>DENNIS E. HECKER,<br>Defendant. | )<br>)<br>) Adv. Pro. No. 09-05019<br>)<br>) |

**AFFIDAVIT OF SERVICE**

I hereby certify that on September 8, 2009, I caused the following Amended Notice of Taking Deposition and Request for Production of Documents of Cindy Bowser to be served upon William F. Mohrman, Esq., Erick G. Kaardal, Esq., Gregory M. Erickson, Esq., Mary Gynild (Administrative Assistant) and Mary Fincham (Administrative Assistant), Morhman & Kaardal, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, Minnesota 55402, by forwarding true and correct copies *via* U.S. Mail upon William F. Mohrman, Esq. at the address indicated, above, and *via* email transmission to mohrman@mklaw.com, erickson@mklaw.com, kaardal@mklaw.com, gynild@mklaw.com and fincham@mklaw.com.

Pam E. Phillips (MN# 79169)

Subscribed and sworn to before me
this 8th day of September, 2009.

Notary Public

ANNE CHELSEA LOHMER
NOTARY PUBLIC – MINNESOTA
My Commission Expires Jan. 31, 2010

GP:2640069 v1

**Nierengarten, Nicholas N.**

**From:** Phillips, Pam E.
**Sent:** Tuesday, September 08, 2009 1:53 PM
**To:** 'mohrman@mklaw.com'
**Cc:** 'Roin, Howard J. Esq.'; Grinnell, Stephen F.; 'kaardal@mklaw.com'; 'erickson@mklaw.com'; 'gynild@mklaw.com'; 'fincham@mklaw.com'
**Subject:** Chrysler Financial Services Americas LLC v. Dennis E. Hecker, Adv. Pro. No. 09-05019
**Attachments:** [Unsaved]ECOPY_5MAIN_SCANTODESKTOP_09082009-134407.pdf

Attached please find the Amended Notice of Taking Deposition and Request for Production of Documents relative to Cindy Bowser in the above-referenced matter.

A hard copy of same will be forthcoming by U.S. Mail.




Pam Phillips
Legal Administrative Assistant

500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Phone: (612) 632-3299

Fax: (612) 632-4299
pam.phillips@gpmlaw.com

www.gpmlaw.com



500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

September 8, 2009

*VIA* UNITED STATES MAIL AND EMAIL

Ms. Cindy Bowser
13792 43rd Bay
St. Michael, MN 55376

Re: *In Re: Dennis E. Hecker, Debtor,* U.S. Bankruptcy Case No. 09-50779
*Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Ms. Bowser:

I am one of the attorneys representing Chrysler Financial in its lawsuit against Dennis Hecker. As part of the lawsuit, Chrysler Financial would like to take your deposition and make copies of any documents or information you may have relating to the matter. I understand that you are willing to accept service of Chrysler Financial's subpoena for your deposition and request for production of documents by email. Accordingly, I am attaching the subpoena and ask that you acknowledge receipt by return email. The procedures for producing responsive information and appearing for your deposition are described below.

Production of Documents and Information (September 11, 2009 @ 1:00 p.m.). You need not make a personal appearance for producing documents or information described in the subpoena. If it is more convenient for you, we can send someone to your house or other location to make copies of responsive information. Please let me know when it would be a convenient time to do so.

Deposition Testimony (September 16, 2009 @ 9:30 a.m.). Your deposition will take place in our office, which is on the 5th floor of the IDS Center, 80 South Eighth Street, Minneapolis, MN 55402. Please park in the facility underneath the IDS Center. You can enter the underground parking facility *via* Marquette Avenue, which is a one-way street running from south to north. The entrance is on the left between 8th and 7th Street. We will pay for your parking. The mailed version of this letter also contains a check in the amount of $70.00 to cover witness fees and your travel expenses. After you have parked, please take the elevator to the Crystal Court (level "M") and go to the elevator bank for the office tower. Take the elevator to the 5th floor, which is the reception area for Gray Plant Mooty.

Should you have any questions, please feel free to contact me or my assistant, Pam Phillips (612-632-3299).



**EXHIBIT 2**

Thank you for your courtesies in this matter.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/pep/Enclosure/GP:2640107 v1

c: William F. Mohrman, Esq. (*via* email w/enc.)
Erick G. Kaardal, Esq. (*via* email w/enc.)
Gregory M. Erickson, Esq. (*via* email w/enc.)
Mary Gynild (*via* email w/enc.)
Mary Fincham (*via* email w/enc.)
Howard J. Roin, Esq. (*via* email w/enc.)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re:<br><br>DENNIS E. HECKER,<br><br>Debtor. | ) Case No. 09-50779<br>)<br>) Chapter 7<br>)<br>) Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS E. HECKER,<br><br>Defendant. | )<br>)<br>)<br>)<br>) Adv. Pro. No. 09-05019<br>)<br>)<br>)<br>) |

**SUBPOENA DUCES TECUM IN AN ADVERSARY PROCEEDING**

To: **Cindy Bowser, 13792 43rd Bay, St. Michael, MN 55376.**

| | |
|---|---|
| ☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding. | |
| PLACE OF DEPOSITION<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN 55402 | DATE AND TIME<br><br>September 16, 2009 9:30 a.m. |
| ☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See attached Amended Notice of Taking Deposition and Request for Production of Documents with Attachment 1. | |
| PLACE<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN 55402 | DATE AND TIME<br><br>September 11, 2009 1:00 p.m. |
| ☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
| PREMISES | DATE AND TIME |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| Attorney for Plaintiff | DATE<br>September 8, 2009 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER<br>Nicholas N. Nierengarten, 500 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, (612) 632-3040. | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

**PROOF OF SERVICE**

| **SERVED** | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | MANNER OF SERVICE | |
| SERVED BY (PRINT NAME) | TITLE | |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P 45(a)(1)(A)(iv),

Fed.R.Civ.P (c) and (d) provide as follows:

**(c) Protecting a Person Subject to a Subpoena.**

**(1) Avoiding Undue Burden or Expense; Sanctions.**

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to Subpoena.**

**(1) Producing Documents or Electronically Stored Information.**

These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| DENNIS E. HECKER, | ) | Chapter 7 |
| Debtor. | ) | Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. Pro. No. 09-05019 |
| DENNIS E. HECKER | ) | |
| Defendant. | ) | |

**AMENDED NOTICE OF TAKING DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO: Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman, Erick G. Kaardal, and Gregory M. Erickson, MOHRMAN & KAARDAL, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402

**PLEASE TAKE NOTICE** that, pursuant to Bankruptcy Rules 7030 and 9016 incorporating Fed.R.Civ.P. 30 and 45, Plaintiff, Chrysler Financial Services Americas LLC, will take the deposition of Cindy Bowser by stenographic and audiovisual means, at the offices of Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 on September 16, 2009 at 9:30 a.m., and thereafter by adjournment until the same shall be completed. Pursuant to Bankruptcy Rules 7030, 7034 and 9016 incorporating Fed.R.Civ.P. 30(2), 34(c) and 45(a), Cindy

Bowser is requested to produce the documents and electronically stored information in her possession, custody or control identified in Attachment 1 attached hereto and made a part hereof on September 11, 2009 at 1:00 p.m.

Dated: September 8, 2009

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.

By ______________________
Nicholas N. Nierengarten (#79169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

## ATTACHMENT 1

## SUBPOENA *DUCES TECUM* – DOCUMENT REQUESTS

### I. DEFINITIONS

For purposes of interpreting or construing the scope of these Definitions, Instructions, and Document Requests, the terms used shall be given their most expansive and inclusive interpretation. Any singular form of any word shall be construed to include the plural and any plural form shall be read to include the singular. Any past tense of a verb shall be construed to include the present tense and any present tense shall be construed to include the past tense.

