## UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**DENNIS E. HECKER**                                    **Case No. 09-50779-RJK**

       **Debtor.**                                              **Chapter 7**

---

**CHRYSLER FINANCIAL
SERVICES AMERICAS LLC,**

         **Plaintiff,**                                  **ADV Pro. No. 09-05019**

**vs.**

**DENNIS E. HECKER**

         **Defendant.**

---

## HECKER'S REPLY MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT'S MOTION TO DISQUALIFY
## PLAINTIFF'S ATTORNEYS

---

Although Chrysler's attorneys treat their professional responsibilities as a "side show," Chrysler asks the Court to ignore the facts of their wrongdoing to minimize their improper conduct. It is undisputed that Mr. Bauer was a part of Chrysler's defense team, that he had the Bowser emails for more than a month prior to the subpoena, that he was reviewing the documents, and that he made a false declaration to the Court. As a member of the defense team, not only is Mr. Bauer's knowledge imputed to the other attorneys, but those attorneys are also responsible for his improper conduct. Both the access to Mr. Hecker's privileged communications, and Chrysler's attorney's failure to supervise their agent threaten a continuing taint upon this litigation and their disqualification is the only way to remove it. As Chrysler

continues to exhibit an inability to be candid with Court, this Reply is necessary to ensure an accurate record.

In the time between filing its motion to disqualify Chrysler's counsel and responding to Plaintiff's motion for a protective order Defendant's counsel learned of the scope of the improper actions of Chrysler's litigation team. Where defendant saw smoke, it is now clear there was fire. It is undisputed that Chrysler's investigator had the Bowser emails for over a month before the subpoena was issued, during which time he did review the documents which included privileged communications. (See Aff. of Willaim Skolnick at Ex. 1). It is also undisputed that Chrysler's lawyers submitted a false affidavit of their investigator to the Court. Defendant's counsel presented these facts in its Memorandum of Law in Opposition to Plaintiff's motion for a protective order, and hereby incorporates them by reference. Chrysler's continued misrepresentations of both fact and law, however, must be addressed.

Chrysler begins by asserting that the relevant events were provided in its memorandum in support of it motion to establish a protocol for review of the emails. (Plaintiff's Memo. at 2). Those facts, however, were based upon the pretense that Chrysler obtained the Bowser emails in September pursuant to a subpoena, a pretense that Chrysler attempts to maintain in its current memorandum. (See id.). In reality, Chrysler's investigator obtained the emails over a month before the subpoena was issued. The subpoena was merely a pretextual attempt to conceal Chrysler's wrongdoing—the fact that their investigator had been reviewing Mr. Hecker's privileged communications for over a month. Chrysler now, however, asserts that the subpoena was issued in an effort to "protect its work product privilege." (Id. at 5). This meritless argument was already rejected by the Court at the November 18 hearing. At that hearing, it became clear not only that the investigator was reviewing the emails, but that he lied to the court

about reading them.

Chrysler's attorneys are responsible for the conduct of the non-lawyer members of their defense team.  See Minn.R. Profl.Conduct 5.3; see also Midwest Motor Sports v. Arctic Cat Sales, Inc., 347 F.3d 693, 698–99 (8th Cir. 2003)(holding attorneys accountable for wrongdoing of their investigator); Richards v. Jain, 168 F.Supp.2d 1195, 1201–04 (W.D. Wash 2001)(attorneys disqualified when non-lawyer paralegal reviewed privileged emails because they failed to supervise and paralegal's knowledge was imputed to them).  Chrysler maintains that there is no reason to believe that the emails their investigator reviewed contained privileged information.  They, however, are in no position to make such a determination.  Chrysler's attorneys insist they have not read any emails, so they cannot know whether the investigator read privileged material.  Further, the investigator, not trained as a lawyer, cannot determine what materials are privileged.  See Arnold v. Cargill, 2004 WL 2203410 at *8 (D. Minn)(individual not trained in law was not in position to determine privilege).

Chrysler goes on to insist that even if their investigator did learn privileged information that the presumption that the knowledge is imputed to them can be rebutted.  The cases they cite on the issue, however, are factually inapposite.  In Cook v. City of Columbia Heights, 945 F.Supp. 183, 187–88 (D.Minn. 1996), a lawyer rebutted the presumption that he had shared confidences with an attorney at his former firm when he testified that he had not worked on the matter in question, had not billed time on the matter in question, had not discussed it with anyone, did not even know of its existence, and there had been no firm meetings on the matter in which he was included.  Id.  The present case does not involve a prior association with a firm, but an investigator who learned privileged information about a case on which he was actively working, while being supervised by the attorneys in question.

Chrysler also cites Hamilton v. Dowson Holding Company, Inc., 2009 WL 2026327 (D.V.I. July 2, 2009).   In that case, an investigator received privileged documents, and the attorney he worked for was able to rebut the presumption that he had used or shared that confidential information.   Id. at *6.   In determining that confidences had not been shared, the Court noted:

> The Court is comfortable in accepting the representations of Mr. Sheraw because he has been a private investigator in the Virgin Islands for a substantial number of years and the Court knows him to have conducted numerous investigations on behalf of attorneys in this jurisdiction and he enjoys a reputation as a professional and competent investigator.

Id.   In the present case the investigator does not have such a reputation, and the only knowledge the Court possesses about him is that he had no problem submitting a made a false affidavit to the Court.   It is hard to fathom how Plaintiff's counsel expects the Court to accept the word of a man who has already deceived it.

Moreover, even if the investigator did not explicitly share the contents of the emails with the rest of Chrysler's defense team, it is beyond doubt that his investigation was shaped by the privileged information he accessed.   However, since Defendant has been unable to depose Chrysler's investigator, the true scope of his use of the privileged information is not ascertainable.   Accordingly, "the 'risk' that improperly obtained confidential and privileged information might be used against [Defendant] justifies disqualification here."   Arnold, at * 13.

Similarly, Chrysler's assertion that it met its ethical obligations by "sequestering" the emails is equally unfounded.   First, Chrysler did not sequester the emails.   Not only was their investigator actively reviewing the emails, but they were delivered to an outside vendor.   (See Plaintiff's Memo. at 3).   Chrysler had no right to deliver the emails to a third party, and it was noticeably absent from their motion to establish a protocol for review that they had already taken

it upon themselves to transfer the emails to an outside party. Chrysler's lawyer at Mayer Brown submits an affidavit where in he attended a class purposely to learn how to read the stolen emails and did in fact review some, but cannot remember which ones. This supports the clear conclusion that Chrysler's lawyers failed to take any steps to protect the privileged communications.

Next, Chrysler attempts to portray the privileged emails as "inadvertently sent materials." (Id. at 9). These were not documents "mistakenly sent or produced by opposing parties or their lawyers." Minn. R. Prof'l Conduct 4.4, cmt. 2. They were documents stolen by a former employee of the defendant and clandestinely obtained by Chrysler's investigators. There was nothing inadvertent about the way in which they were obtained. Moreover, the case law is clear, "[a]n attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents." Arnold, at *10. What Chrysler did was allow its investigator to review the documents for over a month before issuing the subpoena and notifying Defendant's Counsel, and continually refuse to return the documents.

Chrysler also asserts that it complied with its duty to inform Bowser she was not to produce privileged materials by attaching portions of Rule 45 to the subpoena it served. (Plaintiff's Memo. at fn. 5). This assertion completely ignores that fact that Bowser had already given Chrysler all of the documents over a month before the subpoena was issued. It only further evidences the fact that Chrysler's counsel was trying to hide the improper conduct of their investigator.

Finally, Chrysler clings to the contention that Bowser was copied on all of the emails she produced. This is simply not true. Bowser was never authorized to access all of Mr. Hecker's emails. Moreover, reviewing the documents themselves indicates that she was only copied in a

few specific instances.   Upon preliminary investigation it does appear, however, that she surreptitiously intercepted Mr. Hecker's personal emails as they were sent.

## **CONCLUSION**

Based on the foregoing, Defendant's motion to disqualify Plaintiff's counsel should be granted.  Plaintiff's counsels' conduct of reviewing Mr. Hecker's privileged communications, and their subsequent misrepresentations about doing so, threaten a continuing taint on this litigation which can only be removed by their disqualification.


Respectfully Submitted,


 Dated:          November 24, 2009              **SKOLNICK & SHIFF, P.A.**


                                                __/e/ William R. Skolnick_____
                                                William R. Skolnick #137182
                                                LuAnn M. Petricka #18505X
                                                527 Marquette Avenue South, #2100
                                                Minneapolis, MN 55402
                                                (612) 677-7600
                                                wskolnick@skolnick-shiff.com
                                                petricka@visi.com

                                                ATTORNEYS FOR DENNIS E. HECKER

In re:

**DENNIS E. HECKER**                                    Case No. 09-50779-RJK

        **Debtor.**                                    **Chapter 7**

---

**CHRYSLER FINANCIAL**                                  **ADV Pro. No. 09-05019**
**SERVICES AMERICAS LLC,**

        **Plaintiff,**

vs.

**DENNIS E. HECKER**

        **Defendant.**

---

### AFFIDAVIT OF WILLIAM R. SKOLNICK

---

STATE OF MINNESOTA )
                  ) ss.
COUNTY OF HENNEPIN )

      William R. Skolnick hereby deposes as follows:

    1.   That I am the attorney of record for Defendant Dennis E. Hecker ("Hecker"), and provide this Affidavit in support of Defendant's motion to disqualify Plaintiff's counsel. The facts contained herein are based on my personal knowledge.

    2.   Attached hereto as Exhibit 1 is a true and correct copy of a privilege log that lists the privileged communications that were contained in the emails that Bowser provided to Chrysler's investigator.

    3.   Attached hereto as Exhibit 2 is a true and correct copy of <u>Hamilton v. Dowson</u>

Holding Company, Inc., 2009 WL 2026327 (D. V. I. 2009), a Slip Copy of an opinion of the

United States District Court for the District of the Virgin Islands.

4. Attached hereto as Exhibit 3 is a true and correct copy of Arnold v. Cargill

Incorporated, 2004 WL 2203410 (D. Minn. 2004), an unpublished opinion of the United States

District Court for the District of Minnesota.

FURTHER YOUR AFFIANT SAYETH NOT.

William R. Skolnick

Subscribed and sworn before me
this 24th day of November, 2009.

Notary Public

ZACHARY MEYER PUCHTEL
Notary Public-Minnesota
My Commission Expires Jan 31, 2014

## Privilege Log
### *CHRYSLER FINANCIAL SERVICES V. DENNIS E. HECKER*
Court File No. 09-050779



| Date | AUTHOR/RECIPIENT: EMAIL | Description | Objection to Production |
|---|---|---|---|
| 11/15/08 | Denny Hecker/Bruce Parker | Security Post orders from Chrysler | Attorney-Client Privilege Work-Product |
| 11/15/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Advice on Minneapolis Chrysler Audit | Attorney-Client Privilege; Work-Product |
| 11/15/08 | Denny Hecker/Bruce Parker | Fw: Walser proposal | Attorney-Client Privilege; Work-Product |
| 11/15/08 | Denny Hecker/Clint Cutler | Conference call re: Chrysler Financial proposal | Attorney-Client Privilege; work-product; irrelevant |
| 11/15/08 | Denny Hecker/Bruce Parker | Luther Auto/Walser interest | Attorney-Client Privilege; Work-product |
| 11/15/08 | Denny Hecker/Bruce Parker | Luther Auto/Walser interest—advice on strategy for meeting with Walser | Attorney-Client Privilege; work-product |
| 11/26/08 | Bruce Parker/Denny Hecker/ Advantage Auto employees | Proposed Advantage bankruptcy outline for letter (several emails) | Attorney-Client Privilege; work-product |
| 11/26/08 | Denny Hecker/Bruce Parker | Monticello store re-opening, communications for advice | Attorney-Client Privilege; work-product |
| 11/24/08 | Denny Hecker/Bruce Parker | Bellanotte Letter of Intent (Attachment) | Attorney-Client Privilege |
| 11/3/08 | Denny Hecker/David Uhlig | Monarch on the Park/CO financing and valuation | Attorney-Client Privilege |
| 11/3/08 | Bruce Parker/Denny Hecker | Limited Interim Agreement related to wholesale check request information | Attorney-Client Privilege |
| 11/5/08 | Denny Hecker/David Uhlig | Monarch on the Park/CO financing and valuation—suggestions for negotiation | Attorney-Client Privilege; work-product |
| 11/24/08 | Denny Hecker/Bruce Parker/ Robert Pitts (attorney) | Documents for Denny (Attachments) including bill of sale for 500 units and letters of | Attorney-Client Privilege; work-product |

EXHIBIT
1

| | | resignation (Denny/Erik) | |
|---|---|---|---|
| 11/24/08 | Denny Hecker/Bruce Parker | Questions about Documents sent by Robert Pitts | Attorney-Client Privilege; work-product |
| 11/25/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Questions re: Bank transaction refunds for Chase Bank | Attorney-Client Privilege; Work-Product |
| 11/25/08 | Denny Hecker/ Bruce Parker/ Clint Cutler | Communications re: Aspen Proeprty and advice from attorneys | Attorney-Client Privilege; Work Product |
| 10/1/08 | Susan Rhode/Denny Hecker | Communications from Rhode | Attorney-Client Privilege; |
| 10/7/08 | Denny Hecker/Bruce Parker | Fw: meeting with Tom Gillman | Attorney-Client Privilege; irrelevant |
| 11/5/08 | Bill Mohrman/Erik Dove | Signature Pages for Settlement Agreement re: New Brighton | Attorney-Client Privilege |
| 9/29/08 | Denny Hecker/Bruce Parker/ Erik Dove | S/C Proposal/sales of franchises | Work-Product |
| 9/25/08 | Bruce Parker/Denny Hecker | Hecker Estate/Trusts | Attorney-Client privilege; Work-Product |
| 11/16/08 | Denny Hecker/Bruce Parker | Advice re: CFC fleet | Attorney-Client Privilege; work-product |
| 11/16/08 | Denny Hecker/Bruce Parker | Communication re: M&I Bank partner financials/default | Attorney-Client Privilege; work-product |
| 11/16/08 | Clint Cutler/Denny Hecker/ Hecker attorneys | Draft email to CFC attorney | Attorney-Client Privilege; work-product |
| 11/16/08 | Denny Hecker/Bruce Parker | Fw: email from Mike Givens—financials for M&I Bank | Attorney-Client Privilege |
| 11/16/08 | Denny Hecker/Bruce Parker | Fw: email from Mike Givens—questions about defaulted M&I Bank loan | Attorney=Client Privilege; Work-Product |
| 11/16/08 | Denny Hecker/Bruce Parker | Responses to draft email to CFC attorney | Attorney-Client Privilege; work-product |
| 11/15/08 | Bruce Parker/Denny Hecker | Communication re: Luther potential interest | Attorney-Client Privilege; work-product |
| 11/15/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Communication re: draft email to CFC attorney/strategy | Work-Product |
| 11/15/08 | Denny Hecker/Barabra Jerich | Meeting with Paul Walser | Work-Product |
| 11/26/08 | Bruce Parker/Denny Hecker/ Barbara Jerich | Inver Grove VW and Hyundai | Attorney-Client Privilege; work- |

2

| | | Dealerships | product |
|---|---|---|---|
| 11/10/08 | Bruce Parker/ Denny Hecker | MA&A agreement comments and clarification | Work-Product; Attorney-Client privilege |
| 11/10/08 | Denny Hecker/ Bruce Parker | Advice sought re: ID of Fords on lot | Attorney-Client Privilege; work-product |
| 11/18/08 | Denny Hecker/ Bruce Parker | Advice sought re: Ford demand for cars | Attorney-Client Privilege; work-product |
| 11/9/08 | Clint Cutler/Bruce Parker/ Denny Hecker | Hecker/Advantage draft letter and advice | Attorney-Client; Work-Product |
| 11/18/08 | Denny Hecker/Bruce Parker | Press Release re: Advantage | Work-Product privilege |
| 11/7/08 | Denny Hecker/Bruce Parker | Communications re: hold from CFC | Attorney-Client Privilege; work-product |
| 11/7/08 | Denny Hecker/Cutler/Parker/ Strangis | Questions re: finance hold from Chrysler Financial – advice sought | Attorney-Client Privilege; work-product |
| 11/7/08 | Denny Hecker/Cutler/ Parker/ Strangis | Chrysler Financial alternatives outline for DEH | Attorney-Client Privilege; work-product |
| 11/9/08 | Denny Hecker/ Parker | Discussions re: revised complaint | Attorney-Client privilege; Work-Product |
| 11/18/08 | Denny Hecker/Tim Thorton | Revised Limited Agreement re: licensing | Attorney-Client privilege; Work-Product |
| 11/16/08 | Denny Hecker/Parker/Cutler | Strategy re: dealing with CFC demands for cars and cash freed through actions | Attorney-Client Privilege; work-product |
| 2/16/09 | Bruce Parker/Denny Hecker/ Borg/Cutler/ Dove | Chrysler Financial/Hecker Foreclosures draft of legal documents | Work-Product |
| 2/18/09 | Borg/Hecker/Cutler | Documents discussed during meeting; litigation list, S/C | Work-Product |
| 2/11/09 | Parker/Hecker/Cutler/Borg | Discussions re: foreclosure actions by CFC | Work-Product |
| 2/11/09 | Hecker/Parker/Volk/Borg/ Cutler | Rosedale Dodge communications | Work-Product |
| 2/11/09 | Hecker/Parker | Communications re: Rosedale Dodge | Work-Product |
| 2/9/09 | Hecker/Dove/Jerich/Cutler/ Parker | Rosedale Dodge/Vemark LLC | Work-Product |

