## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

---

## CHRYSLER FINANCIAL SERVICES LLC'S MOTION TO COMPEL DISCOVERY AND FOR AN AWARD OF FEES AND COSTS

---

TO:    Defendant and his counsel, William R. Skolnick, Skolnick & Shiff, 2100 Rand Tower, 527 Marquette Ave South, Minneapolis, MN 55402.

      1.     Plaintiff Chrysler Financial Services Americas LLC, by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

      2.     The Court will hold a hearing on this motion on January 6, 2010, at 2:00 p.m., or as soon thereafter as counsel can be heard, before the Honorable Robert J. Kressel, Courtroom 8 West, 300 South Fourth Street, Minneapolis, Minnesota.

      3.     Any response to this motion must be filed and served by delivery or mail not later than December 31, 2009, which is three (5) days before the time set for the

hearing (including Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. § § 157 and 1334, Fed. R. Bankr. P. 5005, 7007, and 9013, and Local Rules 7007-1 and 9013-1-2.

5. This motion arises under Fed. R. Bankr. P. 7026 and 7037 and Fed. R. Civ. P. 26 and 37. This motion is filed under Fed. R. Bankr. P. 7007, 7026, 7037 and 9014, and Local Rules 7007-1, 7037-1 and 9013-1-2..

6. Chrysler Financial moves the Court for an order compelling Defendant Dennis E. Hecker to comply with his discovery obligations in this adversary proceeding and (a) overruling Hecker's specious objections to Chrysler Financial's outstanding discovery; (b) directing Hecker to immediately provide responses to Chrysler Financial's interrogatories and produce documents (without objections) responsive to Chrysler Financial's document requests; (c) deeming certain of Chrysler Financial's requests for admission admitted; and (d) ordering Hecker to pay Chrysler Financial's reasonable fees and expenses incurred in connection with this motion and Hecker's deficient privilege log for the Bowser emails. The facts on which this motion is based are set forth in Chrysler Financial's memorandum accompanying and supporting this motion.

7. As more fully described in the memorandum, and in accordance with Local Rule 7037-1, prior to bringing this motion counsel for Chrysler Financial attempted on multiple occasions to confer and otherwise communicate with counsel for the Hecker in an effort to resolve and address the present dispute. However, Hecker has steadfastly refused to respond adequately to Chrysler Financial's outstanding discovery or to engage

in meaningful discussions regarding these issues.  Accordingly, the parties have reached an impasse.

8.      This motion is based on the facts and law set forth in the memorandum, the Declaration of Nicholas N. Nierengarten and the exhibits thereto, and all of the files and proceedings herein.

WHEREFORE, Chrysler Financial respectfully requests that this Court grant the motion and enter its order as requested herein.

Dated: December 23, 2009                        GRAY, PLANT, MOOTY, MOOTY &
                                                                        BENNETT, P.A.

                                                                By  /e/ Stephen F. Grinnell
                                                                        Nicholas N. Nierengarten (#79169)
                                                                        Stephen F. Grinnell (#37928)
                                                                        500 IDS Center
                                                                        80 South Eighth Street
                                                                        Minneapolis, Minnesota  55402
                                                                        Telephone:  612-632-3040
                                                                        Facsimile:   612-632-4040

                                                                        MAYER BROWN LLP
                                                                        Howard J. Roin (admitted pro hac vice)
                                                                        Stuart M. Rozen (admitted pro hac vice)
                                                                        71 South Wacker Drive
                                                                        Chicago, Illinois  60606
                                                                        Telephone:  312-782-0600
                                                                        Facsimile:   312-701-7711

                                                                        Attorneys for Chrysler Financial
                                                                        Services Americas LLC

GP:2702080 v2

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

|  |  |  |
|---|---|---|
| In re: | ) | Bankruptcy Case No: 09-50779-RJK |
|  | ) |  |
| **DENNIS E. HECKER,** | ) | Chapter 7 |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) | Adversary Proceeding No.: 09-05019 |
| **CHRYSLER FINANCIAL SERVICES** | ) |  |
| **AMERICAS LLC,** | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **DENNIS E. HECKER,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

## CHRYSLER FINANCIAL SERVICES AMERICAS LLC'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY
## FROM DENNIS E. HECKER AND RELATED RELIEF

Throughout this litigation defendant Dennis E. Hecker has treated discovery as a one-way street on which he is entitled to take discovery, but is free to ignore the discovery directed to him. So far, Hecker has stonewalled plaintiff Chrysler Financial Services Americas LLC's discovery for almost three months. First, he used his Fifth Amendment stay motion as a pretext to refuse to answer discovery, although it is beyond dispute that his mere filing of a stay motion gave him no right to do so. When his stay motion was denied, Chrysler Financial secured Hecker's promise to provide answers and exchange documents on November 2, 2009, but Hecker reneged, choosing instead to

1

pursue his own aggressive discovery (as well as his baseless disqualification motion). And most recently, after Hecker again agreed to exchange documents with Chrysler Financial, this time on December 14, 2009, Hecker again reneged: Chrysler Financial produced approximately 59,000 pages, but Hecker produced nothing. Indeed, aside from documents he chose to attach to *his* motions, *Hecker still has not produced a single document to Chrysler Financial*.

Hecker also has interfered with Chrysler Financial's discovery from third parties. He initially refused to provide a privilege log for emails and other electronic information Chrysler Financial subpoenaed from his former assistant (Cindy Bowser), thereby preventing Chrysler Financial from reviewing any of the non-privileged emails. And when he finally produced a privilege log—the day before Chrysler Financial's hearing on its motion to establish a protocol for privilege screening of the emails—the log proved to be grossly deficient, further delaying Chrysler Financial's review of the non-privileged documents.

Enough is enough. Chrysler Financial respectfully requests that the Court order Hecker to stop stonewalling and to comply with his discovery obligations. Accordingly, Chrysler Financial asks the Court to: (1) order Hecker to immediately answer the interrogatories and produce responsive documents (without objections); (2) overrule Hecker's specious discovery objections; (3) deem most of Chrysler Financial's requests for admission admitted; and (4) pursuant to Fed.R.Bkr.P. 7037, incorporating Fed.R.Civ.P. 37(a)(5) and LR 7037-1, require Hecker or his counsel or both to

compensate Chrysler Financial for the attorney's fees and costs incurred in bringing this motion and addressing Hecker's grossly deficient privilege log.

## FACTUAL BACKGROUND

### A. <u>Hecker Refused to Respond to Chrysler Financial's Discovery</u>.

On August 28, 2009, the day after Hecker served his own written discovery on Chrysler Financial, Chrysler Financial served on Hecker a narrowly tailored set of interrogatories, requests for admission, and document requests. Ex. 1.[1] Both Chrysler Financial's and Hecker's responses to this discovery were due on September 28, 2009. Fed.R.Bky.P. 7033, 7034 and 7036, incorporating Fed.R.Civ.P. 33(b)(2), 34(b)(2) and 36(a)(3).

