# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No: 09-50779-RJK |
| DENNIS E. HECKER, | Chapter 7 |
| Debtor. | |
| | Adversary Proceeding No.: 09-05019 |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC, | |
| Plaintiff, | |
| v. | |
| DENNIS E. HECKER, | |
| Defendant. | |

## CHRYSLER FINANCIAL SERVICES AMERICAS LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL DISCOVERY FROM DENNIS E. HECKER AND RELATED RELIEF

Chrysler Financial moved to compel Hecker to answer its written and document discovery because, while he has aggressively pursued his own discovery, Hecker essentially stonewalled all of the discovery directed to him for three months —repeatedly promising responses but then reneging on his promises. Unfortunately, Chrysler Financial's motion to compel has not changed Hecker's tactics. On December 31, the day his response brief was due, Hecker delivered new responses to the written discovery due last September, but his new discovery responses continue to provide virtually no substantive information. Whereas Chrysler Financial produced more than 50,000 pages

1

in response to Hecker's document requests, Hecker produced only about 100 pages of documents, most of them already in the court record. To the extent that he agreed to produce any additional documents, Hecker says he may produce them at some unspecified time in the future. Then, citing this grossly late and patently inadequate response to the long overdue discovery, Hecker's response brief contends that Chrysler Financial's motion to compel should be denied as "moot." Meanwhile, Hecker served eight deposition notices of his own for the next two weeks. In short, Hecker continues to treat discovery as a one way street, stalling, delaying, and stonewalling in response to Chrysler Financial's long-overdue discovery, while aggressively pursuing still more discovery of his own.

Hecker's response brief simply ignores virtually all of the points Chrysler Financial made in its motion to compel. It provides absolutely no excuse for Hecker's three month delay in responding, particularly because he continues to provide no substantive information and to produce virtually no documents. Instead, Hecker invokes the Fifth Amendment to justify refusing to answer questions or produce documents. And to the extent that he acknowledges documents should be produced, he fails to do so,[1] claiming that the documents are being held by the government or unidentified third parties. Significantly, however, Hecker does not deny that he has had access to the documents allegedly seized by the government for months, so that if he were interested in doing so, he could have produced responsive documents to Chrysler Financial long ago.

---

[1] As noted above, Hecker produced only about 100 pages of documents, most of which already were in the court record.

2

Moreover, if Hecker intended to assert the Fifth Amendment and the government's seizure of his documents as his basis for refusing to answer Chrysler Financial's discovery, those excuses could have been presented and resolved months ago.

Hecker's persistent refusal to answer Chrysler Financial's written discovery is preventing Chrysler Financial from preparing not only for upcoming discovery, but also for the trial, which currently is scheduled for March 22, 2010. Hecker's assertion (at p. 6) that Chrysler Financial's motion is now "moot because Hecker has made a good faith effort to comply" is belied by the record before the Court, which clearly demonstrates a pattern of continuing discovery abuse. If anything, Hecker's most recent stalling tactics further justify both an order compelling Hecker to comply with his discovery obligations and an award of fees and costs. The Court should put an end to the gamesmanship and dilatory tactics by overruling Hecker's boilerplate objections, ordering Hecker to immediately produce all documents responsive to Chrysler Financial's long overdue document requests, and barring Hecker from conducting his own discovery until he makes that overdue production. In addition, in accordance with Fed.R.Bkr.P. 7037, incorporating Fed.R.Civ.P. 37(a), the Court should award Chrysler Financial the fees and costs it incurred in making this motion and in dealing with Hecker's deficient privilege log.

## FACTUAL BACKGROUND

Hecker has refused to provide meaningful discovery responses or produce documents for over three months. Significantly, Hecker's response brief does not dispute that he agreed to answer Chrysler Financial's written discovery and produce

3

documents—first on November 2, 2009, and after missing that deadline on December 14, 2009—but reneged on both promises. As a result of Hecker's gamesmanship and refusal to provide discovery, Chrysler Financial made this motion to compel discovery.

