## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

## CHRYSLER FINANCIAL SERVICES AMERICAS LLC'S MOTION FOR SANCTIONS

TO:  Defendant and his counsel, William R. Skolnick, Skolnick & Shiff, 2100 Rand Tower, 527 Marquette Ave South, Minneapolis, MN 55402.

1.      Plaintiff Chrysler Financial Services Americas LLC, by and through its undersigned counsel, moves the Court for the relief requested below and gives notice of hearing.

2.      The Court will hold a hearing on this motion on February 17, 2010, at 2:00 p.m., or as soon thereafter as counsel can be heard, before the Honorable Robert J. Kressel, Courtroom 8 West, 300 South Fourth Street, Minneapolis, Minnesota.

3.      Any response to this motion must be filed and served by delivery or mail not later than February 12, 2010, which is five (5) days before the date set for the hearing

(including Saturdays, Sundays and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4. This Court has jurisdiction over this motion pursuant to 28 U.S.C. § § 157 and 1334, Fed. R. Bankr. P. 5005, 7007, and 9013, and Local Rules 7007-1 and 9013-1-2.

5. This motion arises under Fed. R. Bankr. P. 7037 and Fed. R. Civ. P. 37. This motion is filed under Fed. R. Bankr. P. 7007 and 7037, and Local Rules 7007-1 and 9013-1 and 2.

6. Chrysler Financial moves the Court for an order entering sanctions against Defendant Dennis E. Hecker, including entry of a nondischargeable default judgment for the full amount sought in Chrysler Financial's adversary complaint, because of Hecker's willful, egregious and continuing failure to comply with his discovery obligations in this adversary proceeding and this Court's January 11, 2010 Order Compelling Discovery and Awarding Fees and Costs. The facts upon which this motion is based are set forth in Chrysler Financial's memorandum accompanying and supporting this motion.

7. As more fully described in the memorandum, and in the record of this adversary proceeding, Chrysler Financial has conferred and otherwise communicated with counsel for Hecker on multiple occasions in an effort to resolve the parties' ongoing disputes relating to Hecker's performance of his discovery obligations in this proceeding. These efforts have included written and telephone communications leading up to and including the date of this motion. However, Hecker has steadfastly refused to fully and properly discharge his discovery obligations or to engage in meaningful discussions

regarding these issues. Chrysler Financial does not believe that further attempts to confer with respect to these issues are required.

8. This motion is based on the facts and law set forth in the memorandum, the Declarations of Nicholas N. Nierengarten, Michael W. Ott and Jeremy D. Wunsch and the exhibits thereto, and all of the files and proceedings herein.

WHEREFORE, Chrysler Financial respectfully requests that this Court grant the motion and enter its order directing entry of a nondischargeable default judgment against Hecker for the full amount sought in Chrysler Financial's complaint.


Dated: February 3, 2010

GRAY, PLANT, MOOTY, MOOTY &
  BENNETT, P.A.


By /e/ Stephen F. Grinnell
    Nicholas N. Nierengarten (#79169)
    Stephen F. Grinnell (#37928)
    500 IDS Center
    80 South Eighth Street
    Minneapolis, Minnesota 55402
    Telephone: 612-632-3040
    Facsimile: 612-632-4040

    MAYER BROWN LLP
    Howard J. Roin (admitted pro hac vice)
    Stuart M. Rozen (admitted pro hac vice)
    71 South Wacker Drive
    Chicago, Illinois 60606
    Telephone: 312-782-0600
    Facsimile: 312-701-7711

    Attorneys for Chrysler Financial
    Services Americas LLC

GP:2723724 v2

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

|  |  |  |
|---|---|---|
| In re: | ) | **Bankruptcy Case No: 09-50779-RJK** |
|  | ) |  |
| **DENNIS E. HECKER,** | ) | **Chapter 7** |
|  | ) |  |
| Debtor. | ) |  |
|  | ) |  |
|  | ) | **Adversary Proceeding No.: 09-05019** |
| **CHRYSLER FINANCIAL SERVICES** | ) |  |
| **AMERICAS LLC,** | ) |  |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| **DENNIS E. HECKER,** | ) |  |
|  | ) |  |
| Defendant. | ) |  |
|  | ) |  |

**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS**

## INTRODUCTION

When Chrysler Financial commenced this adversary proceeding, it made some very serious allegations against Hecker. Those allegations immediately attracted the attention of the federal prosecutors, who launched a criminal investigation. Hecker has made no secret of the fact that he is being investigated. Because of the threat of criminal prosecution, Hecker has attempted to shut down Chrysler Financial's discovery efforts and instead turn this proceeding into a mechanism for taking discovery for use in defending a potential criminal prosecution.

Throughout the course of this proceeding, Hecker has engaged in a wholesale effort to delay and frustrate Chrysler Financial's discovery, while aggressively pursuing his own discovery. Indeed, Hecker has taken the same obstructionist approach to the Trustee's efforts to

gather crucial documentation. After months of stonewalling, Chrysler Financial moved to compel discovery from Hecker. On January 6, 2010, the Court granted Chrysler Financial's motion to compel, overruled Hecker's specious boilerplate objections, and ordered Hecker to provide full, complete and unequivocal answers to Chrysler Financial's written discovery. In addition, the Court overruled Hecker's Fifth Amendment objection to Chrysler Financial's document requests and ordered him to produce responsive documents and to prepare a privilege log for any documents withheld from production. Finally, the Court barred Hecker from taking any offensive discovery until Hecker fully complied with the Court's order.

On January 19, 2010 Hecker provided supplemental responses to Chrysler Financial's written discovery and produced some documents, largely copies of paper documents seized by the government. Chrysler Financial's analysis of Hecker' s production (particularly his email production) revealed gross deficiencies. Hecker violated his discovery obligations and this Court's order compelling discovery in at least four ways.

First, Hecker completely failed to review and produce electronically stored information, including emails, in the possession of the government, which was made available to Hecker no later than October, 2009.

Second, while claiming throughout the course of the proceedings that most if not all critical information could not be produced because it had been seized by the government, Hecker failed to acknowledge that the government merely copied most of his computerized records and those records remained in his possession. When he produced documents to Chrysler Financial, Hecker failed to review and produce information in his own possession, including emails that remained on his computers and exchange server after the government made copies of them.

Third, despite the Court's order, Hecker failed to provide a privilege log covering the documents he produced on and after January 19, 2009.

Finally, even though the Court expressly prohibited Hecker from pursuing offensive discovery until he fully complied with the discovery order, Hecker is once again aggressively pursuing discovery.

In light of Hecker's intentional and continuing discovery abuse, Chrysler Financial respectfully asks the Court to sanction Hecker by entering a default judgment against him that the full amount sought by Chrysler Financial in its complaint is non-dischargeable.

