# EXHIBIT 23

**SKOLNICK & SHIFF, P.A.**
ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

**RECEIVED**

JAN 2 1 2010

GRAY PLANT MOOTY

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 21, 2010

**VIA MESSENGER**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

Re: Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker
**Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

Enclosed in the above referenced matter, please find documents produced from Dennis E. Hecker, Bates labeled HP0001-HP1048.

If you have any questions, please feel free to contact me.

Yours truly,

**SKOLNICK & SHIFF, P.A.**

Zachary M. Puchtel
Legal Assistant to William R. Skolnick

WRS:zmp

# EXHIBIT 23

SKOLNICK & SHIFF, P.A.
ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308

Nicholas Nierengarten
Gray, Plant & Mooty, P.A.
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

# EXHIBIT 24



500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

January 27, 2010

_**VIA** E-MAIL AT WSKOLNICK@SKOLNICK-SHIFF.COM AND
SKOLNICKLAW@VISI.COM AND **VIA** UNITED STATES MAIL_

William R. Skolnick, Esq.
Skolnick & Shiff, PA
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402

Re:  _Chrysler Financial Services Americas LLC v. Dennis E. Hecker_, Adv. Pro. No. 09-05019

Dear Mr. Skolnick:

This is a follow-up to our recent communications regarding Hecker's document production and deposition scheduling.

First, Chrysler Financial has assembled a team that is now in the process of reviewing the documents produced by Hecker on January 19, 2010 and thereafter. The review team is moving as fast as it can. Based on our preliminary evaluation of the production, we anticipate that it will take at least a week to complete the review process.

Second, we requested that the two boxes of documents referenced in your letter of January 19, 2010 be delivered to your vendor (K&B Document Technologies) for processing in accordance with specific parameters as set forth in my January 22, 2010 email to Mr. Puchtel. To date, we have not yet received the documents. Further delay in the receipt of these materials may affect our ability to complete the review process.

Third, in his January 7, 2010 letter, Mr. Grinnell asked Hecker to provide a copy of the search warrant inventory prepared by the government and identify which categories from the inventory were designated for copying. Hecker produced the search warrant inventory, but did not identify the categories of documents on the inventory that were copied. Please provide this information so that we know that there has been a complete production before we start with depositions.

Fourth, with respect to the depositions of Chrysler Financial employees, we do not believe that any inquiry by Hecker as to what such employees may have communicated to the government as part of its criminal investigation is appropriate or relevant. Accordingly, we ask for your assurance that you will not inquire into any such communications with the government.

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN • ST. CLOUD, MN • WASHINGTON, DC
WWW.GPMLAW.COM



# EXHIBIT 24

Fifth, assuming that Hecker's production is complete, that we can complete the review without further complications, and that we receive the information and assurances set forth above, we should be able to start with depositions, including Mr. Hecker's deposition, in mid-to-late February.

Finally, Chrysler Financial's trial preparation has been seriously prejudiced by Hecker's three month delay in responding to discovery. We therefore request that Hecker agrees to a one month delay in the trial date from March 22, 2010 to April 19, 2010 or other date thereafter that is convenient for Judge Kressel. Please let us know whether you are agreeable to such an extension.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/tll/GP:2720418 v1

c:      Howard J. Roin, Esq. (*via* email)

# EXHIBIT 25

# SKOLNICK & SHIFF, P.A.
### Attorneys at Law
### 2100 Rand Tower
### 527 Marquette Avenue South
### Minneapolis, Minnesota 55402
### (612) 677-7600

## TELECOPY
## (612) 677-7601

| | | | |
|---|---|---|---|
| **DATE:** | January 28, 2010 | Telecopy Number: | (612) 632-4040 |
| **TO:** | Nicholas N. Nierengarten, Esq. | Main number of receiving firm: | (612) 632-3040 |
| **FROM:** | William R. Skolnick | | |

**Number of pages including cover sheet:** ☏  _11_

### MESSAGE:

Please find attached Correspondence.

This telecopy is intended only for the use of the addressee. If the addressee of this telecopy is a client or agent for one of our clients, you are further advised that the telecopy contains legally privileged and confidential information which we intended to send to the addressee only.

In any event, if you are not the intended recipient of the telecopy, you are hereby notified that you have received this telecopy inadvertently and in error. Any review, dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original telecopy to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and in returning the telecopy to us.

**Please call (612) 677-7600 if you do not receive all pages.**

### TELECOPY - INTEROFFICE USE

| | |
|---|---|
| Client/Matter No.: | Hecker/Chrysler Adversary 09-05019 |
| Attorney: | William R. Skolnick, Esq. |

# EXHIBIT 25

# SKOLNICK & SHIFF, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 28, 2010

## VIA FACSIMILE

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

     Re:    <u>Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker</u>
             **Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

    Enclosed in the above referenced matter, and hereby served upon you, please find the following documents:

    1.    Second Amended Notice of Taking Deposition of Molly Kaplan; and
    2.    Subpoena Duces Tecum in an Adversary Proceeding.

    If you have any questions, please feel free to contact me.

                  Yours truly,

                  **SKOLNICK & SHIFF, P.A.**

                  William R. Skolnick

WRS:zmp

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re:                   ) | **Bankruptcy Case No: 09-50779-RJK** |
|                         ) | |
| **DENNIS E. HECKER,**      ) | |
|                         ) | **Chapter 7** |
|       Debtor.           ) | |
|                         ) | |
| _____ ) | |
|                         ) | |
| **CHRYSLER FINANCIAL**    ) | **Adversary Proceeding No.: 09-05019** |
| **SERVICES AMERICAS LLC,** ) | |
|                         ) | |
|       Plaintiff,        ) | |
|                         ) | |
| v.                         ) | |
|                         ) | |
| **DENNIS E. HECKER,**      ) | |
|                         ) | |
|       Defendant       ) | |
|                         ) | |
|                         ) | |

## SECOND AMENDED NOTICE OF TAKING
## DEPOSITION OF MOLLY KAPLAN

TO:    Plaintiff Chrysler Financial Services Americas and its counsel, Gray, Plant, Mooty, Mooty & Bennett, P.A., Stephen Grinnell and Nick Nierengarten, 500 IDS Center, 80 S. 8th St., Minneapolis, Minnesota 55402 and Mayer Brown LLP, Howard Roin and Stuart Rozen, 71 South Wacker Drive, Chicago, Illinois, 60606.

     **NOTICE IS HEREBY GIVEN** that pursuant to Bankruptcy Rules 7030 and 9016

incorporating Fed.R.Civ.P. 30 and 45 Defendant Dennis E. Hecker's counsel will take the

deposition by oral examination of Molly Kaplan before a qualified court reporter at the offices of

Skolnick & Shiff, P.A., 2100 Rand Tower, 527 Marquette Avenue, Minneapolis, Minnesota on

Wednesday, February 10, 2010 commencing at 9:00 a.m., and thereafter by adjournment until

the same shall be completed. The deposition will take place upon oral examination pursuant to

the Federal Rules of Civil Procedure before an officer duly administered by law to administer

oaths and recorded testimony.  Pursuant to the Federal Rules of Bankruptcy procedure 7030,

7034 and 9016 incorporating Federal Rules of Civil Procedure 30, 34, and 45, Ms. Molly Kaplan

is requested to produce the documents and electronically stored information in her possession

custody or control identified in Exhibit A attached hereto and made a part hereof on February 10,

2010 at 9:00 a.m.  The testimony will be recorded by stenographic means.