1. The term "document" shall mean any written, printed, typed, drawn, or other graphic matter of any kind or nature, all photographic matter, all recorded or taped matter, all electronically stored information or data (including emails and attachments, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audiovisual recordings, text messages, and voicemail (regardless of the manner, method or platform for storage)), all drafts of the foregoing, and all copies and notations on the foregoing, as well as all copies of documents by whatever means made in the possession, custody or control of the deponent.

2. The term "produce" means to make available the document or things requested herein for inspection and copying, including electronically stored information, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

3. "Chrysler Financial" means Chrysler Financial, its predecessors (including but not limited to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

4. "Hecker" means Dennis E. Hecker and any employee, attorney, agent, representative or anyone acting on his behalf.

5. "Hecker Related Entity" means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives or anyone acting on their behalf.

6. "Hyundai" means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

7. "Rosedale" means Rosedale Dodge, Inc., Rosedale Dodge LLC, Rosedale Fleet Leasing II LLC, Rosedale Leasing LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on their behalf.

8. "Walden" means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc. (f/k/a Denwal Management Inc.), Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

## II. INSTRUCTIONS

1. If any documents responsive to the following Document Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.

2. Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

3. Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P. 45(a)(1)(C), all electronically stored information is to be produced in its native format unless otherwise agreed to.

## III. DOCUMENT REQUESTS

**REQUEST NO. 1**: All documents (including electronically stored information) pertaining to Hecker or any Hecker Related Entity, including but not limited to:

(a) any request for, negotiations concerning or financing provided by Chrysler Financial to Hecker or any Hecker Related Entity for the purchase or acquisition of vehicles from Hyundai;

(b) any transfer, use or disposition of proceeds from the sale or other disposition of vehicles by any Hecker Related Entity for which Chrysler Financial provided financing and for which proceeds of sale or other disposition were not remitted to Chrysler Financial at any time from and after August 1, 2008.

**REQUEST NO. 2**: All documents pertaining to any false or misleading statements or representations, altered or forged documents, or fraud involving Hecker or any Hecker Related Entity with respect to financing provided by Chrysler Financial, including the originals of any such documents.

**REQUEST NO. 3**: All documents relating to the termination of or separation from employment of any employee of Hecker or Hecker Related Entity after December 1, 2008.

GP:2640084 v1

**Nierengarten, Nicholas N.**

| | |
|---|---|
| **From:** | Nierengarten, Nicholas N. |
| **Sent:** | Tuesday, September 08, 2009 5:48 PM |
| **To:** | 'Bill Mohrman' |
| **Cc:** | Gregory M. Erickson; Erick Kaardal; Mary Gynild; Mary Fincham; 'Roin, Howard J.' |
| **Subject:** | Chrysler Financial v. Dennis Hecker - Chrysler Financial subpoena of Cindy Bowser |
| **Attachments:** | [Unsaved]ECOPY_5MAIN_SCANTODESKTOP_09082009-171258.pdf |

Bill:

Attached is a copy of the subpoena relating to Cindy Bowser along with my cover letter relative to same. Let's do the discovery conference following Ms. Bowser's deposition.

Nick




Nicholas Nierengarten
Attorney

500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Phone: (612) 632-3040

Fax: (612) 632-4040
nicholas.nierengarten@gpmlaw.com

www.gpmlaw.com

**EXHIBIT 3**



500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

September 8, 2009

***VIA* UNITED STATES MAIL AND EMAIL**

Ms. Cindy Bowser
13792 43rd Bay
St. Michael, MN 55376

Re: *In Re: Dennis E. Hecker, Debtor,* U.S. Bankruptcy Case No. 09-50779
*Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Ms. Bowser:

I am one of the attorneys representing Chrysler Financial in its lawsuit against Dennis Hecker. As part of the lawsuit, Chrysler Financial would like to take your deposition and make copies of any documents or information you may have relating to the matter. I understand that you are willing to accept service of Chrysler Financial's subpoena for your deposition and request for production of documents by email. Accordingly, I am attaching the subpoena and ask that you acknowledge receipt by return email. The procedures for producing responsive information and appearing for your deposition are described below.

Production of Documents and Information (September 11, 2009 @ 1:00 p.m.). You need not make a personal appearance for producing documents or information described in the subpoena. If it is more convenient for you, we can send someone to your house or other location to make copies of responsive information. Please let me know when it would be a convenient time to do so.

Deposition Testimony (September 16, 2009 @ 9:30 a.m.). Your deposition will take place in our office, which is on the 5th floor of the IDS Center, 80 South Eighth Street, Minneapolis, MN 55402. Please park in the facility underneath the IDS Center. You can enter the underground parking facility *via* Marquette Avenue, which is a one-way street running from south to north. The entrance is on the left between 8th and 7th Street. We will pay for your parking. The mailed version of this letter also contains a check in the amount of $70.00 to cover witness fees and your travel expenses. After you have parked, please take the elevator to the Crystal Court (level "M") and go to the elevator bank for the office tower. Take the elevator to the 5th floor, which is the reception area for Gray Plant Mooty.

Should you have any questions, please feel free to contact me or my assistant, Pam Phillips (612-632-3299).

Thank you for your courtesies in this matter.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/pep/Enclosure/GP:2640107 v1

c: William F. Mohrman, Esq. (*via* email w/enc.)
Erick G. Kaardal, Esq. (*via* email w/enc.)
Gregory M. Erickson, Esq. (*via* email w/enc.)
Mary Gynild (*via* email w/enc.)
Mary Fincham (*via* email w/enc.)
Howard J. Roin, Esq. (*via* email w/enc.)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:<br><br>DENNIS E. HECKER,<br><br>Debtor. | ) Case No. 09-50779<br>)<br>) Chapter 7<br>)<br>) Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS E. HECKER,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Adv. Pro. No. 09-05019<br>)<br>)<br>)<br>)<br>) |

**SUBPOENA DUCES TECUM IN AN ADVERSARY PROCEEDING**

To: **Cindy Bowser, 13792 43rd Bay, St. Michael, MN 55376.**

| ☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above adversary proceeding. | |
|---|---|
| PLACE OF DEPOSITION<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN 55402 | DATE AND TIME<br><br>September 16, 2009 9:30 a.m. |
| ☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): See attached Amended Notice of Taking Deposition and Request for Production of Documents with Attachment 1. | |
| PLACE<br><br>Gray, Plant, Mooty, Mooty & Bennett, P.A.<br>500 IDS Center, 80 South Eighth Street<br>Minneapolis, MN 55402 | DATE AND TIME<br><br>September 11, 2009 1:00 p.m. |
| ☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. | |
| PREMISES | DATE AND TIME |

Any organization not a party to this adversary proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in adversary proceedings by Rule 7030, Federal Rules of Bankruptcy Procedure.

| Attorney for Plaintiff | DATE<br>September 8, 2009 |
|---|---|
| ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER<br>Nicholas N. Nierengarten, 500 IDS Center, 80 South 8th Street, Minneapolis, MN 55402, (612) 632-3040. | |

* If the bankruptcy case or the adversary proceeding is pending in a district other than the district in which the subpoena is issued, state the district under the case number or adversary proceeding number.

**PROOF OF SERVICE**

| SERVED | DATE | PLACE |
|---|---|---|
| SERVED ON (PRINT NAME) | | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | | TITLE |

DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ______________________
DATE

______________________
SIGNATURE OF SERVER

______________________
ADDRESS OF SERVER

Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P 45(a)(1)(A)(iv),

Fed.R.Civ.P (c) and (d) provide as follows:

**(c) Protecting a Person Subject to a Subpoena.**

**(1) Avoiding Undue Burden or Expense; Sanctions.**

A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

**(2) Command to Produce Materials or Permit Inspection.**

(A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.