3

|  |  | discussions re: actions to be taken |  |
|---|---|---|---|
| 2/9/09 | Parker/Hecker/Volk/Borg/ Cutler | CFC potential financial proposals | Work-Product |
| 2/9/09 | Hecker/Parker | Communication re: email sent by Parker to Dan Cadlick at Larkin Hoffman | Work-Product |
| 2/9/09 | Parker/Hecker/Cutler | Communications re: updates on US Bank matters | Attorney-Client privilege; Work-Product |
| 2/4/09 | J. Michael Dady/Hecker | Communications re: Hobbs Farm Equipment suit | Attorney-Client; Work-Product |
| 2/11/09 | Hecker/Dankovich/Dove/Parker | Communication re: CFC and Vehicle titles | Attorney-Client privilege |
| 2/9/09 | Hecker/Dove/Parker | Communication re: US Bank default | Attorney-client privilege, work-product |
| 2/9/09 | Hecker/T. Hecker | Communication re: US bank Financing | Spousal privilege |
| 2/9/09 | Hecker/R.Olson/B. Olson/Dove/Parker | Communications re: Eaglerider | Attorney-client privilege |
| 2/10/09 | Dove/Borg | Communications re: Hecker financial info | Work-Product |
| 2/2/09 | Hecker/Cutler/Borg/Volk/Parker/W.Dove/E. Dove/Eckhart/Bowser | Communication re: meeting of counsel | Work-Product |
| 4/13/09 | Borg/Parker/Dove/Hecker | Communication re: Ford litigation | Attorney-client privilege, Work-Product |
| 4/13/09 | Hecker/Bowser | Communication re: Ford litigation | Attorney-client privilege, Work-Product |
| 4/14/09 | Hecker/Bowser/Borg | Communication re: Wagener litigation | Attorney-client privilege, Work-Product |
| 4/16/09 | Hecker/Bowser/Dove/Cutler | Communication re: selection of counsel | Attorney-Client Privilege |
| 4/15/09 | Dove/Mohrman | Re: License and title fees | Attorney-Client Privilege |
| 4/5/09 | Cutler/Dove/ParkerHecker/Borg | Liquidation analysis | Work-Product |
| 4/5/09 | Cutler/Dove/Parker/Hecker/Borg | Communications re: CFC's claims | Attorney-Client Privilege, work-product |
| 4/5/09 | Dove/Cutler/Parker/Hecker/Borg/Volk | Liquidation analysis | Work-product |
| 4/5/09 | Dove/Parker/Cutler/Hecker | Re: Toyota financing | Attorney-Client Privilege, work- |

4

| Date | | Description | product |
|---|---|---|---|
| 4/6/09 | Hecker/Bowser/Cutler/Dove/Kaplan | Communication re: conference call | Attorney-Client Privilege |
| 3/18/09 | Hecker/Bowser/Parker/Cutler | Communication re: Abra purchase agreement | Attorney-Client Privilege |
| 3/27/09 | Hecker/Bowser/Dove/Parker/Cutler | Re: Enterprise non-compete | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Dove/Parker | Re: Eaglerider agreement | Attorney-client privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Eaglerider agreement | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Eaglerider agreement | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Dealership investment | Attorney-Client Privilege |
| 3/18/09 | Dove/Parker | Re: strategy meeting | Attorney-Client Privilege |
| 3/11/09 | Hecker/Bowser/Dove/Parker | Re: Abra deal | Attorney-Client Privilege; |
| 3/12/08 | Hecker/Bowser/Parker/Dove | Re: Rosedale leasing | Attorney-Client Privilege; |
| 3/6/09 | Hecker/Bowser/Peterson | Re: Ward litigation | Attorney-client privilege |
| 3/6/09 | Parker/Corey-Edstrom | Re: Enterprise agreement | Work-product |
| 3/3/09 | Parker/Kelly | Re: scheduling | Attorney-Client Privilege |
| 3/3/09 | Parker/Brown/Dove/Moon | Re: Enterprise motion | Attorney-client privilege, work-product |
| 3/4/09 | Parker/Corey-Edstrom/Hecker/Brown | Re: Enterprise Motion | Attorney-Client Privilege, work-product |
| 2/28/09 | Hecker/ Parker/ Corey-Edstrom | Re: Enterprise Proposed APA/sale of assets | Work-Product; Expert Work-Product |
| 2/28/09 | Hecker/Parker/Corey-Edstrom/Haglof | Re: asset purchase agreement | Work-Product; Expert Work-Product |
| 2/28/09 | Hecker/Parker/Corey-Edstrom/Haglof | Re: Larkin Hoffman attorney conversations | Attorney-Client Privilege |
| 2/28/09 | Peppersack/Hecker/Parker/Corey-Edstrom | Re: Telephone conference call regarding asset purchase | Attorney-Client Privilege; work-product |
| 2/28/09 | Peppersack/Hecker/Parker/Corey-Edstrom | Re: Asset purchase agreement | Attorney-Client Privilege |
| 2/28/09 | Parker/Hecker/Corey-Edstrom | Re: Enterprise Assets advice | Attorney-Client Privilege; work-product |
| 3/1/09 | Parker/Hecker | Re: Enterprise advice, communications | Attorney-Client Privilege; work-product |
| 3/1/09 | Parker/Hecker | Re: telephone communications re: Enterprise | Attorney-Client Privilege |

| Date | Parties | Description | Privilege |
|------|---------|-------------|-----------|
| 3/1/09 | Hecker/Parker/Corey-Edstrom/Haflog | Re: Asset Purchase Agreement | Attorney-Client Privilege; work-product |
| 3/1/09 | Hecker/Parker/Dove | Re: Enterprise Asset advice | Attorney-Client; work-product |
| 3/2/09 | Hecker/Parker/Kelly (Dorsey) | Re: Enterprice/Advantage communications | Attorney-Client Privilege; work-product privilege |
| 3/2/09 | Hecker/Parker/Jerich | Re: Enterprise business issues/ advice | Attorney-Client Privilege; work-product |
| 3/2/09 | Corey-Edstrom/Hecker | Re: update of Advantage proceedings | Attorney-Client Privilege |
| 2/27/09 | Hecker/Parker | Advice/communications re: Advantage balance sheet | Attorney-Client Privilege |
| 2/27/09 | Hecker/Parker/Corey-Edstrom | Communications re: balance sheet and advice | Attorney-Client Privilege; work-product |
| 2/27/09 | Parker/Hecker | Re: update of communication with Enterprise | Attorney-Client Privilege |
| 2/27/09 | Hecker/Borg (Briggs) | Re: Carlton/Rosedale deal | Attorney-Client; work-product |
| 11/25/08 | Hecker/Parker | Re: Eagle Rider documents | Attorney-Client Privilege |
| 11/25/08 | Cutler/Hecker/Parker | Re: meeting with James Rubenstein at Moss & Barnett | Attorney-Client Privilege; work-product |
| 11/25/08 | Parker/Hecker/Dove | Re: communications concerning Eagle Rider | Attorney-Client Privilege |
| 11/20/08 | Hecker/Parker | Re: creditor | Attorney-Client Privilege |
| 11/18/08 | Hecker/Cutler | Re: creditor update | Attorney-Client Privilege |
| 11/18/08 | Hecker/Parker | Re: legal advice | Attorney-Client Privilege |
| 11/18/08 | Hecker/Thornton (Briggs)/Parker | Re: legal advice | Attorney-Client Privilege |
| 11/17/08 | Hecker/Cutler/Volk/Strangis | Re: legal advice—limited agreement | Attorney-Client Privilege |
| 11/17/08 | Parker/Hecker/Cutler/Strangis | Re: legal strategy | Attorney-Client Privilege |
| 11/17/08 | Cutler/Parker/Hecker | Re: advice/legal strategy—creditors | Attorney-Client Privilege |
| 11/17/08 | Hecker/Parker/Cutler/Borg | Re: Cooperation agreement/legal advice | Attorney-Client Privilege |
| 11/17/08 | Jerich/Parker/Hecker | Re: legal advice—Advantage | Attorney-Client Privilege |
| 11/17/08 | Hecker/Cutler/Dove/Parker | Re: meeting/legal advice | Attorney-Client Privilege |
| 11/17/08 | Hecker/Cutler/Parker/Dove | Re: legal strategy | Attorney-Client Privilege |
| 11/23/08 | Parker/Hecker/Cutler | Re: LOI draft—legal dvice | Attorney-Client Privilege |

| | | |
|---|---|---|
| 11/23/08 | Hecker/Edwards (Aspen counsel) | Re: legal advice--properties | Attorney-Client Privilege |
| 11/23/08 | Hecker/Parker/Dove/Jerich | Re: Legal strategy/advice | Attorney-Client Privilege; Work-Product |
| 11/23/08 | Cutler/Hecker/Parker/Jerich/Dove | Re: payroll—legal advice | Attorney-Client Privilege |
| 11/22/08 | Hecker/Parker | Re: legal advice | Attorney-Client Privilege |
| 11/22/08 | Hecker/Parker/Cutler | Re: update on properties/strategy | Attorney-Client Privilege; work-product |
| 11/22/08 | Hecker/Parker/Cutler (Chain) | Re: Phantom | Attorney-Client Privilege |
| 12/22/08 | Dankovich/Parker/Hecker/Dove (chain) | Re: update —Open requests (Rosedale) | Attorney-Client Privilege |
| 12/22/08 | Hecker/Cutler | Re: update | Attorney-Client Privilege |
| 12/22/08 | Hecker/Cutler | Re: update – Chrysler | Attorney-Client Privilege |
| 12/22/08 | Dove/Hecker/Parker (chain) | Re: Hertz | Attorney-Client Privilege |
| 12/22/08 | Parker/Hecker (chain) | Re: legal advice—Expedia | Attorney-Client Privilege |
| 12/22/08 | Hecker/Parker/Dove/Cutler | Re: legal advice/strategy | Attorney-Client; work-product |
| 10/16/08 | Hecker/Dove/Parker (chain) | Re: legal advice/communications | Attorney-Client Privilege |
| 10/16/08 | Cutler/Dove/Parker | Re: legal strategy/advice-CF actions | Attorney-Client Privilege |
| 10/18/08 | Hecker/Parker/Cutler/Dove | Re: seeking legal advice-Inver Grove Hyundai | Attorney-Client; work-product |
| 10/18/08 | Parker/Dove | Re: legal advice-Inver Grove | Attorney-Client Privilege |
| 10/19/08 | Hecker/Parker/Dove | Re: legal advice, questions US Bank documents | Attorney-Client Privilege; Work-Product |
| 10/19/08 | Dove/Hecker/Parker | Re: legal advice/security issues | Attorney-Client; work-product |
| 10/19/08 | Cutler/Hecker/Dove/Parker | Re: legal advice for proposed email draft (attachment) | Attorney-Client; Work-Product |
| 10/20/08 | Cutler/Hecker/Jerich/Parker/Dove (Chain) | Re: Hecker email/legal advice | Work-Product |
| 8/5/08 | Hecker/Parker/Dove | Re: strategy for DTG | Attorney-Client; Work-Product |
| 8/1/08 | Hecker/Kaardal/Dove (chain) | Re: Trial preparation | Attorney-Client; work-product |
| 7/30/08 | Parker/Dove/Hecker | Re: attachment/control agreement | Attorney-Client Privilege |
| 10/16/08 | Hecker/Strangis/Parker/Dove | Re: legal advice | Attorney-Client Privilege |
| 10/13/08 | Hecker/Gelinske (Briggs) | Re: legal fees | Attorney-Client Privilege |
| 12/15/08 | Borg/Jerich/Hecker | Re: trial preparation | Attorney-Client; work-product |
| 12/15/08 | Parker/Hecker | Re: Hertz materials | Attorney-Client; work-product |
| 12/15/08 | Hecker/Parker (chain) | Re: legal advice/ CFC creditors | Attorney-Client Privilege |

| | | | |
|---|---|---|---|
| 12/15/08 | Hecker/Parker/Corey-Edstrom/Brown | Re: legal advice/strategy | Attorney-Client Privilege; Work-Product |
| 12/15/08 | Hecker/Parker/Cassan (Cassan Maclean) (chain) | Re: questions on Canadian Federal Court legal strategy | Attorney-Client; work-product |
| 12/17/08 | Hecker/Parker/Dove | Re: Legal advice | Attorney-Client |
| 12/18/08 | Hecker/Parker/Jerich/Dove (Chain) | Re: legal advice—VW/Hyundai | Attorney-Client; Work-Product |
| 10/19/08 | Hecker/Parker/Dove/Cutler | Re: draft letter to CFC | Attorney-Client; Work-Product |
| 12/18/08 | Hecker/Dove/Cutler (chain) | Re: Financing/Legal advice | Attorney-Client Privilege; work-product |
| 12/18/08 | Hecker/Jody Edwards (Aspen atty) | Re: Monarch on the Park financing | Attorney-Client |
| 10/15/08 | Hecker/Rhode | Re: divorce | Attorney-Client; irrelevant |
| 10/14/08 | Hecker/Rhode | Re: divorce | Attorney-Client; irrelevant |
| 12/3/08 | Hecker/Kaplan/Volk | Re: litigation memo | Work-Product |
| 12/3/08 | Hecker/Parker | Re: Hyundai | Attorney-Client privilege |
| 12/7/08 | Hecker/Dover/Parker/Cutler | Re: strategy | Attorney-Client Privilege |
| 12/8/08 | Cutler/Parker/Hecker/Dove | Communications Re: bankruptcy filing | Attorney-Client Privilege |
| 12/8/08 | Hecker/Dove/Parker/Cutler | Communications re: bankruptcy | Attorney-Client Privilege |
| 12/8/08 | Hecker/T. Hecker/parker/Volk/Borg/Dove | Communications re: strategy | Attorney-Client Privilege, spousal privilege |
| 12/8/08 | Hecker/Borg/Parker/Dove | Communications re: Litigation strategy | Attorney-Client Privilege; work product |
| 12/9/08 | Hecker/Kaplan/Miller/Parker | Communications re: real estate legal advice | Attorney-Client Privilege |
| 12/9/08 | Hecker/Jerich/Parker/Dove | Communications seeking legal advice re: employee requests | Attorney-Client Privilege |
| 12/9/08 | Hecker/Dove/Borg/Volk | Communications re: settlement negotiations | Attorney-Client Privilege; Work-product |
| 12/9/08 | Hecker/Parker/Dove | Communications re: strategy | Attorney-Client Privilege |
| 12/10/08 | Hecker/Kaplan/Parker | Communications re: Hertz negotiations | Attorney-Client Privilege; work-product |
| 12/10/08 | Hecker/Kaplan/Parker | Communications re: Hertz negotiations | Attorney-Client Privilege; work-product |
| 12/10/08 | Hecker/Kaplan/Parker/Dove/Jerich | Communications re: Inver Grove | Attorney-Client Privilege |

| | | VW | |
|---|---|---|---|
| 12/10/08 | Hecker/Dove/Parker/Jerich | Communications re: Inver Grove VW | Attorney-Client Privilege |
| 12/11/08 | Hecker/Parker | Communications re: legal strategy | Attorney-Client Privilege |
| 12/11/08 | Hecker/Dove/Dankovich/Parker | Communications re: legal strategy | Attorney-Client Privilege |
| 12/11/08 | Hecker/Parker | Communications re: strategy | Attorney-Client Privilege |
| 12/11/08 | Hecker/Dove/Parker | Communications re: GMAC | Attorney-Client Privilege |
| 12/20/08 | Hecker/T. Hecker/Dove/Parker | Communications re: Hertz negotiations | Attorney-Client Privilege; Spousal privilege |
| 12/20/08 | Hecker/Dove/Parker | Communications re: Hertz negotiations | Attorney-Client Privilege |
| 12/21/08 | Hecker/Parker | Communications re: financing | Attorney-Client Privilege |
| 12/21/08 | Hecker/Parker/Dove | Communication re: Inver Grove financing | Attorney-Client Privilege |
| 12/21/08 | Hecker/Kelly/Parker/Cutler | Communications re: Advantage | Attorney-Client Privilege |
| 12/21/08 | Hecker/Dove/Parker/Jerich/Cutler | Communications re: strategy | Attorney-Client Privilege |
| 12/21/08 | Hecker/Dove/Parker/Jerich/Cutler/Kelly | Communication re: strategy | Attorney-Client Privilege |
| 12/21/08 | Hecker/Phillips/Dove/Parker | Communications re: Suzuki invoices | Attorney-Client Privilege |
| 12/21/08 | Hecker/Phillips/Dove/Parker | Communications re: Suzuki invoices | Attorney-Client Privilege |
| 12/21/08 | Hecker/Parker | Fwd: attachment re: financing | Attorney-Client Privilege; work-product |
| 12/21/08 | Hecker/Parker/Dove | Communications re: financing | Attorney-Client Privilege; work-product |
| 12/22/08 | Hecker/Parker | Communication re: strategy | Attorney-Client Privilege |
| 12/22/08 | Hecker/Dove/Parker | Communications re: Chrysler strategy | Attorney-Client Privilege |
| 12/22/08 | Hecker/T. Hecker/Parker | Communication re: Chrysler strategy | Attorney-Client Privilege; Spousal privilege |
| 12/22/08 | Hecker/Kaplan/Ward/Dove/Kelly | Communication re: legal strategy | Attorney-Client Privilege |
| 12/22/08 | Hecker/Dankovich/Dove/Parker | Communication | Attorney-Client Privilege |
| 12/18/08 | Hecker/Edwards | Communications re: real estate financing | Attorney-Client Privilege |
| 12/18/08 | Hecker/Dove/Edwards | Communications re: real estate financing | Attorney-Client Privilege |

9

| Date | Author/Recipients | Description | Privilege |
|---|---|---|---|
| 12/18/08 | Hecker/Parker/Cutler | Communications re: Hyundai legal strategy | Attorney-Client Privilege |
| 12/18/08 | Hecker/Parker/Cutler/Dove | Communications re: Hyundai legal strategy | Attorney-Client Privilege |
| 12/18/08 | Hecker/Parker/Dove/Bowser | Communication re: Advantage | Attorney-Client Privilege |
| 12/18/08 | Hecker/Cutler | Communication re: Advantage | Attorney-Client Privilege |
| 12/18/08 | Hecker/Dove/Parker | Communications re: Oak Park Heights | Attorney-Client Privilege |
| 12/18/08 | Hecker/Parker/Dove/Cutler | Communications re: Ford vehicles | Attorney-Client Privilege |
| 12/18/08 | Hecker/Parker | Communication re: Ford vehicles | Attorney-Client Privilege |
| 12/19/08 | Hecker/Cutler/Parker | Communications re: Ford vehicles | Attorney-Client Privilege |
| 12/19/08 | Hecker/Dove/Parker/Cutler/Haugerud | Communication re: appraisal | Attorney-Client Privilege |
| 12/19/08 | Hecker/Bright/Cutler/Parker | Communications re: Ford vehicles | Attorney-client privilege |
| 12/19/08 | Hecker/Parker/Cutler/Dove/jerich | Communications re: warranty dispute | Attorney-Client Privilege |
| 12/19/08 | Hecker/Bright/Cutler | Communications re: Ford vehicles | Attorney-Client Privilege |
| 12/19/08 | Hecker/Parker | Communications re: legal strategy | Attorney-Client Privilege |
| 12/19/08 | Hecker/Parker/Jerich | Communication re: strategy | Attorney-client privilege |
| 12/19/09 | Hecker/Cutler/Parker/Dove | Communication re: legal strategy | Attorney-client privilege; Work-Product |
| 12/19/08 | Hecker/Parker/Dove/Cutler/Bright/Jerich | Communications re: financing | Attorney-client privilege |
| 12/19/08 | Hecker/Parker/Jerich | Communications re: sale of dealership | Attorney-client privilege |
| 12/19/08 | Hecker/Parker/Dove/Cutler | Communication re: scheduling, strategy | Attorney-client privilege |
| 12/19/08 | Hecker/Parker/Dove | Communication re: real estate | Attorney-client privilege |
| 12/20/08 | Hecker/Dove/Cutler | Communications re: Bank regulators | Attorney-client privilege |
| 12/20/08 | Hecker/Cutler | Communications re: bank audit | Attorney-client privilege |
| 12/20/08 | Hecker/Cutler/parker/Dove | Communications re: Foreclosure agreement | Attorney-client privilege; work product |
| 12/20/08 | Hecker/Parker | Communications re: Foreclosure agreement | Attorney-client privilege; work product |
| 12/20/08 | Hecker/Cutler/Parker/Dove | Communications re: foreclosure agreement | Attorney-client privilege; work product |