On the due date, although it asserted numerous objections to Hecker's discovery (which was grossly overbroad and burdensome—much broader than Chrysler Financial's[2]), Chrysler Financial provided substantive responses to Hecker's discovery and agreed to an exchange of documents. For example, in response to Hecker's interrogatories, Chrysler Financial identified the individuals who assisted in gathering information and preparing the responses to Hecker's discovery,[3] identified numerous

---

[1] All exhibits are attached to the Declaration of Nicholas N. Nierengarten in Support of Chrysler Financial Services Americas LLC's Motion to Compel Discovery and Associated Relief.

[2] For example, Chrysler Financial objected to the "time period" in Hecker's discovery requests (January 1, 2000 to date) on the grounds that the operative events alleged in its complaint all occurred in 2007 and 2008 and thus discovery going back to January 1, 2000 was both irrelevant and unduly burdensome. Ex. 6, at 6.

[3] Chrysler Financial's response to Hecker's interrogatory no. 1 (identifying John W. Bowker, Michael J. Chumbley, Anne M. Kline and Janet Toronski as Chrysler Financial employees who assisted in responding to Hecker's discovery). Ex. 6, at 9.

individuals who have information about the allegations in its complaint,[4] described in detail numerous witness statements relevant to the litigation,[5] provided facts and identified witnesses relating to its fraud claim against Hecker (Complaint ¶ 15),[6] summarized the corporate structure of Chrysler Financial and its predecessors,[7] and identified the Hecker borrowers alleged in paragraph 31 of the complaint giving rise to the sales out of trust claims.[8] In response to Hecker's document requests, it also specified the individuals at Chrysler Financial whose files it searched for responsive documents, the precise search criteria used in obtaining responsive information and described the categories of documents it would produce in response to specific document requests when Hecker was prepared to exchange documents.[9] Finally, Chrysler Financial responded to all of Hecker's requests for admission.[10]

Hecker, however, took a different approach: he completely stonewalled Chrysler Financial's discovery, asserting boilerplate objections to all of it and claiming that the

---

[4] Chrysler Financial's response to Hecker's interrogatory no. 2 (providing information on 36 individuals with information regarding the allegations in the complaint). Ex. 6, at 10-11.

[5] Chrysler Financial's response to Hecker's interrogatory no. 6 (describing 24 witness statements). Ex. 6, at 15-17. Chrysler Financial has continued to supplement its discovery responses on witness statements.

[6] Chrysler Financial's response to Hecker's interrogatory no. 7 (detailing events and witnesses supporting its claim asserted in paragraph 15 of the complaint). Ex. 6, at 18.

[7] Chrysler Financial's response to Hecker's interrogatory no. 10 (summarizing corporate information for Chrysler Financial and its predecessors going back to 1995). Ex. 6, at 23.

[8] Chrysler Financial's response to Hecker's interrogatory no. 13 (identifying 3 wholesale fleet borrowers and 12 dealership borrowers to whom Chrysler Financial extended credit). Ex. 6, at 28.

[9] Chrysler Financial's responses to Hecker's document requests (¶ 6 and responses to document requests nos. 1, 7, 8, 9, 10, 11, 12, 13, 16 and 17). Ex. 6, at 5-6 and 32-45.

[10] Chrysler Financial's responses to Hecker's requests for admission. Ex. 6, at 46.

mere filing of his Fifth Amendment-based motion to stay relieved him of any obligation to respond to discovery. Ex. 5.

Chrysler Financial informed Hecker that his filing of a stay motion did *not* suspend his obligation to properly respond to discovery. Ex. 3. Moreover, Chrysler Financial presented to Hecker case law confirming that his discovery obligations were not excused unless and until a court granted the stay motion.[11] Hecker ignored this case law and continued to stonewall.

On October 22, 2009, immediately after this Court denied Hecker's Fifth Amendment-based stay motion (Ex. 10 (Doc 22)), Chrysler Financial contacted Hecker's counsel and requested a discovery conference. Exs. 11 and 15, at ¶13. During the discovery conference, which was held the following day, counsel for Chrysler Financial reiterated that it was wholly improper for Hecker to answer written discovery or to refuse to produce documents merely because he had moved for a stay and, in any event, said that Hecker's stay argument was moot since the Court had denied Hecker's stay motion. Exs. 13 and 15, at ¶13. Hecker's counsel acknowledged that Hecker's previous responses (which he attributed to prior counsel) were inadequate and said he intended to serve amended responses to discovery and produce documents. Exs. 13 and 15, at ¶13.

---

[11] *See* Chrysler Financial's Objection To Hecker's Motion For A Stay Of This Adversary Proceeding Until The Conclusion Of Any Criminal Proceedings Against Him (October 16, 2009) (Doc 20), at 7 n. 3 citing *In re Russell*, 392 B.R. 315, 368 (Bankr. E.D. Tenn. 2008) ("The motion for a protective order did not excuse the debtor from appearing at the meeting of creditors or the Rule 2004 examination and did not automatically cancel or postpone either. . . . The meeting of creditors and Rule 2004 examination would have been postponed or canceled, and the debtor would have been excused from appearing, only if the court entered an order to that effect before the scheduled time for the meeting and examination."); *In re Lincoln N. Assoc., LP*, 163 B.R. 403, 409 (Bankr. D. Mass. 1993) ("The notion that a party is not required to appear at a deposition if he has filed a motion for a protective order is erroneous. . . . The deponent is relieved of appearance only if the order is allowed before the scheduled deposition.").

Although Chrysler Financial pressed for responses by October 30, 2009, Hecker's counsel committed to provide responses and documents by November 2, 2009. Exs. 13 and 15, at ¶13.

On November 2, 2009, however, Hecker produced nothing. His responses were then over 30 days delinquent. Consequently, Chrysler Financial requested another discovery conference to address Hecker's continued failure to respond to its long overdue written discovery. Exs. 13, 16 and 18.

The next discovery conference was held on November 13, 2009. Because he said he could not trust Chrysler Financial's counsel, Hecker's counsel insisted on having the discovery conference recorded. Ex. 20. During the course of the discussion, counsel for Chrysler Financial pressed Hecker's counsel to answer the outstanding discovery:

> We have agreed to exchange documents. We have already responded in writing to your written discovery and we've given substantive answers. You have given no substantive answers. You said the reason for this in writing was that you had filed a motion for a stay. Your stay motion was denied. And after your stay motion was denied we had a call with you and we said we wanted responses and you said you intended to give them. And you gave a date, we initially proposed the Friday, and you said Monday, and it's been more than two weeks since then. We've gotten nothing. Your discovery was due a long, long time ago. Where is it? When are we getting it?

Ex. 20, Transcript, at 6. Hecker's counsel responded "You should have it on the 11th of December. That gives me … I'm going to be out of the office for a few days, in between, so that should give me sufficient time." Ex. 20, Transcript, at 6. When pressed to explain the reason for the almost one month further delay in responding to Chrysler

Financial's discovery, Hecker's counsel said that part of the reason was "about half a million documents that I am in the process of reviewing." Ex. 20, Transcript, at 6. In other words, Hecker claimed he needed an additional month to gather and review documents in order to make a production and provide responsive information.[12]

Then, during the period in which he supposedly was working towards providing substantive answers and producing documents in response to Chrysler Financial's discovery, Hecker instead pursued his own discovery and his motion to disqualify Chrysler Financial's counsel. Exs. 9, 12, 14, 19, 21, 22, 23, 26 and 31. The discovery Hecker pursued, which largely was intended to support his disqualification motion, included a subpoena for any Chrysler Financial documents in the possession of the Trustee and depositions of the Trustee, Chrysler Financial's private investigator, two executive assistants for Hecker's companies (Cindy Bowser and Molly Kaplan) and one of the former executive officers of Hecker's companies (Steve Leach). Exs. 9, 12, 14, 19, 21, 22, 23, 26 and 31.