Hecker's response asserts that Chrysler Financial deliberately scheduled the hearing on its motion to compel on January 6, 2010 because it knew Hecker's counsel would be out of town for the holidays. That it not true. Chrysler Financial made its motion as soon as it became clear that Hecker had reneged on his promise to answer discovery and produce documents on December 14, 2009. Moreover, Hecker's counsel did *not* share his travel plans with Chrysler Financial in advance. Instead, one week *after* Chrysler Financial filed its motion to compel, Hecker's lawyers requested a continuance of the January 6, 2010 hearing on the grounds that Hecker's lead attorney (Mr. Skolnick) was on vacation, returning on January 4. Ex. 33.[2] Chrysler Financial agreed to a continuance to accommodate Mr. Skolnick's vacation schedule on three reasonable conditions, the principal one being that Hecker would not try to take advantage of the delay by pursuing his own discovery in the interim. Ex. 33. Hecker rejected Chrysler Financial's proposal and in short order it became clear why. On the day his response to Chrysler Financial's motion was due Hecker began serving a series of deposition notices and subpoenas. Ex. 35. As it stands now, Hecker has subpoenaed and noticed the depositions of five his companies' former employees for the early part of January, 2010. In addition, he sent deposition subpoenas for three Chrysler Financial employees,

---

[2] All numbered exhibits refer either to the Declaration of Nicholas N. Nierengarten (Exs. 1 - 32) and the Second Declaration of Nicholas N. Nierengarten (Exs. 33 - 43).

including its CEO, for the second week in January, 2010.[3]  Ex. 36.  This most recent

conduct simply demonstrates Hecker's one-way view of discovery.

In addition to aggressively pursuing his own discovery, Hecker also served on

December 31, 2009 new answers to interrogatories and responses to discovery requests as

part of his response to Chrysler Financial's motion to compel.[4]  In his new answers to

interrogatories, Hecker repeats many of the same boilerplate objections asserted in the

initial responses.[5]  In addition, he invokes the Fifth Amendment to justify refusing to

answer four of the six interrogatories, objects to interrogatory no. 4 as "overly broad and

unduly burdensome" without providing any basis for that objection, and claims that when

information regarding his expert becomes available, he "will make disclosures as

required by the Court" even though there is no pre-trial scheduling order in this case.

Similarly, Hecker repeats many of the same boilerplate objections in his

"supplemental" responses to Chrysler Financial's document requests.  Ex. 34.[6]  In the

---

[3] Ironically, Hecker noticed the depositions of the Chrysler Financial employees for January 12 and 13, despite the fact that Chrysler Financial's counsel previously told his counsel that Chrysler Financial's counsel would be in trial on those days and weeks ago had proposed dates later in January.

[4] Declaration of Luann M. Petricka, Exs. B and C.  The Petricka Declaration does not have the actual supplemental responses to Chrysler Financial's document requests attached to it as Exhibit C.  The supplemental responses are attached to the Second Declaration of Nicholas N. Nierengarten in support of Chrysler Financial's motion to compel and related relief as Exhibit 34.

[5] Petricka Decl., Ex. B.  Defendant's answer to interrogatories (Dec. 31, 2009) assert "General Objections" to Chrysler Financial's interrogatories "to the extent they seek information protected from discovery because of the attorney-client privilege or work product doctrine," "to the extent that it seeks information already known to Plaintiff or its counsel, already in possession of Plaintiff or its counsel, or available to Plaintiff from documents in its own files or from public sources," and "to the extent that it seeks non-party confidential information ...."  Declaration of Luann M. Petricka, Ex. B.  As with the initial responses, all of the interrogatory responses are "subject to the foregoing [General Objections]" and the "foregoing [General Objections] and limitations are included in each of the following Responses, regardless of whether they are repeated ...." *Id.*

[6] The "General Objections" include objections "to the extent that they request production of documents protected by the attorney-client privilege, the attorney work product doctrine, or any other evidentiary privilege of [*sic*] immunity from production."