## FACTUAL BACKGROUND

A.      **Hecker's Failure to Produce Records to the Trustee.**

From the very outset of his bankruptcy, Hecker has represented that he could not answer questions, provide information, or produce documents because his records were seized by the government as part of its criminal investigation. For example, on July 1, 2009, when Hecker filed his bankruptcy schedules, he asserted the government's seizure of his records prevented "full and accurate" completion of the schedules:

> On June 17, 2009, law enforcement officials seized from Debtor's offices numerous records that are essential to the full and accurate completion of the Schedules of Assets Liabilities, Statement of Financial Affairs, and other statements (together, the "Schedules and Statements"). To date the records have not been returned to Debtor.

Ex. 1 ("Note Pertaining to Schedules and Statements of the Debtor," *In re Dennis E. Hecker,* Case No. 09-50779).[1]

Hecker repeated this mantra that documents and information were unavailable to him because of the government's seizure throughout the course of these bankruptcy proceedings. For

---

[1] All numbered exhibits are attached to the declaration of Nicholas N. Nierengarten in support of Chrysler Financial's motion for sanctions.

example, in his verified response to the Trustee's motion for a protective order preventing Hecker from demanding records that the Trustee had unearthed in the course of his investigation, Hecker complained that "**Debtor no longer has his own records**" and that he "simply wants access to records relating to him and his businesses **that he once had before those records were seized**." Ex. 7 (Debtor's Verified Response to Chapter 7 Trustee's Motion for Protective Order (October 2, 2009) (Doc. 224), at 1) (emphasis added). See also *id*. at 2 (asserting that the "vast majority" of his records "including many related to his business interests, their operations, and his financial affairs" had been seized by law enforcement officials). In response to Hecker's claim that he could not review his own records, the Trustee aptly noted that while Hecker had ample time to take vacation trips to Hawaii and Las Vegas, he "has not even bothered to seek to review the records which are in the possession of the authorities." Ex. 9 (Trustee's Reply Mem. (October 6, 2009), at 1, 4). On October 7, 2009, the Court granted the Trustee's motion for a protective order. Ex. 11 (Order (Doc 236).)

Hecker repeated his assertion that his records were unavailable to him in his verified response to the Tustee's motion to compel him to file complete and accurate bankruptcy schedules. In particular, Hecker represented to the Court that he "has used reasonable diligence in his efforts to accurately complete his schedules" but that the difficulty of completing the schedules was "compounded by the seizure of the Debtor's records by law enforcement" officials. Ex. 8 (Debtor's Verified Response to Chapter 7 Trustee's Motion to Compel Debtor to File Complete and Accurate Schedules (October 2, 2009), at 1-2). The Trustee again responded that Hecker had not even bothered to take the "simple steps" of reviewing and obtaining relevant information in the possession of the U.S. Attorney's Office. Ex. 10 (Trustee's Reply Mem. (October 6, 2009), at 2).

On October 21, 2009, this Court ordered Hecker to turn over to the Trustee a variety of financial records and other documents, including "all e-mails between Dennis E. Hecker and anyone, except for e-mails between Hecker and his attorneys, and e-mails between Hecker and his spouse, for the time period June 1, 2008 to date." Ex. 22 (Ex. A, Order, ¶ 17). Hecker failed to comply with the turnover order and the Court held him in contempt by Order dated November 19, 2009. Ex. 22 (Ex. B, Order).

Despite the contempt order, Hecker apparently continued to refuse to comply with this Order by making a complete production of his emails. Consequently, on January 20, 2010, the Trustee filed a second contempt motion.[2] Ex. 22 (Trustee's Notice of Hearing and Motion for Contempt of Court (Doc 369)). In this second motion, the Trustee contends that the emails produced by Hecker "were simply printed copies of the Cindy Bowser emails" and that "counsel's recollection is that Debtor's counsel has represented this to be true." Ex. 22 (Trustee's Notice of Hearing and Motion for Contempt of Court, ¶ 8.A, at 2).[3] The Trustee further states that he complained to Hecker's counsel about Hecker's failure to produce his own emails and that Hecker's counsel agreed that he "would fully-comply with the Trustee's turnover order by December 21, 2009." Ex. 22 (Trustee's Notice of Hearing and Motion for Contempt of

_____

[2] On January 13, 2010, the Trustee commenced an adversary proceeding against Hecker seeking a denial of his discharge, pursuant to 11 U.S.C. § 727. *Seaver v. Hecker (In re Hecker),* BKY No. 09-50779 (Doc 365). Among other things, the Trustee seeks to deny Hecker's discharge on the grounds that he withheld information and failed to obey a lawful court order, including Hecker's failure to comply with the Court's turnover order relating to producing his emails. *Id.,* (Count 7, ¶ 91: "Hecker has not complied with paragraphs 3, 8, 9, 16 and 17 of the October 21, 2009 order and so has not complied with paragraph 2 of the November 19, 2009 order."). Paragraph 17 of the October 21, 2009 order required Hecker to turnover his emails.

[3] As the Court may recall, Cindy Bowser was an executive assistant working for one of Hecker's companies who was routinely copied on Hecker's emails. She made copies of certain of Hecker's emails and produced them to Chrysler Financial pursuant to its subpoena. Chrysler Financial produced these emails to the Trustee in response to the Trustee's subpoena. Thus, consistent with his practice of only turning over information which he knew the Trustee already had, Hecker re-produced the very same emails the Trustee already had.

Court, ¶ 8.A, at 3). Again, despite that representation, Hecker still did not produce his own emails, but instead "**every single e-mail produced on December 21, 2009 was printed from the Yahoo account of Ms. [Christi] Rowan"** – Hecker's girlfriend. Ex. 22 (Trustee's Notice of Hearing and Motion for Contempt of Court, ¶ 8.A, at 3) (emphasis in original). In particular, the Trustee complains that, although the emails produced by other parties show that Hecker primarily used the "heckerauto" email account, Hecker did not produce emails from this account. Ex. 22 (Trustee's Notice of Hearing and Motion for Contempt of Court, ¶ 8.A, at 3).

In response to the Trustee's second contempt motion, Hecker apparently made another email production to the Trustee on January 25, 2010. Ex. 28. After reviewing Hecker's latest production, the Trustee' s counsel complained of numerous gaps and deficiencies, ultimately concluding "**it appears that the Debtor has never actually gone to his own e-mail records and made an effort to provide the responsive e-mail**." Ex. 28 (emphasis added).