<strong>SKOLNICK & SHIFF, P.A.</strong>

Dated: January 28, 2010                    By

                                      William R. Skolnick  # 137182
                                      2100 Rand Tower
                                      527 Marquette Avenue
                                      Minneapolis, MN 55402
                                      Phone (612) 677-7600
                                      Fax (612) 667-7601

**ATTORNEY FOR DEFENDANT**
**DENNIS E. HECKER**

2

**EXHIBIT A**
**SUBPOENA DUCES TECUM**
**MOLLY KAPLAN**

**DEFINITIONS**

1.     The words **"document"** and **"documents"** are used in the broadest possible sense and refer, without limitation, to all written, printed, typed, photostatic, photographed, recorded, or otherwise reproduced communications or representations of every kind and description, whether comprised of letters, words, numbers, pictures, sounds, or symbols, or any combination thereof, whether prepared by hand or by mechanical, electronic magnetic, photographic, or other means, oral statements, conversations, or events.  This definition includes, but is not limited to, any and all originals and non-identical copies of any and all of the following:  correspondence, notes, minutes, records, messages, memoranda, telephone memoranda, diaries, contracts, agreements, acknowledgements, receipts, bills, statements, appraisals, reports, forecasts, compilations, schedules, studies, summaries, analyses, pamphlets, brochures, financial statements, working papers, charts, labels, computer-stored or computer-readable data, computer printouts, telegrams, telexes, facsimiles, transcripts, recordings, and all other sources or formats from which data, information, or communications can be obtained.  Any preliminary versions, drafts, or revisions of any of the foregoing, any document which has or contains any attachment, enclosure, comment, notation, addition, insertion, or marking of any kind which is not a part of another document, or any document which does not contain a comment, notation, addition, insertion, or marking of any kind which is part of another document, is to be considered a separate document.

2.     **"Produce"** means to make available the document or things requested herein for inspection and copying, including electronically stored information, pursuant to Bankruptcy Rules 7034 and 9016 incorporating Fed.R.Civ.P. 34(b)(2)(E) and 45(d)(1).

3.     **"Chrysler Financial"** means Chrysler Financial, its predecessors, (including but not limited to DaimlerChrysler Services North America, LLC and DaimlerChrysler Financial

3

Services Americas, LLC) and their officers, directors, employees, attorneys, agents, representatives and anyone acting on its behalf.

4.      **"Hecker"** means Dennis E. Hecker, and any employees, attorney, agent, representative or anyone acting on his behalf.

5.      **"Hecker Related Entity"** means any corporation, limited liability company, partnership, limited partnership in which Hecker has or had, directly or indirectly, a controlling interest including but not limited to Rosedale and Walden, and their officers, directors, employees, attorneys, agents, representatives and anyone acting or their behalf.

6.      **"Hyundai"** means Hyundai Motors America and its officers, directors, employees, attorneys, agents, representatives or anyone acting on its behalf.

7.      **Rosedale"** means Rosedale Dodge, Inc., Rosedale Dodge, LLC, Rosedale Fleet Leasing II, LLC, Rosedale Leasing, LLC, Rosedale Leasing of Minneapolis LLC, and Rosedale Leasing of Minnesota LLC and their officers, directors, employees, attorneys, agents representatives and anyone acting on their behalf.

8.      **"Walden'** means Walden Auto Leasing, Inc., Walden Fleet Group, Inc. (f/k/a G.M.I. Acquisitions, Inc.), Walden Fleet Sales Group, Inc., Walden Automotive Group, Inc., (f/k/a Denwall Management, Inc.) Walden Fleet Services II, Inc. (f/k/a Walden Remarketing Services, Inc.), Walden Investment Company, Walden Leasing Inc. and Walden Payroll Services LLC and their officers, directors, employees, attorneys, agents representatives and anyone acting on their behalf.

9.      **"Relate to,"** **"related to,"** and **"relating to"** mean comprising, mentioning or describing, containing, enumerating, involving or in any way concerning, pertaining or referring to, being connected with, reflecting upon or resulting from, in whole or in part directly or indirectly, the stated subject matter.

10.     **"You"** or **"your"** refers to Molly Kaplan, your representatives, trustees, beneficiaries, agents or employees, or any of their predecessors in interest, or any person purporting to act on behalf of any of the foregoing.

4

## INSTRUCTIONS

1.      In answering these Requests, you are required to furnish all documents and/or things that are available to you or subject to your reasonable inquiry, including information and things in the possession, custody or control of any of your representatives, including without limitation your attorneys, accountants, advisors, agents, or other persons directly or indirectly employed by or connected with you, and anyone else otherwise subject to your control.

2.      In responding to these Requests, you must make a diligent search of your records and of other papers and materials in your possession or available to you or your representatives.

3.      Responsive documents and things shall be produced as kept in the ordinary course of business or shall be produced in a manner organized and labeled to correspond with the categories in these requests for production.

4.      When interpreting these requests, definitions, and instructions: any masculine, feminine, or neuter term includes all other genders; the singular includes the plural and the plural includes the singular; and "or," "and/or," and "including" shall be read inclusively rather than exclusively.

5.      Unless otherwise specifically stated, these Document Requests cover the period January 1, 2007 to date.

6.      Pursuant to Bankruptcy Rule 9016 incorporating Fed.R.Civ.R. 45(a)(1)(C), all electronically stored information is to be produced in its native format unless otherwise agreed to.

7.      If any document responsive to these Requests cannot be produced, produce responsive documents to the extent possible, specifying the reason or reasons for your inability to produce other responsive documents.

5

# REQUESTS FOR PRODUCTION

## MOLLY KAPLAN

**REQUEST NO. 1:**   All documents (including electronically stored information) pertaining to Hecker or any Hecker Related Entity, including but not limited to:

    (a)    any request for, negotiations concerning or relating to financing provided by Chrysler Financial to Hecker or any Hecker Related Entity for the purchase or acquisition of vehicles;

    (b)    any transfer, use or disposition of proceeds from the sale of, or other disposition of vehicles by any Hecker Related Entity for which Chrysler Financial provided financing at any time from and after August 1, 2008.

**REQUEST NO. 2:**   All documents pertaining to any allegedly false or misleading statements or representations, allegedly altered or forged documents, or alleged fraud involving Hecker or any Hecker Related Entities with respect to financing provided by Chrysler Financial, including the originals of any such documents.

**REQUEST NO. 3:**   All documents relating to the termination of or separation from employment of any employee of Hecker or Hecker Related Entity after December 1, 2008.

**REQUEST NO. 4:**   Any and all documents or correspondence between you and any employee of Hecker or any Hecker Related Entity including employees, attorneys, agents, representatives and anyone acting on their behalf.

**REQUEST NO. 5:**   Any and all documents or correspondence between you and any employee, attorney, agent or representative of Chrysler Financial.

**REQUEST NO. 6.:**   Any and all documents including but not limited to correspondence between you and any employee, attorney, agent, representative or anyone acting on the behalf of any government agency referring or relating to Hecker or any Hecker Related Entity.

**REQUEST NO. 7.:**   Any and all documents or correspondence between you and any employee, attorney, agent, representative or anyone acting on the behalf of Randall Sever the Bankruptcy Trustee referring or relating to Hecker or any Hecker Related Entity.

**REQUEST NO. 8.:**   Any and all documents including but not limited to correspondence between you or any third party and Tamitha Hecker.

6

# UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

DENNIS E. HECKER

      Debtor,

Case No. 09-50779-RJK

Chapter 7

---

CHRYSLER FINANCIAL
SERVICES AMERICAS LLC,

      Plaintiff,

ADV Pro. No. 09-05019

vs.