(B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:

(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.

(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) Quashing or Modifying a Subpoena.**

(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:

(i) disclosing a trade secret or other confidential research, development, or commercial information;

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or

(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.

(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:

(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and

(ii) ensures that the subpoenaed person will be reasonably compensated.

**(d) Duties in Responding to Subpoena.**

**(1) Producing Documents or Electronically Stored Information.**

These procedures apply to producing documents or electronically stored information:

(A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.

(B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.

(C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.

(D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) Claiming Privilege or Protection.**

(A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:

(i) expressly make the claim; and

(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.

(B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

GP:2631452 v1

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| DENNIS E. HECKER, | ) Chapter 7 |
| Debtor. | ) Hon. Robert J. Kressel |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC | ) |
| Plaintiff, | ) |
| v. | ) Adv. Pro. No. 09-05019 |
| DENNIS E. HECKER | ) |
| Defendant. | ) |

**AMENDED NOTICE OF TAKING DEPOSITION AND REQUEST FOR PRODUCTION OF DOCUMENTS**

TO: Defendant, Dennis E. Hecker, and his attorneys, William F. Mohrman, Erick G. Kaardal, and Gregory M. Erickson, MOHRMAN & KAARDAL, P.A., 33 South Sixth Street, Suite 4100, Minneapolis, MN 55402

**PLEASE TAKE NOTICE** that, pursuant to Bankruptcy Rules 7030 and 9016 incorporating Fed.R.Civ.P. 30 and 45, Plaintiff, Chrysler Financial Services Americas LLC, will take the deposition of Cindy Bowser by stenographic and audiovisual means, at the offices of Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 South 8th Street, Minneapolis, Minnesota 55402 on September 16, 2009 at 9:30 a.m., and thereafter by adjournment until the same shall be completed. Pursuant to Bankruptcy Rules 7030, 7034 and 9016 incorporating Fed.R.Civ.P. 30(2), 34(c) and 45(a), Cindy

Bowser is requested to produce the documents and electronically stored information in her possession, custody or control identified in Attachment 1 attached hereto and made a part hereof on September 11, 2009 at 1:00 p.m.

Dated: September 8, 2009

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.

By [signature]

Nicholas N. Nierengarten (#79169)
nicholas.nierengarten@gpmlaw.com
Stephen F. Grinnell (#37928)
stephen.grinnell@gpmlaw.com
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Telephone: 612-632-3040
Facsimile: 612-632-4040

MAYER BROWN LLP
Howard J. Roin (admitted pro hac vice)
Stuart M. Rozen (admitted pro hac vice)
71 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312-782-0600
Facsimile: 312-701-7711

## ATTACHMENT 1

## SUBPOENA *DUCES TECUM* – DOCUMENT REQUESTS

### I. DEFINITIONS

For purposes of interpreting or construing the scope of these Definitions, Instructions, and Document Requests, the terms used shall be given their most expansive and inclusive interpretation. Any singular form of any word shall be construed to include the plural and any plural form shall be read to include the singular. Any past tense of a verb shall be construed to include the present tense and any present tense shall be construed to include the past tense.

1. The term "document" shall mean any written, printed, typed, drawn, or other graphic matter of any kind or nature, all photographic matter, all recorded or taped matter, all electronically stored information or data (including emails and attachments, word processing documents, spreadsheets, presentation documents, graphics, animations, images, audiovisual recordings, text messages, and voicemail (regardless of the manner, method or platform for storage)), all drafts of the foregoing, and all copies and notations on the foregoing, as well as all copies of documents by whatever means made in the possession, custody or control of the deponent.

2. The term "produce" means to make available the document or things requested herein for inspection and copying, including electronically stored information, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

3. "Chrysler Financial" means Chrysler Financial, its predecessors (including but not limited to DaimlerChrysler Services North America LLC and DaimlerChrysler Financial Services Americas LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

4. "Hecker" means Dennis E. Hecker and any employee, attorney, agent, representative or anyone acting on his behalf.

5. "Hecker Related Entity" means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest, including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives or anyone acting on their behalf.

6. "Hyundai" means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

7. "Rosedale" means Rosedale Dodge, Inc., Rosedale Dodge LLC, Rosedale Fleet Leasing II LLC, Rosedale Leasing LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on their behalf.

8. "Walden" means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc. (f/k/a Denwal Management Inc.), Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

## II. INSTRUCTIONS

1. If any documents responsive to the following Document Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.

2. Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

3. Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.P. 45(a)(1)(C), all electronically stored information is to be produced in its native format unless otherwise agreed to.

## III. DOCUMENT REQUESTS

**REQUEST NO. 1**: All documents (including electronically stored information) pertaining to Hecker or any Hecker Related Entity, including but not limited to:

(a) any request for, negotiations concerning or financing provided by Chrysler Financial to Hecker or any Hecker Related Entity for the purchase or acquisition of vehicles from Hyundai;

(b) any transfer, use or disposition of proceeds from the sale or other disposition of vehicles by any Hecker Related Entity for which Chrysler Financial provided financing and for which proceeds of sale or other disposition were not remitted to Chrysler Financial at any time from and after August 1, 2008.

**REQUEST NO. 2**: All documents pertaining to any false or misleading statements or representations, altered or forged documents, or fraud involving Hecker or any Hecker Related Entity with respect to financing provided by Chrysler Financial, including the originals of any such documents.

**REQUEST NO. 3**: All documents relating to the termination of or separation from employment of any employee of Hecker or Hecker Related Entity after December 1, 2008.

GP:2640084 v1

## Nierengarten, Nicholas N.

**From:** Cindy Bowser [bowsercindy@gmail.com]
**Sent:** Thursday, September 10, 2009 8:05 AM
**To:** Nierengarten, Nicholas N.
**Subject:** Re: Chrysler Financial v. Dennis Hecker - Chrysler Financial subpoena of Cindy Bowser

Good morning, Nick,

I will send along with the courier the file I have on hard copies of the Hyundai agreement.

Thank you!
Cindy

On Sep 9, 2009, at 6:57 PM, Nierengarten, Nicholas N. wrote:

>
>
>
> Just received confirmation that Metro Legal will be at your house at
> 8:00 a.m. Nick
>
>
>
> <http://mm1.lettermark.net/gpmlaw/card/BYTS_11.map>
> Nicholas Nierengarten
> Attorney
> (612) 632-3040
> nicholas.nierengarten@gpmlaw.com
> <http://mm1.lettermark.net/gpmlaw/card/BYTS_11.gif>
>
>
> -----Original Message-----
> From: Cindy Bowser [bowsercindy@gmail.com]
> Sent: Wednesday, September 09, 2009 6:52 PM
> To: Nierengarten, Nicholas N.
> Subject: Re: Chrysler Financial v. Dennis Hecker - Chrysler Financial
> subpoena of Cindy Bowser
>
> That sounds great. Thank you for understanding on the computer.
>
> Cindy
>
> On Sep 9, 2009, at 6:11 PM, Nierengarten, Nicholas N. wrote:
>
>>
>>
>>
>> Great. We will try to expedite this as quickly as possible so as to
>> minimize any inconvenience to you. I'll ask the vendor to get a
>> messenger service to pick up the computer and any documents you have
>> tomorrow morning at around 8:00 a.m. It most likely will be a
>> company by the name of Metro Legal Services. Once copied, the
>> computer and the original documents will be returned to you by Metro.
>> If there are any problems or you have any concerns, please feel free
>> to contact me.
>> My work number is 612-632-3040 and my cell number is 612-965-0116.
>>
>> Thanks again for your help.
>>
>> Nick
>>
>>