10

| | | |
|---|---|---|
| 12/20/08 | Hecker/Cutler/Parker/Dove | Communications re: foreclosure agreement | Attorney-client privilege; work product |
| 12/20/08 | Hecker/Cutler/Parker/Dove | Communications re: foreclosure agreement | Attorney-client privilege; work product |
| 12/21/08 | Hecker/Parker/Cutler | Communications re: foreclosure agreement | Attorney-client privilege |
| 12/21/08 | Hecker/Parker/Dove | Communication re: strategy | Attorney-client privilege |
| 12/22/08 | Hecker/T. Hecker/Parker/Cutler | Communications re: foreclosure agreement | Attorney-client privilege; work-product |
| 12/15/08 | Hecker/Dove/Parker | Communication re: Advantage | Attorney-client privilege |
| 12/15/08 | Hecker/Dove/Cutler | Communication re: Financing | Attorney-client privilege |
| 12/16/08 | Hecker/Kaplan/Parker/Cutler/Corey-Edstrom/Brown | Communications re: Hertz | Attorney-client privilege; work-product |
| 12/16/08 | Hecker/Cutler | Communications re: hertz | Attorney-client privilege |
| 12/16/08 | Hecker/Dove/Cutler/Parker | Communications re: Foreclosure | Attorney-client privilege |
| 12/16/08 | Hecker/Bowser/Parker/Dove/Cutler | Communications re: Foreclosure agreement | Attorney-client privilege |
| 12/16/08 | Hecker/Bowser/Parker/Dove/Cutler | Communications re: foreclosure agreement | Attorney-client privilege; work-product |
| 12/16/08 | Hecker/Bowser/Parker/Dove/Cutler | Communications re: foreclosure agreement | Attorney-client privilege; work-product |
| 12/17/08 | Hecker/Kaplan/Bowser/Borg/Jerich/Rizner | Communications re: Motorplexx litigation | Attorney-client privilege; work-product |
| 12/17/08 | Hecker/T. Hecker/Borg/Jerich/Rizner | Communications re: Motorplexx litigation | Attorney-client privilege; work-product; spousal privilege |
| 12/17/08 | Hecker/Parker/Dove | Communications re: US bank | Attorney-client privilege |
| 12/17/08 | Hecker/Gustafson/Dove/Parker | Communications re: US bank financing | Attorney-client privilege |
| 12/17/08 | Hecker/Kaplan/Parker/Fein | Communications re: Advantage | Attorney-client privilege |
| 12/17/08 | Hecker/Gustafson/Dove/Parker | Communications re: US bank financing | Attorney-client privilege |
| 11/15/08 | Denny Hecker/Bruce Parker | Security Post orders from Chrysler | Attorney-Client Privilege Work-Product |

| 11/15/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Advice on Minneapolis Chrysler Audit | Attorney-Client Privilege; Work-Product |
| 11/15/08 | Denny Hecker/Bruce Parker | Fw: Walser proposal | Attorney-Client Privilege; Work-Product |
| 11/15/08 | Denny Hecker/Clint Cutler | Conference call re: Chrysler Financial proposal | Attorney-Client Privilege; work-product; irrelevant |
| 11/15/08 | Denny Hecker/Bruce Parker | Luther Auto/Walser interest | Attorney-Client Privilege; Work-product |
| 11/15/08 | Denny Hecker/Bruce Parker | Luther Auto/Walser interest—advice on strategy for meeting with Walser | Attorney-Client Privilege; work-product |
| 11/26/08 | Bruce Parker/Denny Hecker/ Advantage Auto employees | Proposed Advantage bankruptcy outline for letter (several emails) | Attorney-Client Privilege; work-product |
| 11/26/08 | Denny Hecker/Bruce Parker | Monticello store re-opening, communications for advice | Attorney-Client Privilege; work-product; irrelevant |
| 11/24/08 | Denny Hecker/Bruce Parker | Bellanotte Letter of Intent (Attachment) | Attorney-Client Privilege |
| 11/3/08 | Denny Hecker/David Uhlig | Monarch on the Park/CO financing and valuation | Attorney-Client Privilege |
| 11/3/08 | Bruce Parker/Denny Hecker | Limited Interim Agreement related to wholesale check request information | Attorney-Client Privilege |
| 11/5/08 | Denny Hecker/David Uhlig | Monarch on the Park/CO financing and valuation —suggestions for negotiation | Attorney-Client Privilege; work-product |
| 11/24/08 | Denny Hecker/Bruce Parker/ Robert Pitts (attorney) | Documents for Denny (Attachments) including bill of sale for 500 units and letters of resignation (Denny/Erik) | Attorney-Client Privilege; work-product |
| 11/24/08 | Denny Hecker/Bruce Parker | Questions about Documents sent by Robert Pitts | Attorney-Client Privilege; work-product |
| 11/25/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Questions re: Bank transaction refunds for Chase Bank | Attorney-Client Privilege; Work-Product |
| 11/25/08 | Denny Hecker/ Bruce Parker/ Clint Cutler | Communications re: Aspen Proeprty and advice from attorneys | Attorney-Client Privilege; Work Product |

12

| | | |
|---|---|---|
| 10/1/08 | Susan Rhode/Denny Hecker | Communications from Rhode concerning familial issues/authentication | Attorney-Client Privilege; irrelevant |
| 10/7/08 | Denny Hecker/Bruce Parker | Fw: meeting with Tom Gillman | Attorney-Client Privilege; irrelevant |
| 11/5/08 | Bill Mohrman/Erik Dove | Signature Pages for Settlement Agreement re: New Brighton | Attorney-Client Privilege |
| 9/29/08 | Denny Hecker/Bruce Parker/ Erik Dove | S/C Proposal, involvement of Houlihan and sales of franchises | Work-Product |
| 9/25/08 | Bruce Parker/Denny Hecker | Hecker Estate/Trusts | Attorney-Client privilege; Work-Product |
| 11/16/08 | Denny Hecker/Bruce Parker | Advice re: CFC fleet | Attorney-Client Privilege; work-product |
| 11/16/08 | Denny Hecker/Bruce Parker | Communication re: M&I Bank partner financials/default | Attorney-Client Privilege; work-product |
| 11/16/08 | Clint Cutler/Denny Hecker/ Hecker attorneys | Draft email to CFC attorney | Attorney-Client Privilege; work-product |
| 11/16/08 | Denny Hecker/Bruce Parker | Fw: email from Mike Givens— financials for M&I Bank | Attorney-Client Privilege |
| 11/16/08 | Denny Hecker/Bruce Parker | Fw: email from Mike Givens— questions about defaulted M&I Bank loan | Attorney=Client Privilege; Work-Product |
| 11/16/08 | Denny Hecker/Bruce Parker | Responses to draft email to CFC attorney | Attorney-Client Privilege; work-product |
| 11/15/08 | Bruce Parker/Denny Hecker | Communication re: Luther potential interest | Attorney-Client Privilege; work-product |
| 11/15/08 | Denny Hecker/Bruce Parker/ Clint Cutler | Communication re: draft email to CFC attorney/strategy | Work-Product |
| 11/15/08 | Denny Hecker/Barabra Jerich | Meeting with Paul Walser | Work-Product |
| 11/26/08 | Bruce Parker/Denny Hecker/ Barbara Jerich | Inver Grove VW and Hyundai Dealerships | Attorney-Client Privilege; work-product |
| 11/10/08 | Bruce Parker/ Denny Hecker | MA&A agreement comments and clarification | Work-Product; Attorney-Client privilege |
| 11/10/08 | Denny Hecker/ Bruce Parker | Advice sought re: ID of Fords on lot | Attorney-Client Privilege; work- |

13

| | | | product |
|---|---|---|---|
| 11/18/08 | Denny Hecker/ Bruce Parker | Advice sought re: Ford demand for cars | Attorney-Client Privilege; work-product |
| 11/9/08 | Clint Cutler/Bruce Parker/ Denny Hecker | Hecker/Advantage draft letter and advice | Attorney-Client; Work-Product |
| 11/18/08 | Denny Hecker/Bruce Parker | Press Release re: Advantage | Work-Product privilege |
| 11/7/08 | Denny Hecker/Bruce Parker | Communications re: hold from CFC | Attorney-Client Privilege; work-product |
| 11/7/08 | Denny Hecker/Cutler/Parker/ Strangis | Questions re: finance hold from Chrysler Financial – advice sought | Attorney-Client Privilege; work-product |
| 11/7/08 | Denny Hecker/Cutler/ Parker/ Strangis | Chrysler Financial alternatives outline for DEH | Attorney-Client Privilege; work-product |
| 11/9/08 | Denny Hecker/ Parker | Discussions re: revised complaint | Attorney-Client privilege; Work-Product |
| 11/18/08 | Denny Hecker/Tim Thorton | Revised Limited Agreement re: licensing | Attorney-Client privilege; Work-Product |
| 11/16/08 | Denny Hecker/Parker/Cutler | Strategy re: dealing with CFC demands for cars and cash freed through actions | Attorney-Client Privilege; work-product |
| 2/16/09 | Bruce Parker/Denny Hecker/ Borg/Cutler/ Dove | Chrysler Financial/Hecker Foreclosures draft of legal documents | Work-Product |
| 2/18/09 | Borg/Hecker/Cutler | Documents discussed during meeting: litigation list, S/C | Work-Product |
| 2/11/09 | Parker/Hecker/Cutler/Borg | Discussions re: foreclosure actions by CFC | Work-Product |
| 2/11/09 | Hecker/Parker/Volk/Borg/ Cutler | Rosedale Dodge communications | Work-Product |
| 2/11/09 | Hecker/Parker | Communications re: Rosedale Dodge | Work-Product |
| 2/9/09 | Hecker/Dove/Jerich/Cutler/ Parker | Rosedale Dodge/Vemark LLC discussions re: actions to be taken | Work-Product |
| 2/9/09 | Parker/Hecker/Volk/Borg/ Cutler | CFC potential financial proposals | Work-Product |
| 2/9/09 | Hecker/Parker | Communication re: email sent by Parker to Dan Cadlick at Larkin | Work-Product |

14

| | | Hoffman | |
|---|---|---|---|
| 2/9/09 | Parker/Hecker/Cutler | Communications re: updates on US Bank matters | Attorney-Client privilege; Work-Product |
| 2/4/09 | J. Michael Dady/Hecker | Communications re: Hobbs Farm Equipment suit | Attorney-Client; Work-Product |
| 2/11/09 | Hecker/Dankovich/Dove/Parker | Communication re: CFC and Vehicle titles | Attorney-Client privilege |
| 2/9/09 | Hecker/Dove/Parker | Communication re: US Bank default | Attorney-client privilege, work-product |
| 2/9/09 | Hecker/T. Hecker | Communication re: US bank Financing | Spousal privilege |
| 2/9/09 | Hecker/R. Olson/B. Olson/Dove/Parker | Communications re: Eaglerider | Attorney-client privilege |
| 2/10/09 | Dove/Borg | Communications re: Hecker financial info | Work-Product |
| 2/2/09 | Hecker/Cutler/Borg/Volk/Parker/W.Dove/E. Dove/Eckhart/Bowser | Communication re: meeting of counsel | Work-Product |
| 4/13/09 | Borg/Parker/Dove/Hecker | Communication re: Ford litigation | Attorney-client privilege, Work-Product |
| 4/13/09 | Hecker/Bowser | Communication re: Ford litigation | Attorney-client privilege, Work-Product |
| 4/14/09 | Hecker/Bowser/Borg | Communication re: Wagener litigation | Attorney-client privilege, Work-Product |
| 4/16/09 | Hecker/Bowser/Dove/Cutler | Communication re: selection of counsel | Attorney-Client Privilege |
| 4/15/09 | Dove/Mohrman | Re: License and title fees | Attorney-Client Privilege |
| 4/5/09 | Cutler/Dove/ParkerHecker/Borg | Liquidation analysis | Work-Product |
| 4/5/09 | Cutler/Dove/Parker/Hecker/Borg | Communications re: CFC's claims | Attorney-Client Privilege, work-product |
| 4/5/09 | Dove/Cutler/Parker/Hecker/Borg/Volk | Liquidation analysis | Work-product |
| 4/5/09 | Dove/Parker/Cutler/Hecker | Re: Toyota financing | Attorney-Client Privilege, work-product |
| 4/6/09 | Hecker/Bowser/Cutler/Dove/Kaplan | Communication re: conference call | Attorney-Client Privilege |
| 3/18/09 | Hecker/Bowser/Parker/Cutler | Communication re: Abra purchase agreement | Attorney-Client Privilege |

15

| Date | Parties | Subject | Privilege |
|---|---|---|---|
| 3/27/09 | Hecker/Bowser/Dove/Parker/Cutler | Re: Enterprise non-compete | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Dove/Parker | Re: Eaglerider agreement | Attorney-client privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Eaglerider agreement | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Eaglerider agreement | Attorney-Client Privilege |
| 3/23/09 | Hecker/Bowser/Parker | Re: Dealership investment | Attorney-Client Privilege |
| 3/18/09 | Dove/Parker | Re: strategy meeting | Attorney-Client Privilege |
| 3/11/09 | Hecker/Bowser/Dove/Parker | Re: Abra deal | Attorney-Client Privilege; |
| 3/12/08 | Hecker/Bowser/Parker/Dove | Re: Rosedale leasing | Attorney-Client Privilege; |
| 3/6/09 | Hecker/Bowser/Peterson | Re: Ward litigation | Attorney-client privilege |
| 3/6/09 | Parker/Corey-Edstrom | Re: Enterprise agreement | Work-product |
| 3/3/09 | Parker/Kelly | Re: scheduling | Attorney-Client Privilege; Irrelevant |
| 3/3/09 | Parker/Brown/Dove/Moon | Re: Enterprise motion | Attorney-client privilege, work-product |
| 3/4/09 | Parker/Corey-Edstrom/Hecker/Brown | Re: Enterprise Motion | Attorney-Client Privilege, work-product |
| 10/22/08 | Email chain from Denny Hecker to Frank Dankovich, Bruce Parker, Eric Dove | DCS | Attorney-Client Privilege Work-Product |
| 10/22/08 | Email chain from Denny Hecker to Frank Dankovich, Bruce Parker, Eric Dove | Legal Strategy | Attorney-Client Privilege; Work-Product |
| 10/22/08 | Email from Denny Hecker to Bruce Parker | Requesting legal advice re: issue with Ford | Attorney-Client Privilege |
| 10/220/8 | Denny Hecker to Barbara Jerich forwarding email from Dove to Parker | Re: issue with Ford and Chrysler | Attorney-Client Privilege |
| 10/22/08 | Denny Hecker/Bruce Parker | Legal Strategy | Attorney-Client Privilege |
| 10/23/08 | Denny Hecker/Bruce Parker | Chrysler EFT Audit | Attorney-Client Privilege; work-product |
| 10/23/08 | Denny Hecker, Dave Thomas, Bruce Parker, Eric Dove | Information requested by Chrysler | Attorney-Client Privilege; work-product |
| 10/23/08 | Denny Hecker / Susan Rhode | Divorce | Attorney-Client Privilege; work-product; irrelevant |
| 10/23/08 | Denny Hecker, Eric Dove, Jim Gustafson, Bruce Parker Frank Dankovich, Thomas Schwarts, Cheryl Helfricht | Status of vehicles | Attorney-Client Privilege; work product |

16

| Date | Names | Subject | Privilege |
|---|---|---|---|
| 10/23/08 | Denny Hecker, Bruce Parker | ACH Returns | Attorney-Client Privilege; work product; |
| 10/23/08 | Denny Hecker, Bruce Parker, Erik Dove | Status of lawsuit | Attorney-Client Privilege; work product |
| 10/23/08 | Denny Hecker, Frank Dankovich, Paula Volk (Briggs), Molly Borg (Briggs) | Audit Results | Attorney-Client Privilege; work-product |
| 10/24/08 | Denny Hecker, Bruce Parker, Eric Dove, Clint Cutler | Dealership Operating Requirements | Attorney-Client Privilege; work-product |
| 10/24/08 | Bruce Parker, Denny Hecker, Erik Dove, Barbara Jerich, Clint Cutler, Ralph Strangis | Dealership Operating Requirements | Attorney-Client Privilege; work-product |
| 10/24/08 | Denny Hecker, Barbara Jerich, Bruce Parker Eric Dove, Molly Kaplan | Scanned attachment | Attorney-Client Privilege; Work-Product |
| 10/24/08 | Denny Hecker, Clint Cutler, Eric Dove, Bruce Parker, Keith Phillips | Ford Incentive Money | Attorney-Client Privilege; Work Product |
| 10/24/08 | Erik Dove, Denny Hecker, Kaplan, Parker | Leach employment agreement non-disparagement language | Attorney-Client Privilege; irrelevant |
| 10/24/08 | Denny Hecker, Roger Bjork, Dove, Parker, Cutler, Strangis, Jerich | Legal strategy | Attorney-Client Privilege; work-product |
| 10/24/08 | Denny Hecker, Dove, Jerich, Parker | Media | Attorney-Client Privilege |
| 10/25/08 | Denny Hecker, Dove, Parker, Cutler, Carrie Haugerud | Chrysler Rep | Attorney client privilege, work-product |
| 10/25/08 | Denny Hecker, Cal Kuhlman, Parker, Dove | Call from Hyundai | Attorney-Client privilege; Work-Product |
| 10/25/08 | Denny Hecker, Dove, Parker, Kaplan | Legal strategy | Attorney-Client Privilege; work-product |
| 10/25/08 | Denny Hecker/Bruce Parker | Legal fee issue | Attorney-Client Privilege; |
| 9/19/08 | Denny Hecker, Molly Borg | Warrant – dog issue | Attorney-Client Privilege; work-product; irrelevant |
| 9/19/08 | Denny Hecker, Dove, Borg | Warrant – dog issue | Attorney-Client Privilege; work product, irrelevant |
| 9/19/08 | Denny Hecker, Borg, Rowan | Warrant – dog issue on news | Attorney-Client Privilege; Work-Product; irrelevant |
| 9/19/08 | Denny Hecker, Borg, Dove, Tamitha Hecker | Warrant – dog issue | Attorney-Client Privilege; work-product; irrelevant |