On December 14, 2009, the latest date on which the parties "agreed" to *exchange* documents (they previously had moved the document exchange date from December 11 to December 14, 2009), Chrysler Financial delivered to Hecker three DVDs containing over 23,000 pages of documents. Ex. 27. The next day, Chrysler Financial delivered another DVD containing approximately 36,000 more pages. Ex. 28. Thus, Chrysler Financial produced to Hecker approximately 59,000 pages. (Chrysler Financial already

---

[12] Hecker's demand for still another month suggests that when Hecker's counsel promised during the October 23 discovery conference to produce documents and provide substantive discovery responses by November 2, he had no intention of actually doing so.

had provided its written responses to Hecker's interrogatories, requests for admission, and document requests back on the original due date, September 28.)

Hecker, on the other hand, produced no documents whatsoever. He also provided no interrogatory answers. Instead, without the required leave of court, he served new responses to Chrysler Financial's requests for admission in which he attempted to assert new objections and for the first time to deny over half of the requests. Ex. 30. Now, a week and a half after the latest missed deadline, Hecker still has produced no documents and no substantive interrogatory answers.

In summary, Hecker's responses to Chrysler Financial's written discovery are now almost three months overdue. During that time, instead of answering Chrysler Financial's long overdue discovery, Hecker has found time to (1) move to stay the case on Fifth Amendment grounds, (2) move to disqualify Chrysler Financial's counsel, (3) appeal the order denying his claimed homestead exemption, (4) appeal from the order denying his disqualification motion, and (5) notice numerous depositions. Clearly, Hecker views discovery as a one-way street in which he is entitled to take any discovery he wants, but has no obligation to respond to Chrysler Financial's discovery.

## B. Hecker Also Interfered with Chrysler Financial's Third Party Discovery.

As the Court is well aware, early in the case, Chrysler Financial subpoenaed numerous emails from Cindy Bowser, a former executive assistant for one of Hecker's companies. There is every reason to believe that the so-called "Bowser emails" contain important relevant information. Yet, from the outset, Hecker has attempted to frustrate

Chrysler Financial's efforts to review this plainly relevant information. Hecker refused to produce a privilege log, thereby preventing Chrysler Financial from reviewing the remaining non-privileged documents. Ex. 15, at ¶¶ 6, 10, 12 and 13. Hecker's counsel threatened Chrysler Financial's counsel with criminal and ethical sanctions. Ex. 15, at ¶ 14. And Hecker moved to disqualify Chrysler Financial's counsel. Ex. 14. Because of Hecker's stonewalling, Chrysler Financial was required to obtain assistance from this Court to establish a protocol for screening the Bowser emails. Ex. 17.

This Court granted Chrysler Financial's motion for a protocol to review the Bowser emails on November 25, 2009, the same day that it denied Hecker's disqualification motion. Exs. 24 (Doc 44) and 25 (Doc 45). But the privilege log that Hecker finally produced was seriously deficient in many respects. Ex. 29. For example, it did not contain sufficient information (a) to specifically identify each email over which Hecker claims privilege, and (b) to differentiate allegedly privileged emails from other emails over which no privilege claim is being made. Indeed, because of the limited and apparently inaccurate information provided in the privilege log, Chrysler Financial's vendor could not match some 90 of the 429 emails on the privilege log to any of the Bowser emails contained on the disk. In addition, because of the deficient identifying information provided by the privilege log, Chrysler Financial's vendor was forced to segregate many emails that undoubtedly are not within the 429 emails that Hecker claimed were privileged. And the inadequate descriptive information (including a failure to list all of the recipients), has made it impossible for Chrysler Financial to assess the validity of many of Hecker's claims of privilege on his privilege log.

Chrysler Financial sent a letter to Hecker specifying deficiencies in his privilege log for the Bowser emails and requesting that he correct the deficiencies by December 17, 2009. Ex. 29. Instead of immediately correcting the privilege log, Hecker noticed the depositions of third party witnesses. Ex. 31. Then two days ago, on the afternoon of December 21, Hecker sent to Chrysler Financial a new and presumably improved privilege log. Without any explanation, however, Hecker's new privilege log includes not the 429 emails listed on his first privilege log, but rather 569 emails. Ex. 32. Because Hecker has produced a new and different privilege log with at least 140 new allegedly privileged emails, Chrysler Financial will have to have its vendor rescreen the Bowser emails, thereby further delaying Chrysler Financial's review of those emails.

### C. **Hecker's Other Obstructionist Tactics.**

Hecker's one-way view of discovery and obstructionist tactics in this non-dischargeability proceeding reflect a pattern throughout this bankruptcy. Thus, the Trustee has complained of Hecker's habit of failing to disclose assets until the Trustee has discovered them:

> The Trustee does not believe the existence of any of those items and transfers would have been voluntarily disclosed by the Debtor and, in fact, they were not voluntarily disclosed by the Debtor. The only disclosures occurred after the Debtor was confronted with evidence or knew the Trustee was about to obtain evidence regarding those items.

Ex. 7, at 2. Similarly, the Trustee complained that Hecker has sought discovery from the Trustee so that Hecker can limit and shape his testimony and disclosures, only giving the Trustee information that he already has:

> The Debtor has apparently decided that he and his attorneys can simply let the Trustee do his work, at substantial expense to the estate, and later stroll into the Trustee's office and review all of the records the Trustee has compiled. The Debtor will then know "what the Trustee knows" and can testify accordingly.

Ex. 7, at 7.

Hecker's one-way approach to discovery here fits this pattern. He pursues all the discovery he wants, but refuses to provide any meaningful information to Chrysler Financial. This is not what the rules intend, and Chrysler Financial respectfully requests that this Court compel Hecker to comply with his discovery obligations.

## ARGUMENT

## I. Hecker Should be Ordered to Immediately Produce Documents and Answer Chrysler Financial's Interrogatories.

The answers to the parties' written discovery were due on September 28, 2009. Chrysler Financial answered Hecker's interrogatories and requests to admit and responded to Hecker's document requests, offering to exchange documents with Hecker.[13] Hecker, on the other hand, simply stonewalled, objecting to everything. As set forth in detail above, despite repeated conferences, requests, and assurances from his counsel, Hecker has continued to stonewall Chrysler Financial's discovery. He has answered no interrogatories. He has produced no documents. Hecker's initial position that his stay motion relieved him of any obligation to answer discovery was completely contrary to established law,[14] and in any event became moot when this Court denied

---

[13] *See* Discussion at pp. 3-4, *supra.*

[14] *See* Note 11, *supra.*

Hecker's stay motion. And his repeated reneging on his subsequent promises to provide answer and documents is similarly unjustified. It has now been almost three months since Hecker was obligated to produce responsive documents and information, and he has steadfastly refused to do so. Hecker should be ordered to answer Chrysler Financial's written discovery immediately.