new responses Hecker refuses to respond to six of 25 requests on grounds of his Fifth Amendment privilege. In response to most of the other document requests, Hecker does not deny that Chrysler Financial is entitled to the requested documents. Instead he asserts that responsive documents are in the possession of the U.S. Attorney's Office and claims that "Defendant is in the process of obtaining said documents and will produce responsive documents upon receipt and review." Hecker conveniently ignores that the documents supposedly held by the U.S. Attorney have been available to Hecker for months and, in fact, the search warrant issued last summer spells out the procedures by which Hecker could retrieve the documents. Hecker claims in his brief that he is making arrangements to pay $11,000 to obtain documents in the possession of the U.S. Attorney's Office. Hecker Response Mem., at 4. This sum easily could have been paid long ago out of the $230,000 that Hecker received since filing bankruptcy in June, according to the Judge in Hecker's divorce proceedings. Ex. 37 (Amended Order, ¶ 5) (Hecker "reveals that he has received roughly $230,000 following his personal bankruptcy filing in June of this year.") And perhaps most significantly, Hecker makes absolutely no commitment concerning when, if ever, he will produce the requested documents.

Finally, in contrast to the more than 50,000 pages already produced by Chrysler Financial in response to Hecker's discovery, when Hecker finally got around to producing documents on New Year's Eve, he produced only a handful (101 pages), most of which previously were attached to court filings in this case. For example, Hecker produced two emails he used in conjunction with his stay motion, three of the Hyundai

letters attached to Chrysler Financial's complaint (totaling 30 pages) (but not the altered letter that forms that basis of one of Chrysler Financial's fraud claims), and a 25-page summary of Hecker's ownership of various companies submitted in connection with Hecker's disqualification motion. *See* Second Declaration of Nicolas N. Nierengarten ¶ 4. In short, the so-called production simply continues Hecker's well established pattern of producing only what he knows has already been disclosed. Chrysler Financial Mem., at 10 – 11.

## ARGUMENT

### I. Hecker's Boilerplate Objections are Meritless and Should be Overruled.

In its opening brief, Chrysler Financial demonstrated that each of the boilerplate objections asserted by Hecker was meritless and should be overruled. *See* Chrysler Financial Mem., at 12 – 22. Nowhere in his response does Hecker even attempt to defend his boilerplate objections. Nor could he, since numerous cases have repeatedly rejected unsubstantiated objections of the type asserted by Hecker. Chrysler Financial Mem., at 12 -22. Nonetheless, in his new responses to Chrysler Financial's discovery, Hecker merely reasserts many of the same meritless boilerplate objections.

Because Hecker's previous objections are improper and ineffective, and because he failed to provide timely substantive discovery responses, the Court should order that Hecker has waived his right to assert any objections to Chrysler Financial's outstanding discovery.[7] The Court should overrule Hecker's objections and order him to respond,

---

[7] *See In re United States of America*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("We readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production

except with respect to interrogatory nos. 1-3 and 5, as to which Hecker asserts the Fifth Amendment privilege. Chrysler Financial reserves its rights concerning Hecker's invocation of the Fifth Amendment, and at the appropriate time will move for an order precluding Hecker from putting in any evidence on the topics covered by these interrogatories.[8]

Interrogatory no. 4, which Hecker refuses to answer on grounds of burden, merely asks Hecker to identify the bank accounts where the sale proceeds from vehicles financed by Chrysler Financial were deposited. This information is directly relevant to Chrysler Financial's "out-of-trust" claim (which alleges that after Hecker sold the vehicles that were Chrysler Financial's collateral, rather than holding the proceeds in trust for and paying them to Chrysler Financial, as he was required to do, he instead converted the proceeds for his own use). Among other things, information about these bank accounts

---

requests, or other discovery efforts, objections thereto are waived"); *Bank of Mongolia v. M&P Global Fin. Servs., Inc.*, 258 F.R.D. 514, 518 (S.D. Fla. 2009) (affirming the district court's waiver of objections "in light of Defendants' untimely response to Plaintiff's document requests and their repeated failures to respond to Plaintiff's inquiries regarding the whereabouts of Defendants' responses"); *Krewson v. City of Quincy*, 120 F.R.D. 6, 7 (D. Mass. 1988) (noting that failure to apply the waiver rule "would ... completely frustrate the time limits contained in the Federal Rules and give license to litigants to ignore the time limits for discovery without any adverse consequences.").