**B.    Hecker's Obstructionist Tactics and False Representations in this Adversary Proceeding.**

As the Court is well-aware, Hecker has shown a similar contempt for Chrysler Financial's attempts to obtain discovery in this adversary proceeding. Initially, Hecker categorically refused to answer Chrysler Financial's discovery based on the wholly groundless claim that merely filing a stay motion relieved him of all discovery obligations.[4] After this Court denied Hecker's stay motion on October 22, 2009, Hecker continued to stonewall discovery by raising three excuses. He claimed that the Fifth Amendment shielded him from discovery

---

[4] Ex. 6 (Debtor-Defendant Dennis E. Hecker's Combined Responses to Plaintiff's First Set of Continuing Interrogatories, First Set of Requests for Production of Documents and First Set of Requests for Admissions to Defendant (September 28, 2009)).

obligations.[5]   He asserted a barrage of frivolous objections to each and every one of Chrysler Financial's discovery requests.[6]   And he claimed that the government had seized all of his records, preventing him from complying with discovery.[7]

After Chrysler Financial pressed for answers to its discovery, counsel for Hecker and Chrysler Financial had a discovery conference call on November 13, 2009, which included among other things, Hecker's claim that responsive documents had been seized by the government.   At Hecker's counsel's insistence, the discovery conference was transcribed. During the discovery conference, Hecker's counsel admitted that in mid-October he "had a conversation with the U.S. Attorney, at which point she said I could come look at them [the documents seized by the government]."   Ex. 27 (Discovery Conference Transcript (November 13, 2009), at 8).   Hecker's counsel said, however, that he had not "had a chance yet to go review" those records, which he said constituted "a fair number of documents that existed at the Hecker offices."   Ex. 27 (Discovery Conference Transcript (November 13, 2009), at 7). Hecker's counsel promised to review and produce appropriate documents by December 11, 2009 (which the parties subsequently extended to December 14, 2009).

As the Court will recall, when it was time to exchange documents on December 14, 2009, Chrysler Financial produced more than 50,000 pages of documents and Hecker produced none. Chrysler Financial therefore filed a motion to compel.   In response to Chrysler Financial's

---

[5] Ex. 12 (Defendant's Answers to Plaintiff's First Set of Continuing Interrogatories (December 31, 2009) and Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents (December 31, 2009).

[6] *See* Note 4, *supra.*

[7] Ex. 12 (Defendant's Answers to Plaintiff's First Set of Continuing Interrogatories (December 31, 2009), answers to interrogatory nos. 1(c) and 2(c) and Defendant's Supplemental Responses to Plaintiff's First Set of Requests for Production of Documents (December 31, 2009), responses to document request nos. 7, 8, 9, 11, 15, 24 and 25).

motion to compel, on New Year's Eve Hecker made a small production of about 100 pages (most of which were previously attached to pleadings in the case[8]). Hecker's counsel also served new answers to interrogatories and responses to document requests. Ex. 12. Citing those supplemental responses, Hecker claimed that he was doing his best to comply with his discovery obligations and that Chrysler Financial's motion to compel should be denied. Ex. 15 (Hecker's Responsive Mem. (December 31, 2009), at 6); Ex. 16 (Hearing Transcript (January 6, 2010), at 27). This Court rejected Hecker's excuse, granted Chrysler Financial's motion to compel, and ordered Hecker to answer Chrysler Financial's discovery by January 19, 2010. Ex. 18 (Order Compelling Discovery and Awarding Fees and Costs).

Significantly, in Hecker's New Years Eve discovery responses, Hecker continued to assert that his records were not available to him because they had been seized by the government. Thus, in response to seven of Chrysler Financial's document requests Hecker stated:

> Responsive documents are … in the possession, custody and control of the U.S. Attorney's Office .... Defendant is in the process of obtaining said documents and will produce responsive documents upon receipt and review.

Ex. 12 (Defendant's responses to Chrysler Financial's Requests for Documents (December 31, 2009), response to request nos. 7, 8, 9, 11, 15, 24 and 25). Hecker took the same position in his responses to interrogatories. In response to interrogatory no. 1(c), which asked Hecker to

---

[8] Hecker's New Year's Eve production contained copies of printouts of 18 emails. Ex. 14. Eleven of these emails were printed from the computer of Jim Gustafson, who continued to work at least for one of Hecker's companies (Walden Leasing) through at least mid-October, 2009. Ex. 14. The email addresses used by Mr. Gustafson up through at least mid-October, 2009 were "JGustafson@dennyhecker.com" or "Jim.Gustasfson@waldenauto.com." Ex. 14. It appears therefore that Mr. Gustafson was able to obtain access to Hecker's company computer system and obtain emails from dennyhecker.com and waldenauto.com.

identify documents that support, negate, or otherwise related to any denial, affirmative allegation or affirmative defense in his answer to the complaint, Hecker asserted:

> The **majority** of responsive documents are in the possession, custody, and control of the U.S. Attorney's Office and R&B Document Technologies, … Once Defendant obtains possession of these documents they will be produced as appropriate. **To the extent that Defendant currently possesses responsive documents they are enclosed**.[9]

Ex. 12 (Defendant's answers to Chrysler Financial's interrogatories (December 31, 2009), answer to interrogatory no. 1(c) (emphasis added)). Similarly, in response to interrogatory no. 2(c), which asked Hecker to describe all communications relating to the doctored Hyundai letter attached to the complaint as Exhibit F or any other letter from Hyundai in November, 2007 offering to sell vehicles to Hecker's companies, Hecker stated that "the U.S. Attorney's Office possesses these documents and Defendant is unable to respond completely until he can obtain and review the documents." Ex. 12 (Defendant's answers to Chrysler Financial's interrogatories (December 31, 2009), answer to interrogatory no. 2(c)). Significantly, the representation that responsive information was being held by the government was made not only by Hecker's counsel, but by Hecker himself. Ex. 13 (Hecker's signed answers to interrogatories (December 31, 2009)).

Hecker's response to Chrysler Financial's motion to compel discovery reiterated Hecker's claim that his records were unavailable to him because they had been seized by the federal government as part of the criminal investigation. First, Hecker continued to insist that the "majority" of the responsive documents were in the possession of the government and that he had been making ongoing efforts to "obtain requested information that was confiscated from his various business locations and by the various investigating authorities." Ex. 15 (Hecker's

---

[9] As noted above, Hecker's New Year's Eve production consisted of approximately 100 pages, including only 18 emails.

Responsive Mem. (December 31, 2009) (Doc 69), at 3). Second, Hecker said that he was hampered in responding to discovery because "[t]his is not a situation in which Hecker has free and unhindered access to the requested discoverable documents." *Id.* Third, Hecker represented that "when the documents are obtained from the U.S. Attorney's office, Hecker will make them available" to Chrysler Financial. *Id.,* at 6. Finally, having asserted that the government had possession of most of the responsive information, Hecker specifically represented that he "has **responded to the extent he is currently able** and **continues to use his best effort** to procure those documents that are responsive to Plaintiff's written discovery requests." *Id.*

At the hearing on Chrysler Financial's motion to compel, Hecker's counsel acknowledged that Hecker's previous discovery responses (prepared by other counsel) were inadequate, that Hecker had been "slow" in producing responsive information, and that Chrysler Financial was entitled to responsive information in the possession of the government. Ex. 16 (Transcript of Proceedings (January 6, 2010), at 25-26). He concluded by representing to the Court "We're doing our best." *Id., at* 27.