DENNIS E. HECKER,

      Defendant.

**SUBPOENA DUCES TECUM IN
AN ADVERSARY PROCEEDING**

---

To: Molly Kaplan, 700 Hennepin Avenue Minneapolis, MN 55403

YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | ROOM |
|---|---|
|  |  |
|  | DATE AND TIME |
|  |  |

X   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| SKOLNICK & SHIFF, P.A. 2100 Rand Tower, 527 Marquette Ave S., Minneapolis, MN 55402-1308 | February 10, 2010   9:00 a.m. |

X   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

SEE EXHIBIT A

| PLACE | DATE AND TIME |
|---|---|
|  |  |

**YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|----------|---------------|
|          |               |
|          |               |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| _Attorney for Defendant_ | January 28, 2010 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

William R Skolnick, Esq.
2100 Rand Tower 527 Marquette Ave S., Minneapolis, MN 55402-1308
(612)677-7600

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.
AO88  (Rev. 1/94) Subpoena in a Civil Case

---

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

---

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|

| | ADDRESS OF SERVER |
|---|---|

## Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d) (2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to comply production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance,

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c) (3) (B) (iii) of this rule, such a person may in order to attend

trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in who behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT 26

# SKOLNICK & SHIFF, P.A.

### Attorneys at Law
### 2100 Rand Tower
### 527 Marquette Avenue South
### Minneapolis, Minnesota 55402
### (612) 677-7600

## TELECOPY
## (612) 677-7601

| | |
|---|---|
| **DATE:** January 29, 2010 | Telecopy Number: (612) 632-4040 |
| **TO:** Nicholas N. Nierengarten, Esq. | Main number of receiving firm: (612) 632-3040 |
| **FROM:** William R. Skolnick | |

**Number of pages including cover sheet:** 3

## MESSAGE:

Please find attached Correspondence.

This telecopy is intended only for the use of the addressee. If the addressee of this telecopy is a client or agent for one of our clients, you are further advised that the telecopy contains legally privileged and confidential information which we intended to send to the addressee only.

In any event, if you are not the intended recipient of the telecopy, you are hereby notified that you have received this telecopy inadvertently and in error. Any review, dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original telecopy to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and in returning the telecopy to us.

**Please call (612) 677-7600 if you do not receive all pages.**

### TELECOPY - INTEROFFICE USE

| | |
|---|---|
| Client/Matter No.: | Hecker/Chrysler Adversary 09-05019 |
| Attorney: | William R. Skolnick, Esq. |

# EXHIBIT 26

# SKOLNICK & SHIFF, P.A.

**ATTORNEYS AT LAW**
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 29, 2010

## VIA FAX ONLY

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

Re:     Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker
       **Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

I hereby respond to the issues as you have numbered them;

First, I have no response to your review team and how fast or slow they are moving.

Second, the two boxes that I thought existed turned out to be much smaller and were produced to you in hard copy.

Third, I do not understand what you referring to as a "complete production". Those are the documents that were copied and provided to us. We provided them to you.

Fourth, as to depositions of Chrysler Financial employees, if questions are asked at the depositions that you believe are privileged, I am confident you will assert privilege as you deem appropriate. What these witnesses have said to other people about the subject matter of our lawsuit is clearly discoverable. I can understand your concern that the witnesses may have told different versions of the same events to different people, but that is relevant and will be inquired into.

Fifth, we believe the production is complete and have asked you a number of times for deposition dates to accommodate the witnesses and counsel's schedule. You have refused to provide dates. I will ask one last time, what dates are you and the three Chrysler Financial employees available to take their depositions in Detroit during the week of February 15? I

understand Mr. Roin is the only one that can defend the depositions of the Chrysler employees, so please see if you can obtain dates that he is available for those. As to the third party witnesses, my office is doing its best to accommodate the witnesses and their counsel in terms of scheduling. Since you have refused to provide any dates that you are available, it leaves me with no choice, but to just schedule them. As you were notified yesterday, Molly Kaplan's deposition will proceed on Wednesday, February 10, 2010 starting at 9 a.m. in my office.

Sixth, I disagree with your self serving claim of prejudice. It has been you that has stopped discovery. That being said, I have no objection to stipulating to move the trial date. However, I would suggest that the trial be held after April 15 as Case #09-05045 regarding the PSA is set for trial on April 13. Would you agree to Monday, April 19 if it is available for the Court? If there are dates after April 19 that are more convenient for Mr. Roin and yourself please let me know of the available trial dates.

Finally, I am requesting that you review your written discovery responses and supplement them as they are inadequate. If you have any questions, please feel free to contact me.

Yours truly,

**SKOLNICK & SHIFF, P.A.**

William R. Skolnick

WRS:zmp
Cc Dennis Hecker

# EXHIBIT 27

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| CHRYSLER FINANCIAL SERVICES | ) | Adv. Pro. No.: 09-05019 |
| AMERICAS LLC, | ) | |
| | ) | **DISCOVERY CONFERENCE TRANSCRIPT** |
| Plaintiff, | ) | November 13, 2009 |
| | ) | 1:30 p.m. CT |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| **On Behalf of Plaintiff:** | Nicholas N. Nierengarten, Esq. ("NN") | Originating Phone Conference |
| | Gray, Plant, Mooty, Mooty & Bennett, P.A. | |
| | 80 S. 8th Street, Suite 500 | |
| | Minneapolis, MN 55402-3796 | |
| | - and - | |
| | Howard J. Roin, Esq. ("HR") | |
| | Mayer Brown, LLP | |
| | 71 S. Wacker Drive | |
| | Chicago, IL 60606 | |
| **On Behalf of Defendant:** | William R. Skolnick, Esq. ("WS") | *Via* Phone (612) 677-7602 |
| | Skolnick & Shiff, P.A. | |
| | 527 Marquette Ave. S., Suite 2100 | |
| | Minneapolis, MN 55402 | |

WS:    Hello, Nick are you there?

NN:    I'm here.

WS:    Is Mr. Roin with us?

HR:    I am.

1

# EXHIBIT 27

NN:   Are you ready to start?

WS:   Just about, give me about 30 seconds. Here. Mr. N, Mr. R, and Mr. S. Roin is R-o-i-n, and Nierengarten, Nierengarten, N-i-e-r-e-n-g-a-r-t-e-n. We just call him Nick. Not to be confused with Skolnick.

CR:   Right. [Skolnick's court reporter.]

WS:   Are you ready?

CR:   No. [Skolnick's court reporter.]

WS:   All right.

CR:   Ready. [Skolnick's court reporter.]

WS:   We are ready.

NN:   Okay. This is Nick Nierengarten, on behalf of Chrysler Financial. I have with me, Mr. Howard Roin, who likewise represents Chrysler Financial. I take it Bill Skolnick, you are on the line?

WS:   I am.

NN:   Chrysler Financial asked for this discovery conference to cover two issues, one being its outstanding written discovery interrogatories, requests for production of documents and requests for admissions, which were served back in August of 2009, and we still have not received responses. The second issue, as I indicated in my letter yesterday, was your deposition notices, Mr. Skolnick, on behalf of your client, Mr. Hecker, of an outfit called Phenix Investigations and Brian Bauer. Our position is that that covered by work product, and we intend to make a motion to quash those depositions. I'm not sure there is much to say on the first issue, which is Chrysler Financial's outstanding discovery. We had understood that after Judge Kressel denied Mr. Hecker's stay motion on October 21st, that there would be meaningful responses and documents produced. They have not been produced. We gave bit received any responses to the discovery, and we are prepared to go forward with the motion to compel discovery. So that's our view of it. We are required under the Local Rules to conduct a discovery conference. Mr. Skolnick, you have our view of what we intend to cover, and what we intend to ask the Court for in terms of relief, namely, a motion to compel full and complete responses to Chrysler Financial's discovery, production of responsive documents, and also a motion to quash your recently served deposition notices.