**EXHIBIT 4**

>>
>> http://mml.lettermark.net/gpmlaw/card/BYTS_11.map
>> Nicholas Nierengarten
>> Attorney
>> (612) 632-3040
>> nicholas.nierengarten@gpmlaw.com
>> http://mml.lettermark.net/gpmlaw/card/BYTS_11.gif
>>
>>
>> -----Original Message-----
>> From: Cindy Bowser [bowsercindy@gmail.com]
>> Sent: Wednesday, September 09, 2009 5:55 PM
>> To: Nierengarten, Nicholas N.
>> Subject: Re: Chrysler Financial v. Dennis Hecker - Chrysler Financial
>> subpoena of Cindy Bowser
>>
>> Sure, that's fine.
>>
>> On Sep 9, 2009, at 5:29 PM, Nierengarten, Nicholas N. wrote:
>>
>>>
>>>
>>>
>>> I think the vendor can do the actual extraction in 3 - 5 hours.
>>> Could we
>>> pick up the computer tomorrow morning at around 8:00 a.m.? That way
>>> we should be able to get it back to you by the end of the day.
>>>
>>> Nick
>>>
>>>
>>>
>>> http://mml.lettermark.net/gpmlaw/card/BYTS_11.map
>>> Nicholas Nierengarten
>>> Attorney
>>> (612) 632-3040
>>> nicholas.nierengarten@gpmlaw.com
>>> http://mml.lettermark.net/gpmlaw/card/BYTS_11.gif
>>>
>>>
>>> -----Original Message-----
>>> From: Cindy Bowser [bowsercindy@gmail.com]
>>> Sent: Wednesday, September 09, 2009 5:20 PM
>>> To: Nierengarten, Nicholas N.
>>> Subject: Re: Chrysler Financial v. Dennis Hecker - Chrysler
>>> Financial subpoena of Cindy Bowser
>>>
>>> Hi Nick,
>>>
>>> It makes it tough for my computer to be gone, it is the one I work
>>> on for my business. Could it be done within the day?
>>>
>>> I do have some documents that are related to the Hyundai documents.
>>>
>>> Thanks,
>>> Cindy
>>>
>>>
>>> On Sep 9, 2009, at 3:37 PM, Nierengarten, Nicholas N. wrote:
>>>
>>>>
>>>>
>>>>
>>>> Cindy,
>>>>
>>>> Thanks for your prompt response. I think we will use an outside
>>>> service to collect and copy the emails. Typically, it goes much

>>>> quicker if the vendor can download the emails at its facility.
>>>> Would
>>>> it be possible for someone to pick up your computer tomorrow and
>>>> return it to you on Friday?
>>>> Also, do you
>>>> have any paper documents that we should make arrangements for
>>>> copying?
>>>> Thanks again for your help.
>>>>
>>>> Nick
>>>>
>>>>
>>>>
>>>>
>>>>
>>>> http://mm1.lettermark.net/gpmlaw/card/BYTS_11.map
>>>> Nicholas Nierengarten
>>>> Attorney
>>>> (612) 632-3040
>>>> nicholas.nierengarten@gpmlaw.com
>>>> http://mm1.lettermark.net/gpmlaw/card/BYTS_11.gif
>>>>
>>>>
>>>> -----Original Message-----
>>>> From: Cindy Bowser [bowsercindy@gmail.com]
>>>> Sent: Wednesday, September 09, 2009 11:16 AM
>>>> To: Nierengarten, Nicholas N.
>>>> Subject: Re: Chrysler Financial v. Dennis Hecker - Chrysler
>>>> Financial subpoena of Cindy Bowser
>>>>
>>>> Hi Nicholas,
>>>>
>>>> By receipt of this email, I accept service of this subpoena. As
>>>> far as materials provided by Friday, Sept. 11th, would it be
>>>> possible for someone to come out to my home? I would be available
>>>> tomorrow morning, or Friday all day. The emails that I have are on
>>>> a Mac computer and there are over 18,000 emails. It may take
>>>> awhile to download those to a disk.
>>>>
>>>> Please let me know what works for you.
>>>>
>>>> Thank you,
>>>> Cindy
>>>>
>>>>
>>>> On Sep 8, 2009, at 5:33 PM, Nierengarten, Nicholas N. wrote:
>>>>
>>>>> <[Unsaved]ECOPY_5MAIN_SCANTODESKTOP_09082009-171258.pdf>
>>>>
>>>>
>>>>
>>>
>>>
>>>
>>
>>
>>
>
>
>

**Nierengarten, Nicholas N.**

**From:** Nierengarten, Nicholas N.
**Sent:** Friday, September 11, 2009 4:30 PM
**To:** 'Bill Mohrman'; Erick Kaardal; Gregory M. Erickson
**Cc:** Mary Fincham; Mary Gynild
**Subject:** Chrysler Financial v. Hecker - Bowser production in response to subpoena

Counsel:

Cindy Bowser produced documents and emails in response to Chrysler Financial's subpoena. If you are interested, please advise as to when you would like to review the materials produced by Ms. Bowser.

Nick




Nicholas Nierengarten
Attorney

500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Phone: (612) 632-3040

Fax: (612) 632-4040
nicholas.nierengarten@gpmlaw.com

www.gpmlaw.com

**EXHIBIT 5**

**Nierengarten, Nicholas N.**

**From:** Nierengarten, Nicholas N.
**Sent:** Monday, September 14, 2009 2:02 PM
**To:** 'Bill Mohrman'
**Subject:** RE: Chrysler Financial v. Hecker - Bowser production in response to subpoena

Bill:

Pursuant to your request, we will copy the documents and electronically stored information. The materials, along with our invoice for copy and DVD charges, will be available at the reception area of Gray Plant Mooty for pickup during normal business hours at your convenience.

Nick




Nicholas Nierengarten
Attorney

500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402
Phone: (612) 632-3040

Fax: (612) 632-4040
nicholas.nierengarten@gpmlaw.com

www.gpmlaw.com

---

**From:** Bill Mohrman [mailto:mohrman@mklaw.com]
**Sent:** Monday, September 14, 2009 12:59 PM
**To:** Nierengarten, Nicholas N.
**Subject:** RE: Chrysler Financial v. Hecker - Bowser production in response to subpoena

Dear Nick:

Please have the documents copied and either delivered to my office or I will have someone pick them up. Bill.

William F. Mohrman

Mohrman & Kaardal, P.A.
33 South Sixth Street
Suite 4100

**EXHIBIT 6**

Minneapolis, Minnesota 55402

Telephone - 612-465-0928
Facsimile - 612-341-1076

mohrman@mklaw.com
www.mklaw.com

To ensure compliance with requirements imposed by the Internal Revenue Service, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including any attachments, was not intended or written to be used, and cannot be used, by any person for the purpose of (i) avoiding any penalties that may be imposed by the Internal Revenue Service, or (ii) promoting, marketing or recommending to another person any tax-related matter addressed herein.

The information in this e-mail is confidential and may be protected by the attorney's work product doctrine or the attorney/client privilege. It is intended solely for the addressee(s); access to anyone else is unauthorized. If this message has been sent to you in error, do not review, disseminate, distribute or copy it. Please reply to the sender that you have received the message in error, then delete it. Thank you for your cooperation.