17

| | | | |
|---|---|---|---|
| 9/18/08 | Denny Hecker, Borg, Bowser | Warrant – dog issue | Attorney-Client Privilege; work-product; irrelevant |
| 9/18/08 | Denny Hecker, Bowser, Borg, Rowan | Warrant – dog issue | Attorney-client privilege; work-product; irrelevant |
| 9/18/08 | Denny Hecker, Borg, Tamitha Hecker | Warrant – dog issue | Attorney-client privilege, work product; irrelevant; |
| 9/17/08 | Denny Hecker, Dove, Tim Davis (CA attorney), William Blasser (attorney) Jose Cordova (attorney), William Hannan (attorney), Justin Davis | Mendoza v. Autocal, LLC d/b/a Redwood City Dodge and Triad Financial | Attorney-Client Privilege; work-product; irrelevant |
| 9/17/08 | Denny Hecker, Tamitha Hecker, Susan Rhode | Divorce | Work-Product; Attorney-Client privilege, irrelevant |
| 9/16/08 | Denny Hecker, Tamitha Hecker, Susan Rhode | Divorce | Attorney-Client Privilege; work-product; irrelevant |
| 8/23/08 | Hecker, Parker | Advice sought re: letter | Attorney-Client Privilege; work-product |
| 8/26/08 | Denny Hecker, Kaplan, Stephen Bergerson @ Fredrikson, Moyer | Past Due Account | Attorney-Client; Work-Product |
| 8/26/08 | Denny Hecker, Tamitha Hecker, Susan Rhode | Divorce | Work-Product privilege; attorney client privilege; irrelevant |
| 11/28/08 | Denny Hecker, Parker, Dove | Redlined Redemption Agreement | Attorney-Client Privilege; work-product |
| 11/28/08 | Denny Hecker, Cutler, Parker, Strangis, Chris McIntyre, Robert Pitts (CA attorney) | Redlined Redemption Agreement | Attorney-Client Privilege; work-product |
| 11/27/08 | Denny Hecker, Dove, Parker | Eaglerider | Attorney-Client Privilege; work-product; irrelevant |
| 11/27/08 | Denny Hecker, Parker, Dove, Cutler, Tom Kieffer | Email from Fritz – termination of franchise | Attorney-Client privilege; Work-Product; irrelevant |
| 11/27/08 | Denny Hecker, Parker, Dove | Eaglerider | Attorney-Client privilege; Work-Product; irrelevant |
| 11/27/08 | Denny Hecker, Parker, Jeff Brown, McIntyre, Peter Wurner, Pitts, Dove | Eaglerider term sheet | Attorney-Client Privilege; work-product; irrelevant |
| 11/27/08 | Denny Hecker, Parker, Jeff Brown, McIntyre, Peter Wurner, Pitts, Dove, Rowan | Eaglerider term sheet | Attorney-Client Privilege; work-product; irrelevant |

| | | | |
|---|---|---|---|
| 11/27/08 | Denny Hecker, Parker, Jeff Brown, McIntyre, Peter Wurner, Pitts, Dove, Tamitha Hecker | Eaglerider term sheet | Attorney-Client Privilege; work-product; irrelevant |
| 11/27/08 | Denny Hecker, McIntyre, Pitts, Dove | Eaglerider term sheet | Attorney-Client Privilege; work-product; irrelevant |
| 11/28/08 | Denny Hecker, Parker, Dove | Discussions with 3rd party onlines | Attorney-Client Privilege; work-product; |
| 11/28/08 | Denny Hecker, Parker, Cutler, Dove, Dankovich, Gustafson | Forward of email from Rozen re: return of vehicles | Attorney-Client Privilege; work-product; irrelevant |
| 11/28/08 | Denny Hecker, Cutler, Parker | Return of vehicles | Attorney-Client Privilege; work-product; |
| 11/28/08 | Denny Hecker, Dove, Parker, Kaplan | Lines of Credit from US Bank | Attorney-Client Privilege; work-product; |
| 11/26/08 | Denny Hecker, Parker, Dove, Dave Thomas | GMAC | Attorney-Client Privilege; work-product; irrelevant |
| 11/26/08 | Hecker, Dankovich, Dove, Parker | Hertz | Attorney-Client privilege; Work-Product |
| 11/26/08 | Hecker, Parker Dankovich | Release of passwords to Bowker | Attorney-Client; Work-Product |
| 11/26/08 | Denny Hecker, Parker, McIntyre, Dove | Term sheet for ERF redemption | Attorney-Client Privilege; work-product; |
| 11/26/08 | Hecker, Parker, Jerich, Rowan | USA today questions | Attorney-client privilege, work-product |
| 11/26/08 | Denny Hecker, McIntyre, Dove, Pitts, Parker, Rowan | Eaglerider Finance Redemption / Note Extension | Attorney-Client Privilege; work-product; irrelevant |
| 11/26/08 | Denny Hecker McIntyre, Dove, Pitts, Parker, Tamitha Hecker | Eaglerider Finance Redemption / Note Extension | Attorney-Client Privilege; work-product; irrelevant |
| 11/26/08 | Denny Hecker, McIntyre, Dove, Pitts, Parker, Rowan | Eaglerider Finance Redemption/ Note Extension | Attorney-Client Privilege; work-product; irrelevant PORTION REDACTED |
| 2/2/09 | Denny Hecker, Bowser, Parker, Jerich | Twin Cities Automotive Agreements | Attorney-Client Privilege; work-product |
| 1/27/09 | Denny Hecker, Bowser, Parker, Daniel Magida | Draft asset purchase agreement with Hertz | Attorney-Client Privilege; work-product; |
| 1/28/09 | Denny Hecker, Parker, Dove, Cutler, Kenneth Corey Edstrom (Larkin Hoffman), Robert | Asset Purchase Agreement from Hertz | Attorney-Client Privilege; work-product; |

19

| Date | Names | Subject | Privilege |
|---|---|---|---|
| | Moon | | |
| 1/28/09 | Hecker, Parker, Dove | Hertz Asset Purchase | Attorney-client privilege, Work-Product |
| 1/28/09 | Hecker, Parker, Dove | Hertz Asset Purchase | Attorney-Client Privilege; work-product; |
| 1/28/09 | Hecker, Parker, Cutler, Volk (Briggs), Borg | Reingold v. ARAC | Attorney-Client Privilege; work-product; irrelevant |
| 1/28/09 | Hecker, Parker, Dove, | ABRA Business appraisal | Attorney-Client Privilege; work-product; irrelevant |
| 10/22/08 | Susan Gelinske (Briggs), Hecker, Volk | Request for Information about member contributions | Attorney-Client Privilege, work-product |
| 10/22/08 | Hecker Dove | Information Inquiry | Work-product |
| 10/23/08 | Hecker, Dove, Parker, Strangis | Hertz discussions | Attorney-Client Privilege, work-product |
| 10/23/08 | Hecker, Dove, Gustafson | Incentive Agr with Chrysler | Work product |
| 10/16/08 | Hecker, Dove, Parker, Keifer | DTG status | Attorney-Client Privilege; work-product; |
| 8/7/08 | Hecker, Dale Schneider, Dave Thomas, Gustafson | Toyota payoffs | Work-product; |
| 8/7/08 | Hecker, Dove, Miller, Hage | Wells Fargo | Work product |
| 8/8/09 | Hecker Miller | Payments going out | Work product |
| 1/28/09 | Hecker, Parker, Dove | ABRA | Attorney-Client Privilege; work-product; irrelevant |
| 1/28/09 | Hecker, Dove, Cutler | Letters served | Attorney-Client Privilege |
| 1/23/09 | Hecker, Parker, Kelly (Dorsey), Bowser | Bellanottee | Attorney-Client Privilege; work-product; irrelevant |
| 1/27/09 | Hecker, Becky Braun, Parker | Jeff Sell Rent | Attorney-Client Privilege; work-product; irrelevant |
| 1/24/09 | Hecker, Cutler, Dove, Georgia Eckhart, Tamitha Hecker, Jake Hecker | Service of Chrysler Complaint | Attorney-Client Privilege; |
| 1/24/09 | Hecker, Cutler, Dove, Parker, Borg | Chrysler Complaint | Attorney-client privilege |
| 1/24/09 | Parker, Hecker, Dove, Cutler, Volk, Borg, Strangis, Tamitha Hecker | Chrysler Complaint | Attorney-Client Privilege; work-product; |
| 1/24/09 | Hecker, Borg, Parker, Volk, Cutler, Dove, | Conference Call | Attorney-Client Privilege; work- |

20

| | | | |
|---|---|---|---|
| | | | product; |
| 1/24/09 | Hecker, Borg, Parker, Volk, Dove | Conference Call | Attorney-client privilege, work-product |
| 1/24/09 | Hecker, Borg, Dove, Parker, Cutler, Volk | Statement | Attorney-Client Privilege, work-product |
| 1/25/09 | Hecker, Borg | Call re Statement | Attorney-Client Privilege; work-product; |
| 1/25/09 | Hecker, Borg | Statement | Attorney-Client Privilege; work-product; |
| 1/20/09 | Hecker, Dankovich, Parker | Vehicles at non-Manheim repair facilities | Attorney-Client Privilege; work-product; |
| 1/22/09 | Hecker, Rhode | Divorce | Attorney-Client Privilege; work-product; irrelevant |
| 1/22/08 | Hecker, Dove, Cutler | Wells Fargo loans | Attorney-Client Privilege; work-product; irrelevant |
| 1/22/09 | Hecker, Parker, Jerich, Dove | Parking Lease Agreement | Attorney-Client Privilege; work-product; irrelevant |
| 1/22/09 | Hecker, Rhode | Update of status | Attorney-Client Privilege |
| 4/23/09 | Parker, Michael Dady, Hecker, Dove, Bowser, Kaplan | GMC deals | Attorney-Client Privilege; |
| 4/23/09 | Parker, Dove, Bowser, Kaplan, | Attachment to GMC | Attorney-Client Privilege; |
| 1/21/09 | Parker, Kam Talebi | Bellanotte | Attorney-Client Privilege; Irrelevant |
| 1/21/09 | Hecker, Rhode | Divorce | Attorney-Client Privilege; irrelevant |
| 1/21/09 | Hecker, Parker, Jerich, Dove, Parker, Jerich | Hasselquist Management | Attorney-Client Privilege; irrelevant |
| 1/21/09 | Parker, Talebi, Hecker, Dove | Bellenotte | Attorney-Client Privilege; irrelevant |
| 1/22/09 | Parker, Hecker | Totaled Land Rover | Attorney-Client Privilege |
| 1/16/09 | Hecker, Dove, Parker | TARP Bill | Attorney-Client Privilege; Irrelevant |
| 1/17/09 | Hecker, Parker, Cutler, Dove | Advantage IOI | Attorney-Client Privilege; work product |

21

| | | | |
|---|---|---|---|
| 1/18/09 | Parker, Cutler, Dove, Tamitha Hecker | Advantage IOI | Attorney-Client Privilege; work product |
| 1/19/09 | Parker, Hecker | Advantage IOI | Attorney-Client Privilege; work-product; |
| 1/19/09 | Parker, Hecker, Miller, Schwartz, Gustafson, Dove | Financing of Land Rover | Attorney-Client Privilege; work-product; |
| 1/19/09 | Hecker, Tamitha Hecker, Parker, Miller, Schwartz, Dove, Parker | Land Rover | Attorney-Client Privilege; |
| 1/19/09 | Parker, Hecker, Miller, Dove, Jerich | Land Rover | Attorney-Client Privilege; |
| 1/19/09 | Parker, Hecker, Miller, Dove, Jerich | Land Rover | Attorney-Client Privilege; |
| 1/19/09 | Hecker, Gustafson, Parker, Dove, Miller, Schwartz | Land Rover Insurance Proceeds | Attorney-Client Privilege |
| 1/19/08 | Hecker, Parker, Marshall Fein | Canadian Trademark Litigation | Attorney-Client Privilege; work product; |
| 12/2/08 | Hecker, Dove, Borg | Romano v. Advantage | Attorney-Client Privilege; work product |
| 12/2/08 | Hecker, Dove, Parker, Volk, Borg | Romano v. Advantage strategy | Attorney-Client Privilege; work-product; |
| 12/2/08 | Parker, Hecker, Fulena, Dove | Travelocity | Attorney-Client Privilege |
| 12/2/08 | Hecker, Parker, Dove, | Sydney Holdings | Attorney-Client Privilege; work product |
| 12/2/08 | Hecker, Parker, Mooney, Dove | Advantage financials | Attorney-Client Privilege; work product |
| 12/2/09 | Hecker, Borg, Parker, | Advantage Financials | Attorney-Client Privilege; work product |
| 12/3/08 | Hecker, Bowser, Peterson (atty) Lisa Arp, Miller | Russ and Jeff Ward | Attorney-Client Privilege; work product |
| 12/3/08 | Hecker, Jody Edwards (CO atty), Dove | Monarch on the Park | Attorney-Client Privilege; work-product; irrelevant |
| 12/3/08 | Hecker, Cutler, Dove | Advantage Tax Audits | Attorney-Client Privilege; work product; |
| 12/3/09 | Hecker, Edwards, Dove | Monarch on the Park | Attorney-Client Privilege; work-product; irrelevant |

Slip Copy, 2009 WL 2026327 (D.Virgin Islands)

Motions, Pleadings and Filings
Only the Westlaw citation is currently available.

District Court of the Virgin Islands, Division of St. Thomas and St. John.
Christine HAMILTON, as the personal representative of the Estate of Blair Shannon, deceased,
Plaintiff,
v.
DOWSON HOLDING COMPANY, INC., d/b/a Carib Beach Resort and Best Western International, Inc.,
Defendants.
Monique Faulkner, Plaintiff,
v.
Dowson Holding Company, Inc., d/b/a Carib Beach Resort and Best Western International, Inc.,
Defendants.

Civil Nos. 2008/02, 2008/10.
July 2, 2009.

Alan R. Feuerstein, Feuerstein & Smith, LLP, Buffalo, NY, Thomas H. Hart, III, Law Offices of Thomas
H. Hart III, St. Croix, VI, for Plaintiff.

Terri L. Griffiths, Terri Griffiths, Attorney at Law, James L. Hymes, III, Law Office of James Hymes III,
St. Thomas, VI, for Defendants.

### MEMORANDUM AND ORDER

GEOFFREY W. BARNARD, United States Magistrate Judge.

**\*1** This matter is before the Court on Defendants' Motion to Disqualify Plaintiffs' counsel,[FN1]
Plaintiffs' opposition thereto and Defendants' reply.

> FN1. On February 26, 2009, Defendant, Best Western International, Inc., moved to join
> in Defendant, Dowson Holding Company, Inc.'s, Motion to Disqualify and the Court
> granted the motion on February 27, 2009.

### RELEVANT FACTS

On January 19, 2006, Mr. Blair Shannon was shot in his room at the Best Western Carib Beach
Resort ("Carib Beach Resort") on St. Thomas, Virgin Islands and subsequently died of his injuries. On
January 31, 2006, Attorney Charles S. Russell, Jr., of the law offices of Moore Dodson & Russell, P.C.
("the firm" or "Moore, Dodson & Russell"), the general counsel of Dowson Holding Co., Inc.,
("Dowson" or "Defendant") contacted Dennis Sheraw, a private investigator, by telephone, about the
possibility of hiring him to perform an investigation regarding the homicide of Blair Shannnon. On
February 1, 2006, [FN2] Attorney Russell sent Mr. Sheraw a package of documents relevant to Mr.
Shannon's murder. On February 7, 2006, Mr. Sheraw submitted to the firm a "Work Scope and
Proposal" for the investigation and by letter dated March 10, 2006, Attorney Russell advised Mr.
Sheraw that the portion of the scope of work regarding off-islands work would be outsourced and that
Mr. Sheraw should provide a revised estimate for that portion of the scope of work that was not being
outsourced.[FN3] By memorandum dated March 13, 2006, Mr. Sheraw provided a revised estimate
addressed to Attorney Treston Moore. The March 13, 2006, memorandum was the last communication
between Mr. Sheraw and Moore Dodson & Russell. Mr. Sheraw was not retained by the firm and did
not again hear from the firm until December 1, 2008, when the firm made a request for return of the
documents sent under a cover letter dated February 1, 2006. To date, Mr. Sheraw has not returned
the documents.

EXHIBIT
2

FN2. The February 1, 2006, letter reads as follows: "Dear Dennis: Per our conversation yesterday, I enclose notes and documents concerning an event we would like you to investigate since we reasonably anticipate that it will result in litigation. The client has requested a proposed scope of work and estimate for your services in this regard, but you would be retained as a consultant to this law firm. After reviewing this material, please give me a call." "ATTORNEY WORK PRODUCT PRIVILEGED" was written across the letter in capital letter.

FN3. Attorney Russell further avers that after the transmittal of the documents on February 1, 2006, he had a subsequent telephone conversation with Mr. Sheraw "regarding the scope of the work of the investigation, [his] interpretation of the evidence, the terms of retention and the status of the matter." In support of their opposition to Defendants' Motion to Disqualify, Plaintiffs submitted a declaration of Dennis Sheraw. In his declaration, Mr. Sheraw declares to recalling a telephone conversation with Attorney Russell after the February 1, 2006, letter. (Declaration of Dennis Sheraw, paragraph 9).