## II.     Hecker's Boilerplate "General Objections" Are Meritless and Should be Overruled.

In addition to his now moot "stay" objection, Hecker's responses to Chrysler Financial's discovery purported to raise a number of other largely boilerplate objections. As we show below, these objections are wholly without merit and should be overruled. Before delineating the deficiencies in Hecker's enumerated objections, we note that the first three pages of Hecker's responses consist of a laundry list of "General Objections." Ex. 5. After listing a series of such "general" objections, Hecker then asserts "All of these objections are incorporated into each response below, whether or not stated below." In addition, all of his responses are "subject to the General Objections." This is improper because the general objections clearly do not apply to each response and there is no way to determine which objection applies to any particular response. *See Badger v. So. Farm Bureau Life Ins. Co.,* No. 6:06-cv-637-Orl-28KRS, 2008 WL 906561, *1 (M.D. Fla. Apr. 2, 2008). Accordingly, all of Hecker's "General Objections" should be overruled.

**A.      Hecker's Boilerplate Relevance, Overbreadth and Burden Objections Are Improper and Should be Overruled.**

Hecker objects generally and in response to a few interrogatories and document requests on grounds of lack of relevance, overbreadth, and burden.  Ex. 5.[15]  For example, in response to interrogatory no. 1 (asking Hecker to identify facts, persons with knowledge, and documents relating to the denials and affirmative defenses asserted in his answer), Hecker objected on grounds of burden, in addition to other grounds.  Similarly, in response to interrogatory no. 2 (asking Hecker to identify witnesses and their role in connection with the doctored Hyundai letter (Exhibit F to the complaint)), Hecker again asserted a burden objection, among others.  In response to document request no. 11 (asking for documents relating to requests for financing, negotiations or receipt of financing from Chrysler Financial for the purchase of Hyundai vehicles after 2005), Hecker objected on grounds of overbreadth.  In response to document request no. 14 (asking for documents relating to Hecker's exact location during the critical time period when the doctored Hyundai letter was prepared and delivered to Chrysler Financial), Hecker objected on grounds of burden and lack of relevance.  Finally, in response to document request no. 17 (asking for documents relating to the termination or resignation of four Hecker employees who clearly have information regarding the doctored Hyundai letter (Steve Leach, Dick Page, Molly Kaplan and Cindy Bowser)), Hecker objected on

---

[15] The specific objections are set forth in interrogatory nos. 1 (burdensome), 2 (burdensome), and 3 (burdensome), and document request nos. 11 (overbroad), 14 (relevance and burdensome), 17 (relevance) and 18 (relevance).

grounds of lack of relevance.[16]  Apart from the fact that his "General Objections" are improper, these objections of lack of relevance, overbreadth, and burden asserted in response to specific discovery requests are patently unwarranted and improper.

Hecker, as the party asserting the objection, bears the burden of establishing lack of relevance, overbreadth, or undue burden.  *Oleson v. Kmart Corp.,* 175 F.R.D. 560, 565 (D. Kan. 1997) ("The objecting party has the burden to substantiate its objections."); *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984) (holding that the objecting party bears the burden of demonstrating "specifically how, despite the broad and liberal construction afforded the federal discovery rules, each [request] is not relevant or how each question is overly broad, [unduly] burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

The "mere statement by a party that the interrogatory [or request for production] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate to voice a successful objection."  *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3rd Cir. 1982) (quoting *Roseberg v. Johns-Manville Corp.,* 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); *see also American Rock Salt Co., LLC v. Norfolk So. Corp.,* 228 F.R.D. 426, 432 (W.D.N.Y. 2005) ("generalized objections that discovery requests are vague, overly broad, or unduly burdensome are not acceptable."); *Klein v. AIG Trading Group, Inc.,* 228 F.R.D. 418, 433 (D. Conn. 2005) ("To prevail on its objection, however, the objecting party must do more

---

[16] Hecker's contention that Chrysler Financial's discovery concerning these four individuals is irrelevant is completely belied by the fact that he has noticed depositions for each of them.

than 'simply intone [the] familiar litany that the [requests] are burdensome, oppressive or overly broad.") (quoting *Compagnie Francaise d'Assurance Pour le Commerce Exterieur v. Phillips Petroleum Co.,* 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *In re Priceline.com Inc. Securities Litigation,* 233 F.R.D. 83, 85 (D. Conn. 2005) ("The party resisting discovery bears the burden of demonstrating that its objections should be sustained and 'pat, generic, non-specific objections, intoning the same boilerplate language, are inconsistent with both the letter and the spirit of the Federal Rules of Civil Procedure. An objection to a document request must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded.") (quoting *Ojiajulu v. City of Rochester,* 166 F.R.D. 293, 295 (W.D.N.Y. 1996)); *Oleson,* 175 F.R.D. 560, 565 ("The litany of overly burdensome, oppressive and irrelevant does not alone constitute a successful objection to a discovery request.")

Rather, Hecker as the "objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Oleson,* 175 F.R.D. at 565; *St. Paul Reinsurance Co. Ltd., v. Commercial Fin. Corp.,* 198 F.R.D. 508, 512 (N.D. Iowa 2000) (holding that plaintiffs failed to sustain their burden of demonstrating that the discovery sought was outside the scope of Rule 26(b)(1) on the grounds that "they have merely asserted boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc … without specifying how each request for production is deficient and without articulating the particular harm that would accrue if they were required to respond to [defendant's] discovery requests.")

Hecker's objections do not and cannot even begin to satisfy these requirements. For example, Hecker cannot legitimately claim that providing facts, witnesses, and documents supporting his denials and affirmative defenses, as requested in interrogatory no. 1, is unduly burdensome, for that interrogatory is directed to the heart of this case. Similarly, he cannot claim that identification of persons involved in the preparation of the doctored Hyundai letter (Exhibit F to the complaint) – a crucial document that forms the basis of Chrysler Financial's fraud claim – as requested in interrogatory no. 2, is unduly burdensome. Nor can he legitimately claim that documentation demonstrating his whereabouts during critical events surrounding the preparation and delivery of the doctored Hyundai letter, as requested in document request no. 14, is irrelevant. Clearly, these assertions of undue burden, overbreadth, and lack of relevance are legally insufficient in the face of Chrysler Financial's narrowly tailored discovery directed to the central issue in this case. Moreover, Hecker's boilerplate objections fall far short of establishing the basis for these objections. Accordingly, the Court should overrule Hecker's boilerplate relevance, overbreadth, and undue burden objections.