[8] Hecker has asserted the Fifth Amendment privilege in response to critical issues in the case, including the facts, witnesses, and documents supporting his denials, qualified admissions, and affirmative defenses in the case. At the appropriate time, Chrysler Financial will make a motion for an order precluding Hecker from offering any evidence relating to those areas in which he asserted his Fifth Amendment privilege. *See Dunkin' Donuts Inc. v. Taseski*, 47 F.Supp.2d 867, 874 (E.D.Mich. 1999) ("[T]he Court will not allow defendants, at this stage after invoking the privilege against self-incrimination and refusing to answer questions on the matter, to introduce testimony or other evidence in support of their version of the damages amount."); *Pedrina v. Han Kuk Chun*, 906 F.Supp. 1377, 1398 (D.Haw. 1995), *aff'd*, 97 F3d 1296 (9th Cir. 1996), *cert. denied*, 520 U.S. 1268, 117 S.Ct. 2441, 138 L.Ed.2d 201 (1997) (holding that a party may not rely on its own testimony or affidavits to support its version of disputed fact issue in connection with summary judgment motion where party has asserted Fifth Amendment right not to answer questions concerning that very issue); *S.E.C. v. Cymaticolor Corp.*, 106 F.R.D. 545, 550 (S.D.N.Y. 1985) ("In light of the defendant's invocation of his [F]ifth [A]mendment rights regarding the basis of his defenses and denials, a total preclusion order is appropriate.").

can be used to demonstrate that Hecker personally benefited from the diversion of the trust proceeds and basically used the corporate bank accounts as his own personal piggy bank. Hecker provides absolutely no factual basis for his assertion that this request is overly broad and unduly burdensome. To the contrary, this interrogatory narrowly focuses on identification of specific accounts, information that is readily available to Hecker. Hecker's objection should be overruled and he should be ordered to provide this information forthwith. In addition, in response to Chrysler Financial's document requests (document request no. 9), Hecker should produce the account documents showing movement of the proceeds that Hecker converted.

## II. The Court Should Reject Hecker's Makeweight Excuses for His Failure to Produce Responsive Documents.

Now, more than three months after documents were to be produced and after Chrysler Financial produced more than 50,000 pages in response to Hecker's written discovery, Hecker still has produced virtually no documents responsive to Chrysler Financial's document requests. Moreover, what Hecker did produce is largely part of the existing Court record. As his excuse for non-compliance, Hecker asserts that the majority of the requested documents are in the possession and control of the U.S. Attorney's Office or unidentified "other third parties." In reality, however, Hecker has always had the right to obtain the documents seized by the U.S. Attorney's office (as tacitly acknowledged by his claim that he is now doing so). Ex. 20 (Transcript, at 8 – Skolnick: "I was not aware those documents were available to us until mid-October. I had a conversation with the U.S. Attorney, at which point she said I could come look at

them."); Ex. 38 – Search Warrant Addendum: "The person from whom the data storage device has been seized may request that the government provide him or her with electronic copies of the electronically stored data or documents by making a written request to the United States Attorney's Office, identifying with specificity the files, data, or software sought to be copied. The government must respond to all such requests within a reasonable amount of time, and must provide a copy of the electronically stored data or documents requested unless the copies requested constitute contraband, instrumentalities, or property subject to forfeiture."). Thus he is required to produce them pursuant to Fed.R.Civ.P. 34(a) (requiring production of documents "in the responding party's possession, custody, or control"). Ex. 20 (Transcript, at 8 – Skolnick "I intend to produce documents that are in my client's care, custody and control to you.").