As noted above, this Court granted Chrysler Financial's motion to compel. As part of its order, this Court barred Hecker from taking discovery until he fully complied with his own discovery obligations. Ex. 18 (Order (Doc 73, ¶ 5). This Court explained to Hecker that fully and completely responding to Chrysler Financial's discovery must be "the first and only order of business …" until Hecker had complied with his discovery obligations. Ex. 16 (Transcript of Proceedings (January 6, 2010), at 37). The Court's order specifically provided that "In the event that Hecker fails to comply with this order, Chrysler Financial may seek appropriate relief, including but not limited to sanctions pursuant to Fed.R.Bkr.P. 7037, incorporating Fed.R.Civ.P. 37(b)(2)(A)." Ex. 18 (Order (Doc 73), ¶ 7).

As we show below, although Hecker claims that he fully complied with the Court's order and is charging ahead with his own discovery and depositions, in reality Hecker has not even come close to satisfying this Court's discovery order. To the contrary, Hecker continues to stonewall, particularly with respect to email discovery. Moreover, it is now clear that Hecker's oft-repeated assertion that he did not have access to his records has always been untrue.

## C.    Hecker's Response to the Court's Order Compelling Discovery.

### 1.    Hecker's Failure to Identify the Source of His Document Production.

Based on Hecker's prior representations, it was apparent that at least some of the documents to be produced by Hecker would be copies of records seized by the federal government as part of its criminal investigation. Although Chrysler Financial could not obtain any of the those documents from the government, Hecker has had access to them since at least October, 2009. Ex. 27 (Discovery Conference Transcript (November 13, 2009), at 8).

It is standard practice for the government to prepare an index or "search warrant inventory" of the records it has seized. In order a facilitate its evaluation of the completeness of Hecker's anticipated document production, the day after the Court granted Chrysler Financial's motion to compel, Chrysler Financial's counsel wrote to Hecker's counsel requesting a copy of the search warrant inventory and asking Hecker to identify the categories from the search warrant inventory that Hecker had copied for its document production to Chrysler Financial. Ex. 17. Hecker produced the government's search warrant inventory, but failed to identify the source of the documents produced to Chrysler Financial. Exs. 20, 24 and 31.[10]

---

[10] The government apparently provided Hecker with a search warrant for each of the two raids on his corporate headquarters, only one of which was provided to Chrysler Financial. Nierengarten Decl., ¶ 33.

## 2. Hecker's Grossly Incomplete Production, Particularly With Respect to Emails.

On January 19, 2010, the due date established by this Court's order compelling discovery, Hecker served supplemental responses to Chrysler Financial's interrogatories, document requests, and requests for admission. Ex. 20. Hecker also produced two discs containing copies of documents apparently obtained from the documents in the possession of the government. *Id.* The following day Hecker produced another disc containing copies of documents apparently obtained from the government. Ex. 21. And on January 21, 2010, Hecker made a paper production, which contained a number of printouts of emails from one of Hecker's attorneys (Bruce Parker). Ex. 23. These emails were largely communications between Hecker's attorneys and Chrysler Financial's attorneys.[11] Hecker also not provide any provide a privilege log concerning the documents he produced, despite the Court's order that he do so. Ex. 31.

Chrysler Financial promptly analyzed Hecker's production, which revealed that Hecker simply had not complied with this Court's discovery order, particularly with respect to his own emails. Thus, Chrysler Financial's review of Hecker's document production shows the following:

i    Hecker produced 7,227 documents. Ott. Decl., ¶ 2.

i    The Hecker production consisted entirely of scanned images of printed documents. Ott Decl., ¶ 2. No documents were produced in their native format, as specifically

---

[11] Chrysler Financial already had produced its lawyer's emails with Hecker's counsel, so although Hecker clearly was obligated to search for and produce non-privileged emails in the possession of his lawyers, this production gave Chrysler Financial copies of emails it already had.

requested by Chrysler Financial in its document requests served on August 28, 2009 pursuant to Fed.R.Civ.P. 34(b)(1)(C).[12] Ott Decl., ¶ 2.

i The vast majority of the documents appear to have been produced from the records of Hecker's various limited liability companies. Among these financial records were 474 emails. Of these 474 emails, 76 were authored by Susan Miller, 50 were authored by personnel at one of Hecker's banks, 38 were authored by Hecker, 28 were authored by Erik Dove, 25 were authored by Darwin Lund, 16 were authored by Richard Hage, and 11 were authored by Molly Kaplan. Additionally, of the 474 emails 186 were sent prior to October 1, 2007 and thus of limited relevance to the pending lawsuit. Ott Decl. ¶ 4

i Among the remaining 382 documents that are not attached to financial records, Chrysler Financial's review located 179 emails. Of these 179 emails, 76 were authored by people associated with Chrysler Financial. Stuart Rozen, one of Chrysler Financial's outside counsel, authored 32 of the emails, the largest number by any individual. Kevin Kline, one of Chrysler Financial's in-house counsel, authored 24 of the emails. John Bowker authored 12. Janet Toronski authored 6 emails. Anne Kline and Thomas O'Brien authored one email each. Of the remaining 103 emails, only 23 were authored by Hecker, 16 by Erik Dove, 15 by Frank Dankovich, and 4 by Bruce Parker. Ott Decl., ¶ 5. Of the 23 emails authored by Hecker, 9 emails were either sent to Chrysler Financial personnel or forwarded a message sent by someone

---

[12] Ex. 3 (Chrysler Financial's request for documents (August 28, 2009) ("Pursuant to Fed.R.Civ.P. 34(b)(1)(C), all electronically stored information is to be produced in its native format."); Ex 19 (January 15, 2010 letter from N. Nierengarten to W. Skolnick: "In connection with Hecker's forthcoming document production pursuant to Judge Kressel's Order compelling discovery, we wish to remind you that Chrysler Financial's requests for production of documents requires, pursuant to Fed.R.Civ.P. 34(b)(1)(C), that all electronically stored information responsive to the requests be produced in its native format.")

at Chrysler Financial. Ott Decl. ¶ 5. As with the rest of Hecker's production, none of the emails were produced in native format as requested by Chrysler Financial at the very outset of discovery.