WS:   May I speak now?

NN:   Yes.

2

WS: All right. It is my understanding that the witness who has been subpoenaed and his company, Phenix, for the court reporter, P-h-e-n-i-x, Investigations in Indianapolis, has obtained documents, uh, from Ms. Bowser and has received those documents quite some time ago. I can't see how those would in any way be privileged on Chrysler's end or be work product. So we're going to proceed with the depositions in Indianapolis next week barring some Court order preventing it.

HR: This is Howard. I think you noticed up the depositions for November 30? Right?

WS: November 20.

HR: Oh, well, I thought it was 30, maybe I miss-saw that. Look. Just so our position is clear, any documents that we received from Bowser were documents made available to you in connection with the subpoena. Any and all. And, like I said, we're objecting, and if the answer is, you are insisting on doing this on the 20th, then we will have to make an emergency motion in front of the judge, but we are going to do it. I would hope that you would agree to allow the judge, Judge Kressel, a reasonable amount of time to address this issue, and you can tell us whether you will or won't. And if you say, no, then we will make an emergency motion.

WS: I am planning to proceed with the depositions, pursuant to the subpoenas. There is my response. Um. There is no privilege. There is no work product for documents he obtained from Ms. Bowser. Um. Secondly, I had an issue, a number of weeks ago. You said you would get back to me with dates for depositions when I offered to take Mr. Bowker's deposition in Detroit, where he lives.

HR: Let me just, before you do that, let me go back. I just want to go back. I just want to make sure it's clear. Any documents obtained by Chrysler Financial have been made available to you already, pursuant to the subpoena and what was disclosed. Does that matter to you?

WS: No, it doesn't, because you're statement does not reflect that your agent, and I assume which you are going to assert the work product doctrine, you are going to assume, you are going to assert that Phenix Investigations and their employees are Chrysler's agents, correct?

HR: Keep going.

WS: And, as such, your agents had those emails, including the privileged ones, back in July.

HR: What privileged ones?

WS: The ones that are on the disk.

HR: Well, we have represented to you many, many times, that we have not looked at what's on the disk. I don't know whether there is anything privileged. We don't know one way or the other. We have asked you many times, you and your predecessor, to provide us

3

with a privilege log. Your predecessor agreed to do that by early October, but that's never been done. But if your question is, have we looked at any privileged documents, the answer is no.

WS:   No, that wasn't my question, nor the point.

HR:   And, if the question isn't whether we've looked at privileged documents, it ought to be. And if the question is, you know, do we have any basis, the only information we have that there might be something privileged is not a privilege log, which is what is required of the Federal Rules, but just your say-so, and the answer is we haven't looked, and we are going to operate in accordance with the Federal Rules, which is, if we have something that might be privileged, you are supposed to do a privilege log and absent that we have to take it to the judge, which is what we've done.

WS:   Well, let's, if you want to set the record straight, I told you last time we spoke. I would prepare a privilege log, although being a small office, would take me some time due to the amount. And that I demanded the return of the disk. And I would _____ privilege log and you refused to return the disk.

HR:   If you look at the Federal Rules, Mr. Skolnick, well, you have the disk, you already got it, we gave it to you in connection with the subpoena. The, if you, we are not required to return the disk to you. You are required to do a privilege log if you want to get to first base, which you have declined to do, imposing instead an improper condition that we return this disk to you, you've declined, but, you know, you should do a privilege log, and then we would proceed, based on that. But you have declined to do that, which is why we had to file our motion. But, I want to assure you ...

WS:   Wait a minute, Mr. Roin, I ...

HR:   I want to assure you one more time, we have not, Chrysler Financial has not done any kind of reading of these emails. Don't know what's in the emails. I don't know whether there is any privilege or not. We haven't looked. We've never looked. And, just to be clear, either did any investigator we may have had.

WS:   Just so the record is clear, you are saying that your investigator who got emails from Cindy Bowser in July, he didn't look at them?

HR:   I'm not saying anything like that. What I am saying is no investigator for Chrysler Financial has looked at the emails. That's what I am saying. I am not telling you about our work product investigation. It's none of your business. It is not appropriate for you, for example, to make a pre-text call to someone who you think is our investigator, pretend, apparently, that you're trying to give them work, and try to get information. All I'm saying is that we, no one, on Chrysler Financial, neither Chrysler Financial's office of general counsel, nor Chrysler Financial's lawyers, nor Chrysler Financial, nor any investigator we might have had, nobody, has read those emails, because, we didn't know what's on them, and that's why we asked you to do a privilege log, which you have declined to do.

4

WS:  And let's go to that second point, since you just ... are you done now? Because you are
     somewhat lengthy? I don't want to interrupt you. Are you done?

HR:  So far.

WS:  Number one, I don't know, I'm a fairly plain-speaking person. I told you, in our last
     conversation, I would prepare the privilege log. In fact, I insisted that I do it, not you. So
     to say that I declined to do it is simply factually inaccurate.

HR:  Well, let me say this. You have declined to do it, unless we give you back all copies of
     the disk, that's not required under the Rules, you have imposed an improper condition.
     Your predecessor counsel agreed to do a privilege log and provide it by early October.
     It's now getting into November. We haven't gotten anything. And you specifically
     refused to do it unless we first gave you the disk, even though the Federal Rules say that
     we are entitled to hold onto it so the judge can made the decisions he needs to make, so
     you've declined ...

WS:  I have not declined. Stop saying it. I have not. What part of, I will prepare, sounds like
     a declination to you?

HR:  The part that you won't do it unless we give you the disk back first. You already have
     the disk. We have given you the disk.

WS:  I will ask the court reporter, when we are done, to get a transcript. Because I don't think
     I've ever said that.

HR:  You repeatedly said it, and I think you said it in writing. Take a look at your last letter.
     You've said ... but if you are changing your tune, that's great. You are a month late, so,
     you know, you should produce a privilege log right now, and you should send it over.
     And if you are changing your tune and saying you are going to do that, that would be a
     step in the right direction.

WS:  I don't think my tune is changed, as you say it, but, nonetheless, you got your position
     down, I guess. Now can we get to the issue about the depo dates you promised me two or
     three weeks ago?

HR:  Actually, first, before we do that, we should talk about the discovery that we served in
     August to which you declined to respond, and then in our prior conversation, that you
     were going to respond to our written discovery, and that's a subject of this call, I thought,
     and you know, and we were supposed to get something weeks ago. And, where, you
     know, are we getting something? Where is it?

WS:  And you are prepared to give the ... because I have reviewed your responses, and we did
     talk about this previously? My understanding is you are going to produce your
     documents when we do.

5

HR: We have agreed to exchange documents. We have already responded in writing to your written discovery and we've given substantive answers. You have given no substantive answers. You said the reason for that in writing was that you had filed a motion for stay. Your stay motion was denied. And after your stay motion was denied we had a call with you and we said we wanted responses and you said you intended to give them. And you gave a date, we initially proposed the Friday, and you said the Monday, and it's been more than two weeks since then. We've gotten nothing. Your discovery was due a long, long time ago. Where is it? When are we getting it?