---

**From:** Nierengarten, Nicholas N. [mailto:Nicholas.Nierengarten@gpmlaw.com]
**Sent:** Friday, September 11, 2009 4:30 PM
**To:** Bill Mohrman; Erick Kaardal; Gregory M. Erickson
**Cc:** Mary Fincham; Mary Gynild
**Subject:** Chrysler Financial v. Hecker - Bowser production in response to subpoena

Counsel:
Cindy Bowser produced documents and emails in response to Chrysler Financial's subpoena. If you are interested, please advise as to when you would like to review the materials produced by Ms. Bowser.
Nick

NOTICES: Pursuant to the rules of professional conduct set forth in Circular 230, as promulgated by the United States Department of the Treasury, unless we expressly state otherwise in this communication, nothing contained in this communication was intended or written to be used by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer by the Internal

Revenue Code of 1986, and it cannot be used by any taxpayer for such purpose. No one, without our express prior written permission, may use or refer to any tax advice in this communication in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement relating to any one or more taxpayers.

This message is from a law firm, and thus may contain or attach confidential information or an attorney-client communication that is confidential and privileged by law. It is not intended for transmission to, or receipt by, any unauthorized person. If you believe that you have received this message or any attachment in error, simply delete both from your system without reading or copying, and notify the sender by e-mail or by calling 612-632-3000. Thank you.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - - -

In Re: ) Case No. 09-50779
DENNIS E. HECKER, ) Chapter 7
)
Debtor, ) Hon. Robert J. Kressel
-------------------------)
CHRYSLER FINANCIAL )
SERVICES AMERICAS LLC )
)
Plaintiff, )
)
v. ) Adv. Pro. No. 09-05019
)
DENNIS E. HECKER )
)
Defendant. )

- - - - - - - - - - - - - - - - - - - - - - - - -

DEPOSITION

The following is the videotaped deposition of CINDY BOWSER, taken before Jean F. Soule, Notary Public, Registered Professional Reporter, pursuant to Notice of Taking Deposition, at the offices of Gray, Plant, Mooty, Mooty & Bennett, P.A., 500 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, commencing at 9:32 a.m., Wednesday, September 16, 2009.

* * *

**EXHIBIT 7**

Page 2

APPEARANCES:

On Behalf of the Plaintiff:

Nicholas N. Nierengarten, Esquire
Kelly Hoversten, Esquire
GRAY, PLANT, MOOTY, MOOTY
& BENNETT, P.A.
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402
Phone: (612) 632-3040
nicholas.nierengarten@gpmlaw.com

and

Howard J. Roin, Esquire
(appeared via speakerphone)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Phone: (312) 782-0600
e-mail: hroin@mayerbrown.com

and

John Tracy, Esquire
(appeared via speakerphone)
In-House Counsel, Chrysler
Financial Services Americas LLC
e-mail: jt600@chryslerfinancial.com

On Behalf of the Defendant:
William F. Mohrman, Esquire
MOHRMAN & KAARDAL, P.A.
33 South Sixth Street
Suite 4100
Minneapolis, Minnesota 55402-3601
Phone: (612) 341-1074
e-mail: mohrman@mklaw.com

Also Present: Mr. Dennis Hecker

The Videographer: Mr. Don Carl

Page 3

PROCEEDINGS

Whereupon, the deposition of CINDY BOWSER was commenced at 9:32 a.m. as follows:

* * *

THE VIDEOGRAPHER: This is the video operator speaking, Don Carl of Depo International, Incorporated.

Today's date is Wednesday, September 16th, in the year 2009. The time is now approximately 9:32 a.m. We're at 500 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, to take the video deposition of Ms. Cindy Bowser.

Will counsel please voice identify themselves for the video record?

MR. NIERENGARTEN: This is Nick Nierengarten. I represent Chrysler Financial.

MR. HOVERSTEN: Kelly Hoversten, also on behalf of Chrysler Financial.

MR. MOHRMAN: William Mohrman on behalf of Denny Hecker.

THE VIDEOGRAPHER: Would the court reporter please administer the oath?

Page 4

* * *

CINDY BOWSER,
after having been first duly sworn,
deposes and says under oath as follows:

***

MR. NIERENGARTEN: Let the record reflect, also, that Mr. Dennis Hecker is in the room.

EXAMINATION

BY MR. NIERENGARTEN:

Q. Good morning, Ms. Bowser.

**A. Good morning.**

Q. How are you?

**A. Fine.**

MR. MOHRMAN: Before the deposition starts, I just want to note on the record that I'm reserving my right to redepose Ms. Bowser after production of documents from -- from Chrysler Financial in this case.

Go ahead, Mr. Nierengarten.

MR. NIERENGARTEN: You can reserve your right, and we'll reserve our right to object to any further deposition of Ms. Bowser.

Page 5

BY MR. NIERENGARTEN:

Q. Ms. Bowser, do you know a gentleman by the name of Steve Leach?

**A. Yes, I do.**

Q. How do you know him?

**A. I used to work for him originally back in I think about 1995 to 1997, at Walden Leasing.**

Q. All right. Have you worked for him more recently?

**A. No.**

Q. All right. Did you meet with an attorney for Mr. Leach recently?

**A. Mr. Leach's attorney came out to my house about three weeks to a month ago.**

MR. MOHRMAN: Can you identify the lawyer?

MR. NIERENGARTEN: Counsel, I'll ask the questions. You can ask your questions on your time. But it is a good point.

BY MR. NIERENGARTEN:

Q. What was the attorney's name?

**A. I believe it was Bob, is it Hennessey.**

Q. Hennessey?

Page 118

A. **I believe there are some documents. I -- again, I -- without going through them, I can't tell you what they are.**
Q. Where did you get the documents?
A. **They were through e-mails. These are all e-mails.**
Q. Okay.
A. **The documents that were attached to e-mails and things like that.**
Q. So is the information contained in the all mail folder, does it consist entirely of e-mails and in addition to the e-mails documents that would have been attached to the e-mails?
A. **Correct.**
Q. Is there anything else in there?
A. **No.**
Q. Okay. How -- and these would have been e-mails that were initially generated on your computer at the Hecker entity headquarters, correct?
MR. NIERENGARTEN: Objection, leading, lack of foundation.
THE WITNESS: Correct.
BY MR. MOHRMAN:
Q. And those e-mails -- and those were

Page 119

e-mails -- strike that.
Were you an addressee on these e-mails?
A. **I was.**
Q. Is that because you were one of the main addressees or is that because you were copied on all e-mails that were sent to Mr. Hecker?
A. **Copied.**
Q. So you were copy -- so any e-mail that went to Mr. Hecker automatically got copied to you?
MR. NIERENGARTEN: Objection as to foundation, leading.
THE WITNESS: Correct.
BY MR. MOHRMAN:
Q. Do you know whether or not any of the e-mails that you copied into your all mail folder on your laptop would have been e-mails that would have been received by Mr. Hecker from a Bruce Parker?
A. **I can't verify that. I -- I don't know.**
Q. Do you know who Mr. Parker is?
A. **Yes.**

Page 120

Q. Who is he?
A. **A long-time attorney of Denny's.**
Q. What about Tim Thornton, would there be any e-mails from him?
A. **I couldn't verify that, either.**
Q. Did you have an understanding prior to today that communications between an attorney and the client are privileged?
A. **I --**
MR. NIERENGARTEN: Objection as to foundation.
THE WITNESS: I really don't know, no.
BY MR. MOHRMAN:
Q. Okay. Did you do something to get the e-mails that are contained in the all mail folder, did you do something to get those mails off of your computer at the Hecker entities and transferred onto your laptop?
A. **Yeah. I had a --**
Q. Let's take it one step at a time. The answer is yes?
A. **Yes.**
Q. What did you do?
A. **I had a flash drive or a -- one of**