On April 17, 2006, Attorney Thomas H. Hart III contacted Mr. Sheraw about the possibility of conducting an investigation regarding the death of Blair Shannon at the Best Western Carib Beach Resort. On April 20, 2006, Attorney Hart retained Mr. Sheraw to conduct the investigation. Attorney Hart, in a declaration submitted in support of Plaintiffs' opposition to Defendants' Motion to Disqualify, declares that when he contacted Mr. Sheraw to perform the investigative services on behalf of the Plaintiffs, Mr. Sheraw advised him that he had been previously contacted, but not retained, by Moore Dodson & Russell to act as an investigator on behalf of Caribe Best Western Hotel [sic]. (Attorney Hart's Declaration, paragraph 2). Attorney Hart further declares that in April 2006, he called the law offices of Moore Dodson & Russell and left a message for Attorney Moore advising him that he intended to use Mr. Sheraw as an investigator in the Blair Shannon murder, but that Attorney Moore did not return his call. (Attorney Hart's Declaration, paragraph 3). He further declares that on May 24, 2006, he again called the law offices of Moore, Dodson & Russell and left the same message and his calls were not returned. (Attorney Hart's Declaration, paragraph 3). Attorney Hart declares that "[he] now understand[s] that Mr. Sheraw received documents from Dodson and Moore." (Attorney Hart's Declaration, paragraph 5). However, he further declares that Mr. Sheraw "did not provide ... [him] with copies of any such documents and, to the best of ... [his] knowledge, ... [Mr. Sheraw] did not use such documents in the investigation he performed for ... [him]." (Attorney Hart's Declaration, paragraph 5). Attorney Russell, in his affidavit dated December 18, 2008, avers that he did not receive any communication from Attorney Hart regarding Dennis Sheraw and/or his involvement in the case and does not recollect any telephone messages from Attorney Hart about Dennis Sheraw. (Attorney Russell's Affidavit, paragraph 5).

## DISCUSSION

**\*2** Defendants move this Court to disqualify Plaintiffs' attorneys on the basis that Plaintiffs counsel hired an investigator that had been previously contacted by the Defendants to conduct an investigation and during the course of Defendants' involvement with the investigator, the investigator was privy to Defendants' counsel's work-product. Plaintiffs oppose the motion on the basis that the Defendants waived any privilege they may have had because they disclosed privileged information to Mr. Sheraw with whom they had not established a type of relationship to which a privilege attached.

In deciding this motion to disqualify, the Court must first establish what type of relationship, if any, was established between Moore Dodson & Russell and Mr. Sheraw. The facts establish that Moore Dodson & Russell contacted Mr. Sheraw about conducting an investigation regarding Blair Shannon's homicide and that Attorney Russell sent a packet of documents with information related to the murder, including attorney work product documents, and requested that Mr. Sheraw prepare a scope of work and a cost estimate for the proposed investigation. Mr. Sheraw prepared a scope of work and was asked to revise it; Mr. Sheraw prepared and submitted a revised scope of work and cost estimate, but never heard from the firm. Mr. Sheraw was never retained by Moore Dodson and

Russell; thus, a licensor/licensee relationship was never established between the firm and Mr. Sheraw and, therefore, a confidential relationship was never established as contemplated under title 23 Virgin Islands § 1320. [FN4]

FN4. Title 23 Virgin Islands Code, § 1320 in pertinent part provides:

No licensee or any employee of such licensee shall divulge to any person, except as otherwise provided by law, other than to the principal or his employer any information acquired as a result of any investigation, surveillance, or other employment performed by such licensee or employee. Provided, however, that the provisions of this section shall not apply to any employer who is also the holder of a license issued pursuant to this chapter who has written consent of the client or the principal to divulge any information falling within the terms of this section, and further provided, that the provisions of this section will not apply to the taking of testimony or receiving of evidence in any judicial proceeding.

Although a licensor/licensee relationship was not established between Mr. Sheraw and the firm, the question becomes whether the firm's attorneys' work-product privilege was waived by the disclosure of work product documents to Mr. Sheraw in the absence of such a relationship. The attorney work product privilege protects against the invasion of an attorney's course of preparation. *Bogosian v. Gulf Oil Corporation, 738 F.2d 587, 593 (3d. Cir.1984)* (quoting *Hickman v. Taylor* 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947)*. It covers "written materials obtained or prepared by an adversary's counsel with an eye toward litigation and it includes interviews, statements, memoranda, correspondence, briefs, mental impressions and personal beliefs." *Id.* The work-product doctrine promotes the adversary system by protecting the confidentiality of papers prepared by or on behalf of attorneys in anticipation of litigation. *Westinghouse Electric Corporation v. The Republic of the Philippines, 951 F.2d 1414, 1428 (3d Cir.1991)* (citing *Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947); United States v. AT & T, 206 App. D.C. 317, 642 F.2d 1285, 1299 (D.C.1980)*. Protecting attorneys' work product promotes the adversary system by enabling attorneys to prepare cases without fear that their work product will be used against their clients. *Id.* Because the work product doctrine serves to protect an attorney's work product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. *Id.* The purpose of the work-product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship. *United States v. AT & T, 206 App. D.C. 317, 642 F.2d 1285, 1299 (D.C.Cir.1980)*. To waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information. *Westinghouse Electric Corporation v. The Republic of the Philippines* at 1428. A disclosure made in the pursuit of such trial preparation, and not inconsistent with maintaining the secrecy against opponents, should be allowed without waiver of the privilege. *United States v. AT & T* at 1299.

**\*3** Here, included in the packet sent to Mr. Sheraw were attorney work-product documents. These documents were disclosed to Mr. Sheraw, had he been retained, to assist in the investigation. However, the firm did not engage the services of Mr. Sheraw, but did not request the documents back, including the work-product documents. Nonetheless, the documents were given to Mr. Sheraw with the expectation that he would be assisting the firm through his investigation in preparation for anticipated litigation. The fact that the firm did not request the return of the documents when Mr. Sheraw was not retained, does not amount to, in this Court's opinion, actions inconsistent with maintaining the secrecy of the documents against the Plaintiffs. It would have been better practice had the firm requested the documents be returned after it decided not to use Mr. Sheraw' services, but that did not happen. Because the work-product privilege is not waived by the mere disclosure of these documents to a third-party, who is not an adversary, when they are disclosed to assist an attorney in preparation for anticipated litigation, the Court finds that the Defendants counsel did not waive the work-product privilege when they sent their documents to Mr. Sheraw to assist him with the investigation of Blair Shannon's murder.

It is now necessary to address whether Attorneys Hart and Feuerstein should be disqualified from representing the Plaintiffs because Attorney Hart retained Mr. Sheraw when he had prior knowledge

that Mr. Sheraw had been contacted by the Defendants regarding the same murder investigation. The district court's power to disqualify an attorney derives from its inherent authority to supervise the professional conduct of attorneys appearing before the court. *Richardson v. Hamilton International Corp.*, 469 F.2d 1382, 1385-86 (3d Cir.1972), *cert denied* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1972). A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from the disqualification as against the public perception of and the public trust in the judicial system. *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Disqualification issues must be decided on a case-by-case basis. *McKenzie Construction d/b/a Building Specialties v. St. Croix Storage Corporation*, 961 F.Supp. 857, 859 (3d Cir.1997). The party seeking disqualification bears the burden of showing that continued representation would be impermissible. *Occidental Chemical Corporation, et al. v. Honorable Eric Brown, Judge of the 28th District of Nueces County, Texas*, 877 S.W.2d 27, 30 (Ct.App. TX 13th Circuit 1994) (citing *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990). Because disqualification is a severe remedy, the courts must adhere to an exacting standard when considering motions to disqualify so as to discourage their uses as a dilatory tactic. *Id.* Thus, the burden is on the movant to establish with specificity a violation of one or more of the disciplinary rules, and mere allegations of unethical conduct or evidence showing a remote possibility of a violation of the disciplinary rules will not suffice under this standard. *Id.*

**\*4** Defendants assert that it must be presumed that Mr. Sheraw disclosed some or all of the privileged information to Plaintiffs' counsel; that Sheraw's knowledge of the hotel's strategies and impressions should be imputed to the plaintiffs' attorneys; that the Plaintiffs' attorneys knowingly engaged in conduct that raises serious doubt concerning the integrity of the legal profession and these cases if Plaintiffs' counsel were to be permitted to continue their representation of the plaintiffs. Defendants claim that Plaintiffs' attorneys conduct was violative of the ABA Model Rules of Professional Conduct 1.7, 5.3(b) and (c)(1), and 8.4 and The Law Governing Lawyers (Third) §§ 11 and 15.[FN5] Rule 5.3(b) and (c)(1) and Rule 8.4 [FN6] of the Model Rules of Professional Conduct are most applicable to the facts of these cases. Rule 5.3 imposes a duty on a supervising attorney to ensure that nonlawyers conduct adheres to a lawyer's professional obligations. *Lamb v. Pralex Corporation*, 333 F.Supp.2d 361, 364 (D.Vi.2004).

> FN5. ABA Model Rules of Professional Conduct: Rule 1.7 (Conflicts of Interest: Current Clients); Rule 5.3 (Responsibilities Regarding Nonlawyers Assistants; Rule 8.4 (Misconduct); The Law Governing Lawyers (Third) § 11(A Lawyer's Duty of Supervision) and The Law Governing Lawyers (Third) § 15 (A Lawyer's Duty to Prospective Client). The Court finds that Model Rule 5.3 and 8.4 applicable to this case. The Law Governing Lawyer § 11(b) and Model Rule 5.3 are essentially identical. Pursuant to the Virgin Islands Supreme Court Rule 205, X(D), the American Bar Association Model Rules of Professional Conduct is the applicable code of ethics for the Virgin Islands Bar Association.

> FN6. Rule 5.3 in pertinent part provides:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:

> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

> (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the

conduct involved; or


(2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when it consequences can be avoided.


Rule 8.4 in pertinent part provides:
It is professional misconduct for a lawyer to:


(d) engage in conduct that is prejudicial to the administration of justice.

In this jurisdiction, where a nonlawyer employee has learned the confidences of an adversary, a rebuttable presumption arises that the nonlawyer employee will disclose the confidential information to the new employer. *Lamb v. Pralex Corporation,* at 365. Once the presumption arises, it must be rebutted by competent evidence that the nonlawyer employee has not shared any confidential evidence with the new firm. *Occidental Chemical Corporation, et al. v. Honorable Eric Brown, Judge of the 28th District of Nueces County, Texas,* 877 S.W.2d 27, 30 (Ct.App. TX 13th Circuit 1994). In this jurisdiction, the presumption that confidential client information has been used or disclosed may be rebutted by presenting evidence of an effective screening mechanism to shield the employee from those cases. See, *Lamb v. Pralex Corporation,* 333 F.Supp.2d 361, 365 (D.Vi.2004). However, in circumstances where a screening mechanism is impractical, the uncontroverted affidavits of counsel have been accepted as competent evidence to rebut the presumption where the affidavits "clearly and effectively" demonstrate that no confidential information was communicated or is likely to be communicated. See, *Coburn v. Daimler Servs. N. Am.,* 289 F. Supp .2d 960, 964-965 (N.D.Ill.2003). If the presumption is rebutted, the new firm should not be disqualified until the adverse party has presented some evidence that his confidences were in fact revealed or used against him by the nonlawyer employee. *Occidental Chemical Corporation* at 30.

Here, there is no dispute that Mr. Sheraw acquired privileged information regarding the Blair Shannon's murder from the firm. Thus, the presumption arises that he has shared the information with Attorney Hart, or has used the information in his investigation for Attorney Hart. Here, because Mr. Sheraw is not an employee of Attorneys Hart and Feuerstein, but an independent contractor, a screening mechanism is not an option; thus, the Court will accept the affidavits of Attorney Hart and Sheraw as competent evidence to rebut the presumption. To rebut the presumption, Attorney Hart has offered a declaration declaring that in the spring of 2006, he asked Mr. Sheraw to conduct an investigation regarding the death of Blair Shannon and Mr. Sheraw advised him that he had been previously contacted, but not retained, by Moore Dodson and Russell to act as investigator for the Caribe Best Western Hotel [sic]. (Attorney Hart's Declaration, paragraph 2). Attorney Hart further declares that he confirmed that Mr. Sheraw was not retained by the firm, or the hotel and that Mr. Sheraw had not engaged in an investigation on behalf of Moore Dodson and Russell. (Attorney Hart's Declaration, paragraph 3). He further declares that in April 2006, he called the firm and left a message for Attorney Moore advising that he wanted to use Mr. Sheraw as an investigator and to confirm that Mr. Sheraw had not been retained by the firm and that he left the same message on May 24, 2006, but never heard from Attorney Moore or anyone else from the firm. (Attorney Hart's Declaration, paragraph 3). Attorney Hart further declares that he "now understands that Mr. Sheraw received documents from the firm and, to the best of his knowledge, Mr. Sheraw did not use the documents in the investigation he conducted for him." (Attorney Harts's Declaration, paragraph 5).

**\*5** Mr. Sheraw declares that on or about April 17, 2006, he was contacted by Attorney Hart with respect to the death of Blair Shannon at the Carib Beach Resort and was retained on April 20, 2006. (Mr. Sheraw's Declaration, paragraphs 19 and 21). Mr. Sheraw further declares that to initiate the investigation, he hired Kelvin Derricks on St. Thomas to: (a) attempt to obtain a police report relating to the murder; (b) identify the Virgin Islands Police Department officer heading the investigation and attempt to obtain background information about the murder, suspects, etc.; (c) identify any security

guard company working at the hotel; and (d) determine if there were any security cameras at the hotel and, if so, determine who placed the security cameras there. (Mr. Sheraw's Declaration, paragraph 22). Mr. Sheraw further declares that Mr. Derricks performed the assigned tasks and identified the investigating officer as Roberto Lima, the security company as Ranger American, the victim's advocate as Leslie Webb and he confirmed that there were security cameras installed by Alert 1. (Mr. Sheraw's Declaration, paragraph 23). Mr. Sheraw further declares that based upon this information, he attempted to interview Officer Lima, Ms. Webb, the emergency medical technicians who responded to the scene and the medical examiner, but he was unable to do so because the individuals would not speak with him about the incident/investigation or would not return his calls. (Mr. Sheraw's Declaration, paragraph 24). Mr. Sheraw further declares that based on the information he obtained from Mr. Derricks, he contacted Delroy Richards, the president of Ranger American and made arrangements to interview him and the security guard supervisor, Michaela Skeet, on May 30, 2006. (Mr. Sheraw's Declaration, paragraph 24) He further declares that he also spoke with Kevin Cogan, the president of Alert 1 and also arranged to interview him on May 30, 2006. (Mr. Sheraw's Declaration, paragraph 24). Mr. Sheraw further declares that he traveled to St. Thomas, Virgin Islands on May 30, 2006, and interviewed Delroy Richards, Kevin Cogan and Michaela Skeet. (Mr. Sheraw's Declaration, paragraph 25).

Mr. Sheraw further declares that the investigative efforts he undertook for Attorney Hart were standard to investigations of this nature and that he did not deviate from his normal practice as a result of his communication with Attorney Russell and Attorney Moore, Dowson Holding or anyone acting on their behalf. (Mr. Sheraw's Declaration, paragraph 27). Mr. Sheraw further declares that the only aspect of the investigation that he was unable to conduct was the interviewing of the hotel employees. (Mr. Sheraw's Declaration, paragraph 27). He declares that the hotel manager referred him to the firm when he attempted to conduct their interviews. (Mr. Sheraw's Declaration, paragraph 27). Mr. Sheraw further declares that in connection with his investigation for Attorney Hart, he did not use any of the documents or information provided to him by the firm, Dowson Holding Company or anyone acting on their behalf. (Mr. Sheraw's Declaration, paragraph 28) Additionally, he declares that he has not disclosed, inadvertently or otherwise, any of the information, documents, or materials that were forwarded or communicated to him by the firm. (Mr. Sheraw's Declaration, paragraph 30.)

**\*6** This case is different from the typical situation where the nonlawyer employee has knowledge of confidential information relating to one or more cases of a former employer and is hired by a new firm that has those cases in an adversarial posture and may be effectively screened from participation in those case or cases. Here, Mr. Sheraw was hired by Attorney Hart to work on the very case in which he had acquired attorney work-product documents. Nonetheless, the Court is satisfied from the affidavits of Attorney Hart and Mr. Sheraw that none of the confidences of the firm has been shared or used in Mr. Sheraw's investigation for Attorney Hart. The Court is comfortable in accepting the representations of Mr. Sheraw because he has been a private investigator in the Virgin Islands for a substantial number of years and the Court knows him to have conducted numerous investigations on behalf of attorneys in this jurisdiction and he enjoys a reputation as a professional and competent investigator. Accordingly, the Court believes that Mr. Sheraw would know that all information received by him from a potential client, whether or not that individual becomes a client, remains confidential.

Further, the Court accepts the representation of Attorney Hart that he did not know of the existence of the documents until they became an issue in these cases and that the documents were never given to him by Mr. Sheraw. Based on the affidavits of Attorney Hart and Mr. Sheraw, the Court finds that Plaintiffs have effectively rebutted the presumption that Mr. Sheraw used the information in his investigation for Attorney Hart or that he disclosed the information to Attorney Hart.

The Plaintiffs, having rebutted the presumption, the Court now examines the evidence before it to determine if Mr. Sheraw provided the documents to Attorney Hart or used information contained in the documents in his investigation for Attorney Hart. The Defendants have not presented any evidence to establish that Mr. Sheraw gave the documents to Attorney Hart. Attorney Hart has stated affirmatively that he did not know of the documents until this matter became an issue in these cases and that Mr. Sheraw has not given him the document. Mr. Sheraw has declared that he has not given the documents to Attorney Hart. Defendants claim that Mr. Sheraw used the information in his investigation for the Plaintiffs and point to the statement of Delroy Richard prepared by Mr. Sheraw.

Defendants submitted an affidavit of Delroy Richards wherein he avers that he did not provide some of the information Mr. Sheraw included in the summary of his interview with Mr. Richards. Thus, the Defendants conclude that the alleged additional information was obtained from the documents Moore Dodson and Russell provided to Mr. Sheraw. The Court reviewed, *in camera,* the documents that Moore Dodson & Russell provided to Mr. Sheraw and has determined that information that Mr. Richards avers that he did not provide to Mr. Sheraw was not contained in the documents that the firm sent to Mr. Sheraw.