**B. Hecker's "Equally Available" Objection is Improper and Should be Overruled.**

Hecker also globally objected "to the extent that [Chrysler Financial's discovery] seeks information already known to Plaintiff or its counsel, already in the possession of Plaintiff or its counsel, or available to Plaintiff from documents in its own files or from public sources." Ex. 5, at 2. Hecker did not assert this objection in response to any particular discovery response. Courts have uniformly rejected this objection. *See St.*

*Paul Reinsurance Co. Ltd., v. Commercial Fin. Corp.,* 198 F.R.D. 508, 514 (N.D. Iowa 2000) ("[W]ith respect to this objection, courts have unambiguously stated that his exact objection is insufficient to resist a discovery request."); *City Consumer Servs. v. Horne,* 100 F.R.D. 740, 747 (D. Utah 1983) (stating that it is "not usually a ground for objection that the information is equally available to the interrogator or is a matter of public record."); *Associated Wholesale Grocers, Inc. v. U.S.,* 1989 WL 110300, *3 (D. Kan. June 7, 1989) (stating that defendant's argument of equal accessibility is not sufficient to resist discovery). The Court should overrule this improper objection.

### C. Hecker's "Contention Interrogatory" Objection is Improper and Should be Overruled.

Hecker objects to five of Chrysler Financial's interrogatories on the grounds that they are "contention" interrogatories and thus it is premature to respond to such discovery. Ex. 5.[17] Even if contention interrogatories were inappropriate, which we deny, these are not contention interrogatories. Rather, they seek basic information such as the identity of witnesses and documents. For example, interrogatory no. 1 asks for facts, witnesses, and documents that relate to Hecker's denials and affirmative defenses set forth in his answer. Similarly, interrogatory no. 2 asks for identification of witnesses and their role in the preparation and delivery of the doctored Hyundai letter (Exhibit F to the complaint). Interrogatory no. 4 asks for identification of accounts at financial institutions that held the proceeds of sale for vehicles financed by Chrysler Financial. The deposits and disbursements from these bank accounts directly relate to Chrysler

---

[17] These are interrogatory nos. 1-5.

Financial's sales out of trust claim (Complaint, ¶¶ 26 – 34; Counts II and III).  Because these interrogatories ask for basic facts and documents, they are not contention interrogatories.  *See M.A. Everett v. US Air Group, Inc.*, 165 F.R.D. 1 (D.D.C. 1995) (interrogatories that "request the identification of documents or witnesses are not contention interrogatories").

Even if these interrogatories were contention interrogatories (and they are not), Hecker should be ordered to respond because these interrogatories seek information that is largely in his possession and he has had ample opportunity to find responsive information.  For example, in order to comply with Rule 11, Hecker must have had some basis for denying Chrysler Financial's claims and asserting affirmative defenses.  Interrogatory no. 1 simply asks him to provide the facts, witnesses, and documents that support his assertions and defenses.  Similarly, Hecker is in the best position to provide the information sought in interrogatory no. 2 regarding the preparation and delivery of the doctored Hyundai letter.  He also is in the best position to identify the bank accounts where Chrysler Financial's proceeds may have been deposited or disbursed (interrogatory no. 4).  Accordingly, the Court should overrule the contention interrogatory objections and order Hecker to answer these interrogatories.

D.     **Hecker's "Confidential Information" Objection is Meritless and Should be Overruled.**

Another one of Hecker's "General Objections" is that Chrysler Financial's discovery "seeks non-party confidential information."  Ex. 5, at 2.  Because Hecker did not assert this objection in response to any particular discovery response, it is improper

and should be overruled.  *See* pp. 12-13, *supra*.  In any event, information may not be shielded from discovery on the basis that such information is confidential and proprietary.  *Coboch v. Morris Comm'ns Co.,* No. 05-4143-SAC, 2006 WL 2255703, *4 (D. Kan. Aug. 7, 2006) ("The court finds that defendants' confidential and proprietary objection does not, by itself, suffice to shield documents from discovery ….").

In addition to being legally without merit, Hecker completely failed to identify a single document or even a category of documents that might qualify as confidential information.  To the contrary, during the meet and confer process, Hecker's counsel stated that there was no need for a protective order because Hecker is no longer in business and many of Hecker's records had been seized by state and federal authorities and were no longer confidential.  Nor has Hecker even suggested what "non-party" confidential information might be covered by the discovery here.  Accordingly, the Court should overrule this objection.

### E.      Hecker's Objection to Expert Discovery is Meritless and Should be Overruled.

Chrysler Financial propounded one interrogatory and three document requests relating to Hecker's potential expert witnesses.  Ex. 5.[18]  Chrysler Financial made these requests because this Court's pre-trial scheduling Order provides that the mandatory expert disclosures under Fed.R.Civ. 26(a)(2) do not apply.   Order For Trial, ¶ 7 (August 27, 2009) ("Fed.R.Civ. P. 26(a)(1), (a)(2), (a)(3) and (f) do not apply to this proceedings.")  Chrysler Financial's discovery requests basically mirror what would be

---

[18] These are interrogatory no. 6 and document request nos. 19 – 21.

required under Rule 26(a)(2). Interrogatory no. 6 is a standard expert interrogatory asking for basic information on which the expert is expected to testify, including the subject matter, the substance and opinions to which the expert is expected to testify and the grounds for each opinion, and identification of documents reviewed or relied upon by the expert in forming the opinion. Document requests nos. 19 – 21 simply ask for documents reviewed or relied on by the expert, any report or analysis prepared by the expert, and the Curriculum Vitae or resume of the expert.

Hecker objected to this basic expert discovery on the grounds that it "requests information beyond that required by Rule 7026, incorporating Fed.R.Civ.26." Ex. 5. Presumably, this objection means that Chrysler Financial's discovery seeks information beyond the scope of Rule 26(a)(2)(B), which is not operative in this litigation. But contrary to Hecker's implication, there is nothing in the rule that suggests that a party is prohibited from seeking information about an opponents' expert witness, especially here where there are no mandatory expert disclosures. To the contrary, the Advisory Committee, which created the mandatory disclosure requirement in Rule 26(a)(2)(B), states that:

> The enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request. *Nor are parties precluded from using traditional methods to obtain further information regarding these matters*, as for example asking an expert during a deposition about testimony given in other litigation beyond the four-year period specified in rule 26(a)(2)(B).

Advisory committee's note to 1993 Amendments to Fed.R.Civ.P. 26(a) (emphasis added).  A general objection that a discovery request exceeds the scope of required expert discovery under Rule 26 is therefore impermissible.  *Moses v. Halstad,* 236 F.R.D. 667, 677 (D. Kan. 2006) ("It is not enough for [the responding party] to generally object that this request exceeds the scope of expert witness discovery under Rule 26(a)(2)(B).") Accordingly, the Court should overrule Hecker's objection and order production of responsive information.

### F.    Hecker's Global Attorney-Client Privilege and Work Product Objections are Improper and Should be Overruled.

Hecker also objected across-the-board to Chrysler Financial's interrogatories, document requests, and requests for admission "to the extent they request information subject to the attorney client privilege and/or work product privilege."  Ex. 5, at 2. Hecker did not assert this objection in response to any particular discovery response. Importantly, Hecker never produced a formal privilege log for his blanket claim of privilege and work product, as required by Fed.R.Civ.P. 26(b)(5).