Hecker also asserts that he "has been making ongoing attempts" to obtain requested information that was seized by the government. Hecker Response Mem., at 3 – 4. Tellingly, Hecker never provides any details as to what so-called efforts have been made or why he delayed three months before beginning to collect the documents that have always been available to him. This is yet another stonewalling effort. Moreover, this claim was flatly contradicted by Hecker's counsel, who a month and a half ago represented that Hecker could not produce documents before December 11, 2009 because he had "about half a million documents that I am in the process of reviewing." Ex. 20, Transcript, at 6. In fact, Hecker's counsel specifically said "My anticipation is that between now [November 13, 2009] and then [December 11, 2009] I would be able to produce documents." Ex. 20, Transcript, at 8. Yet now, a month and a half later, Hecker

claims he is only beginning the process of gathering records and ultimate production is dependent on (1) how quickly the document can be reproduced and made available; and (2) Hecker's review of those documents. Hecker has had three months to accomplish these basic tasks and the time has come for the Court to order him to do so.

Hecker's response to Chrysler Financial's motion to compel is consistent with his overall pattern of obstructionist tactics throughout this bankruptcy case. As the Court may recall, at the Trustee's behest, on October 21, 2009, this Court issued a turnover order requiring Hecker to produce documents, including emails and other business records to the Trustee. Ex. 40, Ex. A. Hecker failed to comply with the turnover order and consequently the Trustee made a motion for contempt of court, which was granted on November 19, 2009. Ex. 41. Regrettably, it is again necessary to order Hecker to comply with discovery.

## III. The Court Should Overrule Hecker's Fifth Amendment Objection in His Reponses to Document Requests.

In his December 31, 2009 response to Chrysler Financial's document requests, Hecker invokes the Fifth Amendment to justify his refusal to produce documents in response to six of Chrysler Financial's document requests. Although Hecker may be entitled to invoke the Fifth Amendment in connection with his personal testimony, he cannot broadly invoke the Fifth Amendment as an excuse to evade his obligation to produce documents responsive to Chrysler Financial's document requests.

In the first place, as set forth in Chrysler Financial's complaint, Hecker perpetrated his fraud through a web of wholly owned companies, including Rosedale Dodge, Walden

Fleet Services, and a host of other LLCs. As the corporate representative of these entities, Hecker may not withhold documents on the basis of the Fifth Amendment privilege, even if they contain information incriminating him or he authored them. *See In re Grand Jury Subpoena*, 75 Fed. Appx. 562, 563 (8th Cir. 2003) ("The Fifth Amendment privilege applies only to natural individuals and protects only private papers. Requiring a corporate agent to produce corporate documents damaging to the corporation or to the agent personally does not violate the Fifth Amendment . . . nor does a custodian's execution of a certificate of authenticity . . .") (citations omitted); *In re Grand Jury Subpoena (85-W-71-5)*, 784 F.2d 857, 861 (8th Cir. 1986) ("a corporate representative or agent cannot claim a [F]ifth [A]mendment privilege against producing corporate documents, regardless of whether they contain information incriminating him [or her] or were written by him [or her], and regardless of whether the corporation is large or small." *(quoting In re Two Grand Jury Subpoenae Duces Tecum,* 769 F.2d 52, 56 (2d Cir. 1985)); *In re Grand Jury Witnesses*, 92 F.3d 710, 713 (8th Cir. 1996) (Fifth Amendment protection does not apply to corporate records, regardless of whether documents are requested from "the collective entity, to a person as that entity's document custodian, or to the person individually.").