Hecker's email production is simply not credible. In contrast to Hecker's production, Chrysler Financial produced at least 5,000 emails, of which at least 1,400 were authored by John Bowker, a key Chrysler Financial witness. Ott Decl., ¶ 6. Even more telling, a high-level evaluation of the emails produced by Cindy Bowser in response to Chrysler Financial's subpoena revealed that the electronically stored information produced by Ms. Bowser includes over 20,000 non-privileged emails during the period July 30, 2008 to September 10, 2009 (except for two emails dated September 14, 2007). Ott Decl., ¶ 7. Of those, approximately 18,837 emails appear to have been sent by Hecker himself. Ott Decl. ¶ 7. Yet for the same period Hecker produced to Chrysler Financial only 25 emails on which he was the author. Ott Decl., ¶ 7. Thus, it is patently obvious that Hecker has not honored his obligation to produce even his own emails, let alone the remaining responsive information.

> 3. **The Government's Search Warrant Inventory Demonstrates that Hecker Did Not Produce Information in the Possession of the Government and Has Possession of Electronically Stored Information, Including Emails, But Did Not Produce Such Information to Chrysler Financial.**

As noted above, when Hecker produced documents on January 19, 2010, he included the government's search warrant inventory for the items seized or copied at Hecker's corporate headquarters at 500 Ford Rd., Minneapolis, MN, but failed to specify the items from the inventory that he had copied. Ex. 20 (June 17, 2009 - "Inventory Listing of All Items Seized at Search Warrant Site"). Consequently, Chrysler Financial sent a second letter to Hecker's counsel specifically asking him to identify the categories he designated for copying to ensure that

Hecker had made a complete production. Ex. 24. Hecker's counsel again declined to answer the question, stating that he did not understand Chrysler Financial's concern about a "complete production" and asserting that the items on the inventory "are the documents that were copied and provided to us" and these in turn were provided to Chrysler Financial. Ex. 26.

Notwithstanding his representation that he copied and produced everything, however, it is apparent that Hecker did **not** produce all the information in the possession of the government. In particular, even though Hecker has refused to identify the categories from the inventory that he did copy and produce, it is perfectly obvious that **Hecker did not produce any of the electronically stored information delineated in the search warrant inventory**.

The search warrant inventory lists a series of "images" from computer hard drives, data drives, operating systems, and documents that the Federal Bureau of Investigation apparently made from Hecker's computers and servers when it searched Hecker's offices in June 2009.[13] Ex. 20. These "images," which for simplicity's sake we will refer to as the "FBI Images," include the following items:

- "**Image** of operating system drive from HP Proliant File1 Server"

- "**Image** of data drive from HP Proliant File1 Server"

- "**Image** of operating system drive from Exchange-MBX Server"

- "**Image** of Data Drive from Exchange-MBX Server"

- "**Image** of Hard drive from IBM eServer File5 Server"

- "**Image** of hard drive from HP Compaq Laptop"

---

[13] The words "image" or "forensic copy" are terms of art, which basically mean the same thing. *See The Sedona Conferences: Best Practice Guidelines & Commentary for Managing Information in the Electronic Age – Appendix F: Glossary* (September 2005), at 83 ("A forensic copy is an exact copy of the entire physical storage media (hard drive, CD-ROM, DVD-ROM, tape, etc.), including all active and residual data and unallocated space on the media. Forensic copies are often called 'image' or imaged copies.'"); Wunsch Decl., ¶¶ 3 and 4.

- "**Image** of hard drive from iMac"

- Molly Kaplan's Desk "**Forensic copy** of documents and setting folder from HP Compaq"

This list of the FBI Images from the search warrant inventory establishes two incontestable facts. First, although Hecker has refused to say one way or the other whether he produced copies of computerized records imaged by the government, it is obvious that he did not. For example, email is stored on Exchange servers (Wunsch Decl., ¶¶ 5-7), but Hecker produced only a tiny number of emails (a fraction of what Chrysler Financial produced), none in native form. Hecker produced only a few of his own emails, though all of them should be included in the FBI Images. He produced nothing from Molly Kaplan's desk. Ott Decl., ¶ 3. And if there were any doubt, the government has confirmed that Hecker's counsel did **not** review or copy any of the electronic data imaged by the FBI, so he simply could not have produced copies of the FBI Images to Chrysler Financial. Nierengarten Decl., ¶ 33.

Second, and equally troubling, the search warrant inventory makes it clear that, with a few exceptions, [14] rather than seizing Hecker's computers and servers, the FBI merely copied ("imaged") them. Wunsch Decl. ¶ 7. The servers and folders that the FBI imaged but did not seize contain the emails and other productivity documents (*e.g.,* spreadsheets, word processing documents) for Hecker's operations. Wunsch Decl., ¶¶ 5-7. Thus, contrary to his repeated representations to the Court, the Trustee, and Chrysler Financial that his computerized information was seized and unavailable, Hecker has always had access to the information on those computers and servers. [15] Wunsch Decl. ¶ 8.

---

[14] The government did physically seize several computers and Hecker's Blackberry, which in accordance with customary practice, are specifically identified in the search warrant inventory. Ex. 20.

[15] In the event that Hecker now claims that his emails and other electronically stored information has been lost or destroyed, he should be sanctioned for spoliation of evidence. *See e.g., Gutman v. Klein,* No. 03

Even more troubling, although he repeatedly told the Court, the Trustee, and Chrysler Financial that the computerized information was unavailable, it appears that Hecker has deliberately accessed his own computers to selectively disclose emails that he thinks help his case. For example, in his Answer, Hecker alleged that "on November 19, 2007, Mr. John Bowker sent Hecker an email confirming that Bowker knew Rosedale Dodge was purchasing vehicles from Hyundai Motor America, not Walden Fleet Services II, Inc." Ex. 2 (Answer, ¶ 20.)[16] Also, in connection with Hecker's stay motion, Hecker initially attached a printout of an email from John Bowker at Chrysler Financial. Ex. 4. When Chrysler Financial questioned why Hecker's brief referenced an email with a different date than the one attached to the supporting declaration, Hecker promptly substituted a print out of the email he intended to attach. Ex. 5. Thus, it appears that Hecker can find emails when he wants to.

It is also noteworthy that the government made a "forensic copy" of Molly Kaplan's computer. Wunsch Decl., ¶¶ 4 and 7. Ms. Kaplan is the Hecker employee who physically altered the letter from Hyundai that Hecker tendered to Chrysler Financial (Complaint, Ex. F). In other words, Hecker has, or at least had, the computer on which the alterations were made. Chrysler Financial specifically asked for all documents relating to any modifications to this

---

Civ. 1570, 2008 WL 5084182, at *2 (E.D.N.Y. Dec. 2, 2008) (adopting finding of the Magistrate Judge that spoliator acted in bad faith by intentionally deleting computer files and granting a default judgment for defendants' intentional destruction of evidence).