WS: You got your calendar out?

HR: I have my Blackberry.

WS: Okay. That will work. You should have it on the 11th of December. That gives me ... I'm going to be out of the office for a few days, in between, so that should give me sufficient time.

HR: So you are saying you are going to respond in writing to discovery we served in August. You are going to give us something on December 11th?

WS: Yeah. That's what I just said.

HR: Excuse me. That's not acceptable. We are going to have to file a motion. Well, let me ask you this? What's the reason that it takes you until then to respond in writing?

WS: Because, number one, as you know, there are about a dozen other adversary complaints that I'm dealing with as well as his divorce, and in there is about a half a million documents that I am in the process of reviewing, 30,000 of which are just the emails that are on the disk. And that privilege log should be forthcoming. I'm almost, but not quite through the documents, and I'll prepare the privilege log, as I told you I would.

HR: And, when are we getting that? You previously said you would not do a privilege log unless we first gave you all the copies of the disk. But, if you have changed your tune, that's great. When are you saying we are getting the privilege log.

WS: Mr. Roin, you want to make that false statement again?

HR: I've made it. It's true. I've made it many times. And, I believe, although I don't have it in front of me, I believe you actually did it in writing.

WS: No, what I said was, you will get the privilege log when I get the disk. Not that I wasn't going to prepare a privilege log. You wrote the letter.

HR: Oh, okay, well, I'm not interested in a privilege log, if you are keeping it secret. So, if you are now saying that you are going to give us a privilege log, even though you are not going to get our copy of the disk ...

6

WS: Oh, I'm going to get … look …. you asked when and I gave you the dates.

HR: What date? Excuse me, what date?

WS: Are you going to interrupt me, or can I finish a sentence?

HR: Go ahead, what date?

WS: Can I finish a sentence before you interrupt me? Thank you. On December 11th, you will have our written responses to our discovery, and on December 4th you'll have the privilege log, if not sooner on the privilege log. That is getting my attention, along with the ___ thousand cases that I've enumerated.

NN: Just so I understand, Mr. Skolnick, this is the privilege log for the emails on the Bowser disk?

WS: Correct.

NN: All right.

WS: Now can we ask what dates Mr. Bowker is available?

HR: Let me ask you one more question about the written responses. The written responses that you say we are getting on December 11th, were you anticipating exchanging documents on that date, or was this just the written responses?

WS: Well, as you know, many, my understanding, there is two van v-a-n, as in the attorney told me there are two vans containing numerous boxes of documents over at the U.S. Attorney's Offices I haven't had a chance yet to go review, so I would assume you would like those documents, as well, since those are by-in-large a fair number of the documents that existed at the Hecker offices. Yes?

HR: We are interested in the documents that are responsive to our discovery requests. I did learn today that the U.S. Attorney, we knew the U.S. Attorney and FBI folks had seized some documents. We learned today that those documents have always been available to you. I've always understood that they were not available to us, because, and I can check that, but you know, I think in a grand jury investigation, third parties aren't entitled to that stuff, but I understand they've always been available to you. And if you are saying we could look at those documents, we might very well be interested, but what we really want is that we served discovery requests, we asked for particular documents, and what you are supposed to do, we have identified categories, you are supposed to produce those categories, and that's what we are looking for. And my question to you is, I'm asking just what you anticipate, do you anticipate on December 11th, that when you get around to responding to our written discovery, that you are going to be producing documents in response to that discovery request, or are you going, do you anticipate, you know, here's the written request, and I'm working on getting the documents together.

7

WS:   My anticipation is that between now and then I would be able to produce documents. However, and again, this is why I pointed out to you, number one, just so you're clear, I was not aware those documents were available to us until mid-October. I had a conversation with the U.S. Attorney, at which point she said I could come look at them. But no, I intend to produce documents that are in my client's care, custody and control, to you. Now can I find out when Mr. Bowker's available?

HR:   Well, you know, we were additionally assuming that you were going to actually produce something to us in a timely fashion. I was going to offer you dates in December. But you know, I have to say that I think we should, and I'll, we will get back, I was going to propose, assuming you were going to give us documents in a timely fashion, response in a timely fashion, not December 11th, we were going to propose either December 2nd or 3rd or sometime December 8 to 11, because that would be consistent with exchanging documents and exchanging discovery, which is the way we think things should work. In light of the fact that what you are telling us is that we are not getting any responses to discovery to even see what they are until the 11th, I think it's more appropriate to talk to you guys about the following week. And I would propose to get back to them, talk to them about the following week.

WS:   Using your language, that's not acceptable. I didn't say I wouldn't proceed with I guess it's pronounced Bowker, like poker.

HR:   I understand that your view of discovery appeared to be that that's something you get to do when you want to, and we get to do it, when you want to, but what we had in mind …

WS:   You interrupted me again, Mr. Roin. Can't you just be as … just be as courteous of letting me finish a sentence? Do you always have to interrupt? I want to hear you out, so I'm going to be quiet now. But when I'm done. But when you are done, rather, then let me know, but wait 'til I say, I'm done. Go ahead.

HR:   Are you done?

WS:   Go ahead.

HR:   Are you done?

WS:   No, I'm not done. I haven't had a chance to say anything, because you keep interrupting. So I want to give you a chance to say your piece. Say your piece.

HR:   Mr. Skolnick, please proceed.

WS:   Thank you. What I was told was you would get back to me with dates he was available, in fact you were going to check to see if he was available on November 9th, not that I didn't offer to come to Detroit. I told you I would go to any location you want. Whatever date or time was available for Mr. Bowker's convenience and your convenience. You said you would get back to me with dates, and you haven't. And now you are telling me I'm not going to get dates until December, right?

8

Case 09-05019    Doc 66-4    Filed 12/23/09    Entered 12/23/09 17:51:10    Desc
Case 09-05019    Doc 27-1 Exhibits 8-20 Page 71 of 74 ntered 11/16/09 13:30:14    Desc
Declaration of Nicholas N. Nierengarten    Page 19 of 40

HR:     What I am saying is that we are prepared as we have always been since we served our
        written discovery to exchange discovery with you, but we want it to be a two-way street,
        and that is what we are going to insist on.

WS:     So you are not going to allow the deposition of Mr. Bowker to proceed until you and I
        exchange documents. Is that your position?

HR:     Absolutely. But, you know, I would propose the following. And since you've said,
        we're exchanging documents after December 11th, I would propose the following week.
        And I'll talk to Mr. Bowker immediately to find out if he is available then.

WS:     Well, that's what you said the last time you were going to do. This time you really are
        going to talk to him about dates he is available? Can Mr. Gilman, can get his dates, too?

HR:     Excuse me?

WS:     Can you get a date for Mr. Gilman, too?  Thomas Gilman?

HR:     Well, that's a new request. I haven't seen any request like that. What do you want to ask
        Gilman? He's the CEO of the Company. What do you want to ask him now? What does
        he have to do with our case?

WS:     Well, I assume you've read the documents you claim you have already assembled to
        exchange with me, so you know about the many email communications between
        Mr. Gilman and Mr. Hecker, right?

HR:     I've seen very few. You know, maybe I don't have all the same emails you do. I haven't
        seen any correspondence between the two of them about the Hyundai fraud, and I don't
        know if I've seen any about the $80 million that's out of trust.

WS:     Well.

HR:     If you have some, I'd love to see them.