Page 121

**those little USB drives, that I put some files on that.**
Q. Okay. And when did you do that?
A. **Probably in April, beginning of April. I don't really recall.**
Q. Did you buy a flash drive to do this?
A. **I -- I had one. I don't know -- I've had it for a while. I don't know --**
Q. When did you first think of the idea of taking these e-mails off of your computer at the Hecker entities and transferring onto a flash drive?
A. **Again, when I knew this was going to be a big issue.**
Q. When did you know that?
A. **Um, shortly after March, whenever we got the fax that came across.**
Q. I'm going to switch gears on you for just a moment.
Have you testified before any grand jury?
A. **Yes.**
Q. When did that testimony take place?
A. **Monday.**

what was her job title?
A. **I really never knew what her -- the same, I would say. She was another assistant. Title, I -- executive administrative assistant, I'm not sure.**
Q. Okay. Who had the primary responsibility for typing up letters that were drafted by Mr. Hecker?
A. **Both of us did, but I probably did more of them.**
Q. Okay.
A. **Uh-huh.**
Q. So I take it if you prepared a letter for Mr. Hecker that you thought was somehow relevant to the Hyundai matter, that would be the type of document that you'd put into this folder, correct?
MR. NIERENGARTEN: Objection, leading.
THE WITNESS: No.
BY MR. MOHRMAN:
Q. Why not?
A. **It was just e-mails that -- strictly through e-mails and attachments through e-mails. I didn't take from my personal desktop**



**under Word and transfer those.**
Q. Okay. So, and I think you testified to this earlier this morning, the -- all of the records contained in this folder would have been e-mails or -- or strike that -- and documents attached to the e-mails, correct?
A. **Correct.**
Q. And were all of the e-mails that were copied into this folder, were you an addressee on all of those e-mails?
A. **I was.**
Q. So tell -- so you get an e-mail that comes into your inbox --
A. **Uh-huh.**
Q. -- and you think it's relevant to the Hyundai matter, what would you do to get it copied into this folder?
A. **I would just click on it and transfer it into the folder.**
Q. All right.
A. **You can drag it and --**
Q. Then what would you do to get it from the desktop onto the flash drive?
A. **You'd just put in your flash drive, and I think -- I don't know if you can -- I don't**



**remember if it's drag it -- drag it into the little icon or if you right click, copy into the specific drive. I don't recall exactly how the procedure goes, but --**
Q. And then you'd take the flash drive home after you'd copied the e-mails, correct?
A. **Uh-huh.**
Q. And then you would put the flash drive into your laptop, correct?
A. **Uh-huh.**
Q. And then you would download the documents from flash drive into the all mail subfolder of the Gmail folder, correct?
A. **Correct.**
Q. Would you copy the documents from the flash drive or did you move all the documents out of the flash drive onto the laptop?
A. **I moved them out of the flash drive onto the laptop.**
Q. So at the completion of that process, the flash drive was empty?
A. **Correct.**
Q. Do you still have the flash drive?
A. **I do not.**
Q. What did you do with it?



A. **Threw it. I -- I didn't need it any longer.**
Q. When did you throw it out?
A. **I -- I -- in April, I would imagine, the end of April.**
Q. Prior to the break I asked if you could take the opportunity to call Nicole Engisch, the U.S. attorney. Did you make an effort to do that?
A. **I did.**
Q. Did you get ahold of her?
A. **I did.**
Q. Could you tell me what you discussed with Ms. Engisch?
A. **I just discussed what -- what you had suggested, that I let you know what was discussed at the grand jury, and she said I would have every right, I could refuse that, but I would have the right to also discuss it.**
Q. Okay. So there's nothing from Ms. Engisch's point of view that legally prohibits you --
A. **Correct.**
Q. -- from testifying?
Okay. So I want to go back to the

Q. I've shown you, Ms. Bowser, Exhibit 12.
A. **Uh-huh.**
Q. Which is a photocopy of a Post-it.
A. **Uh-huh.**
Q. Do you have that in front of you?
A. **Yes.**
Q. Is that your handwriting?
A. **It is.**
Q. All right. Can you explain for us what you meant when you wrote these words down on the Post-it?
A. **Those were the files that I had that you were interested in viewing.**
Q. All right. And so this is how to find those files on your laptop?
A. **That's correct.**
Q. All right. Can you relate to us how you obtained possession of these e-mails?
A. **Ah, through work, um, our IT guy had set it up. Molly and I had access to e-mails, passwords, things like that; and so this was e-mails that would be sent, copied to me.**
Q. And you collected them on your laptop?



A. **Yes.**
Q. All right. And these are --
A. **No, not -- excuse me, no, not on my laptop. I collected them on my desktop at work, and then I had transferred them onto a flash drive.**
Q. All right. And were these e-mails work-related e-mails?
A. **Yes.**
Q. And do you have a recollection of when you started to receive these e-mails?
A. **Um, I believe it was in 2008. I don't remember when it was set up that way.**
Q. All right. Just --
MR. MOHRMAN: Vague as to e-mails.
BY MR. NIERENGARTEN:
Q. As best you recall, it was 2008?
A. **Yeah.**
Q. All right, okay.
MR. NIERENGARTEN: I'm going to take a short break.
THE WITNESS: Okay.
MR. NIERENGARTEN: But I think we're probably close to being done.
THE WITNESS: All right.



MR. NIERENGARTEN: So let's take ten minutes.
THE VIDEOGRAPHER: Going -- going off the video record. The time is now approximately 11:19 a.m.
(Break from 11:19 to 11:39.)
THE VIDEOGRAPHER: We're back on the video record. The time is now approximately 11:39 a.m.
MR. NIERENGARTEN: Ms. Bowser, that's all the questions I have at this time. I reserve the right, of course, to ask you some follow-up questions after Mr. Mohrman is done with his examination; and I want to thank you for taking the time to come here today to testify. That's all I have for now. Thank you.
MR. MOHRMAN: Would you mark that, please?
THE COURT REPORTER: Sure.
(Whereupon, Deposition Exhibit No. 13 was marked for identification, and a copy is attached and hereby made a part of this deposition.)

* * *



EXAMINATION
BY MR. MOHRMAN:
Q. Good morning, Ms. Bowser.
A. **Good morning.**
Q. My name is Bill Mohrman. I represent Mr. Hecker in this proceeding.
I'm first going to show you what I've had marked as Deposition Exhibit 13, which is a multipage document. The first page is a September 8th, 2009 letter from Mr. Nierengarten to you.
A. **Uh-huh.**
Q. A two-page letter. The third page is a subpoena, which is a four-page document; and, then, the last six pages of Exhibit 13 are a notice of taking deposition to which an exhibit is attached. Can you take a look at it for a minute?
MR. NIERENGARTEN: Counsel, do you have a copy for me?
MR. MOHRMAN: I do not.
MR. NIERENGARTEN: Well, we provided you copies. Could you provide copies to us?
MR. MOHRMAN: I will, I just don't

A. **I believe there are some documents. I -- again, I -- without going through them, I can't tell you what they are.**
Q. Where did you get the documents?
A. **They were through e-mails. These are all e-mails.**
Q. Okay.
A. **The documents that were attached to e-mails and things like that.**
Q. So is the information contained in the all mail folder, does it consist entirely of e-mails and in addition to the e-mails documents that would have been attached to the e-mails?
A. **Correct.**
Q. Is there anything else in there?
A. **No.**
Q. Okay. How -- and these would have been e-mails that were initially generated on your computer at the Hecker entity headquarters, correct?
MR. NIERENGARTEN: Objection, leading, lack of foundation.
THE WITNESS: Correct.
BY MR. MOHRMAN:
Q. And those e-mails -- and those were



e-mails -- strike that.
Were you an addressee on these e-mails?
A. **I was.**
Q. Is that because you were one of the main addressees or is that because you were copied on all e-mails that were sent to Mr. Hecker?
A. **Copied.**
Q. So you were copy -- so any e-mail that went to Mr. Hecker automatically got copied to you?
MR. NIERENGARTEN: Objection as to foundation, leading.
THE WITNESS: Correct.
BY MR. MOHRMAN:
Q. Do you know whether or not any of the e-mails that you copied into your all mail folder on your laptop would have been e-mails that would have been received by Mr. Hecker from a Bruce Parker?
A. **I can't verify that. I -- I don't know.**
Q. Do you know who Mr. Parker is?
A. **Yes.**