**\*7** Additionally, Defendants indicated that because Mr. Sheraw had access to the firm's documents, "there is no way to know what Sheraw retained in his memory and interjected into his work product provided to the Plaintiffs." This is a legitimate concern. However, based on the Court's *in camera* review of the documents sent to Mr. Sheraw and based on Mr. Sheraw's description of how he conducted his investigation for Plaintiffs, the Court is satisfied that Mr. Sheraw conducted a comprehensive, independent investigation and whatever role, if any, Mr. Sheraw's review of those documents may have had in his investigation is negligible. Further, the Court notes that the documents received from the firm do not provide sufficient detail or clarity of information such that would present a concern to the Court.

Finally, Defendants contend that "there is no way to know what privileged information Sheraw, directly or indirectly, passed on to Plaintiff's [sic] lawyers" and submits an affidavit of Attorney Russell wherein he avers that he discussed "Dowson's legal defense and defense strategy and issues in some detail" with Mr. Sheraw. Mr. Sheraw acknowledges having two telephone conversations with Attorney Russell. He recalls the first telephone call as an inquiry of whether he would be willing to conduct an investigation regarding the murder of Blair Shannon, a request for a scope of work and cost estimate for his services. He recalls the second telephone call with Attorney Russell as a request for a revised scope of work and price quotation. He does not mention whether there were any discussions regarding Defendants' counsel's defense strategy of the case. Mr. Sheraw does, however, declare that he has not disclosed, either inadvertently or otherwise, any of the information provided to him or communicated to him by Attorney Moore, Russell, their law firm, or Dowson Holding Company.

The Court finds that even to the extent that Attorney Russell discussed the defense's legal strategies with Mr. Sheraw, Mr. Sheraw has declared that he has not disclosed any information received from the firm with Attorney Hart. The Court notes that these discussions would have taken place at the stage where the parties were exploring establishing a contractual relationship. Thus, the Court finds it unlikely, in the absence of a contractual relationship and a pending lawsuit, that the discussions would have been such that would encompass specific defense strategies and issues as opposes to general concerns and issues regarding the Defendants defense of the case. As the Court indicated above, Mr. Sheraw enjoys a reputation of professionalism and competency in the legal community. The Court is satisfied based upon Mr. Sheraw's experience as an investigator and upon his and Attorney Hart's declarations that any confidences that Mr. Sheraw may have learned from the firm have not been disclosed to Attorneys Hart and Feuerstein. The Court finds that Defendants have not established, through neither the affidavit of Mr. Delroy Richards nor the evidence before the Court, that Mr. Sheraw revealed any of the confidences he may have received from the firm or that he used any of the information in his investigation for the Plaintiffs.

**\*8** It would have been better professional practice for Attorney Hart to have written a letter to Moore Dodson and Russell, or to have spoken directly with an attorney at the firm about his intention to hire Mr. Sheraw to determine the extent of Mr. Sheraw's association with the firm. Attorney Hart's failure to do so and his subsequent retention of Mr. Sheraw as Plaintiffs' investigator do not amount to conduct that is prejudicial to the administration of justice. The Court is mindful that this is a small community and that the number of private investigators is limited. Mr. Sheraw was not retained by the firm and did not conduct any investigation at all for the Defendants. Mr. Sheraw's association with the Defendants is limited to his current possession of work-product documents, documents that the firm failed to request return of until December 2008. The Court finds that to disqualify Plaintiffs' counsel and to deprive the Plaintiffs of their chosen counsel would be an unduly harsh remedy and not justified by the facts of these cases. The Court finds that Defendants have failed to establish with specificity any violation of the above cited rules of professional conduct.

For the foregoing reasons, Defendants' Motion to Disqualify Plaintiffs' counsel is **DENIED.**

D.Virgin Islands,2009.
Hamilton v. Dowson Holding Co., Inc.
Slip Copy, 2009 WL 2026327 (D.Virgin Islands)


Motions, Pleadings and Filings <u>(Back to top)</u>

• <u>2008 WL 4356524</u> (Trial Motion, Memorandum and Affidavit) Dowson Holding Company, Inc.'s
Motion for Partial Summary Judgment (Faulkner's Zone of Danger Claim) (May 13, 2008) <u>Original
Image of this Document (PDF)</u>
• <u>2008 WL 2466475</u> (Trial Motion, Memorandum and Affidavit) Dowson Holding Company, Inc.'s
Motion for Partial Summary Judgment (Faulkner's Zone of Danger Claim) (Apr. 12, 2008)
• <u>3:08cv00010</u> (Docket) (Jan. 18, 2008)
• <u>3:08cv00002</u> (Docket) (Jan. 2, 2008)
END OF DOCUMENT

(c) 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 2203410 (D.Minn.)

Motions, Pleadings and Filings
Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Roderick ARNOLD, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated, Plaintiffs,
v.
CARGILL INCORPORATED, Defendant.

No. 01-2086 (DWF/AJB).
Sept. 24, 2004.

Lawrence P. Shaefer, Susan M. Coler, and Teresa Kathleen Patton, Sprenger & Lang, Minneapolis, MN; Michael P. Lieder, Paul Carl Sprenger, and Steven M. Sprenger, Sprenger & Lang, Washington, DC, for Plaintiffs.

Holly S.A. Eng, Mark John Ginder, Melissa Raphan, Michael Iwan, Paul Barry Klaas, and Ryan E. Mick, Dorsey & Whitney, Minneapolis, MN, for Defendant.

Peter N. Thompson, Hamline Law School, St. Paul, MN, Special Master.

MEMORANDUM OPINION AND ORDER

FRANK, J.

Introduction

*1 The above-entitled matter came on for hearing before the undersigned United States District Judge on August 13, 2004, pursuant to Defendant Cargill, Inc.'s ("Cargill") Motion to Dismiss, Disqualify, and Impose Additional Sanctions. For the reasons set forth below, Cargill's motion is granted in part and denied in part. The law firm of Sprenger & Lang is hereby disqualified from further representation of Plaintiffs in this case.

Background

I. Parties and Claims Alleged

Plaintiffs include current and former African American managers and professional employees. Plaintiffs are alleging a class action on behalf of themselves and, pursuant to Federal Rule of Civil Procedure 23, the following class: "All salaried African Americans through salary grade 15 who were employed by Cargill at any time during the liability period." By its Complaint, Plaintiffs allege that Cargill has engaged in systematic discrimination in violation of federal and state civil rights laws, namely by fostering an exclusionary culture that affects its own systems for performance appraisal, advancement, compensation and termination. Plaintiffs' allegations relate primarily to the company-wide systems purportedly implemented to standardize advancement and compensation procedure. Such systems include the "Key Employee Identification System" ("KEIS"), the "Selection Grid Process," the "Performance Management Process" ("PMP"), "Management by Objectives," and Cargill Leadership Development Program ("CDLP").

Defendant Cargill is a large, privately held Delaware corporation, headquartered in Wayzata, Minnesota. Cargill is an international marketer, processor and distributor of agricultural, food, financial and industrial products and services. Cargill employs approximately 97,000 people in 59 countries.

EXHIBIT
3

The law firm of Sprenger & Lang ("S & L") represents Plaintiffs. S & L began investigating the possibility of litigating this race discrimination class action lawsuit in the summer of 2000. This case was commenced in November 2001.

## II. Facts Relevant to this Motion

Lawrence Schaefer, a partner at S & L, is the lead attorney representing Plaintiffs and the putative class in this action. ( See Declaration of Lawrence P. Schaefer Regarding Deposition of R. Bill Douglas, dated May 2, 2003, ("Schaefer Decl. I"), ¶ 1.) Prior to initiating this suit, S & L represented other parties litigating discrimination suits against Cargill. ( Id. at ¶ 6.) One of these cases involved discrimination claims on behalf of two salaried female employees which allegedly arose from the same human resources systems that Plaintiffs challenge here. S & L also represented plaintiffs in a class-action case, *Foster v. Cargill, Inc.,* Civ. No. 3-82-1829 (D.Minn.), which involved allegations of racial and gender discrimination.

### A. S & L's Dealings with Douglas

Ray Bill Douglas ("Douglas") worked for Cargill for 22 years and was a Cargill manager for several years. His positions included Corporate EEO Director and senior manager of Human Resources for Cargill's Food Sector. During his tenure at Cargill, Douglas worked with both Cargill's in-house law department and Cargill's outside counsel at Dorsey & Whitney. Douglas testified that he routinely spoke with Cargill attorneys about issues involving employment law and discrimination claims and had access to documents regarding the same. Douglas also assisted the Cargill defense team in *Foster v. Cargill.* By virtue of the work he performed at Cargill, Douglas possessed information that was privileged and confidential to Cargill and had "knowledge of Cargill's litigation theory." ( See Declaration of Michael Iwan, dated June 18, 2004 ("Iwan Decl. I."), at ¶ 2, Ex. C at 17-22, 45, 116, 201-02, 216-17.)

**\*2** Plaintiffs question the extent of Douglas' access to Cargill's attorney-client communications. Specifically, Plaintiffs argue that Douglas was never an officer at Cargill, his position as Corporate EEO Manager ended in 1985 (about 10 years prior to the liability period here), and that Cargill's lengthy privilege log contains only three documents referencing Douglas that fall within the liability period.

Douglas accepted an early retirement package from Cargill, which was finalized in January 1998. The package included a $60,000 annual pension and a Release and Settlement Agreement ("Release") prohibiting Douglas from bringing any legal or administrative claims against Cargill. Douglas contacted S & L in 1998 for advice about whether a consulting opportunity conflicted with the terms of the Release he signed upon departing Cargill. ( See Schaefer Decl. I at ¶ 3.) During this consultation, Douglas also inquired into whether he could "reopen [ ]" or "undo" his Release with Cargill. ( See Iwan Decl. I. at ¶ 2, Ex. C at 26.) There is no evidence in the record that S & L ever suggested in 1998 that the Release was unenforceable. Both parties agree that this initial contact consisted of one meeting and was limited in its nature.

S & L approached Douglas in July 2000 for the purpose of obtaining information regarding Cargill's employment practices as part of its investigation of this suit. That S & L initiated this contact is amply supported by notes taken by S & L personnel. ( See Iwan Decl. I at ¶ 2, Ex. C at Exs. 10, 11; Declaration of Michael Iwan, dated August 12, 2004 ("Iwan Decl. II"), at ¶ 2, Ex. A.) S & L immediately learned that Douglas possessed information that could assist them in their investigation. According to S & L's own notes, on July 6, 2000, Douglas explained in a telephone interview:

I have docs from case Paul Sprenger filed-[Foster] lawsuit brought against Cargill. There's a lot that Paul Sprenger missed. I could give you names, but I have to ask-in *absolute* terms-that I not be identified with having provided this information.... But, I know *much.* It's all probably the same now as it was then.

( See Iwan Decl. I at ¶ 2, Ex. C at Ex. 11)(emphasis in original.)

After being contacted by S & L, Douglas participated in the investigation and preparation of this litigation. It is undisputed that Douglas identified names of current and former African American

Cargill employees whom S & L could contact, personally contacted witnesses and potential class members, and reviewed and commented on the Complaint. Douglas also explained, and provided documents related to, the internal employment related systems within Cargill that S & L was investigating, such as the KEIS, PMP, and CDLP systems.

On November 27, 2000, S & L attorney David Schulman ("Schulman") conducted a phone interview with Douglas, during which Schulman learned that Douglas had a box of Cargill documents.[FN1] Douglas agreed to provide these documents to S & L. Some of these documents were marked "Privileged and Confidential." When asked whether Schulman told Douglas to separate out privileged documents and not to bring them to S & L's offices, Douglas answered: "Not to my recollection. No, not to my recall he did not." ( *See* Iwan Decl. I at ¶ 2, Ex. C at 342.) Douglas also testified that when he specifically asked what to do with documents labeled confidential or privileged, he was instructed to send all documents to S & L's offices and was told that they would "sort them out." ( *See id.* at ¶ 2, Ex. C at 99-100.) A portion of his testimony reads as follows:

> FN1. According to his own notes, Schulman learned that "Bill has a box of documents from his days at Cargill. He said that he needed to start looking through them. I encouraged him to do so, and we agreed that he would pass on to us anything that he thinks might be of interest." ( *See* Iwan Decl. at ¶ 2, Ex. C at Ex. 13.)

> **\*3** ... I was invited to bring all the documents, including those that were privileged, to S & L's office and help and/or assist, and a space or place to sort through them.
> ( *Id.* at ¶ 2, Ex. C at 336-37.)

Schaefer claims that at the outset of his interactions with Douglas, he "emphatically and unequivocally" instructed Douglas not to disclose any "confidential or attorney-client communications ." ( *See* Schaefer Decl. I at ¶ 5.) [FN2] Douglas' testimony contradicts this. ( *See* Iwan Decl. I at ¶ 2, Ex. C at 337.) There is no evidence that S & L cautioned Douglas in writing at any time.

> FN2. Sean Wright, a witness and named plaintiff, stated that Schaefer gave a similar instruction in Douglas' presence at a meeting in December 2000. ( *See* Declaration of Sean Wright at ¶ 3.) Douglas does acknowledge that he heard certain rules prohibiting disclosure of privileged documents and stated: "I've heard itit was brought up, I think, in a meeting, at a meeting in that context. But to me directly, one-on-one, not that I recall." ( *See* Iwan Decl. I at ¶ 2, Ex. C at 339.) Based on the corroborating declaration of Sean Wright, it is likely that Douglas was referring to the December 2000 meeting. There is no indication that this meeting occurred prior to S & L's receipt of Cargill documents marked privileged and confidential in November 2000.

Douglas produced all Cargill documents in his possession to S & L (totaling about 2,000 pages) beginning in November 2000 ( *see* Schaefer Decl. I at ¶ 8), and met with S & L on four to six occasions to go over them. ( *See* Iwan Decl. I at ¶ 2, Ex. C at 39-40, 42, 99-100.) [FN3] There is no direct evidence that Douglas ever specifically discussed the substance of the privileged documents with S & L attorneys. During Douglas' deposition, attorneys for Cargill never asked him whether he had reviewed any allegedly "privileged" materials with S & L. Cargill's attorneys did ask whether Douglas had "go[ne] over" all the documents he had produced with Schaefer, including documents that "were confidential" or "from the law department." Douglas replied:

> FN3. S & L claims that the privileged documents were segregated out and returned to Douglas prior to these meetings. Douglas acknowledges that at least "some of them" were returned, but left open the possibility that not all privileged documents were returned. ( *Id.* at 2, Ex. C at 46-47, 270-81.) Douglas testified that "any documents that were returned to me were not returned to me by December 2001." ( *See id.* at 2, Ex. C at 336.)

No, no. The documents that I recall most clearly presently were involved with the key areas or the key programs that he wanted to know more about. One was, like I indicated, CLDP, the Cargill leadership development program; the KEIS initiative; oh, PMP; the selection grid; and there may have been another one, but those, I think that was the bulk of it, the crux of it.

( *Id.* at ¶ 2, Ex. C at 42-43; *see also* Declaration of Lawrence P. Schaefer, dated August 3, 2004 ("Schaefer Decl. II"), at ¶ 6, Douglas at 374-75.) However, Douglas testified earlier that "there were documents that clearly I had gone over with Larry, ... whether it was confidential or not, I can't recall...." ( *See* Iwan Decl. I. at ¶ 2, Ec. C at 96.)

Eventually, S & L realized that certain documents provided by Douglas were marked "Privileged and Confidential" or "otherwise appeared to originate from, or be directed to, internal or outside legal counsel for Cargill." ( *See* Schaefer Decl. I at ¶ 11.) Schaefer claims not to have reviewed them substantively, except for noting the dates of the documents and the "designation or the indication on the face of the document that legal counsel authored or received the document." *Id.* Schaefer asserts that he segregated out and returned approximately 200 to 300 documents to Douglas. ( *See* Schaefer Decl. I at ¶ 8; Declaration of Susan M. Coler in Support of Motion to Quash at ¶ 5.) S & L did not immediately inform Cargill that it was in possession of its confidential and privileged documents.

Schaefer claims that he instructed the paralegal working on the matter not to retain copies of the segregated documents and to return them to Douglas. ( *See* Schaefer Decl. I at ¶ 12.) Despite this instruction, however, an unidentified "case clerk" for S & L did make and store a copy of the documents marked privileged or confidential. ( *See id.* at ¶ 16.) When questioned during oral argument, counsel for S & L was unable or unwilling to identify the case clerk.

**\*4** S & L also claims that it was unaware that the documents had been copied and retained until June 2002, when the copies of Cargill's documents were rediscovered. On July 15, 2002, approximately 18 months after they were received, S & L sent a package containing the rediscovered documents to counsel for Cargill. ( *See* Schaefer Decl. I at ¶ 18.) Before doing so, S & L received an advisory opinion from the Minnesota Lawyers Board of Professional Responsibility, which indicated that S & L's ethical obligation could be interpreted to include returning the documents to Cargill, the potential privilege holder. ( *See id.* )

During a phone conversation between counsel for the parties within days of counsel for Cargill's receipt of the documents, Janice M. Symchych, one of Cargill's outside counsel, told Schaefer that she believed she knew the source of the documents and intended to seek full legal recourse for the alleged privilege breach. ( *See* Affidavit of Janice M. Symchych at ¶ 5.) Soon thereafter, Schaefer called Douglas. Douglas then disposed of all Cargill records in his possession. What was said during this phone conversation is contested. Douglas testified that S & L told him to destroy Cargill's privileged and confidential documents before Cargill could subpoena them:

MS. COLER: Mr. Douglas. My question is what precise words do you recall, or do you claim Mr. Schaefer said to you with regard to what you should do with those records?

MR. DOUGLAS: Toss the records. Get rid of them.

( *See* Iwan Decl. I at ¶ 2, Ex C at 379-80; *see also id.* at 104-05.)

Plaintiffs deny that Schaefer instructed Douglas to throw the documents away. Plaintiffs claim that when Schaefer informed Douglas that S & L had inadvertently copied and retained a copy of the documents, and that S & L was going to turn these documents over to Cargill and its attorneys, Douglas became very angry. Plaintiffs suggest that Douglas may have tossed the documents out of anger and frustration or even faulty memory. It is undisputed that soon after this phone call, Douglas deposited the Cargill documents that had been returned by S & L into the trash. Douglas' testimony was subpoenaed by Cargill on March 4, 2003.