Hecker's boilerplate attorney client and work product objection is insufficient, especially since he failed to produce a privilege log.  *St. Paul Reinsurance Co. Ltd., v. Commercial Fin. Corp.,* 198 F.R.D. 508, 513 (N.D. Iowa 2000) (rejecting general claims of privilege on the grounds that "the plaintiff's boilerplate objections fail to identify the lawyers involved in the conversations, the people present during the conversation, and a description of the nature of the communication sufficient to enable [defendant] to assess the applicability of the claimed privilege.); *Moses v. Halstead,* 236 F.R.D. 667, 676 (D.

Kan. 2006) ("A 'blanket claim' as to the applicability of the work product doctrine does not satisfy the burden of proof."); *Pham v. Hartford Fire Ins. Co.,* 193 F.R.D. 659, 662 (D. Colo. 2000) (defendant's "boilerplate objection fails to identify the lawyers for the [defendant] involved in the conversations, the people present during the conversation, and a description of the nature of the communication sufficient to enable to plaintiffs to assess the applicability of the claimed privilege"); *MMAR Group Inc. v. Dow Jones & Co., Inc.,* 187 F.R.D. 282, 292 n. 6 (S.D. Tex. 1999) (describing the assertion of attorney-client privilege and work product doctrine as boilerplate objections); *Athridge v. Aetna Casualty & Surety Co.,* 184 F.R.D. 181, 190 (D.D.C. 1998) (stating that general objections such as attorney-client privilege and work product are disfavored); *Miller v. Pancucci,* 141 F.R.D. 292, 302 (C.D. Cal. 1992) (stating that to properly claim attorney-client privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reason for preserving their confidentiality). The Court should overrule Hecker's global privilege and work product objections.[19]

---

[19] In the event that Hecker produces a privilege log in connection with his production of documents, Chrysler Financial reserves its right to challenge the sufficiency of the log or any of the documents that might be claimed as privileged.

**III.** **Chrysler Financial's Requests for Admission Should be Deemed Admitted Due to Hecker's Failure to Timely Respond and Improper Objections.**

In addition to its interrogatories and document requests, Chrysler Financial served a number of requests for admission on Hecker. Ex. 5. Requests to admit are designed to facilitate trial proofs and narrow the issues. *See Langer v. Monarch Life Ins. Co.,* 966 F.2d 786, 803 (3d Cir. 1992) ("If at that point a party is served with a request for admission of a fact that it now knows to be true, if must admit that fact, even if that admission will gut its case and subject it to summary judgment. That is what Rule 36 was intended to do – narrow the issues for trial, or even altogether obviate the need for a trial."); *United States v. Nicolet, Ind.,* 1989 WL 51734 (E.D. Pa. May 12, 1989) (the purpose of Rule 36 is "to facilitate proof with respect to issues that cannot be eliminated from the case, and to narrow issues by eliminating those that can be.").

Fed.R.Civ.P. 36(a)(3) and corresponding bankruptcy rule Fed.R.Bkr.P. 7036 provide that "[a] matter is deemed admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

Hecker has served two responses to Chrysler Financial's requests to admit. On September 28, 2009, Hecker submitted his first response. And then on December 21, 2009, Hecker attempted to serve an amended response to Chrysler Financial's requests for admission with different answers and objections. Ex. 30. Because Hecker did not obtain leave of court, his second response has no legal force or effect. *See* Fed.R.Bkr.P. 7036, incorporating Fed.R.Civ.P.36(b) ("A matter admitted under this rule is

conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.")  Accordingly, this motion focuses on Hecker's first response to Chrysler Financial's requests to admit.

Hecker's first response to Chrysler Financial's requests to admit largely relies on Hecker's previously described "general objections" and his objection that his stay motion relieves him of any obligation to answer. Ex. 5, at 15-29.  Because his general objections are improper and ineffective and his stay motion did not relieve him of the obligation to respond (*see* p. 5 n. 11, *supra*), all of Hecker's objections should be overruled.[20]

In a few isolated instances, Hecker asserted specific objections on grounds of vagueness, that the document speaks for itself, or that the request calls for a legal conclusion. Ex. 5.[21]  These objections are meritless and the Court should overrule them. Fed.R.Civ.P. 36(a) ("The party who has requested the admission may move to determine the sufficiency of the answers or objections.")  When a party objects to a request for admission rather than admitting or denying it or asserting an inability to admit or deny it, that party assumes the burden of persuasion to justify the objection. *Moses v. Halstead,* 236 F.R.D. 667, 680 (D. Kan. 2006).  Hecker has not and cannot carry his burden to justify these objections.

---

[20] These are requests for admission nos. 1, 3-5, 8-15, 17-25, 28, 29, 32-38, 40 and 41.

[21] Request nos. 2 ("vague"), 6 ("vague"), 25 ("vague"); 26 (document speaks for itself and calls for a legal conclusion), 27 (language speaks for itself), 30 ("vague"), 31 ("vague"), 39 (language speaks for itself and calls for a legal conclusion),42 ("vague" and no information under control of defendant), 43 ("vague") and 44 ("vague").

First, there is nothing vague about Chrysler Financial's requests for admission. For example, request no. 2 asks Hecker to admit that a Hyundai letter attached to the complaint and request for admission as Exhibit G offered to sell 605 Hyundai vehicles to a Hecker-related entity and repurchase those vehicles within a year from delivery. Hecker objected to the word "offer" on the grounds that it was vague  The meaning of the word offer, however, is well understood in contract law.[22]  Similarly, request no. 6 asks Hecker to admit that Exhibit G was altered to create Exhibit F, the letter that forms the basis of Chrysler Financial's fraud claim (these exhibits are attached to the complaint and the request for admission).  Hecker objected on the grounds that the word "altered" is vague.  Again, there is nothing vague about the concept of alteration of a document in the context of this request.[23]  These frivolous vagueness objections should be overruled.

In addition, Hecker's objection to requests 26, 27 and 39 that the document or language "speaks for itself" is improper.  All three of these requests relate to the Chrysler Financial financing documents attached to the complaint concerning the Master Loan and Security Agreement (Exhibit I) (request nos. 26 and 27 ) and concerning the Lease Financing Agreement (Exhibit J) (request no. 39).  Hecker's "document speaks for itself" objection to these requests is improper.  *Miller v. Holzmann,* 240 F.R.D. 1, 4 (D.D.C.

---

[22] *See Black's Law Dictionary* (9th Ed.), 1189 (2009) (offer, 2. "A promise to do or refrain from doing some specified thing in the future, conditioned on an act, forbearance, or return promise being given in exchange for the promise or its performance; a display of willingness to enter into a contract on specified terms, made in a way that would lead a reasonable person to understand that an acceptance, having been sought, will result in a binding contract ….")

[23] *See The New Oxford American Dictionary* (2001), 46 (alter, "change or cause to change in character or composition, typically in a comparatively small but significant way."); *Black's Law Dictionary* (9th Ed.), 90 (2009) (alteration, 2. "An act done to an instrument, after its execution, whereby its meaning or language is changed; esp., the changing of a term of a negotiable instrument without the consent of all parties to it.")