In addition, the Fifth Amendment simply is not a shield against Hecker's obligation to produce directly relevant documents. The case law indicates that, to the extent the Fifth Amendment applies to document requests at all, it is only when the act of production is both testimonial and incriminating. *U.S. v. Hubbell*, 530 U.S. 27, 36-37 (2000) ("[T]he act-of-production doctrine . . . provides that persons compelled to turn

over incriminating papers or other physical evidence pursuant to a subpoena duces tecum or summons may invoke the Fifth Amendment privilege against self-incrimination as a bar to production only where the act of producing the evidence would contain 'testimonial' features.") (J. Thomas, concurring). The mere fact that the *contents* of documents may be incriminating does not render the production of those documents incriminating. *See United States v. Schlansky,* 709 F.2d 1079, 1083 (6th Cir. 1983) ("The fact that production of a voluntarily prepared document is compelled does not mean that any preexisting incriminating contents are 'compelled testimonial communications' within the Fifth Amendment privilege."). Therefore, in order to properly invoke the Fifth Amendment in connection with a production of documents, Hecker must tender some credible reason why the mere act of responding (as opposed to the contents of the documents) would pose a real danger of inculpating him. *Ohio v. Reiner,* 532 U.S. 17, 21, 121 S.Ct. 1252, 149 L.Ed.2d 158 (2001). Hecker's conclusory assertion that the requested documents would be incriminating is insufficient. "In light of [his] assertion of privilege, the burden is on [Hecker] to establish how [his] 'act of production' would be testimonial . . ." *Gloves, Inc. v. Berger,* 198 F.R.D. 6, 8 (D. Mass. 2000). Hecker has made no showing whatsoever to meet his burden.

For these two reasons, the Court should overrule this and Hecker's other objections and order him to produce the requested documents immediately.

## IV. Most of Chrysler Financial's Requests for Admission Should be Deemed Admitted.

Chrysler Financial's motion to compel shows that Hecker's initial refusal to answer any of the requests to admit was based on patently baseless objections, that his unauthorized December 21 "amended" responses are a nullity, and that his cavalier responses to the requests to admit warrant a ruling that the requests to admit be deemed admitted. Chrysler Financial Mem. at 23-27.

Hecker's response brief does not even attempt to defend his initial refusal to answer the requests to admit. Hecker chose to globally object to all of Chrysler Financial's requests for admission on the grounds that he had filed a stay motion. But it is well established that the merely filing of a stay motion did not relieve him of the obligation to respond within 30 days. See Chrysler Financial Mem. at 24.

Hecker attempts to resurrect his December 21 "amended" responses to the requests to admit, arguing that Fed.R.Civ.P. 36(b) merely requires court permission to withdraw an admission. According to Hecker, this means that he can willy-nilly change his responses whenever it suits his purposes. But Hecker completely ignores that Fed.R.Civ.P. 36(a)(3) expressly requires a written response to the request to admit "within 30 days after being served" unless "[a] shorter of longer time for responding [is] stipulated to . . . or ordered by the court." There was no such stipulation or court order here, so the amended responses served on December 21 have no force or effect. Moreover, even if the Court were to consider Hecker's amended responses, they simply confirm Hecker's obstructionist tactics. For example, Hecker's amended responses

reiterate the patently erroneous document "speaks for itself" objection to requests that supposedly call for a legal conclusion. Hecker's response brief offers no answer to the numerous legal authorities cited in Chrysler Financial's opening brief that uniformly reject this objection. Chrysler Financial Mem., at 25 – 26. Instead, Hecker cavalierly asserts that if the Court overrules this objection, he wants yet another bite at the apple.

Finally, Hecker does not and cannot dispute that where a party flouts both his obligations to answer requests to admit and the rules, raises numerous specious objections without any basis in law or fact, and engages in discovery games, the court has ample legal authority to deem requests for admission admitted. Chrysler Financial Mem., at 27. In light of Hecker's pattern of discovery abuse, Chrysler Financial requests an order deeming all of the requests for admission admitted, except those that were properly denied in the initial responses. In the alternative, Chrysler Financial requests that the Court order Hecker to provide good faith answers to the requests to admit immediately.