[16] Chrysler Financial specifically asked for this and any other related emails. Ex. 3 (Document Request No. 23: "All documents relating to your allegation in paragraph 20 of Your Answer, including but not limited to the November 19, 2007 email from John Bowker to Hecker and any related emails, documents, or other communications.")

letter.[17]   Wunsch Decl., ¶ 8.   Yet, Hecker has failed to produce the requested information notwithstanding the Court's order requiring him to do so.

Thus, it is readily apparent that Hecker has had access to the information that Chrysler Financial has sought for months, has continually refused to produce that information and, instead, selectively produced cherry-picked documents that he thinks are helpful to his case.

### D.  Hecker Unilateral Resumption of His Aggressive Discovery.

On January 27, 2010, Chrysler Financial sent a letter to Hecker's counsel raising a number of discovery issues and proposing a tentative deposition schedule, assuming that the outstanding discovery issues could be resolved.  Ex. 24.  In particular, Chrysler Financial advised Hecker that it was in the process of reviewing Hecker's documents and anticipated that it would take at least a week to complete the process, inquired as to the status of documents that had not yet been produced, repeated its request that Hecker identify those documents on the search warrant inventory that had been copied by Hecker, and proposed starting deposition discovery in mid-to-late February (assuming that Hecker' production was complete and there were not other complications).   Ex. 24.   Due to the serious delay occasioned by Hecker's discovery intransigence, Chrysler Financial also proposed that the parties stipulate to a short delay in the trial date.

The following day, Hecker served a deposition notice for Molly Kaplan, the assistant to Hecker who physically altered the Hyundai letter that was delivered to Chrysler Financial (Complaint, Ex. F) and whose computer was imaged by the government.  Ex. 25.  As discussed above, the government made a forensic copy of specific folders from Ms. Kaplan's computer, which is likely the computer on which the doctored letter was created.  Ex. 20 (Control Item

---

[17] Ex. 3 (Document Request No. 13: "All documents related to any modifications that You made or caused to be made to a November 7, 2007 letter from Hyundai offering to sell vehicles to Walden, a copy of which is attached to Chrysler Financial's First Set of Requests for Admission as Exhibit 1.")

138); Wunsch Decl., ¶¶ 4 and 7. Then, on January 29, 2010, Hecker responded to Chrysler Financial's January 27 letter, claiming that Hecker's "production is complete" and that he intended to move forward with depositions. Ex. 26. Hecker also agreed to the short delay in the trial date proposed by Chrysler Financial. Ex. 26. On February 2, 2010, Chrysler Financial advised Hecker of the gross deficiencies in his production and his failure to comply with the Court's order. Ex. 31. Since Hecker did not comply with the Court's order, it also advised Hecker that he was barred from taking Ms. Kaplan's deposition. Ex. 31.

During a telephone conference on February 3, 2010, Hecker's counsel attempted to blame the deficiencies in gathering electronically stored information in the possession of the government on other counsel, but insisted that he intended to proceed with Ms. Kaplan's even though critical information from Ms. Kaplan's computer had not been produced. Since Hecker has agreed to delay the trial date, it seems apparent that his motivation for unilaterally and aggressively pressing ahead with depositions such as that of Ms. Kaplan is to find out what these witness might say in a criminal trial. In that regard, Hecker made clear that he intends to examine the witnesses on what they may have told the grand jury, as he did during the deposition of Ms. Bowser. Ex. 26.

## ARGUMENT

### A. Hecker Had An Obligation to Conduct a Thorough Search for Documents and Electronically Stored Information Responsive to Chrysler Financial's Document Requests, Which Was Reinforced by This Court's Order Compelling Discovery.

Hecker has always had an affirmative obligation (further reinforced by this Court's order compelling discovery) to search for and produce documents and information requested in Chrysler Financial's document requests. "Rule 34 . . . impose[s] on [a litigant] an affirmative duty to seek information reasonably available." *Cache La Poudre Feeds, LLC v. Land O'Lakes*

*Farmland Feed*, *LLC*, 244 F.R.D. 614, 626 (D. Col. 2007). *See also 23 Anderson v. Cryovac, Inc.,* 862 F.2d 910, 929 (1st Cir. 1988) ("once a proper discovery request has been seasonably propounded, we will not allow a party sentiently to avoid its obligations by . . . failing to examine records within its control"); *A. Farber and Partners, Inc. v. Garber,* 234 F.R.D. 186, 189 (C.D. Cal. 2006) (holding that a party has an obligation to conduct a reasonable inquiry in the course of responding to requests for production); *Metropolitan Opera Ass'n, Inc. v. Local 100*, 212 F.R.D. 178, 181 (S.D.N.Y. 2003) ("Our adversary system relies in large part on the good faith and diligence of counsel and the parties in abiding by these rules and conducting themselves and their judicial business honestly."); *Finkelstein v. District of Columbia,* 1987 WL 14976, *6 (D. D.C. 1987) (suggesting that Rule 34 contemplates that a party will conduct a diligent search through all likely repositories of records); *In re Independent Service Organizations Antitrust Litigation,* 168 F.R.D. 651, 653 (D. Kan. 1996) (party cannot meet its discovery obligations by "sticking its head in the sand and refusing to look for the answer").

"[T]he discovery process relies upon the good faith and professional obligations of counsel to <u>reasonably</u> and <u>diligently</u> search for and produce responsive documents." *Smith v. Life Investors Ins. Co. of Am.*, No. 2:07-cv-681, 2009 U.S. Dist. LEXIS 58261, at *14-*15 (W.D. Pa. July 9, 2009) (emphasis added). "[B]oth the attorneys and [their client] ha[ve] an obligation to conduct an appropriately thorough search for documents … for the purposes of . . . [responding to] discovery demands." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. CV 09-601, 2009 U.S. Dist. LEXIS 104020, at *27 (E.D.N.Y. Nov. 9, 2009); *see also Moore v. Napolitano*, No. 00-953, U.S. Dist. LEXIS 69319, at *17 (D.C. Cir. Aug. 7, 2009) (commenting favorably on magistrate judge's directive ordering "the Defendant to do what the Federal Rules

of Civil Procedure already require in no uncertain terms, and that is to search for the responsive documents and produce them.").

Hecker's duty to search for responsive documents extends both to hard copies and electronically stored information. Fed. R. Civ. P. 34(a)(1)(A); Advisory Committee Notes for the 2006 Amendments ("Rule 34(a) is amended to confirm that discovery of electronically stored information stands on equal footing with discovery of paper documents."); *see also Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05 Civ. 4837, 2006 U.S. Dist. LEXIS 32211, 2006 WL 1409413, at *5-6 (S.D.N.Y. May 23, 2006) (emphasizing the affirmative duty to search for sources of electronic information); *R&R Sales, Inc. v. Ins. Co.*, 251 F.R.D. 520, 524 (S.D. Cal. 2008) ("The discovery of documents applies to electronic data compilations, as announced by the Advisory Committee Notes to the 1970 Amendments to Federal Rule of Civil Procedure 34."); *Crown Life Ins. Co. v. Craig,* 995 F.2d 1376, 1382-83 (7th Cir. 1993) ("the Advisory Committee notes to the 1970 amendment of Federal Rule of Civil Procedure 34 make clear that computer data is included in Rule 34's description of documents.").