WS:     Here's the problem, Mr. Roin. I tell you in advance. This is what I'd like to do. And
        you say, well, I haven't received a request. So, I'll serve out a depo notice. I thought you
        wanted to know in advance who we might want to seek and check at the same time get
        dates, do it in a reasonable fashion, but if you want to wait until I serve a depo notice, I'll
        serve all my depo notices, and I guess we'll proceed from there.

HR:     You just said you want me to ask about Gilman. I'll make some inquiries about Gilman.
        You just … I just hadn't even known to look, and I think it's inappropriate for you to
        suggest that somehow we are recalcitrant when we gave you substantive discovery
        responses you haven't, and I told you all along I would like to exchange discovery, and
        that we ought to be trying to do documents first, that's traditionally what's done. And we
        will make witnesses available. And I'm asking about Gilman just because it's not

9

obvious to me what he's got to do with our non-dischargeability claim. He is the CEO of the company. But, you know.

WS:   Okay. And you will get back to me with some dates for Mr. Bowker and Mr. Gilman, and I will get my stuff to you.

HR:   Well, we are not ... we have a motion to compel. I don't think that saying I'll get responses on December 11th is okay. I don't think it's okay.

WS:   Well, wait a minute. Are you telling me you've already filed a motion to compel?

HR:   No, but I think we are going to. We filed. You know, I think we are going to. I don't think that's okay. I mean ...

WS:   All right. I thought ten minutes ago it was okay. But all right.

HR:   No. I want to be clear. We don't think it's okay.

WS:   Okay, so you don't want me to produce them on December 11th.

HR:   Well, you know, I'm not saying I wanted you to produce them in October and, therefore, you get a free pass for the rest of your life. What I'm saying is that December 11th is way too long. It's November 13th now. You ought to have done it two weeks ago. You really ought to have done it when we gave you our responses.

WS:   I wasn't even on the case then.

HR:   Okay. You have been on the case for awhile. Your predecessor should have done it then.

WS:   All right. Well, look, I understand you are not willing to take into consideration the manpower issue. I'm doing the best I can. I'm sorry if it is not adequate for you, but I'm doing the best I can. That is all I can tell you. Anything else?

HR:   Well, let me ask you, one more time, we are not going to agree to proceeding to take discovery from someone that you've identified and that I'll agree is part of the Chrysler Financial defense team. We are not going to agree to that. So, I just want to be clear that you are requiring us to file some kind of emergency motion because you are insisting on proceeding before we would be able to get in for the usual hearing in front of Judge Kressel.

WS:   Let me just look at the calendar.

HR:   And I confess. I misread the thing. I thought it was noticed up for November 30, which would have allowed us to get in the 25th, when we are going to be there anyway for him to quash this. And, like I said, I also want to make it clear that the documents that you were insisting that you need to get we have already given you in connection with the subpoena.

WS:   I think you should bring an emergency motion if you feel one is necessary.

HR:   You think we should bring an emergency motion if one's necessary?  Okay.

WS:   If you think so, yes.

HR:   Okay.  I just want to let you know.  We are going to do that.  But we don't plan on having anybody appearing on the 20th.

WS:   Well, there is a subpoena.  He is under federal subpoena.  So.

HR:   Well, I say, we are going to file what we need to file.

WS:   By all means, do what you got to do.

HR:   Okay.

WS:   And thanks for having the conference call.  Anything else?

HR:   I think that's it.

WS:   Have a nice day.  Bye-bye.

HR:   Bye.

* * *

STATE OF MINNESOTA      )
                        ) ss.
COUNTY OF HENNEPIN      )

BE IT KNOWN, that I transcribed the electronic recording relative to the matter contained herein;

That the proceedings were recorded electronically and transcribed into typewriting, that the transcript is a true record of the proceedings, to the best of my ability;

That I am not related to any of the parties hereto nor interested in the outcome of the action;

IN EVIDENCE HEREOF, WITNESS MY HAND.

s:/ Pam E. Phillips

2679616 v1

12

WS: Yes, I understand that what you told me is that all the documents you got from Cindy Bowser off her computer Mr. Bauer also got previously, and that they are the same documents.

HR: I'm not saying that. What I'm saying is that the documents ... and you keep trying to twist that around ... look, you got your own purposes ... what I'm saying is that there are no documents that we got from Cindy Bowser that we did not deliver to you, period.

WS: And my question is, how would you know that, if you haven't looked at the disks, the disk of information, and how would you know that, unless you looked at something Mr. Bauer provided, to know what he got from Cindy Bowser. How would you know that it's the exact same information?

HR: Well, you know, all I can tell you is two things. Thing one, we have not looked at any of the Boswer emails. Nobody from Chrysler Financial has. Thing two, you have been given everything we got from Bowser. Those are true statements. We've already said that to you in an affidavit. And, you know, (a) you don't have any basis for interfering with our defense team, and (b) you certainly don't have any basis for making us treat this like this is an emergency motion, but, you know, we will be able to file something in time to get in front of Judge Kressel, if we have to. I hope we won't have to go to Duluth to do it.

WS: Would you prefer we have the motion heard on the 25th, for ....

HR: Yeah. Yes. We are going to be there.

WS: If that ... would you like me to make that accommodation?

HR: Well, you know, like I said, ...

WS: It's a yes or no question, sir.

HR: It's your call. You noticed this thing up, and if you are insisting on trying to go ahead on the 20th, we are going to file an emergency motion, and if you are prepared to put it off and let the judge decide whether you get to do this discovery, then we will try to get in on the 25th.

WS: Hold on one second. Just hold on one second.

[WS puts you on hold for a couple of minutes.]

WS: Okay. Mr. Roin, Mr. Nierengarten, sorry for the delay. I had to ask my law clerk a question.

HR: Okay.

11

# EXHIBIT 28

| | |
|---|---|
| **From:** | Matthew Burton [MBurton@losgs.com] |
| **Sent:** | Wednesday, January 27, 2010 5:38 PM |
| **To:** | wskolnick@skolnick-shiff.com |
| **Subject:** | Contempt Motion |

Bill -

I have made a run through the e-mails which were delivered on the 25th. We do not believe that Mr. Hecker has complied with the Trustee's turnover order or the Court's subsequent order. There are some e-mails which were produced for April 2009, but certainly not all. There are little, if any, from that point through late August 2009 at which point a little run starts which carries to approximately September 19, 2009. The Order required the turnover of all e-mail from June 1, 2008 to the date of the order (October 21, 2008).

To date, we have the Bowser e-mails (which are not necessarily all of the e-mail for either (a) the period requested or (b) to which Mr. Hecker was a party. We also have the Rowan e-mails delivered on or about December 21, 2009 which, obviously are simply the e-mail exchanges between Ms. Rowan and the Debtor. Finally, we have the e-mail that I described above.

There are two large and obvious gaps. First, there is the gap between Bowser's e-mail and the e-mails delivered this week. Then, there is a gap from at least September 19, 2009 to October 21, 2008. Finally, it appears that the Debtor has never actually gone to his own e-mail records and made an effort to provide the responsive e-mail.

Therefore, our contempt motion remains in place for the 3rd. We still want compliance, but even with compliance we are going to seek sanctions.