Q. Who is he?
A. **A long-time attorney of Denny's.**
Q. What about Tim Thornton, would there be any e-mails from him?
A. **I couldn't verify that, either.**
Q. Did you have an understanding prior to today that communications between an attorney and the client are privileged?
A. **I --**
MR. NIERENGARTEN: Objection as to foundation.
THE WITNESS: I really don't know, no.
BY MR. MOHRMAN:
Q. Okay. Did you do something to get the e-mails that are contained in the all mail folder, did you do something to get those mails off of your computer at the Hecker entities and transferred onto your laptop?
A. **Yeah. I had a --**
Q. Let's take it one step at a time. The answer is yes?
A. **Yes.**
Q. What did you do?
A. **I had a flash drive or a -- one of**



**those little USB drives, that I put some files on that.**
Q. Okay. And when did you do that?
A. **Probably in April, beginning of April. I don't really recall.**
Q. Did you buy a flash drive to do this?
A. **I -- I had one. I don't know -- I've had it for a while. I don't know --**
Q. When did you first think of the idea of taking these e-mails off of your computer at the Hecker entities and transferring onto a flash drive?
A. **Again, when I knew this was going to be a big issue.**
Q. When did you know that?
A. **Um, shortly after March, whenever we got the fax that came across.**
Q. I'm going to switch gears on you for just a moment.
Have you testified before any grand jury?
A. **Yes.**
Q. When did that testimony take place?
A. **Monday.**

Q. What else, what other types of information are contained in the Gmail folder? And I want to be clear about what I'm asking about right now. I understand your testimony there was a Gmail folder and then an all mail subfolder within the Gmail folder.
**A. Uh-huh.**
Q. Right now I'm just focusing on what all was in the Gmail folder. I'll get to the all mail folder in a minute. What all was in the Gmail folder?
**A. There's nothing in the Gmail folder.**
Q. Except for a subfolder entitled all mail, correct?
**A. Correct.**
Q. Why did you set it up that way?
**A. To be honest, I don't -- I have no idea why -- how it was set up that way or I don't recall why.**
Q. Why did you entitle the folder Gmail?
**A. It has something to do with the com -- the laptop.**
Q. Is it your --



**A. That if I have Gmail as an account, I'm assuming it's, you know, Gmail.com, that's why. I don't know.**
Q. Is it your -- did you create the Gmail folder on your laptop computer or is it your testimony that a Gmail folder already existed on your laptop when you purchased it?
MR. NIERENGARTEN: Objection.
THE WITNESS: I believe it was already -- I did not create it. I don't know if once I set up my Gmail account if it created it. I don't know. I didn't physically go in and create a Gmail account.
BY MR. MOHRMAN:
Q. Okay. Did somebody -- do you have a Gmail account?
**A. I do, yeah.**
Q. How long have you had a Gmail account?
**A. Oh, I don't know, nine months or so. I -- I don't recall when I -- I -- I registered for that.**
Q. All right. What about the subfolder in the Gmail folder --
**A. Uh-huh.**



Q. -- entitled all mail?
**A. Uh-huh.**
Q. Did you create that folder or was that a folder that was either on the laptop or created at the time that you opened your Gmail account?
**A. I created that.**
Q. Are there additional subfolders that are contained in the subfolder entitled all mail?
**A. No.**
Q. You've testified that contained within the all mail account are e-mails related to the Hyundai documents which have already been marked as exhibits in this deposition, correct?
MR. NIERENGARTEN: Objection, mischaracterizes her testimony.
THE WITNESS: I believe that that was -- I mean, there was e-mails that I -- I don't remember reading every single e-mail and -- I -- I don't recall exactly what was in there.
MR. MOHRMAN: I move to strike as nonresponsive.
BY MR. MOHRMAN:
Q. You're not following my question.



I'm taking this one step at a time. I'm not asking you for everything that's in there right now. I just want to know that in -- contained in that folder were e-mails that were related to the Hyundai documents that have been marked as exhibits at this deposition, correct?
MR. NIERENGARTEN: Objection.
THE WITNESS: I can't confirm that. I don't know if these exhibits are in any of those e-mails.
BY MR. MOHRMAN:
Q. That's not what I'm asking you, ma'am. Let's go back a step further again. Strike that. Why don't I ask it in a general way.
Could you tell me what types of information, electronic information is contained in the all mail folder on your laptop?
**A. Just general business, Chrysler information, Hyundai information, just different business activities, I guess. I couldn't be specific and tell you what they are.**
Q. Are there e-mails?
**A. There's e-mails.**
Q. Okay. Are there documents?

extensive?

**A. There were quite a few in there.**

Q. How did you pick and choose which documents to download to your flash drive?

MR. NIERENGARTEN: Objection as to foundation.

THE WITNESS: I really don't recall. I just remember things that I would see that I didn't think were right, and I would just kind of file it away.

BY MR. MOHRMAN:

Q. When did you do this?

**A. In 2008, and I couldn't tell you, probably, I would say summer, fall, when things started to happen with Chrysler and everybody else.**

Q. And so you had this flash drive, right?

**A. Uh-huh.**

Q. And it's your testimony that was a personal flash drive of yours?

**A. It was, yep.**

Q. And while you were seated -- so you'd be seated at your desk at the workstation, correct?



**A. Uh-huh.**

Q. This was during business hours, correct?

**A. Uh-huh.**

Q. And you'd put the flash drive into your computer, correct?

**A. Uh-huh.**

Q. Would you do anything to make sure nobody was watching you while you did that?

**A. Nobody was watching me. I was at my own station.**

Q. Okay. And then you would -- as you sat there, you would go through records that were contained on Hecker computers and determine which documents you wanted to download, correct?

**A. No.**

Q. What's inaccurate about that?

**A. It was a file that I kept on my desktop since summer or fall of 2008 that I would just transfer things over to. So as I was downloading it on a flash drive, I wasn't viewing --**

Q. Okay.

**A. -- what should I put on here. It was just that one file --**



Q. So --

**A. -- I moved.**

Q. I'm sorry. Everybody stop for a second. First of all, are you done with your answer?

**A. Yes.**

Q. Okay.

MR. HOVERSTEN: Mr. Mohrman, if I may, we're getting a comment from the people on the line that they're having problems hearing both you and Mr. Nierengarten.

MR. MOHRMAN: Part of me wants to say tough, they could have flown up here if they wanted to be at the depo. I'm willing to accommodate this for a few moments. If the technology doesn't work, I don't know, get a tape recorder.

MR. NIERENGARTEN: Let's go off the record for a second.

THE VIDEOGRAPHER: Going -- going off the video record. The time is now approximately 1:40 p.m.

(Discussion off the record.)

THE VIDEOGRAPHER: We're back on the video record. The time is now approximately



1:41 p.m.

BY MR. MOHRMAN:

Q. Are you ready?

**A. Uh-huh.**

Q. Okay. So you had a separate file that was on the desktop of the Hecker entity computer that you used when you worked for the Hecker entities, correct?

**A. Correct.**

Q. And you set that file up, correct?

**A. Correct.**

Q. Did you give it a name?

**A. I did. I don't recall what it was.**

Q. Okay. Did you tell anybody from the Hecker entities that you were creating this file on a Hecker entity desktop?

**A. Yes.**

MR. NIERENGARTEN: Objection, vague.