After discovering that S & L had been in possession of Cargill documents marked confidential and privileged, Cargill launched what became a protracted effort to depose Douglas and elicit discovery from S & L to account for how the documents came into their possession. On June 27, 1993,

Magistrate Judge Arthur J. Boylan ordered Douglas to appear for two days of deposition and to answer all of Cargill's inquiries regarding his interaction with S & L, regardless of any claim of attorney-client privilege by S & L. *See Arnold v. Cargill, Inc.,* Civ. No. 01-2086 (DWF/AJB), slip op., (D. Minn. June 27, 2003) (Boylan, M.J.) (the "June 27, 2003, Order).

During the first day of deposition testimony, Douglas' testimony raised several serious ethical issues, one being that S & L instructed Douglas to destroy copies of Cargill confidential and privileged documents. Counsel for Cargill suspended the deposition and promptly wrote the Court to apprise it of Mr. Douglas' testimony and to seek guidance. ( *See* Iwan Decl. at ¶ 2, Ex. G.) The Court acknowledged Cargill's right to seek additional discovery from S & L as a prelude for a possible motion to disqualify and/or dismiss the action. ( *See* Iwan Decl. at ¶ , Ex. H.)

**\*5** Cargill served subpoenas for documents and testimony, which S & L promptly moved to quash. On November 26, 2003, the Court ordered S & L to respond to the document requests and ordered Cargill to complete Douglas' deposition after receipt of those responses. *See Arnold v.. Cargill, Inc.,* Civ. No. 01-2086 (DWF/AJB), slip op., (D.Minn. November 26, 2003) (Boylan, M.J.). Ultimately, Douglas' deposition was completed on May 10, 2004.

Cargill claims, for purposes of this motion, that Plaintiffs' counsel wrongfully solicited, received, reviewed, retained and transferred Cargill's confidential and privileged documents, and that Plaintiffs' counsel bears the responsibility for the subsequent destruction of those documents. Moreover, Cargill claims that Plaintiffs' counsel have and are employing similar tactics with non-parties and unrepresented persons in this action. Because of these improprieties, Cargill argues that the case has been tainted and that the Court should disqualify Plaintiffs' counsel, dismiss the Complaint, impose monetary sanctions, and award Cargill the costs and fees incurred in defending this action to date.

Discussion

I. Standard of Review

Disqualification is committed to the trial court's discretion. *See Jenkins v. State of Missouri,* 931 F.2d 470, 484 (8th Cir.1991). This discretion is especially broad in class action cases. *See id.* "Disqualification is an ethical, not a legal matter, and it is in the public's interest, as well as the client's interest. *In re Potash Antitrust Litigation,* Civ. No. 3-93-197, MDL 981, 1993 WL 5403013 at \*16 (citation omitted). Among the factors to be considered in determining whether S & L's conduct warrants disqualification are "the Court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." *Id.* (citing *United States v. Agosto,* 675 F.2d 965, 969 (8th Cir.1982)). In addition, a party has an "interest in a trial free from even the *risk* that confidential information has been unfairly used against it." *Id.* (emphasis in the original). Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial. *See id.* at \*16. Finally, "any doubt must be resolved in favor of disqualification." *Id.; see also Olson v. Snap Prods., Inc.,* 183 F.R.D. 539, 542 (D.Minn.1998).

The Minnesota Rules of Professional Conduct govern the attorneys' conduct in this case. *See* D. Minn. L.R. 83.6(d)(2). Cargill argues that S & L violated its ethical obligations by: (1) suggesting that Douglas might stand to benefit financially from this suit, despite their knowledge to the contrary, to gain his cooperation; (2) soliciting improper assistance from Douglas and inducing a breach of Cargill's confidences and privileges by using methods of obtaining evidence that violate Cargill's rights; (3) conducting their own "privilege review" and returning privileged documents to Douglas rather than Cargill; (4) contributing to the destruction of Cargill documents; (5) violating their duty of candor to this Court; and (6) inappropriately contacting class members. FN4

FN4. In its motion, Cargill claims S & L has violated a host of ethical obligations. Most are discussed in the body of this opinion. However, several, which are cited without discussion or meaningful argument, will not be considered herein.

**\*6** While the Court will refer to specific rules of professional conduct throughout this order, where appropriate, the Court also notes that the Minnesota Rules of Professional Conduct are not intended

to be an exhaustive list of prohibited conduct. The Preamble of the Professional Rules of Conduct provide:

The Rules do not, however, exhaust the moral and ethical consideration that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.

It is this Court's inherent power, authority, and duty to ensure the administration of justice and the integrity of the litigation process. *See, e.g., Capellupo v. FMC Corp.,* 126 F.R.D. 545, 551 (D.Minn.1989). Moreover, "[t]hese powers are 'governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630-31 (1962)).

II. Ethical Considerations
A. Cargill's Solicitation of Assistance from Douglas
    Cargill suggests that S & L violated several ethical and confidentiality obligations while soliciting assistance from Douglas.

(1) Rule of Professional Conduct 4.1
    Cargill argues that S & L violated Rule of Professional Conduct 4.1, which provides: "In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Cargill asserts that S & L improperly ingratiated themselves to Douglas, who S & L has claimed remained a client, by suggesting that he might stand to gain in any recovery or settlement of this action when they knew Douglas was not eligible to participate in the class action. Cargill argues that S & L knew Douglas was not eligible to participate because he signed the Release with Cargill and was never within the putative class identified in the Complaint because he held a salary position above grade 15.

    As late as March 18, 2003, Schaefer sent Douglas a detailed letter prior to his deposition, wherein he stated:

It is our position that you are a potential class member in this case who, despite having signed a release, may be eligible and elect to participate in class-wide relief should this be awarded by judgment or settlement.

( *See* Iwan Decl. at ¶ 2, Ex. C at Ex. 9.) At this point, this Court had ruled that two individuals who-like Douglas-had signed and not rescinded a release of claims upon termination of their employment with Cargill could not participate in this litigation. *See Arnold v. Cargill, Inc.,* Civ. No. 01-2086 (DWF/AJB), slip op ., (D.Minn. May 16, 2002). Accordingly, Cargill argues that S & L violated its general duty of candor and truthfulness and its obligations toward unrepresented parties.

    S & L denies that it violated its duty of candor and truthfulness, arguing that the firm had "good reason to believe" that Douglas could benefit financially from the suit. ( *See* Plaintiffs' Memorandum in Response to Defendant's Motion Dismiss, Disqualify, and Impose Additional Sanctions at 20.) First, S & L asserts that it decided late in the investigatory process to limit the putative class to persons in grades 15 or below, which eliminated Douglas, and that Plaintiffs tried to amend the Complaint to expand the class in a way which would have included Douglas. Second, S & L claims that it believed Douglas' Release was unenforceable. Finally, S & L claims that Douglas did not need any encouragement to participate and was not motivated by financial considerations.

    **\*7** The Court finds S & L's ongoing representations to Douglas that he might stand to gain financially from this suit troublesome for several reasons. First, Douglas signed the Release in 1998, which has not been rescinded. On July 15, 2002, this Court ruled that a named plaintiff who-like Douglas-had signed a release was, as a matter of law, ineligible to participate in the class action. Moreover, despite the fact that during his initial consultation with S & L in 1998 Douglas inquired into whether he could "reopen[ ]" or "undo" his Release with Cargill ( *see* Iwan Decl. I. at ¶ , Ex. C at 26), there is no evidence in the record that S & L ever suggested at this time that the Release was unenforceable. Second, Douglas has never been within the defined putative class. The Court

recognizes that S & L did make a motion to amend the Complaint to remove the ceiling on their class definition, which was denied on June 30, 2003. However, in making that motion, Plaintiffs acknowledged that Douglas had signed a release "that would likely prevent [him] from being [a] class member [ ]." ( *See* Declaration of Teresa K. Patton dated May 7, 2003, ¶ 4.) Therefore, S & L clearly understood that even if their motion to amend the Complaint was granted, Douglas could not participate.

The Court finds that regardless of whether S & L was justified in claiming that Douglas stood to gain financially from this suit at the initial stages of the investigation, there is no justification for S & L's continued representations as the suit progressed.<u>FN5</u> The representation contained in Schaefer's March 18, 2003, letter to Douglas is particularly troubling because it disregarded the reality that Douglas was not eligible to participate in this suit. Accordingly, the Court finds that S & L violated <u>Rule 4.1</u>.

> <u>FN5.</u> The Court accepts the fact that S & L never promised Douglas that he would benefit from this suit. However, S & L need not have promised anything to violate <u>Rule 4.1</u>.

### (2) Rule of Professional Conduct 4.4

Cargill asserts that S & L improperly induced a breach of Cargill's confidences and privileges by using methods of obtaining evidence that violate the legal rights of a non-client under <u>Rule 4.4</u>. Specifically, Cargill claims that by soliciting privileged and confidential information from Douglas, it sought to obtain information in opposition to Cargill's rights to confidentiality and privilege.

The Court finds that Douglas' entire relationship with S & L was based on his knowledge of Cargill that was relevant to this suit. At least some of the information possessed by Douglas (documents and otherwise) was privileged and/or confidential to Cargill. This is not simply a situation where Plaintiffs' counsel contacted a prospective witness with knowledge of underlying facts relevant to their investigation. Here, S & L cultivated its relationship with Douglas, a former highly placed employee of Cargill who had extensive knowledge of the systems at issue in this suit and Cargill's past litigation strategies in similar cases, precisely because he possessed a wealth of relevant information.

S & L argues correctly that <u>Rule 4.4</u> does not prohibit S & L from obtaining information from Douglas, a former corporate manager. In light of the evidence, which demonstrates that Douglas was not eligible to participate in this litigation, S & L should have (and claims to have) treated Douglas as a witness from the start. That being the case, S & L was obligated to advise Douglas that he could not disclose privileged communications. *See FleetBoston Robertson Stephens, Inc. v. Innovex, Inc., 172 F.Supp.2d 1190, 1195 (D.Minn.2001).*

**\*8** Despite S & L's aggressive pursuit of the documents in Douglas' possession, there is no evidence, other than the declaration of Schaefer, that anyone at S & L ever explained to Douglas *at or prior to the time* Douglas gave S & L his Cargill documents, that privileged documents were to be excluded. In fact, it appears that S & L actually encouraged Douglas to send over to its offices "any documents" pertaining to Cargill, including privileged documents. In fact, Douglas testified that he asked S & L what to do with documents marked privileged and confidential and was told to send them all over to S & L and told that they would go through them. ( *See* Iwan Decl. at ¶ 2, Ex. C at 39-40.) Moreover, there is no evidence that S & L ever cautioned Douglas in writing or "one-on-one." ( *See id.* at ¶ 2, Ex. C at 339.)

The Court finds that S & L knew that Douglas was extensively exposed to confidential and privileged information, including information learned through regular contact with Cargill's in-house and outside legal teams. The Court also finds that S & L made no meaningful effort to protect Cargill's confidences and that S & L eventually came into possession of documents marked privileged and confidential.

Plaintiffs deny that S & L substantively reviewed documents marked privileged and confidential and that Douglas never discussed the substance of these documents with S & L. Those denials, however,

ring-hollow for two reasons. First, considering Douglas' regular interactions with Cargill's legal representatives and the fact that he is not trained in the law, he was not in a position to determine what Cargill information was discloseable and what was not discloseable without assistance of counsel. Moreover, it is conceivable, if not likely, that privileged and confidential information was disclosed by Douglas in conversation, even if unconsciously. Second, the Court's concern that privileged and confidential information was indeed disclosed and discussed, is not assuaged by S & L's assertions to the contrary. *See, e.g., MMR/Wallace Power & Indus., Inc. v. Thames Assocs., 764 F.Supp. 712 (D.Conn.1991).*

Accordingly, this Court finds that S & L violated Cargill's confidentiality rights as prohibited by Rule 4.4.

## (3) Rule of Professional Conduct 4.2

Cargill suggests that S & L violated Rule of Professional Conduct 4 .2. Rule 4.2 bars a "lawyer from communicat[ing] about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter." When the party is an organization, the Rule:

> prohibits communications by a lawyer for one party concerning the matter in representation *with persons having a managerial responsibility on behalf of the organization,* and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

**\*9** 52 Minn.Stat. Ann., Rules of Prof. Conduct, Rule 4.2, Comment (emphasis added).

There can be no dispute that Douglas, when employed by Cargill, held positions in the organization that would place him within the scope of the Rule. The question, therefore, is whether this Rule applies to former employees. The Eighth Circuit has not settled the issue of whether *ex parte* communications with former managerial employees of an adverse party violates Rule 4.2. A majority of courts have held that, in general, Rule 4.2 does not bar *ex parte* communications with an adversary's former employee who is not represented. *See Snap Prods,* 183 F.R.D. at 544 (citations omitted). A minority of courts have prohibited contact with the former employees of adverse parties. *See, e.g., Camden v. State of Maryland,* 910 F.Supp. 1115, 1121 (D.Md.1996).

Because of the close relationship between Rule 4.2 and rules protecting against the disclosure of attorney-client privileged information, courts in this district have adopted a flexible approach to prevent privileged information from being disclosed to an adverse party in the context of lawyer contact with a former managerial employee. *See Snap Prods., 183 F.R.D. at 544-45; see also FleetBoston, 172 F.Supp.2d at 1195.*

In *Snap Prods.,* the court considered a party's motion to disqualify opposing counsel based on counsel's *ex parte* communication with former employees, including a former vice-president and a former C.E.O. of the adverse party. *See Snap Prods., 183 F.R.D. at 544.* The court noted the majority rule, but recognized that other courts have been "concerned with the unfairness of litigants being able to obtain the sensitive information of an opponent from the opponent's past employees[.]" *Id.* The court declined to adopt a "bright-line" rule, and instead held that the key factor in evaluating the propriety of a lawyer's conduct under Rule 4.2 with respect to former managerial employees is the likelihood that any privileged matters were intruded upon. *Id.* at 545; *see also FleetBoston, 172 F.Supp.2d at 1195* (citing *Snap Prods.* with approval and adopting this approach). In *Snap Prods.,* the attorneys involved did not ask former employees to discuss privileged matters and there was no evidence that privileged matters were disclosed or discussed; the court accordingly declined to find a violation of Rule 4.2. *Id.* In doing so, however, the court cautioned that "as a prospective matter ... an attorney's discussions with former members of an ... opponent's management could intrude upon privileged matters, which would not be permissible under Rule 4.2." *Id.*

Unlike in *Snap Products,* here there is no dispute that hundreds of Cargill documents marked privileged and confidential were given to S & L by Douglas. In addition, Douglas testified that Schaefer and Douglas had at least one conversation about an in-house attorney that Douglas had

worked with while at Cargill, during which Cargill's investigation and litigation processes were discussed. ( *See* Schaefer Decl. II at ¶ 6, Douglas at 351-53.) The evidence before this Court also demonstrates that S & L took grossly inadequate measures to prevent the disclosure of privileged information from Douglas. ( *See* discussion above.) There can be no question that S & L's discussions and exchange of information with Douglas did impermissibly intrude upon privileged matters. Therefore, this Court finds that S & L violated <u>Rule 4.2</u>.<u>FN6</u>

> <u>FN6.</u> Plaintiffs suggest that <u>Rule 4.2</u> does not cover S & L's communications with Douglas during the investigation of this suit. <u>Rule 4.2</u> applies when a dispute has become a "matter." It is not necessary to decide the precise moment when S & L's investigation evolved into a "matter" with Cargill because S & L's contact with Douglas started in 2000 and continued past the initiation of litigation. Moreover, the privileged documents received by S & L from Douglas remained in S & L's possession until July 2002.

B. S & L's Review and Retention of Confidential and Privileged Documents
**\*10** Cargill argues that even after recognizing that it was in possession of documents marked confidential and privileged, it was improper for Schaefer to conduct his own privilege review, to return the documents to Douglas and not Cargill, and to retain a copied set.

S & L argues that no one at its firm ever reviewed the documents substantively and that it met its obligations by returning the documents to Douglas in December 2000. S & L asserts that the copy of Cargill's documents that was made and stored was the result of a mistake made by a case clerk and was directly at odds with the lead attorney's instruction not to retain a copy of the documents. S & L also claims that after discovering these documents in July 2002, it promptly turned the documents over to Cargill.

An attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents. *See <u>Richards v. Jain</u>, 168 <u>F.Supp.2d 1195, 1200-01 (W.D.Wash.2001)</u>* (noting requirement to return privileged materials to the privilege holder even if no pending litigation) (citing ABA Comm. on Ethics and Professional Responsibility, Formal Op. 94-382 (1994)). The Court finds that upon discovering that there were documents marked privileged or confidential in the box of documents provided by Douglas, the prudent response by S & L would have been to return the documents unreviewed to Cargill, the privilege holder. <u>FN7</u> Instead, S & L chose to conduct its own privilege review, during which Schaefer reviewed the documents at least to a degree that allowed him to determine whether the documents were privileged or confidential and to note the dates on the documents. At this point, Schaefer and his firm blatantly risked creating the appearance of impropriety, which is only exacerbated by the fact that S & L actually made a copy and stored the documents for almost 18 months. S & L now boldly asks this Court, the parties, and the public to ignore the appearance of impropriety and simply trust that upon conducting its own privilege review of Cargill's documents, S & L did not substantively review the documents.

> <u>FN7.</u> Plaintiffs argue that because it was engaged in pre-suit investigation, there was no adversary, and therefore no ethical violation was committed. The Court finds Plaintiffs argument dubious. *See, e.g., See <u>Richards v. Jain</u>, 168 <u>F.Supp.2d at 1200-01</u>*. However, this Court's decision is not premised solely on S & L's failure to return the documents in 2000, but it is also based on the retention of the documents until July 2002.

This Court is skeptical of S & L's account with respect to the copying and retention of Cargill's documents. The Court rejects the notion that S & L is unable to identify the mysterious "case clerk" who defied Schaefer's instructions not to copy the documents. Conveniently, the case clerk has been unavailable to be deposed or give sworn testimony. The conspicuous absence of the testimony of this key individual only adds to the questionable circumstances surrounding S & L's handling of the documents. The Court also rejects the S & L's assertion that it never substantively reviewed the documents.