2006) (such a request for admission "should be admitted if the quotation [from the document] is accurate and denied if it is not," and the "document speaks for itself" objection is both "tautological" and a "waste of time …."); *House v. Giant of Md. LLC,* 232 F.R.D. 257, 262 (E.D.Va. 2005) (rejecting the objection that "the document speaks for itself" as "folklore"). Again, Hecker's objections are merely evasive tactics designed to avoid answering the request, and they should be overruled.

Finally, Hecker's objection that request nos. 26 and 39 call for a legal conclusion is impermissible. Request no. 26 asks Hecker to admit that the Master Loan and Security Agreement (which is attached to the complaint and the request as Exhibit I) required the Hecker borrowers to hold the proceeds from the sale of vehicles financed by Chrysler Financial in trust for Chrysler Financial and to promptly pay over those proceeds to Chrysler Financial. Similarly, request no. 39 asks Hecker to admit that the security agreements executed by one of the Hecker entities (Rosedale Dodge) (a representative example of the security agreements is attached to the complaint and the request as Exhibit J) required Rosedale Dodge to hold in trust for and promptly pay to Chrysler Financial the proceeds from sale or other disposition of vehicles financed by Chrysler Financial. These requests simply call for the application of law to fact and thus Hecker's objection that they "call for a legal conclusion" is without merit. *Miller v. Holzmann,* 240 F.R.D. 1, 5 (D.D.C. 2006) ("Since the 1970 amendment to Rule 36, however, it is permissible to request an admission as to how a particular source of a legal obligation, such as a contract or statute or regulation, applies to a given state of facts."); *Robert Weiler Co. v. Kingston Township,* No. 2:07-cv-0760, 2008 WL 4758682, *5 (S.D. Ohio Oct. 27, 2008) ("The

Court agrees that these requests for admission ask for specific application of law to fact in accordance with Fed.R.Civ.P. 36.").

In light of Hecker's patently unfounded and improper objections, and given his failure to timely admit, deny, or properly object to these requests for admission, the Court can and should overrule Hecker's objections and deem the requests admitted.[24] *See Capsmith, Inc. v. Wysopal*, No. 6:07-cv-1572-Orl-22KRA, 2008 WL 5432289, *2 (M.D. Fla. Dec. 31, 2008) (deeming requests admitted and holding that defendants waived previously asserted blanket objections to request for admission by failing to support the objections in response to plaintiffs' motion to compel); *Dukes v. So. Carolina Ins. Co.*, 590 F.Supp. 1166, 1168 (S.D. Miss. 1984) (granting motion to strike untimely responses to requests for admission and deeming the requests admitted after observing that "plaintiffs have been evasive and dilatory throughout the pendency of this cause"); *West Bay Builders, Inc v. U.S.*, 80 Fed. Cl. 700, 708 (Fed. Cl. 2008) (noting that "courts may consider a party's prior conduct during litigation" when determining the proper remedy for Rule 36 abuses); *Kelvin Cryosystems, Inc. v. Lightnin*, 252 Fed. Appx. 469, 470-72 (3d Cir. 2007) (affirming denial of plaintiff's motion to accept answers to requests for admission that were 39 days late where plaintiff was guilty of "serial tardiness").

## IV. The Court Should Order Hecker to Compensate Chrysler Financial For the Expenses It Has Incurred Due to Hecker's Deficient Privilege Log for the Bowser Emails.

As it explained at pp. 8-10, *supra*, when Hecker finally produced a privilege log for the Bowser emails on November 25, 2009, it proved to be woefully deficient. It did

---

[24] These are requests for admission nos. 1-15, 17-24, 27-38 and 40-44.

not identify the precise time of the allegedly privileged emails.  It did not identify all of the recipients of the emails.  And it did not provide an adequate description of the emails.  As a result of these defects, Chrysler Financial's vendor was unable to identify 90 of the 429 allegedly privileged emails.

This Court's November 26, 2006 protocol Order requires Chrysler Financial's vendor to segregate the purportedly privileged emails before Chrysler Financial reviews the non-privileged emails.  Ex. 25.  Because of the deficiencies in Hecker's privilege log, the vendor has been unable to segregate all 429 supposedly privileged emails, thereby delaying Chrysler Financial's review of the non-privileged Bowser emails.  In addition, many of the incomplete identifications on Hecker's privilege log are overbroad, covering multiple emails.  And the inadequate descriptions of the emails made it impossible for Chrysler Financial to evaluate the propriety of many of Hecker's claims of privilege.

In light of these defects, Chrysler Financial was required to ask Hecker to supplement his privilege log.  Ex. 29.  But when Hecker finally submitted a revised privilege log on December 21, 2009, he without explanation added at least 140 new emails that supposedly are privileged.  As a result, Chrysler Financial has been forced to have its vendor re-review the Bowser emails to segregate the 569 emails listed on Hecker's new privilege log.  This has forced Chrysler Financial to incur substantial additional costs and has further delayed Chrysler Financial's review of the non-privileged emails.

We respectfully request that this Court require Hecker or his counsel or both to compensate Chrysler Financial for the extra costs it has incurred due to Hecker's

inadequate privilege log. In addition, we request that the Court authorize Chrysler Financial to review the non-privileged Bowser emails as soon as the emails listed on the privilege log are segregated, regardless whether Hecker subsequently attempts to alter or amend his Bowser email privilege log.

## V.     The Court Should Require Hecker or His Counsel or Both to Pay Chrysler Financial's Attorney's Fees and Costs Incurred in Bringing This Motion.

Given the history of Hecker's discovery abuse, Chrysler Financial respectfully requests that the Court require Hecker or his counsel or both to pay attorney's fees and costs incurred by Chrysler Financial in bringing this motion. Such an award is entirely appropriate under the Bankruptcy Rules, the Federal Rules of Civil Procedure or both and the Court's inherent power.

First, an award of fees and costs against Hecker or his counsel or both is appropriate under Fed.R.Bkr.P. 7037, incorporating Fed.R.Civ.P. 37(a)(5)(A) ("If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."). "Sanctions are awardable pursuant to [Rule 37(a)] when the position of the losing party in a motion to compel is found not to be substantially justified, unless such award would be unjust." *Kramer v. Boeing Co.*, 126 F.R.D. 690, 697 (D. Minn. 1989) (holding that denying a motion for sanctions in the face of defendant's "culpable failure" to produce documents "would amount to judicial

tolerance of grossly unacceptable discovery practices"); *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1156-57 (9th Cir. 2003) (noting that it is not a requirement that plaintiff "test" defendant's objections to document requests prior to seeking sanctions because "plaintiff's motion to compel discovery is the only testing that [Rule 37(a)] requires."). Similarly, Rule 37(d) provides that a court may sanction a party who fails "to serve answers or objections to interrogatories under Rule 33" or "to serve a written response to a request for inspection under Rule 34." Fed. R. Civ. P. 33 and 34. Under either rule, the court may award the movant's reasonable expenses incurred in making the motion, including attorney's fees. *Id.*

Hecker has no excuse for his blatant and longstanding refusal to respond to discovery. Arguments that he has been too busy with litigation to respond to discovery ring hollow when one observes that Hecker has found plenty of time to engage in *offensive* discovery and motion practice. Hecker clearly wants to engage in discovery only when it may serve his needs. When the time comes for Hecker to respond to discovery, he simply refuses to comply. This Court has already observed and warned Hecker about his obstructionist and combative discovery tactics. Hecker doggedly refuses to heed those warnings. An award of fees and costs is entirely appropriate.