## V.    Hecker's Grossly Deficient Privilege Log for the Bowser Emails Justifies an Award of Fees and Costs.

Chrysler Financial's motion to compel (at 27-29) showed that the privilege log Hecker produced for the Bowser emails was grossly deficient in many respects, making it impossible for Chrysler Financial to segregate allegedly privileged documents, a prerequisite to reviewing the Bowser emails. Chrysler Financial further showed that when it asked Hecker to correct the defects in its privilege log, Hecker instead produced a new log that purports to add at least 140 more allegedly privileged emails. Chrysler Financial's motion to compel asks for an award of fees and costs to cover the costs

incurred in reviewing the deficient privilege log and permission to review the Bowser emails regardless of any subsequent attempts Hecker may make to alter or amend his privilege log.

In his response, Hecker largely ignores Chrysler Financial's arguments. Instead, Hecker goes on at length about the "stolen" emails Cindy Bowser produced in response Chrysler Financials subpoena, rehashing the same arguments that this Court rejected when it denied his disqualification motion and granted Chrysler Financial's motion to establish a protocol for reviewing the emails. Response Mem. at 2.[9] Hecker also asserts that he and his counsel have used their best efforts to prepare a privilege log for the Bowser emails and that Chrysler Financial's "vendor caused the delays." Hecker Response Mem. at 2. However, Hecker's argument is belied by the fact that many of the dates on his first privilege log were incorrect and that the log's failure to specify the times of the emails made it impossible to separate numerous emails that Hecker claimed to be privileged from those with the same date that were not privileged. Ex. 29; *see also* Ex. 43. Furthermore, after Chrysler Financial complained about the gross deficiencies in the initial log, Hecker produced a new log containing over **140 more documents** than on the original log without even acknowledging that he was asserting new claims of privilege. Ex. 32. Moreover, Hecker's revised privilege log still lacks sufficient descriptions to specifically identify privileged emails and to differentiate allegedly privileged emails from those emails over which no privilege is claimed. Specifically, Chrysler Financial's vendor's analysis of the new privilege log shows that it lists incorrect dates or times for

---

[9] Exs. 24 (Doc 44) and 25 (Doc 45).

several emails (or omits necessary information), lists multiple emails that have additional recipients beyond the recipients identified on the privilege log, and provides vague descriptions of emails that could apply to multiple documents. Ex. 39.

Given the needless expense incurred by Chrysler Financial and its vendor in attempting to deal with Hecker's grossly deficient privilege log, an award of fees and expenses is entirely appropriate. Moreover, because Hecker's deficient privilege log has delayed Chrysler Financial's review of the Bowser emails, we request an order authorizing Chrysler Financial to review the Bowser emails as soon as the readily identifiable documents on Hecker's privilege log have been segregated.

## VI.    The Court Should Award Chrysler Financial its Fees and Costs.

Hecker's response to Chrysler Financial's motion to compel simply confirms that an award of fees and expenses incurred in connection with making this motion is necessary and appropriate.[10]   As discussed above, Hecker continues to "stonewall" Chrysler Financial's discovery by asserting impermissible objections and, instead of actually producing documents now, claiming that sometime in the indefinite future he will produce documents that have been available to him for months. Equally important, Hecker could have and should have asserted any Fifth Amendment privilege objections

---

[10] Hecker's claim that Chrysler Financial does not have "clean hands" is both inaccurate and irrelevant. The December 14, 2009 letter from Mr. Skolnick attached to Ms. Petricka's declaration to supposedly support this assertion is noteworthy in several respects. First, rather than produce documents on the agreed upon date (December 14, 2009), Hecker simply refused to produce documents and instead once again pursued his own one-way discovery. Second, neither Mr. Skolnick nor Ms. Petricka disclose to the Court the reason that the deposition of John Bowker at Chrysler Financial was cancelled; namely a doctor's appointment for the wife of the attorney who was scheduled to defend the Bowker deposition. Third, Hecker has never asked for a discovery conference regarding the Bowker deposition and certainly has no standing to raise that issue here. In fact, Hecker never responded to Chrysler Financial's proposed dates for the depositions of Bowker and Hecker. *See* Ex. 42.

months ago without forcing Chrysler Financial to make a motion to compel. Similarly, the few documents produced by Hecker could have and should have been produced months ago. By awarding Chrysler Financial its fees and costs, the Court will send a strong signal to Hecker that the time for games is over.