> Auxiliary hard drives, zip drives, USB devices, CD's and other electronic storage devices essentially perform the same function as did a file cabinet in the pre-electronic era. Therefore, [litigants] have an obligation to search all such storage devices for relevant documents just as they would have had to do had all the information been printed out and stored in hard copy format. The fact that duplicate documents may have been stored and maintained in more than one place is irrelevant to the duty to search locations where responsive documents might be found.

*In re Wilson*, No. 06-cv-2575, 2009 U.S. Dist. LEXIS 42046 at *15-*16 (D. Col. Apr. 30, 2009).

It is beyond question that a party's duty to search for and produce relevant documents includes an obligation to disclose emails. Advisory Committee Notes to Rule 34, 2006 Amendment

("Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. A common example often sought in discovery is electronic communications, such as emails.")

Hecker violated his discovery obligations and this Court's order compelling discovery in at least four ways. *First*, Hecker completely failed to review and produce the electronically stored information, including emails, that the FBI imaged from his computers and servers, all of which was made available to Hecker by the government no later than October 2009. The government has confirmed that Hecker never sought to review, copy, or produce any of this electronically stored information. Nierengarten Decl., ¶ 33.

*Second*, while claiming throughout the course of the proceedings (including his verified answers to interrogatories) that most if not all critical information could not be produced because it had been seized by the government, Hecker failed to acknowledge that the government merely copied most of his computerized records and that those records remained under his control. Then, when he produced documents to Chrysler Financial Hecker failed to review and produce information in his own possession, including emails that remained on his computers and exchange server after the government made copies of the data on them. Emails obtained through other means show that Hecker wrote literally thousands of emails, yet despite this Court's order Hecker has produced only a tiny fraction of them to Chrysler Financial.

*Third*, despite this Court's unequivocal order, Hecker failed to provide a privilege log covering the documents he produced on January 19, 2009 and later.

*Finally*, although this Court expressly prohibited Hecker from pursuing offensive discovery until he fully complied with the discovery order, Hecker has aggressively pursued discovery. Among other things, he has noticed the deposition of Molly Kaplan for February 8,

2010, even though he failed to produce information from her computer listed on the government's search warrant inventory.

**B.**     **Hecker's Failure to Comply to With the Court's Order Search is Discovery Abuse.**

Hecker's failure to fulfill his discovery obligations appears to be deliberate.   At best, Hecker has demonstrated an "unconscionably careless procedure to handle discovery matters," which, even if not deliberate, "suggesting a callous disregard for [his] obligations as a litigant." *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 556 (N.D. Cal. 1987) (imposing sanctions for grossly insufficient efforts to produce discoverable information).  "That . . . [Hecker] continually professed full compliance – falsely and without making a reasonable inquiry – constitutes such gross negligence as to rise to intentional misconduct." *Metropolitan Opera Ass'n, Inc. v. Local 100*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003).

Hecker's discovery abuse is further compounded by his hide-the-ball tactics from the outset of his bankruptcy and throughout this adversary proceeding.  After months of stalling and stonewalling through baseless objections (which were overruled by the Court), Hecker made a production and then claimed full compliance with this Court's order.  As discussed in detail above, Hecker's false claims of full compliance when he in fact failed to produce documents made available to him by the government and documents in his own possession is precisely the kind of conduct that warrants the imposition of the most serious discovery sanctions.

**C.**     **The Appropriate Sanction for Hecker's Flouting of this Court's Order Compelling Discovery is the Entry of a Default Judgment Against Him.**

Hecker's false representations, discovery abuse, and blatant disregard of this Court's order compelling discovery warrant a severe response.  This Court warned Hecker that "if Chrysler is back here, the sanctions are going to get higher …."  Ex. 16 (Transcript of Proceedings before the Honorable Robert Kressel, at 36)  And its order compelling Hecker to

comply with his discovery obligations expressly warned him that sanctions might issue. Ex. 18 (Order, ¶ 7 ("In the event that Hecker fails to comply with this order, Chrysler Financial may seek appropriate relief, including but not limited to sanctions pursuant to Fed.R.Bkr.P. 7037, incorporating Red.R.Civ. 37(b)(2)(A).").   In light of the seriousness of Hecker's discovery violations and disregard of this Court's order, we respectfully request that the Court enter a default judgment against Hecker.

"Rule 37(b)(2)(C) grants a district court the authority to enter a default judgment against a party who abuses the discovery process." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1992).   Although the entry of default judgment should be a "rare judicial act, . . . [t]he United States Supreme Court has strongly indicated . . . that the harsh remedy of default judgment . . . is appropriate where a party's 'failure to comply [with discovery] has been due to . . . willfulness, bad faith, or any fault of [the party]." *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1992) (quoting *Societe Internacionale v. Rogers*, 357 U.S. 197, 212 (1958)); *see also Everyday Learning Corporation*, 242 F.3d at 817-818 (quoting *Avionic v. General Dynamics Corp.*, 957 F.2d 555, 558 (8th Cir. 1992) ("When the facts show willfulness and bad faith, as in this case, the district court need not investigate the propriety of a less extreme sanction.   In such cases, 'the selection of a proper sanction, including dismissal, is entrusted to the sound discretion of the district court.'"); *Barnhill v. United States*, 11 F.3d 1360, 1368 (7th Cir. 1993) ("[T]here are species of misconduct that place too high a burden . . . for a court to allow a case to continue.").   "The district court is not constrained to impose the least onerous sanction available, but may exercise its discretion to choose the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1991); *see also 535 Broadway Assocs. v. Commercial Corp. of Am.*, 159 B.R. 403, 407 (S.D.N.Y. 1993) ("the era

when courts shied away from the imposition of the full range of sanctions enumerated in Rule 37, including dismissal, is a thing of the past.").

As the Supreme Court has noted, "here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

Willful discovery misconduct that supports a sanction of a default judgment is shown where the conduct at issue appears to have been intentional or at least grossly deficient. *See In re Golant*, 239 F.3d at 936 (holding that willful and bad faith discovery violations were established through a finding that the judgment debtor's "failure to comply stems from the fact that if he were to comply he would, in effect, sink himself."). Grossly deficient processes to gather potentially relevant documents and information, or a failure to reasonably inquire into those processes, may also warrant a sanction of default judgment. *See Metropolitan Opera Ass'n, Inc. v. Local 100*, 212 F.R.D. 178, 222 (S.D.N.Y. 2003) (professing full compliance with discovery obligations "without making a reasonable inquiry constitutes such gross negligence as to rise to intentional misconduct").