Matthew R. Burton
Leonard, O'Brien, Spencer, Gale & Sayre, Ltd.
100 S. 5th St., Ste. 2500
Minneapolis, MN 55402

(612) 332-1030 (wk)
(612) 332-2740 (fx)


# EXHIBIT 28

1

# EXHIBIT 29

## Nierengarten, Nicholas N.

| | |
|---|---|
| **From:** | Grinnell, Stephen F. |
| **Sent:** | Tuesday, February 02, 2010 3:11 PM |
| **To:** | Nierengarten, Nicholas N. |
| **Subject:** | FW: payless |
| **Attachments:** | 20091020085253298.pdf |

-----Original Message-----
From: Jim Gustafson <JGustafson@dennyhecker.com>
To: Adnan AlAssadi <AAlAssadi@paylesscar.com>
Date: Tue, 20 Oct 2009 09:54:12 -0500
Subject: RE: Re:

Adnan,


Attached please find the payoffs for these vehicles.


Jim


**From:** Adnan AlAssadi [mailto:AAlAssadi@paylesscar.com]
**Sent:** Monday, October 19, 2009 10:35 AM
**To:** Jim Gustafson
**Subject:** Re:


Jim send me the payoff .


**Adnan Alasadi**


**PCR Venture of Phoenix LLC**

# EXHIBIT 29

**General Manager**

Cell   602-489-6215

602-681-9589  EXT. 205

Fax 602-865-0646

-----Original Message-----
From: Jim Gustafson <JGustafson@dennyhecker.com>
To: Adnan AlAssadi <AAlAssadi@paylesscar.com>
Date: Fri, 16 Oct 2009 15:00:07 -0500
Subject:

Adnan,


The following vehicles all were rejected by the programs.  .  Please would you ground these vehicles.
 We need to get these vehicles either paid off or to Adesa Phoenix for sale   Let me know if you are
planning on purchasing them or I will contact The auction to pick them up.  Thanks.


7F537224

77276616

6N232063

6N242845

6N231859

8B167947

86108127


| WALDEN LEASING | |
| --- | --- |
| **Jim Gustafson** | **Walden Leasing**<br>500 Ford Road<br>Minneapolis, MN<br>55426 |

2/2/2010

Jim.Gustafson@waldenauto.com     tel: 952/512-8823
fax: 952/512-8937

*Signature powered by Plaxo*     *Want a signature like this?*

*Add me to your address book...*

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to clients of the Denny Hecker Automotive Group may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it to the sender and delete it completely from your computer system.

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

2/2/2010

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Date: 10/20/2009
ATTN: Adnan

Make:CHEVROLET
Model:COBALT LT SDN, 1AL69

Buyout for 77276616 As Of 01/31/2009

In Service Date: 02/20/07

| | |
|---|---|
| Cap Cost: | 14,019.24 |
| Customer Buyout Markup: | 50.00 |
| Depreciation Per Month: | 349.84 |
| Total Depreciation Billed: | 8,166.64 |
| Additional Markup: | 0.00 |

**Please make the check payable to:**          **ROSEDALE LEASING**

| | |
|---|---|
| Cap. Cost: | 14,019.24 |
| Depreciation: | 8,166.64 |
| Markup: | 50.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ---------- |
| Total Due: | 5902.60 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____          Date Read:_____

--------------------------------------------------------------------------

**Total Amount Due:**          **5902.60**

--------------------------------------------------------------------------

**Remit To:**          **ROSEDALE LEASING**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Make:DODGE
Model:STRATUS SXT, JRDH41

Buyout for 6N232063 As Of 01/31/2009

In Service Date: 01/30/07

| | |
|---|---|
| Cap Cost: | 10,856.00 |
| Customer Buyout Markup: | 0.00 |
| Depreciation Per Month: | 225.70 |
| Total Depreciation Billed: | 5,424.20 |
| Additional Markup: | 0.00 |

**Please make the check payable to:**      **ROSEDALE LEASING**

| | |
|---|---|
| Cap. Cost: | 10,856.00 |
| Depreciation: | 5,424.20 |
| Markup: | 0.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ----------- |
| Total Due: | 5431.80 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____      Date Read:_____

------------------------------------------------------------

**Total Amount Due:**      **5431.80**

------------------------------------------------------------

**Remit To:**      **ROSEDALE LEASING**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Date: 10/20/2009
ATTN: Adnan

Make:DODGE
Model:STRATUS SXT, JRDH41

Buyout for 6N232063 As Of 01/31/2009

In Service Date: 01/30/07

| | |
|---|---|
| Cap Cost: | 10,856.00 |
| Customer Buyout Markup: | 0.00 |
| Depreciation Per Month: | 225.70 |
| Total Depreciation Billed: | 5,424.20 |
| Additional Markup: | 0.00 |

**Please make the check payable to:**      **ROSEDALE LEASING**

| | |
|---|---|
| Cap. Cost: | 10,856.00 |
| Depreciation: | 5,424.20 |
| Markup: | 0.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ----------- |
| Total Due: | 5431.80 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____           Date Read:_____

-----------------------------------------------------------------------

**Total Amount Due:**      **5431.80**

-----------------------------------------------------------------------

**Remit To:**      **ROSEDALE LEASING**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Make:DODGE
Model:STRATUS SXT, JRDH41

Buyout for 6N231859 As Of 01/31/2009

In Service Date: 01/30/07

| | |
|---|---|
| Cap Cost: | 10,459.00 |
| Customer Buyout Markup: | 0.00 |
| Depreciation Per Month: | 225.70 |
| Total Depreciation Billed: | 5,424.20 |
| Additional Markup: | 0.00 |

**Please make the check payable to:**          **ROSEDALE LEASING**

| | |
|---|---|
| Cap. Cost: | 10,459.00 |
| Depreciation: | 5,424.20 |
| Markup: | 0.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ---------- |
| Total Due: | 5034.80 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____          Date Read:_____

------------------------------------------------------------

**Total Amount Due:**     **5034.80**

------------------------------------------------------------

**Remit To:**          **ROSEDALE LEASING**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Make:DODGE
Model:DURANGO SLT 4X4, HB5H74

Buyout for 7F537224 As Of 01/31/2009

In Service Date: 02/04/07

| | |
|---|---|
| Cap Cost: | 28,842.00 |
| Customer Buyout Markup: | 50.00 |
| Depreciation Per Month: | 325.13 |
| Total Depreciation Billed: | 12,759.16 |
| Additional Markup: | 0.00 |

**Please make the check payable to:**     **ROSEDALE LEASING**

| | |
|---|---|
| Cap. Cost: | 28,842.00 |
| Depreciation: | 12,759.16 |
| Markup: | 50.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ---------- |
| Total Due: | 16132.84 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____          Date Read:_____

----------------------------------------------------------------

**Total Amount Due:**     **16132.84**

----------------------------------------------------------------

**Remit To:**     **ROSEDALE LEASING**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Date: 10/20/2009
ATTN: Adnan

Make:CHEVROLET
Model:AVEO LT 4DR, 1TG69

Buyout for 8B167947 As Of 01/31/2009

In Service Date: 02/06/08

| | |
|---|---|
| Cap Cost: | 14,753.73 |
| Customer Buyout Markup: | 50.00 |
| Depreciation Per Month: | 285.78 |
| Total Depreciation Billed: | 3,382.57 |
| Additional Markup: | 0.00 |

Please make the check payable to:          WALDEN FLEET SERVICES II, INC.

| | |
|---|---|
| Cap. Cost: | 14,753.73 |
| Depreciation: | 3,382.57 |
| Markup: | 50.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ---------- |
| Total Due: | 11421.16 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____          Date Read:_____