BY MR. MOHRMAN:

Q. Who did you tell?

**A. Molly Kaplan.**

Q. What did you tell her?

**A. That I was just saving information that I thought would be relevant down the road,**

way. Okay? Well, I take it your answer to me would be no, then?

A. **I really don't understand the question. I don't know what attorney-client privilege --**

Q. Then let me --

A. **-- is.**

Q. Let me ask the question to you this way. Did anybody representing the Hecker entities tell you that you could take documents that were attorney-client privileged and reveal them to somebody?

MR. NIERENGARTEN: I'd like to note an objection for the record. Mr. Mohrman, I think you counseled the witness this morning to not interrupt you in your cross-examination. I'd appreciate it if you'd extend the same courtesy to the witness and not cut her off.

BY MR. MOHRMAN:

Q. Ma'am, did I cut you off when you were answering?

A. **I'm -- answer -- or ask me again. I don't understand what you're saying.**

Q. I understand that. Did I cut you off when you were answering a question, did I



interrupt you?

A. **I don't remember.**

Q. If I do that, feel free to stop me. Okay?

A. **Uh-huh.**

Q. I detected a pause, and I thought you were done answering the question. Okay?

A. **Okay.**

Q. Did anyone representing any of the Hecker entities ever tell you that you could take attorney-client privileged records and reveal it to somebody else?

MR. NIERENGARTEN: Objection as to foundation, relevance and leading.

THE WITNESS: No.

BY MR. MOHRMAN:

Q. Did anyone -- did Denny Hecker or anybody representing Denny Hecker tell you that you could take attorney-client privileged records and reveal them to third parties?

MR. NIERENGARTEN: Same objection.

THE WITNESS: No.

BY MR. MOHRMAN:

Q. Can you testify under oath here today that any of the documents that you



downloaded onto a flash drive from a Hecker computer contained attorney-client privileged records or not?

A. **I --**

MR. NIERENGARTEN: Objection as to foundation.

THE WITNESS: I can't answer. I don't know.

MR. MOHRMAN: Okay. I want to put on the record, Mr. Nierengarten, that I think the -- some of the documents that are contained on the disk that Ms. Bowser produced to you pursuant to the subpoena are attorney-client privileged, and I am instructing you at this time not to look at those records. I will instruct you exactly which documents those are, and I'm going to demand that they be returned to us.

MR. NIERENGARTEN: I understand your objection.

MR. MOHRMAN: It's not an objection.

MR. NIERENGARTEN: We will take it up after the deposition. I mean, we had tried to schedule a discovery conference for later today, and I understand you didn't want to be available



for that, and that is fine. But if we will want to talk about potential attorney-client records after the deposition, I'm happy to talk about it.

MR. MOHRMAN: I'll just note on the record, I don't agree with your statement about the discovery conference.

MR. NIERENGARTEN: Well, did I misunderstand, Mr. Mohrman? I thought we started this morning and you said that you did not want to have a discovery conference at the end of the deposition. Maybe I misunderstood.

MR. MOHRMAN: I said I disagreed with your statement, and I'm not going to elaborate right now, and I'll confirm my understanding to you in writing. I don't want to take up time on the record dealing with it.

MR. NIERENGARTEN: Fine.

BY MR. MOHRMAN:

Q. When you worked at the Hecker entities, Ms. Bowser, you had a personal computer that you worked with, correct?

A. **My desktop.**

Q. Yes.

A. **Yes.**

Q. And that was at the workstation

Q. Whose handwriting is on that?
**A. That's mine.**
Q. Okay. And was that a Post-it note that you put on the laptop?
**A. Yes.**
Q. And that was an instruction to -- from you to Mr. Nierengarten to tell him what folder to look for to get the information that was responsive to the subpoena; is that right?
**A. Yes.**
MR. NIERENGARTEN: Objection. Give me a chance to assert an objection.
THE WITNESS: Okay.
BY MR. MOHRMAN:
Q. With regard to the documents contained in the orange folder, at -- at the time that the courier came out to your home a week ago, you were no longer employed by any of the Hecker entities; is that correct?
**A. Correct.**
MR. NIERENGARTEN: Objection.
BY MR. MOHRMAN:
Q. Could you tell me why you would have in your possession those documents after your employment with the Hecker entities?



**A. Because I knew that this was going to be a huge issue, and I was not going to be the one to take a fall for any type of documents that were altered.**
Q. Did you inform Mr. Hecker that you had removed those documents from the Hecker entities headquarters when you left your employment?
**A. I did not remove them. I made copies.**
Q. I understand that. Let me rephrase the question.
Did you inform Mr. Hecker that you had made copies of those documents and had removed them to your home?
**A. No.**
Q. Did you inform anybody with the Hecker entities that you had done that?
**A. Yes, I did.**
Q. Who?
**A. Molly Kaplan, she knew that I had a file folder of the copies.**
Q. When did you inform Ms. Kaplan that you had done that?
**A. Just prior to me leaving.**



Q. Did you keep a copy of these documents when you were employed with the Hecker entities at your workstation at the Hecker entities?
**A. Yes.**
MR. NIERENGARTEN: Objection. You may answer.
THE WITNESS: Yes.
BY MR. MOHRMAN:
Q. Where did you keep them?
**A. They were in our -- Molly and my area. We had file cabinets there, and so every manufacturer, everything was filed in that area.**
Q. Were the documents that you produced today kept in separate folders in those files?
**A. No.**
Q. Okay. Were these particular documents all kept in the same folder?
**A. Yes.**
Q. Were there any other documents in that particular folder other than the ones that you copied and took from the Hecker entities?
**A. No.**
Q. Was the orange folder that you



currently have in your possession, was that the folder that was used to maintain these documents in the file cabinet at the Hecker entities?
**A. No.**
Q. Where did you get the orange folder?
**A. From my home.**
Q. When you -- so you had all of these documents that have been marked as Exhibits 2 through 11 in a separate folder in your file cabinet in the area that you and Molly worked at, correct?
**A. Correct.**
Q. Was there a label on that folder?
**A. It just said Hyundai.**
Q. And how did you get these particular documents that you produced pursuant to the subpoena, and what I'm wondering is, did you physically go into the folder marked Hyundai in the file cabinet and make copies of them and then take those copies with you?
MR. NIERENGARTEN: Objection, leading.
THE WITNESS: Yes.
BY MR. MOHRMAN:

MOHRMAN & KAARDAL, P.A.

ATTORNEYS AND COUNSELORS AT LAW

33 SOUTH SIXTH STREET
SUITE 4100
MINNEAPOLIS, MINNESOTA 55402

WILLIAM F. MOHRMAN

TELEPHONE: 612/341-1074
FACSIMILE: 612/341-1076
WRITER'S E-MAIL: MOHRMAN@MKLAW.COM

September 18, 2009

Via E-Mail

Nicholas Neirergarten
Stephen F. Grinnell
Gray, Plant, Mooty & Bennet, P.A
80 South Sixth Street, 500 IDS Center
Minneapolis, Minnesota 55402

**Re: Chrysler Financial Services Americas LLC v. Dennis E. Hecker
Adversary Proceeding No. 09-05019**

Dear Mr. Neirengarten:

This letter confirms my demand to you that return to my office the disk your firm obtained from Ms. Bowser along with all documents printed from the disk because Ms. Bowser admitted that all documents on the disk were illegally taken from the Hecker entities and that the disk contains attorney client privileged materials. Under the ethics rules, you are prohibited from reviewing such documents until a privilege review can be conducted.

Very truly yours,

William F. Mohrman

WFM/mg
Cc: Client (w/enc)(via mail)

**EXHIBIT 8**