At a minimum, S & L's behavior recklessly disregarded the risks associated with playing fast and loose with the rules protecting against disclosure of privileged and confidential material. At worst, S & L is guilty of a serious deception with respect to its role in the disclosure and retention of Cargill's privileged and confidential information. Either way, these proceedings have been tainted by the mishandling of Cargill's privileged and confidential material. *See, e.g.,* <u>Richards, 168 F.Supp.2d at 1201</u> (explaining eleven months of "access to privileged documents creates appearance of impropriety" and taints proceedings); *see also Lewis v. Capital One Servs., Inc.,* Civ. Action No. 3:04CV186 at 6-7 (E.D. Va. June 10, 2004). There is no doubt that the spirit of ethical standards in this district, if not the letter of the rules, prohibits an attorney from conducting his or her own privilege review of documents belonging to a corporation he or she is preparing to sue, and then copying and retaining documents marked privileged or confidential for nearly 18 months before notifying the privilege holder.

C. S & L's Contribution to the Destruction of Documents

**\*11** The Court is also troubled over the circumstances surrounding the destruction of the documents S & L returned to Douglas. It goes without saying that the destruction of evidence is a violation of the most serious nature. The following facts are undisputed. In or around December 2000, S & L returned several hundred documents to Douglas, some if not all, marked privileged and confidential. In July 2002, S & L returned the copy of privileged and confidential documents that were retained by S & L (mistakenly or not) to Cargill. Shortly thereafter, an attorney for Cargill contacted Schaefer requesting the identity of the source of the Cargill documents. Schaefer called Douglas on July 22, 2002, and informed Douglas that S & L had mistakenly kept a set of the Cargill documents provided by Douglas and that the firm had turned the documents over to Cargill. Douglas then threw away the documents that S & L had returned to him prior to receiving a subpoena from Cargill.

Although the Court is very skeptical that S & L has been entirely forthcoming in accounting for its actions, the Court need not make a factual determination as to whether Schaefer did or did not instruct Douglas to "toss" the documents. Because the Court has already determined that this case has been tainted, it will not seek to untangle the web of contradictory testimony regarding what was said during that July 2002 telephone conversation.

D. Duty of Candor to this Court

Cargill argues that S & L violated its ethical duty of candor to this Court by concealing several material facts in these proceedings. The thrust of Cargill's argument concerns the representations made by Schaeffer in his May 2, 2003, Declaration. Despite S & L's own documented efforts to contact Douglas during the summer of 2000, Schaefer stated that his first contact with Douglas with respect to the alleged systematic discrimination against salaried African Americans at Cargill occurred on September 15, 2000. ( *See* Schaefer Decl. I, ¶ 4.) [FN8] Just days before oral argument on this motion, Schaefer submitted a second declaration correcting the omission of S & L's July 2000 contact with Douglas. ( *See* Schaefer Decl. II.)

> FN8. This declaration was provided to the Court for the purpose of opposing Cargill's Motion to Overcome Attorney-Client Privilege and Work-Product Claims of R. Bill Douglas and Others. The declaration purports to provide the Court with information "to allow a full evaluation of these communications and the circumstances surrounding the firm's coming into possession of certain documents described herein." ( *See* Schaefer Decl. I at ¶ 2.) Because Schaeffer was accounting for the firm's communications with Douglas, the scope was not limited to his personal contact with Douglas.

Although the Court takes very seriously Cargill's charge that Schaefer and S & L omitted key details about this relationship with Douglas and has concerns about the veracity of some of the statements made by Schaefer in his declaration, the Court declines to examine this issue further. Because the Court has already determined that these proceedings are tainted, the Court need not determine whether or not Schaefer and S & L violated their duty of candor to the court.

E. S & L's Conduct With Non-Parties and Unrepresented Persons
Cargill also asserts that S & L violated its ethical obligations while dealing with non-parties and unrepresented persons. Cargill focuses its argument primarily on its allegation that S & L improperly solicited current and former Cargill employees to participate in their lawsuit for their own pecuniary gain. Cargill argues that in addition to doing so directly, they also did so through the assistance of Douglas.

**\*12** Cargill argues that Douglas, with the full knowledge and approval of S & L, actively solicited individuals to participate in this action by providing S & L with names of current and former African American employees to contact, contacting witnesses, and discussing specifics with individuals, including the details of the retainer agreement they would be asked to sign. Cargill also argues that Douglas tried to convince individuals that they were victims of discrimination.

S & L denies that it violated any ethical obligations with respect to its early contacts with potential plaintiffs and points out that Douglas himself denies that he "solicited" or "recruited" any of the named plaintiffs to join the suit. ( See Schaefer Decl. II at ¶ 6, Douglas at 59-79.) S & L points out that only one of the 26 named plaintiffs-Ron Arnold-was referred to S & L by Douglas, and that this referral came after Arnold indicated he was looking for an attorney. S & L also maintains that it has an ethical obligation to pursue all leads that might uncover witnesses that might corroborate its clients' allegations of discrimination.

Rule 7.3 prohibits direct contact with prospective clients, when a significant motive for doing so is pecuniary gain. Courts have generally recognized an exception to the solicitation prohibition for federal class actions. See _Gulf Oil Co. v. Bernard, 452 U.S. 89 (1981)_ (interpreting _Federal Rule of Civil Procedure 23_ as allowing direct contact with potential class members when necessary to proceed under the Rule). Class actions serve an important function in our system of civil justice and this Court recognizes that it may be necessary for plaintiffs and plaintiffs' counsel to inform potential class members of the existence of a lawsuit and to collect information about the merits of the case. On the evidence presented, the Court is not persuaded that S & L violated Rule 7.3.

Cargill also argues that S & L convinced several individuals to sign declarations drafted by S & L which contained allegations that several declarants later admitted were unfamiliar to them. Cargill points to the deposition testimony of two individuals, Glen Ford and Candy Smith. Both Mr. Ford and Ms. Smith testified during their depositions that certain phrases or facts stated in their declarations were unfamiliar to them or untrue. S & L denies any wrongdoing and claims to have adequate controls to ensure that declarations are accurate. On the evidence before it, the Court cannot conclude that any ethical violation was committed with respect to the drafting of declarations.

Finally, Cargill argues that S & L committed an ethical violation by offering legal representation to individuals subpoenaed by Cargill for deposition. Cargill asserts that in some cases, S & L purported to represent declarants despite contrary assertions by the declarants. With respect to deponent Candy Smith, Cargill argues she was told by S & L that she had to retain S & L as counsel to represent her in a deposition. Ms. Smith further testified that she was called nine more times by a S & L paralegal to discuss matters related to the case. S & L denies any wrongdoing and claims that it has a policy of offering to represent declarants whose depositions are noticed by a defendant employer, at no cost to the declarant. While the Court acknowledges that S & L has engaged in aggressive advocacy tactics, the Court does not find that any ethical violations have occurred.

III. Appropriate Remedy
**\*13** Having concluded that S & L violated several ethical duties, the Court must determine the appropriate remedy. Cargill urges the Court to disqualify counsel, dismiss the Complaint and impose other sanctions. S & L argues that even if the Court finds an ethical violation, Cargill has not and cannot demonstrate that it has been prejudiced.

This Court has "wide discretion in framing sanctions to remedy abuses, including attorneys fees, monetary sanctions, and the dismissal fo the action." _Snap Prods., 183 F.R.D. at 541_ (citing _Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991)_). Because of the potential for abuse, disqualification motions should be subjected to strict judicial scrutiny. _Id._ (citation omitted). In

deciding whether to disqualify an attorney, the court balances the interests of the attorneys, clients and the public. *See, e.g., Marvin Lumber & Cedar Co. v. Norton Co., 113 F.R.D. 588, 592 (D.Minn.1986).* "Because the interests to be protected are critical to the judicial system, the court should resolve doubts in favor of disqualification." *Biocore Med. Techs., Inc. v. Khosrowshahi, 181 F.R.D. 660, 664 (D.Kan.1998).*

After a careful analysis of the facts and circumstances of this case, and balancing the equities involved, the Court finds that Cargill has met the high standard of proof necessary for a motion to disqualify. S & L's solicitation of information from Douglas without protecting against the disclosure of confidential and privileged materials, decision to conduct its own privilege review of Cargill's documents marked confidential and privileged, and retention of Cargill's documents for nearly a year and a half compromise the integrity of these proceedings.

The Court is mindful of Plaintiffs' argument that even if ethical violations are found, Cargill's motion should be denied because it has not shown prejudice. In support, Plaintiffs strenuously claim that: Douglas did not share privileged information with S & L; the 200-300 documents bearing privileged markings were ultimately returned to Cargill; the documents are not relevant; and even if the documents contained relevant, privileged information, Cargill could not have been prejudiced because no one at S & L ever substantively reviewed or used any documents marked privileged or confidential. Plaintiffs also argue that Cargill delayed in bringing this motion, which should weigh against disqualification.

Plaintiffs arguments are unavailing. First, the Court does not accept S & L's claims that no one at S & L reviewed any documents marked privileged or confidential. The inference is inescapable that S & L inappropriately reviewed these documents. Schaefer's sole declaration that the privileged documents were not substantively reviewed does not convince the Court that Cargill's confidential and privileged information was not disclosed. *See, e.g., Biocore, 181 F.R.D. at 673-74* (refusing to accept self-serving denials of impropriety); *MMR/Wallace, 764 F.Supp. at 727.* Second, that S & L reviewed (substantively or not) and retained these documents for 18 months is enough to taint these proceedings. *See, e.g., Richards v., Jain, 168 F.Supp.2d at 1201.* Finally, under the facts of this case, it is not possible to accurately track exactly which documents were delivered to S & L, which documents were "segregated" out, which documents were returned to Douglas, and which documents were ultimately destroyed. Therefore, the Court will never know whether those documents were relevant. The extent of the breach of confidentiality and privilege is, likewise, unknown. For all the above reasons, the Court holds that Cargill has, indeed, been prejudiced. More importantly, the "risk" that improperly obtained confidential and privileged information might be used against Cargill justifies disqualification here. *See Potash, 1993 WL 543013 at 16-19; Marvin, 113 F.R.D. at 591.*[FN9]

FN9. In addition, apart from prejudice or risk to Cargill, the Court cannot conceive of any circumstance in which S & L could continue to properly represent Plaintiffs and the class. This factor also weighs in favor of disqualification.

CONCLUSION

*14 The Court recognizes the difficult and complicated position that Plaintiffs and the putative class are placed in and does not minimize the hardship Plaintiffs will incur in trying to secure other counsel at this stage in the proceedings. The Court also recognizes the importance of Plaintiffs' right to counsel of their choice, especially in class-action cases of this magnitude. These considerations, however, must yield to the ethical considerations presented here, which implicate the integrity of the judicial process. The preservation of the public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. The integrity of these proceedings, the system and the profession have been damaged by S & L's conduct. The only remedy is to disqualify Plaintiffs' counsel. Plaintiffs will be given 120 days to secure counsel to continue these proceedings. If new counsel are not obtained within 120 days, this case will be dismissed without prejudice.

It is true, that the class action as a procedural device was designed to serve unique purposes. Of course, it necessarily follows that there must be appropriate accommodations made to the ethical

rules in a class action situation so that the unique purpose the class action serves is not judicially or otherwise nullified.

The Court further recognizes the need for zealous advocates willing to creatively, and oftentimes aggressively, represent plaintiffs in class actions. Here, however, S & L crossed the line. There is no circumstance under which this Court can countenance S & L's conduct. However, there is no reason why the Court's decision should discourage plaintiffs' firms from representing others in difficult cases.

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, IT IS ORDERED that:

A. Defendant's Motion to Dismiss, Disqualify, and Impose Additional Sanctions (Doc. No. 225) is DENIED IN PART and GRANTED IN PART, as follows:

    1. Defendant's motion to dismiss is DENIED;

    2. Defendant's motion for additional sanctions is DENIED; and

    3. Defendant's motion to disqualify Plaintiffs' counsel is GRANTED.

Plaintiffs have 120 days from the date of this order to secure counsel to continue these proceedings. If new counsel are not obtained by January 24, 2005, this case will be dismissed without prejudice.

D.Minn.,2004.
Arnold v. Cargill Inc.
Not Reported in F.Supp.2d, 2004 WL 2203410 (D.Minn.)


Motions, Pleadings and Filings (Back to top)

- 2007 WL 2125247 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Charles Scott (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125248 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Charles Scott (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125249 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Clintonia Simmons (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125250 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Dawn ""Kim" Collins (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125251 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Hollis Branham (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125252 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Sean Wright (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125253 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Steven Wint (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125254 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Tonya Ross (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125255 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Toya Brown (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125256 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Valerie Mason-Robinson (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125257 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of the Claims of Plaintiff Virginia Douglas (Jun. 29, 2007) Original Image of this Document (PDF)
- 2007 WL 2125258 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of

the Claims of Plaintiff Vivian Little (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125259 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Anthony ""Chris" McDowell (Jun. 29, 2007) 📄 Original Image of this Document
(PDF)
• 2007 WL 2125260 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Emily Tyler (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125261 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff S. Keith Lewis (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125262 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Jacqueline Hightower (Formerly Jacqueline Williams) (Jun. 29, 2007) 📄 Original
Image of this Document (PDF)
• 2007 WL 2125263 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Michael Mitchell (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125264 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Sean Allen (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125265 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of the Estate of Della Y. Dickson (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125266 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Lewis Darden (Jun. 29, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 2125267 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Roderick Arnold (Jun. 28, 2007) 📄 Original Image of this Document (PDF)
• 2007 WL 1525792 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Phyllis Sharp (Formerly Phyllis Reece) (May 25, 2007) 📄 Original Image of this
Document (PDF)
• 2007 WL 1525793 (Verdict, Agreement and Settlement) Stipulation for Dismissal with Prejudice of
the Claims of Plaintiff Cheneta Hughey (May 25, 2007) 📄 Original Image of this Document (PDF)
• 2006 WL 1341400 (Expert Report and Affidavit) Supplemental Declaration of David W. Peterson,
Ph.D. (Jan. 11, 2006)
• 2005 WL 4014963 (Expert Report and Affidavit) Declaration of David W. Peterson, PH.D. (Dec. 17,
2005)
• 2004 WL 3804156 (Trial Motion, Memorandum and Affidavit) Cargill's Combined Memorandum of
Law in Support of Motion to Strike Expert Reports and Opinions of Ronald L. Adler, William T. Bielby,
and David W. Peterson (Sep. 21, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 3804155 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Cargill's Motion
to Reconsider the Court's July 15, 2002 Memorandum and Order Establishing A Six-Year Limitation
Period in this Case (Sep. 17, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 4649846 (Verdict, Agreement and Settlement) Stipulation Re Physically Withdrawing
Materials from Court Docket (Sep. 15, 2004)
• 2004 WL 3804154 (Trial Motion, Memorandum and Affidavit) Cargill's Memorandum in Support of
Its Motion to Reconsider the Court's July 15, 2002 Memorandum Opinion and Order in Light of an
Intervening Change in Controlling Law (Aug. 31, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 4669124 (Trial Motion, Memorandum and Affidavit) Cargill's Memorandum in Opposition to
Plaintiffs' Appeal of Order on Motion to Strike Declarations, or in the Alternative, to Compel Declarant
Depositions (Aug. 9, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 3804153 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum in Response to
Defendant's Motion to Dismiss, Disqualify, and Impose Additional Sanctions (Corrected) (Aug. 3,
2004) 📄 Original Image of this Document (PDF)
• 2004 WL 3804151 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Brief in Support of Its Appeal
of Order on Motion to Strike Declarations or, in the Alternative, to Compel Declarant Depositions (Jul.
26, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 3804152 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to
Strike Untimely Third-Party Declarations (Jul. 26, 2004) 📄 Original Image of this Document (PDF)
• 2004 WL 3804150 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opposition to Defendant's
Motion to Strike Untimely Declarations, or in the Alternative, to Compel Declarant Depositions (Jun.

28, 2004) ▦ Original Image of this Document (PDF)
• 2004 WL 3804149 (Trial Motion, Memorandum and Affidavit) Memorandum in Support of Motion to Strike Untimely Declarations, or in the Alternative, to Compel Declarant Depositions (Jun. 21, 2004) ▦ Original Image of this Document (PDF)
• 2004 WL 3804148 (Trial Motion, Memorandum and Affidavit) Cargill's Memorandum of Law in Support of Motion to Dismiss, Disqualify, and Impose Additional Sanctions (Jun. 17, 2004) ▦ Original Image of this Document (PDF)
• 2004 WL 3803242 (Expert Report and Affidavit) Expert Report of William T. Bielby (Apr. 22, 2004)
• 2004 WL 4669123 (Trial Motion, Memorandum and Affidavit) Plaintiffs Memorandum in Opposition to Defendant's Motions for Summary Judgment on the Claims of Louis Darden and Plaintiffs' Claims for Constructive Discharge (Apr. 13, 2004) ▦ Original Image of this Document (PDF)
• 2003 WL 24583982 (Expert Report and Affidavit) Declaration of Ronald L. Adler in Support of Motion to Compel Production of Documents (Jun. 30, 2003)
• 2003 WL 24337598 (Trial Pleading) Injunctive Relief Sought (May 7, 2003) ▦ Original Image of this Document (PDF)
• 0:01cv02086 (Docket) (Nov. 15, 2001)
END OF DOCUMENT

(c) 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

In re:

Dennis E. Hecker                                    BKY No. 09-50779 RJK

          Debtor.

---

Chrysler Financial Services
Americas LLC,

          Plaintiff,

v.                                                  Adversary No. 09-05019

Dennis E. Hecker,

          Defendant.

---

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on November 24, 2009, I caused the following **HECKER'S REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISQUALIFY  PLAINTIFF'S ATTORNEYS; AFFIDAVIT OF WILLIAM R. SKOLNICK** to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following listed below:

US Trustee                    ustpregion12.mn.ecf@usdoj.gov
Clinton E. Cutler             ccutler@fredlaw.com, mdavis@fredlaw.com
Randall L. Seaver             rlseaver@fullerseaverramette.com, rseaver@ecf.epiqsystems.com
Stephen F. Grinnell           stephen.grinnell@gpmlaw.com
Nicholas N. Nierengarten      nicholas.nierengarten@gpmlaw.com

Dated:  November 24, 2009          **SKOLNICK & SHIFF, P.A.**

                             /e/ William R. Skolnick
                             William R. Skolnick #137182
                             LuAnn M. Petricka #18505X
                             2100 Rand Tower
                             527 Marquette Avenue South
                             Minneapolis, MN 55402
                             (612) 677-7600
                             wskolnick@skolnick-shiff.com
                             **ATTORNEY FOR DENNIS E. HECKER**