Second, an award of fees and costs is also appropriate under Fed.R.Bkr.P. 7026, incorporating Fed.R.Civ.P. 26(g), which imposes on counsel and the parties an affirmative duty to conduct pretrial discovery in a responsible manner. Fed.R.Civ.P. 26(g); Advisory Committee Notes to 1983 Amendments (explaining that "Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that

is consistent with the spirit and purpose of Rules 26-37. In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions. The subdivision provides a deterrent to … evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection ….").

Specifically, Rule 26 (and its bankruptcy counterpart, Fed.R.Bky.P. 7026) provides, in pertinent part, that by signing a discovery response or objection, the signer certifies that the response is "not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Fed.R.Civ.P. 26(g)(1)(B)(ii). Hecker's current counsel did not sign the discovery responses. Nevertheless, the rule itself and case law confirm that an award can be made against either the attorney signing the response, the party on whose behalf the signer was acting, or both. Fed.R.Civ. P. 26(g)(3) ("If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, *the party on whose behalf the signer was acting*, or both.") (emphasis added); *Malautea v. Suzuki Motor Co.,* 987 F.2d 1536, 1545 (11th Cir. 1993) ("Imposing costs and attorneys' fees against both the defendants and their attorneys was not an abuse of discretion; indeed that sanction is suggested in the text of the rule."); *Legault v. Zambarano,* 105 F.3d 24, 27 (1st Cir. 1997) (affirming trial court's apportioning responsibility under Rule 26(g)(3) equally between the lawyer and the parties). Since Hecker has been intimately involved in these proceedings from the outset, Chrysler Financial seeks an award of fees and costs against Hecker, personally.

Hecker's discovery intransigence clearly warrants an award to Chrysler Financial of its of fees and costs incurred in making this motion. *St. Paul Reinsurance Co. Ltd., v. Commercial Fin. Corp.,* 198 F.R.D. 508, 517 (N.D. Iowa 2000) (awarding sanctions under Rule 26(g) on the grounds that "'Rambo' style obstructionist discovery tactics like those employed here, if not stopped dead in their tracks by appropriate sanctions, have a virus-like potential to corrupt the fairness of our civil justice system.")

## CONCLUSION

Based on the foregoing, Chrysler Financial respectfully requests that the Court issue an order compelling Hecker to answer Chrysler Financial's discovery and providing additional relief as set forth in the form order that accompanies this motion. Because Hecker's previous objections are improper and ineffective, and because he failed to provide timely substantive discovery responses, the Court should order that Hecker has waived his right to assert any objections to Chrysler Financial's outstanding discovery.[25] Chrysler Financial therefore requests that the Court order Hecker to provide full and complete discovery responses and document production, without any objections, as set forth in the proposed order that accompanies this motion.

---

[25] *See In re United States of America*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("We readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived"); *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 518 (S.D. Fla. 2009) (affirming the district court's waiver of objections "in light of Defendants' untimely response to Plaintiff's document requests and their repeated failures to respond to Plaintiff's inquiries regarding the whereabouts of Defendants' responses"); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) (noting that failure to apply the waiver rule "would … completely frustrate the time limits contained in the Federal Rules and give license to litigants to ignore the time limits for discovery without any adverse consequences.").

Respectfully submitted,

December 23, 2009

GRAY, PLANT, MOOTY,
 MOOTY & BENNETT, P.A.


By /e/ Stephen F. Grinnell
      Nicholas N. Nierengarten (#79169)
      Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone:  (612) 632-3000
Telecopier:  (612) 632-4444


MAYER BROWN LLP
Howard J. Roin (Admitted Pro Hac Vice)
Stuart M. Rozen (Admitted Pro Hac Vice)
71 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711

Attorneys for Chrysler Financial Services
Americas LLC

GP:2703238 v3

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| Debtor. | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | |
| AMERICAS LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| Plaintiff, | ) | Adv. Pro. No.  09-5019 |
| v. | ) | |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | | |
| Defendant. | | |

## CERTIFICATE OF SERVICE

I, Stephen F. Grinnell , hereby certify that on December 23, 2009, I caused the following:

1.     Chrysler Financial Services LLC's Motion to Compel Discovery and for an Award of Fees and Costs;
2.     Chrysler Financial Services Americas LLC's Memorandum in Support of its Motion to Compel Discovery from Dennis E. Hecker and Related Relief;
3.     Declaration of Nicholas N. Nierengarten;
4.     Order Compelling Discovery and Awarding Fees and Costs; and
5.     Certificate of Service.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | |
|---|---|
| William R. Skolnick | wskolnick@skolnick-shiff.com |
| Matthew R. Burton | mburton@losgs.com |
| Jordan S. Kushner | kushn002@umn.edu |
| Robert J. Hennessey | rhennessey@lindquist.com |

Dated:  December 23, 2009

GRAY, PLANT, MOOTY
  MOOTY & BENNETT, P.A.

  /e/  Stephen F. Grinnell
Stephen F. Grinnell (#37928)

GP:2703647 v1

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| In re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 09-05019 |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER COMPELLING DISCOVERY
AND AWARDING FEES AND COSTS**

This adversary proceeding came before the Court on the motion of Plaintiff Chrysler Financial Services Americas LLC to compel discovery from Defendant Dennis E. Hecker.  Appearances were noted in the record.

Based upon the motion, the arguments of counsel and all of the files, records and proceedings herein, it is ORDERED:

1.      Chrysler Financial's motion to compel discovery regarding its interrogatories and requests for production of documents is granted;

2.      The objections asserted by Hecker in his responses to Chrysler Financial's interrogatories, requests for production of documents and requests for admission are overruled;

3.     On or before January 11, 2010 Hecker shall provide full and complete responses to Chrysler Financial's interrogatories and produce documents responsive to Chrysler Financial's requests for production of documents, without objections.  With respect to any responsive documents Hecker claims are privileged, Hecker shall provide a privilege log identifying such documents in accordance with Fed.R.Bkr.P. 7026 incorporating Fed.R.Civ.P. 26(b)(5) to Chrysler Financial on or before January 15, 2010;

4.     Chrysler Financial's requests for admission nos. 1-15, 17-24, 27-38, and 40-44 are deemed admitted pursuant to Fed.R.Bkr.P.7036 incorporating Fed.R.Civ.P. 36(b);

5.     Chrysler Financial's motion for an award of fees and costs incurred in making this motion against Hecker personally is granted;

6.     Chrysler Financial's request that Hecker compensate it for the fees and costs it incurred in connection with Hecker's deficient privilege log for the Bowser emails is granted; and

7.     On or before January 11, 2010, Chrysler Financial shall submit to the Court documentation supporting its reasonable costs and fees incurred in connection with this motion and Hecker's deficient privilege log for the Bowser emails.  Hecker shall provide any response to Chrysler Financial's submission on or before January 15, 2009.


Dated:


                                        _____
                                        Robert J. Kressel
                                        United States Bankruptcy Judge