## CONCLUSION

Based on the foregoing, Chrysler Financial respectfully requests that the Court issue an order:

1.    Overruling Hecker's objections to interrogatory no. 5 and ordering him to provide complete and full answers (without further objections) on or before January 13, 2010.

2.    Overruling Hecker's objections to all of Chrysler Financial's document requests (including his assertion of the Fifth Amendment privilege) and ordering him to produce all responsive documents on or before January 13, 2010. With respect to any responsive documents Hecker claims are privileged (other than the Fifth Amendment privilege), Hecker shall provide a privilege log identifying such documents in accordance with Fed.R.Bkr.P. 7026 incorporating Fed.R.Civ.P. 26(b)(5) to Chrysler Financial on or before January 15, 2010.

3.    Overruling Hecker's objections to Chrysler Financial's requests for admission and order that request nos. 1 – 15, 17 – 24, 27 – 38, 40 and 41 be deemed admitted, pursuant to Fed.R.Bkr.P. 7036, incorporating Fed.R.Civ.P. 36. In the alternative, overruling Hecker's objections and directing Hecker to provide good faith responses to Chrysler Financial's requests to admit on or before January 13, 2010.

4.    Directing Hecker to defer his own discovery until he complies with this order.

5.    Permitting Chrysler Financial to begin review of the non-privileged Bowser emails based on the revised privilege log submitted by Hecker on December 21, 2009, including review of any documents that cannot be specifically identified by Chrysler Financial's vendor based on the information provided in the revised privilege log.

6.    Awarding Chrysler Financial its fees and costs in connection with evaluating and processing the privilege log for the Bowser emails and its fees and costs incurred in connection with this motion.

Respectfully submitted,

January 5, 2010                    GRAY, PLANT, MOOTY,
                                   MOOTY & BENNETT, P.A.

                                   By_/e/ Stephen F. Grinnell_____
                                        Nicholas N. Nierengarten (#79169)
                                        Stephen F. Grinnell (#37928)
                                   500 IDS Center
                                   80 South Eighth Street
                                   Minneapolis, Minnesota 55402-3796
                                   Telephone: (612) 632-3000
                                   Telecopier: (612) 632-4444

                                   MAYER BROWN LLP
                                   Howard J. Roin (Admitted Pro Hac Vice)
                                   Stuart M. Rozen (Admitted Pro Hac Vice)
                                   71 South Wacker Drive
                                   Chicago, Illinois 60606
                                   Telephone: (312) 782-0600
                                   Facsimile: (312) 701-7711

                                   Attorneys for Chrysler Financial Services
                                   Americas LLC

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | |
| AMERICAS LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| v. | ) | Adv. Pro. No.  09-5019 |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## CERTIFICATE OF SERVICE

I, Stephen F. Grinnell , hereby certify that on January 5, 2010, I caused the following:

1. Chrysler Financial Services Americas LLC's Reply Memorandum in Support of its Motion to Compel Discovery from Dennis E. Hecker and Related Relief; and

2. Second Declaration of Nicholas N. Nierengarten in Support of Chrysler Financial Services Americas LLC's Motion to Compel and Associated Relief.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following:

| | |
|---|---|
| William R. Skolnick | wskolnick@skolnick-shiff.com |
| Matthew R. Burton | mburton@losgs.com |
| Jordan S. Kushner | kushn002@umn.edu |
| Robert J. Hennessey | rhennessey@lindquist.com |

Dated:  January 5, 2010

GRAY, PLANT, MOOTY
  MOOTY & BENNETT, P.A.

  /e/  Stephen F. Grinnell
Stephen F. Grinnell (#37928)