Whether the discovery abuses are the fault of the party or his counsel is of no import. A default judgment sanctions is warranted in either case. It is a "well-established principle that a party is responsible for the actions and conduct of his counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions." *Boogaerts v. Bank of Bradley*, 961 F.2d 765, 768 (8th Cir. 1992); *Everyday Learning*

*Corporation*, 242 F.3d at 817 (holding that the district court acted within its discretion in imposing dismissal and default judgment sanctions as a result of counsel's actions and "without a finding that [the defendant] acted in bad faith or was herself guilty of willful misconduct").

Courts in numerous cases have found that entry of judgment is an appropriate sanction where, as here, a litigant has repeatedly and deliberately failed to remedy its discovery shortcomings. *See, e.g., Everyday Learning Corporation v. Larson*, 242 F.3d 815, 817-818 (8th Cir. 2001) (affirming default judgment and dismissal of counterclaims as a sanction for repeated discovery abuses by defendant's counsel, including "extensive delays in producing . . . business records"); *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009-1010 (8th Cir. 1992) (affirming default judgment for repeated failures to comply with discovery obligations); *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1023 (8th Cir. 1991) (affirming entry of default judgment against defendants upon finding that defendants' discovery responses willfully failed to disclose the existence of numerous relevant documents); *FDIC v. Daily*, 973 F.2d 1525, 1530-32 (10th Cir. 1992) (upholding district court's determination that defendant's failure to provide discovery had been strategic rather than inadvertent and concluding that entry of judgment did not violate due process); *Newman v. Metro. Pier & Exposition Auth.*, 962 F.2d 589, 591 (7th Cir. 1992) ("A plaintiff's failure to comply with discovery orders is properly sanctioned by dismissal of suit, a defendant's by entry of a default judgment."); *In re Golant*, 239 F.3d 931, 939 (7th Cir. 2001) (affirming default judgment on adversary complaint as a discovery sanction against judgment debtor for repeatedly failing to comply with discovery orders compelling him to produce relevant documents); *Metropolitan Opera Ass'n, Inc. v. Local 100*, 212 F.R.D. 178, 231 (S.D.N.Y. 2003) (granting judgment against defendants as a sanction for discovery abuses).

A sanction of entry of a default judgment is just as appropriate in a bankruptcy proceeding, upon a proper showing, as it is in other cases. "Where a debtor in a bankruptcy refuses to be completely forthright with information regarding his financial dealings and resources – information that is of paramount importance to an efficient and fair bankruptcy proceeding – the bankruptcy court is left with little recourse but to enter default judgment against the debtor. Accordingly, [that] sanction, . . . although severe, [is] appropriate." *In re Golant*, 239 F.3d 931, 937-38 (7th Cir. 2001); *In re Thomas Consolidated Indus., Inc. v. Herbst*, 2005 WL 3776322, Case No. 04-CV-6185, at *10 (N.D. Ill. 2005) (affirming dismissal of a trustee's claims as a sanction for violating the bankruptcy court's discovery orders, which included the trustee providing "the same non-responsive answer the court had already rejected" in "blatant violation of the court's order").

Hecker's repeated failures to provide discovery; his false representation that he could not produce centrally relevant documents because they are not available to him; and his blatant disregard of this Court's order compelling full discovery responses and document production prior to initiating offensive discovery warrant the entry of default judgment against him.

On the record before the Court, Hecker's discovery misconduct is willful, in bad faith, and prejudicial. Hecker has persistently refused to satisfy his discovery obligations and, in doing so, has interfered with Chrysler Financial's efforts to prepare its case in this adversary proceeding. Hecker's discovery misconduct has prejudiced Chrysler Financial's ability to be ready for a trial currently scheduled for March 22, 2010. Moreover, it has become clear that nothing the Court says, does, or orders will elicit Hecker's compliance. As a result, default judgment should be entered against him.

## CONCLUSION

For the reasons set forth above, Chrysler Financial respectfully requests that this Court enter a default judgment against Hecker for the full amount sought in its Complaint.

Respectfully submitted,

February 3, 2010

GRAY, PLANT, MOOTY,
 MOOTY & BENNETT, P.A.


By____/e/Stephen F. Grinnell_____
    Nicholas N. Nierengarten (#79169)
    Stephen F. Grinnell (#37928)
500 IDS Center
80 South Eighth Street
Minneapolis, Minnesota 55402-3796
Telephone:  (612) 632-3000
Telecopier:  (612) 632-4444

MAYER BROWN LLP
Howard J. Roin (Admitted Pro Hac Vice)
Stuart M. Rozen (Admitted Pro Hac Vice)
71 South Wacker Drive
Chicago, Illinois  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711

ATTORNEYS FOR
CHRYSLER FINANCIAL SERVICES AMERICAS LLC

GP:2723693 v3

28

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | Adv. Pro. No. 09-5019 |
| AMERICAS LLC, | ) | |
| | ) | |
| Plaintiff. | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

I, Stephen F. Grinnell , hereby certify that on February 3, 2010, I caused the
following:

1.    Chrysler Financial Services Americas LLC's Motion for Sanctions;
2.    Plaintiff's Memorandum in Support of Motion for Sanctions;
3.    Declaration of Nicholas N. Nierengarten in Support of Chrysler Financial
       Services Americas LLC's Motion for Sanctions;
4.    Declaration of Michael W. Ott;
5.    Declaration of Jeremy D. Wunsch; and
5.    proposed Order for Judgment.

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an
e-notice of the electronic filing to the following:

William R. Skolnick         wskolnick@skolnick-shiff.com
Matthew R. Burton          mburton@losgs.com
Jordan S. Kushner          kushn002@umn.edu
Robert J. Hennessey        rhennessey@lindquist.com

Dated:  February 3, 2010                    GRAY, PLANT, MOOTY
                                                      MOOTY & BENNETT, P.A.


                                                       /e/  Stephen F. Grinnell
                                                      Stephen F. Grinnell (#37928)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

---

## ORDER FOR JUDGMENT
---

This adversary proceeding came before the Court on the motion of the plaintiff for an order entering a nondischargeable default judgment against the defendant for the full amount sought in plaintiff's complaint.  Appearances were noted in the record.

Based upon the motion, the arguments of counsel and all of the files, records and proceedings herein, it is ORDERED:

1.      Plaintiff's motion is granted;

2.      Judgment shall be entered for the plaintiff and against the defendant in the amount of $83,070,987; and

3.      Pursuant to 11 U.S.C. §§ 523(a)(2)(A), (4) and (6), such judgment shall

not be discharged.

Dated:

_____
Robert J. Kressel
United States Bankruptcy Judge

GP:2723803 v1