--------------------------------------------------------------------------

**Total Amount Due:**     **11421.16**

--------------------------------------------------------------------------

**Remit To:**

**WALDEN FLEET SERVICES II, INC.**
**500 Ford Road**
**Minneapolis, MN 55426**

PAYLESS - PHOENIX
1712 RENTAL CAR WAY
PHOENIX, AZ 85034

Date: 10/20/2009
ATTN: Adnan

Make:SUZUKI
Model:XL-7 PREM AWD, 6E1DRA8

Buyout for 86108127 As Of 01/31/2009

In Service Date: 08/29/08

| | |
|---|---|
| Cap Cost: | 24,645.34 |
| Customer Buyout Markup: | 50.00 |
| Depreciation Per Month: | 320.25 |
| Total Depreciation Billed: | 1,638.00 |
| Additional Markup: | 0.00 |

Please make the check payable to:          **WALDEN FLEET SERVICES II, INC.**

| | |
|---|---|
| Cap. Cost: | 24,645.34 |
| Depreciation: | 1,638.00 |
| Markup: | 50.00 |
| Add. Markup: | 0.00 |
| Misc. Expenses: | 0.00 |
| | ---------- |
| Total Due: | 23057.34 |
| | ========= |

**** I WILL NEED THE MILEAGE AND THE DATE READ ****

Mileage:_____          Date Read:_____

-------------------------------------------------------------------------

**Total Amount Due:     23057.34**

-------------------------------------------------------------------------

**Remit To:**          **WALDEN FLEET SERVICES II, INC.**
**500 Ford Road**
**Minneapolis, MN 55426**

# EXHIBIT 30

## Nierengarten, Nicholas N.

**From:** Grinnell, Stephen F.
**Sent:** Tuesday, February 02, 2010 3:12 PM
**To:** Nierengarten, Nicholas N.
**Subject:** FW: **Payless - Hecker

-----Original Message-----
From: Jim Gustafson <JGustafson@dennyhecker.com>
To: Jim Gustafson <JGustafson@dennyhecker.com>, Adnan AlAssadi <AAlAssadi@paylesscar.com>
Date: Mon, 26 Oct 2009 13:09:16 -0500
Subject: RE: Re:

Adnan,

Did you decide to purchase these?  If not, I will contact the auction to make arrangements to pick these up.  Thanks.

Jim

**From:** Jim Gustafson
**Sent:** Tuesday, October 20, 2009 9:54 AM
**To:** 'Adnan AlAssadi'
**Subject:** RE: Re:

Adnan,

Attached please find the payoffs for these vehicles.

Jim

**From:** Adnan AlAssadi [mailto:AAlAssadi@paylesscar.com]

2/2/2010

# EXHIBIT 30

**Sent:** Monday, October 19, 2009 10:35 AM
**To:** Jim Gustafson
**Subject:** Re:

Jim send me the payoff .

**Adnan Alasadi**

**PCR Venture of Phoenix LLC**

**General Manager**

Cell   602-489-6215

**602-681-9589 EXT. 205**

**Fax 602-865-0646**

-----Original Message-----
From: Jim Gustafson <JGustafson@dennyhecker.com>
To: Adnan AlAssadi <AAlAssadi@paylesscar.com>
Date: Fri, 16 Oct 2009 15:00:07 -0500
Subject:

Adnan,

The following vehicles all were rejected by the programs. . Please would you ground these vehicles. We need to get these vehicles either paid off or to Adesa Phoenix for sale   Let me know if you are planning on purchasing them or I will contact The auction to pick them up.  Thanks.

7F537224

77276616

6N232063

2/2/2010

6N242845

6N231859

8B167947

86108127

| WALDEN LEASING | |
| --- | --- |
| **Jim Gustafson** | **Walden Leasing** <br> 500 Ford Road <br> Minneapolis, MN <br> 55426 |
| Jim.Gustafson@waldenauto.com | tel: 952/512-8823 <br> fax: 952/512-8937 |

*Signature powered by Plaxo*          *Want a signature like this?*

*Add me to your address book...*

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to clients of the Denny Hecker Automotive Group may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message unless you are an intended recipient of it. If you have received this message in error, please forward it to the sender and delete it completely from your computer system.

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

2/2/2010

# EXHIBIT 31

GRAY
PLANT
MOOTY

500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

February 2, 2010

<u>*VIA* E-MAIL AT WSKOLNICK@SKOLNICK-SHIFF.COM AND
SKOLNICKLAW@VISI.COM AND *VIA* UNITED STATES MAIL</u>

William R. Skolnick, Esq.
Skolnick & Shiff, PA
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402

Re:  *Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Mr. Skolnick:

As you know, Judge Kressel's January 11, 2010 order directed that "Hecker is barred from pursuing any offensive discovery activities ... until Hecker fully complies with this order." You are now aggressively pursuing offensive discovery from Chrysler Financial and others even though Hecker clearly has not fully complied with Judge Kressel's order. Accordingly, we request that you immediately cease and desist all offensive discovery, which includes retraction of any deposition subpoenas you have served.

We are still in the process of reviewing your productions on and after January 19, 2010, and further review may reveal additional deficiencies. However, we have found at least the following areas in which Hecker has not complied with Judge Kressel's order:

1.  You repeatedly represented that the government was holding most of Hecker's records, and you said that the documents and records held by the government would be included in your production to Chrysler Financial. Prior to the January 19, 2010 due date for your document production, we asked you to produce a copy of the government's search warrant inventory (which lists what had been seized and copied when Hecker's offices were raided) and identify which of the inventory categories were produced to Chrysler Financial. You produced the search warrant inventory, but ignored our request to identify which categories were being produced to Chrysler Financial. We therefore wrote to you again asking you to specify which of the items on the inventory were copied for us so that we could determine whether Hecker had made a "complete production" as required by the Court's order. You responded, "I do not understand what you [*sic*] referring to as a 'complete production'. Those are the documents that were copied and provided to us. We provided them to you." You further asserted that Hecker's "production is complete." Despite your assurance, however, it is apparent that you did *not* produce *any* of the electronic information that the government copied and is holding. For example, the search warrant inventory reports that the government "image[d]" a number of Hecker's servers and hard drives, including "MBX Server[s]," which contain emails, yet it

# EXHIBIT 31

appears that you did not produce those to us, let alone produce them in native format as we properly requested.

2.      The search warrant inventory lists Molly Kaplan's Desk "Forensic copy of documents and setting folder from HP Compaq," but it appears that you did not produce this to Chrysler Financial. Meanwhile, you have subpoenaed the deposition of Ms. Kaplan.

3.      Although you repeatedly said you could not produce information to Chrysler Financial because it had been seized, it appears that rather than seizing Hecker's computers and servers, the government for the most part merely copied ("imaged") those computer records. Thus, it appears that you have had those electronic records all along. Yet with a few narrow exceptions, it appears that you failed to produce those records as well. Thus, although Mr. Hecker is an inveterate emailer, you have produced only a tiny fraction of the emails he wrote, let alone emails concerning the issues alleged in Chrysler Financial's complaint. For example, the Bowser emails, which cover the period from July 30, 2008 to September 10, 2009, contain almost 19,000 emails sent by Hecker. In dramatic contrast, you only produced 20 emails sent by Hecker during the same period.

4.      Judge Kressel's order expressly requires Hecker to produce a privilege log by January 19, 2010, but you produced no privilege log with respect to any of the documents you produced on January 19, 2010 or thereafter.

If you have any information contradicting what I have said, please provide it to us immediately. In the meantime, as it is clear that Hecker has not fully complied with Judge Kressel's order, it is imperative that you cease your affirmative discovery immediately.

Very truly yours,

GRAY, PLANT, MOOTY,
  MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/pep/GP:2723378 v1

c:     Howard J. Roin (*via* email)