# UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**DENNIS E. HECKER**                                        **Case No. 09-50779-RJK**

        **Debtor.**                                                            **Chapter 7**

---

**CHRYSLER FINANCIAL
SERVICES AMERICAS LLC,**

            **Plaintiff,**                                        **ADV Pro. No. 09-05019**

**vs.**

**DENNIS E. HECKER**

          **Defendant.**

---

## HECKER'S MEMORANDUM OF LAW
## OPPOSING PLAINTIFF'S MOTION FOR SANCTIONS

---

## <u>INTRODUCTION</u>

Chrysler Financial Services, LLC, (hereinafter "Chrysler") seeks as a sanction a default judgment. Although this is truly a discovery dispute, Chrysler requests the draconian sanction of awarding it judgment on all its claims despite Chrysler not having put forth any evidence supporting its claims. The real question before the Court is: Did the Defendant comply with this Court's January 13, 2010 order? As contained herein, the Defendant engaged in ongoing good faith efforts and did in fact comply to the best of his ability with the Court's order.

Chrysler's submissions fail entirely to apprise the Court of the actual efforts of Defendant and his counsel, which are the facts relative to discovery. Instead, Chrysler's unnecessarily voluminous submissions inaccurately and unfairly portray Defendant in the worse possible light for purposes of attempting to avoid a trial on the merits. Despite being provided with nearly 50

thousand pages of documents that were scanned onto searchable discs at a significant cost to Defendant <u>and</u> providing physical access to computers via an invitation to come to Defendant's business location (or alternatively to his counsel's offices) to review the contents of computers for alleged missing documents that are voluminous, Plaintiff outright refused to do so. (Yet, this is exactly the same offer that was accepted by the trustee's counsel in order to address the voluminous nature of the documents)

Instead of working with Defendant to address in a meaningful and timely manner alleged deficiencies, Plaintiff's efforts were fixated on preparing and filing the present motion. By refusing to cooperate or work with Hecker in addressing alleged discovery deficiencies, Chrysler has effectively managed to prevent Hecker from engaging in discovery, as he has a legal right to do.

Chrysler's lack of due candor in its factual arguments cannot be the basis for its attempts to avoid a trial on the merits. The Court was clear when it stated on the record:

> "<u>I'm not really interested in any game of gotcha on that. I want this tried on the merits, and not based on some trick</u> about whether you answered it right or on time, and therefore, it's deemed to be admitted. I am not going to fall into that." *See* Hrg. Trans. at pg. 34 [references made to requests for admissions and discovery generally] (emphasis added)

Contrary to Chrysler's arguments to this Court, Defendant and his counsel have engaged in ongoing good faith efforts to comply with this Court's Order of January 13, 2010.

## **RELEVANT FACTS**

Hecker's statement of the facts is limited to relevant and material facts to the sole issue before this Court, which is whether or not Defendant complied with the Court's Order of January 13, 2010, that was drafted by Chrysler.

**The Court's Order of January 13, 2010**:

The relevant verbatim provisions of the Order are as follows:

2.  On or before January 19, 2010 defendant shall serve, full, complete, and unequivocal answers to Chrysler Financial's interrogatories, requests for production of documents, and requests for admission [sic], and shall produce documents responsive to Chrysler Financial's request for production of documents.  Hecker shall not assert any general "boilerplate" objections in his answers.  Any objection by Hecker must be made in response to a specific discovery request and set forth in detail the basis for the objection.

### *Hecker's Proof of Compliance:*

-On January 19, 2010, Plaintiff was provided with all of the completed written discovery responses.  *See* Skolnick Aff. at Ex. 1 and attachments.

-The above referenced submissions do not contain any "boilerplate" objections in the answers provided.  Id.  [Defendant respectfully points out that Plaintiff presently has employed near verbatim boilerplate objections in its outstanding responses to discovery.]

-As evidenced by the above referenced submissions, there are no objections to answers to requests for documents nor any objections to the responses to requests for admissions.  All questions are answered for these two discovery pleadings.  Id.  The answers to interrogatories, by necessity, required Defendant to assert his Fifth Amendment Rights in response to nos. 1, 2, 3, and 5.  Id.  The existence of a criminal investigation followed by the recent criminal indictment clearly supported Defendant's rights to assert his rights against self-incrimination. Defendant responded to the extent he could to the other two outstanding interrogatories.  Id.

3.  Hecker's Fifth Amendment objection to Chrysler Financial's document requests is overruled.  Hecker may not assert, and shall not withhold any documents responsive to Chrysler Financial's document requests based on a claim of Fifth Amendment privilege.

### *Hecker's Proof of Compliance*:

-It is undisputed that Hecker did not assert or withhold any documents based on the Fifth Amendment privilege.  *See* Skolnick Aff. at Ex. 1.

4.  With respect to any responsive documents that Hecker claims are privileged (other than

Fifth Amendment privilege, which is overruled), Hecker shall provide a privilege log to Chrysler Financial identifying such documents in accordance with Fed.R.Bkr.P. 7026 incorporating Fed.R.Civ.P. 26(b)(5), on or before January 19, 2010. In addition to delivering a privilege log covering the documents to be produced on January 19, 2010, Hecker also shall deliver a privilege log covering the Bower emails.

### *Hecker's Proof of Compliance*:

-The alleged problems with the existing privilege log were extensively addressed by January 19, 2010. *See* Affidavit of Andrew H. Bardwell ("Bardwell Aff.). As ordered by the Court, Defendant did in fact re-do and provide requested information relating to these emails.

-There was no privilege log for the SIR documents, which are documents "seized in raid" that were provided to Plaintiff. *See* Skolnick Aff. at Ex. 1.

-Defendant also provided those documents it could provide that were in the possession of Defendant's attorney, Bruce Parker, and did so as soon as these documents were made available by Mr. Parker. *See* Id. at Ex. 3.

-On February 3, Hecker's counsel offered Chrysler's attorneys the opportunity to physical inspect and review the 24 hard drives and 12 servers that were in Hecker's office, but declined the offer. *See* Skolnick Aff. at Ex. 7. At the same time a privilege log was provided for the HP (reference to Hecker Parker) documents was promptly provided. Id.

-On February 10, 2010, Defendant's counsel was informed by the government's copying service that there was another disc containing SIR documents, which were promptly provided to Plaintiff's counsel the next day. Id. at Ex. 8.

5. Hecker is barred from pursuing any offensive discovery activities (including but not limited to both the noticing of depositions and depositions currently noticed by Hecker in this adversary proceeding) until Hecker fully complies with this order.

### *Hecker's Proof of Compliance*:

-ONLY after providing the items to Plaintiff on January 19, 2010, did Defendant's counsel (in response to Plaintiff's own inquires) request dates for taking needed depositions. *See* Skolnick Aff. at Ex. 1.

-No depositions have been taken by Defendant in this action. The noted depositions as of January 6, 2010 were cancelled.

-As pointed out by the undersigned, Plaintiff refused to cooperate (despite its promises to do so) with providing available dates for taking necessary depositions. *See* Skolnick Aff. at Ex. 5. [Note: This request was made informally after Chrysler indicated that it would not even start to get its "review team" reviewing documents until over one week after the 19th, which represents a delay that has prejudiced Defendant.]

-Moreover, in the telephone conference of February 3, 2010, the previously scheduled deposition of Molly Kaplan was discussed. Id. at Ex. 7. To follow up with previously noted discovery is not "aggressively engaging in offensive discovery" under the circumstances. This is especially true when Plaintiff did not promptly and immediately review the documents provided. It was Plaintiff and not Defendant that sought a continuance of the trial date in this case.

6. Chrysler Financial is awarded the sum of $1,000 for its fees and costs incurred in making this motion. Hecker shall pay such amount to Chrysler Financial on or before January 19, 2010.

**_Hecker's Proof of Compliance_:**

-It remains undisputed that monies were promptly and properly paid. *See* Skolnick Aff. at Ex. 1.

**_Summary of Compliance_:**

The Court's order directs the Defendant to respond to three different written discovery

requests, interrogatories, requests for documents and requests for admission. In regards to the answers to interrogatories, in full compliance with paragraph 2 of the order, Hecker did not assert any general "boilerplate" objections in his answers. As to the requests for admissions, Hecker again fully complied with the order by giving "full, complete, and unequivocal answers". The only issue relates to the production of documents.

As this Court is aware, the U.S. Attorneys' office has the paper files and documents seized from government raids of Defendant's offices. At the January 6, 2010 hearing, Chrysler was advised that these documents were in the process of being scanned in by the U.S. Attorneys office's selected vendor. Further, Chrysler was advised that once the documents scanned in were delivered to Defendant's counsel the discs containing this information would be sent to Chrysler's counsel on January 19, 2010.

On Saturday morning, January 16, 2010, Mr. Skolnick received a disc from the U.S. Attorney's selected vendor with images numbered SIR 00001 through SIR 31,458. Mr. Skolnick reviewed these images over that weekend and on Monday, January 18, 2010 exceeding 20 hours. On the morning of Tuesday, January 19, 2010, a second disc was received from the government's vendor with images numbered SIR 31,459 through SIR 34,580. The second disc was immediately reviewed and delivered to Chrysler's attorney on that same day, January 19 in compliance with the deadline. Attached to the Affidavit of William R. Skolnick as Exhibit 1 is the transmittal letter to Chrysler's attorney. As stated in the letter, a check for the $1,000 was delivered along with the three discs of information, the supplemented responses to discovery, and the privilege log of the Bowser documents. In addition, Chrysler's lawyers made an informal request after the January 6 hearing for the search warrant inventory of the items seized at Defendant's offices in 2009. Although not required to give this to Chrysler's lawyers, it was

provided to them. Also, certain paper documents were made available for inspection in Mr. Skolnick's office. As the number of documents were not too great, these were copied and delivered to Chrysler's lawyers within a few days.

The government's vendor did not deliver a limited number of images until the morning of January 20, 2010, a day after the deadline in the Court's order. On Wednesday, January 20, 2010, a third disc of images from the government's vendor containing images numbered 36,960 through 39,088 was received by Defendant's counsel. It was reviewed and produced to Chrysler's attorney that same day. Defendant's attorney William R. Skolnick did review all of these images and did not assert any privilege. *See* Skolnick Aff. at Ex. 2.

Plaintiff was provided with documents Defendant was able to obtain from his prior counsel, Bruce Parker, as soon as they were reviewed for privilege. Id. at Ex. 3. This disclosure was on January 21, 2010, which was the earliest time they could be made available upon their receipt from Mr. Parker.

Plaintiff waited until January 25, 2010 to inform Defendant that it was missing two documents from the Bowser privilege log, which were then promptly provided. *See* Skolnick Aff. at Ex. 6. No subsequent complaints have been made by Plaintiff with respect to this aspect of discovery. As the Court acknowledged, Defendant complied with the rules as they relate to the preparation of the privilege log, but requested that Defendant work with Plaintiff to address problems Plaintiff's vendor was experiencing. This was done.

On January 27, 2010, or over one week after January 19, 2010, Defendant's counsel was informed by Chrysler that it was "now in the process of reviewing documents" produced after assembling its review team. *See* Skolnick Aff. at Ex. 4. This meant that all of the above discovery was provided and did not to prejudice the review process that did not even begin until

an entire week later.  Plaintiff's counsel brought up discovery and for the first time began to place limitations on the actual taking of said depositions.  Id.  During this communication, Plaintiff's counsel requested that the undersigned provide a copy of the search warrant inventory prepared by the government, which represents something that Defendant was not required to provide.  Id.  Yet, it was provided in the overall spirit of cooperation by Defendant.

On January 29, 2010, Chrysler was informed by Defendant that to the best of his belief it had provided a complete production of available documents.  See Skolnick at Ex. 5.  By informing Plaintiff that, "I do not understand what you are referring to as a "complete production" in response to Plaintiff's own communication, Plaintiff had the obligation to clarify its position.  Defendant then AFTER stating that to the best of is knowledge had fully complied with the Court's Order, THEN pointed out that Chrysler had refused to provide any discovery dates for future purpose of engaging in discovery.  Id.  The mere scheduling and coordination of schedules for this intended purpose can hardly be characterized as engaging in "aggressive offensive discovery."

On February 3, 2010, Defendant's counsel received a telephone call from Chrysler's attorneys who had apparently been drafting for the prior week its moving papers for the pending motion.  See Skolnick Aff.  During this conversation, Plaintiff's counsel did the following:

1) Refused to specifically identify what exactly was not produced to them that they thought Defendant had access to;

2) Refused to provide with any specificity the alleged problems with the production to date.  In fact, it was apparent that Plaintiff had not even completed its review of documents.

3) Refused to Defendant's good faith offer make the computers physically available for

Plaintiff to review and obtain responsive documents – the offer was out of hand

rejected.  Yet this is exactly what the trustee's attorney did during the same time

period in providing requested documents that were too voluminous and burdensome

to just provide.  The physical inspection would provide the "native format" request of

Plaintiff.

On February 10, 2010, Defendant's counsel was provided with a fourth disc containing

scanned documents from the U.S. government's selected vendor bates labeled SIR 39,098

through SIR 43,968.  *See* Skolnick Aff. at Ex. 8.  These documents were not available for

disclosure on January 19, 2010.  However, they were promptly made available when received by

Defendant. Id.

There is no dispute regarding these facts.  These facts clearly contradict the statement of

facts and history provided by Plaintiff on the single issue before this Court, which is whether or

not Defendant complied with the Court's Order of  January 13, 2010 to the best of his abilities.

## ARGUMENTS

I. **AS A MATTER OF LAW, PLAINTIFF IS NOT ENTITLED TO THE SEVERE
SANCTION OF A DEFAULT JUDGMENT UNDER THE CIRCUMSTANCES.**

### *The General Law for Imposition of Sanctions Based on Discovery*

The Federal Rules of Civil Discovery, which are incorporated by reference by the

Bankruptcy Rules, rather clearly provide the following relevant interpretation of the rules:

1. "The sanctioning process must comport with due process requirements."  *See* Rule

26 Advisory Committee Comments.  This requires that the party against whom

sanctions are sought is fully aware of what the alleged deficiencies are and has been

provided a fair opportunity to remedy them.

2. The following factors have been uniformly applied, but on a case by case basis:

a) the nature and circumstances of a particular discovery failure;

b) whether relatively mild sanctions are available and would be effective, and if not, whether the responding party has received sufficient advance warning that more sever sanctions might be imposed;

c) the discovering party's risk of prejudice due to the alleged discovery failure;

d) the need for specific deterrence against other discovery failures by the responding party; and

e) various public and judicial interests in imposing the sanctions.

3. The Court has discretion, but the discretion is not unlimited, and must take care that the sanctions are not too harsh under the circumstances.

4. There exists a strong public policy to have cases heard on the merits; therefore, severe sanctions are limited to those instances where there exists an actual showing of willful or intentional disregard to Court's Orders and the discovery process.

5. To impose sanctions, the Court must meet the threshold requirement of finding on the part of the noncomplying party at least one of the following circumstances: a) the party's behavior was willful; b) the party has acted in bad faith; c) the court can attribute some fault to the party; d) the party has engaged in persistent dilatory tactics tending to frustrate the judicial process.

*See* 33 Am. Jur. Proof of Facts 3d 459 (Supp. 2009) <u>Civil Discovery Sanctions in the Federal Courts</u>, at § 7 (citations omitted)

### ***The Relevant Law Regarding the Specific Sanctions Sought by Plaintiff***

As stated above, this Court was rather clear about its intentions of having this matter tried on the merits. The strong public policy is to have a case decided on its merits, as set forth below.

There exists no factual or legal basis for this type of extraordinary relief. In addition to mis-stating the relevant facts of this case as they relate to discovery and more specifically the issue of compliance with this Court's Order of January 13, 2010, the case law cited by Chrysler is readily distinguishable. There is simply no legal basis for Chrysler to short-cut the process of affording Hecker the right to his day in Court to challenge the serious allegations made against him.

In the case of <u>Shelton v. American Motors Corp</u>., 805 F.2d 1323 (8th Cir. 2986), the Court reversed the erroneous entry of a default judgment against a party for its refusal to provide information sought by the plaintiffs that was protected as work product. The Court stated, "[w]e also note that such a severe sanction in this circumstances is unwarranted. The sanction imposed must be ""just' and 'specifically related to the particular 'claim' which was at issue in the order to provide discovery" <u>Id</u>. at 1329 *quoting* <u>Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 695, 707 (1982). The Court went onward to opine, "[m]oreover, the record must show a willful and bad faith failure to comply, and that the other party has been prejudiced by that failure." <u>Id</u>. That Court found that the discovery tactics of plaintiffs in attempting to depose in-house counsel constituted an abuse of the discovery process and, therefore, the plaintiffs were not entitled to a default judgment under the circumstances.

In <u>Kropp v. Ziebarth</u>, 557 F.2d 142 (8th Cir. 1977), the Court refused to allow the entry of a default judgment in a case where the record did not show that the seller's failure to comply with discovery was willful or in bad faith, but instead the record indicated that the seller may have been unable to respond any more fully than he did to interrogatories. The Court concluded that the granting of a dismissal when the party has had difficulty in responding to discovery represents an abuse of discretion by the Court "in imposing the drastic sanction of dismissal." <u>Id</u>. It was the position of Kropp in responding to discovery related to a counterclaim that "he

provided all the information needed for registration that he had in his possession, that he did not

retain copies of the breeding records turned over to the defendants and that, therefore, he was

unable to state whether the records attached to the interrogatories included all the record he

turned over to the defendants." Id. at 145.

The Court concluded that, **"[d]ismissal is not authorized under Fed.R.Civ.P. 37 when the failure to comply is the result of inability rather than willfulness or bad faith."** Id. at

147 (*citing* Societe Internationale v. Rogers, 357 U.S. 197, 212 (1958)). The inability to

respond more fully was found to be a problem relating to adequacy of proof rather than any sort

of willful or bad faith abuse of the discovery process that would preclude Kropp from setting

forth the merits of his claim. The case was remanded for "less extreme sanctions." if actually

warranted. Id.

Chrysler's case of Comiskey v. JFTJ Corp., 989 F.2d 1997 (9th Cir. 1992) involved

entirely different facts that are not remotely present in the case at bar to warrant the extreme

sanction of a dismissal. For example, Comiskey involved a situation where the requested

information was both known and available to the defendant, Tops Bar. Second, there was no

claim of privilege asserted. Third, the record amply established the factual support for a finding

that "Tops Bar's failure to comply with discovery requests and court orders amounted to

'flagrant bad faith' and ' callous disregard" of its counsel's responsibilities." Id. at 1009-10.

There were no less than three separate court orders issued relating to discovery in Comiskey,

*supra.* The trial was reset four different times and Tops Bar had three different sets of attorneys.

Moreover, there was an outright failure to appear at duly noted depositions, and an outright

failure of counsel to respond to the outstanding three orders of the Court – one of which was to

respond to written discovery, the other two ordering that Tops Bar provide a corporate

representative for its deposition.

Thus, Chrysler's reliance on <u>Comiskey</u>, *supra* is misplaced and without question fact specific to an entirely different factual scenario. There is no record of "flagrant bad faith" or "callous disregard" of Court orders by Defendant or his counsel in the pending case.

Similarly, Plaintiff's cited authority of <u>Everyday Learning Corp. v. Larson</u>, 242 F.3d 815 (8th Cir. 2001) is readily distinguished on the facts. Unlike the case before this Court, Magistrate Judge Jonathan Lebedoff described a series of discovery abuses and pretrial order violations by both the party and its attorney to be "flabbergasting" based on a documented proof that the Larson repeated failure to participate personally in both producing business records and continuously failing to appear for her rescheduled deposition, which was rescheduled twice for her convenience. <u>Id</u>. at 817.

Moreover, in <u>Larson,</u> *supra*, there was proof of evading a subpoena issued to Larson's spouse who was believed to be her business partner. There were documented outright abuses of discovery by Larson's attorneys, which included the noting of depositions of third parties without properly noticing Plaintiff after the Court's discovery deadline had expired. The Court clearly went out of its way to procure compliance before the matter reached the point where a default was warranted. Again, Plaintiff lacks entirely the requisite proof of any sort of "willful" or "flagrant" discovery abuses. Just because Plaintiff mischaracterizes the facts in this matter, there does not exist a sufficient factual basis for an entitlement to a default judgment.

The case of <u>Chrysler Corp. v. Carey etal</u>, 186 F.3d 1016 (8th Cir. 1999) represents another case that is readily distinguishable on the relevant facts. Chrysler sued its former attorneys for breach of fiduciary duty claiming that they had improperly shared confidential information they acquired during their representation of Chrysler to aid attorneys prosecuting a

products liability action against them.   In <u>Carey</u> *supra*, there was documented proof that defendant attorneys engaged in a "systematic pattern of discovery abuses" that included the failure to disclose multiple responsive documents and false denials as to their existence.  The Court noted, "..there is a strong policy in favor of deciding a case on the merits, and against depriving a party of his day in court."  <u>Id.</u> at 1020.    However, the following facts upheld the lower court's decision:

> In this case, the district court found that the defendants repeatedly lied during the discovery process, denying the existence of conversations and documents which had in fact occurred and did exist.  This is far more egregious conduct than simple foot dragging or even making unfounded challenges to discovery requests.  The defendants' flat denials that conversations had occurred and that documents existed precluded any follow up discovery and thus denied Chrysler the ability to conduct effective discovery.  And , as these statements were made under oath, they are a direct affront to the Court.

Id. at 1021.  There are no similar circumstances in the case at bar to warrant the imposition of a harsh remedy in the form of a default judgment.

Plaintiff's case of <u>National Hockey League et al. v. Metropolitan Hockey Club, et al</u>., 427 U.S. 639 (1976) is another  "flagrant bad faith" and counsel's "callous disregard of its responsibilities" case, which has not been shown to exist in the pending case.  In this case, crucial interrogatories remained "substantially unanswered" despite numerous extensions granted and numerous admonitions by the Court. <u>Id</u>. at 640.  The record as a whole documented the fact that counsel was outright and flagrantly disregarding the Court's orders and warnings.  There are simply no such facts in the pending action.

In <u>Boogaerts v. Bank of Bradley</u>, 961 F.2d 765 (8th Cir. 1992), the Court again found evidence of discovery abuses that were in bad faith or deliberately intentional or willful.  In this case, Plaintiff was sanctioned for an abuse of discovery when its counsel refused to respond to

interrogatories and its counsel showed a cavalier attitude at the hearing on discovery to account for its disregard of the prior discovery orders of the Court. In fact, counsel showed complete disrespect for the Court by making demeaning statements to the Court such as, "That exercise is a ridiculous one that I would object to complying with your Honor. . . I don't mean to be arrogant and argumentative, but I am a trial lawyer." Id. at 767. Plaintiff obviously neglected to inform the Court of these distinguishing facts that in Boogaerts, *supra*, warranted the severe action taken.

Further, the case of In re Golant, 239 F.3d 931 (7th Cir. 2001) there were repeat failures to comply with discovery orders of the Court AND the Court provided a specific warning that failure to comply may result in the entry of a default judgment. Again, the above-stated standard of the Court first finding that the party against whom sanctions are imposed displayed willfulness or bad faith was applied. Id. at 936. This case involved repeat orders and ongoing violations of the orders, which is certainly not the situation presently before this Court.

Plaintiff's other non-binding cases in different jurisdictions provide similar outcomes based on the unique facts of each case that warranted the imposition of the severe sanction of a default - - none of which have any direct application to the pending lawsuit. In Metropolitan Opera Assoc., Inc. v. Local 100 et al. 212 F.R.D. 178 (S.D. N.Y. 2003), the Court make specific findings that the Union and its attorneys acted willfully and in bad faith in failing to comply with discovery, and was provided with "several court orders" that were all violated or ignored.

The specific factual findings by the lower court in Metropolitan Opera, *supra*, warranting the severe sanction imposed included: 1) counsel failing to engage in a search for documents while concurrently representing to the Court and other side it had done so; 2) failing to inform the Union that there should be a document retention policy and failing to cause an adoption of

such a policy to avoid the destruction of responsive documents; 3) the outright lies made by non-lawyer to the Court about persons he spoke to about relevant documents; 4) the outright failure of the attorney for the Union to double back and inquire of the Union employee in charge of producing documents whether he conducted a search and never taking the time to find out what steps were actually taken by the employee to locate documents; 5) waiting until the night before depositions to inquire of critical witnesses whether or not they had documents, which outstanding requests for this information existed; and 6) catching the Union's employee outright lying in his deposition about the manner in which document production was undertaken. Again, there are no such facts in the pending action. Id. at 181-2. There existed several other discovery abuses that were all documented and proven to exist in the record.

The case of FDIC v. Daily, 973 F.2d 1525 (10th Cir. 1992) represents another factual situation in which the responses to discovery failed to comply with discovery, were untimely and the defendant failed to produce documents at the directed location. The Court found the following critical finding by the lower court to be controlling: "..that Daily's failure to provide discovery was the result of a deliberate, dilatory course of conduct by the defendants' counsel for the defendants' benefit." Id. 1530. As a direct and proximate result of this proven abuse of discovery, the Court found prejudice to the other party seeking the sanction.

Plaintiff's citation to unpublished cases are also off point and will not be discussed herein due to their obvious factually distinguishing factors.

Based on the foregoing, it is readily apparent that Chrysler has come no where close to establishing the requisite willfulness or bad faith. Moreover, Chrysler has not been prejudiced in any manner due to the fact that Defendant's counsel offered to allow direct access to any electronically stored information contained in the servers and hard drives it claims it needs

access to.  Following Chrysler's refusal to engage in an onsite review of the voluminous documents, Defendant engaged a third party to provide the information contained on the various computers on a flash drive.  Thus, Chrysler has obtained all of the information that is available and in the possession and control of Defendant.

### *Plaintiff's Failure to  Set forth a Basis in Which to Impose Sanction*

As stated above, there has been disclosure of all documents and information presently available to Defendant.  The U.S. Attorney's Office refused to provide additional information, which in turn Defendant is not required to obtain because it is simply unavailable.

As stated above, the actual relevant facts related to this discovery dispute, are set forth in detail and found in the concurrent Affidavits of William R. Skolnick and Andrew H. Bardwell.  Plaintiff's conclusory statements as to any alleged "willful" or "intentional discovery abuses" are not supported by any facts or evidence.  Rather troubling, Plaintiff has not set forth with any specificity the actual discovery deficiencies it claims exist.  When Defendant was requested by the Plaintiff for the first time on February 3, 2010 for all of the images the government had taken of various computers and that those records were not produced, Defendant's counsel immediately invited Plaintiff the opportunity to access all of this information.

Based on the foregoing, Plaintiff has failed to establish the requisite factual proof of the following:

1. That Defendant or his counsel willfully or intentionally engaged in any sort of discovery abuses as they relate specifically to compliance with this Court's Order of January 13, 2010;

2. That Defendant or his counsel have acted in total disregard or reckless or callous disregard to the orders or directives of this Court;

3. That Defendant has been accorded his due process rights to a fair and meaningful opportunity to address whatever Plaintiff claims the deficiencies are. Plaintiff cannot just run to Court, refuse to cooperate with Defendant, and then claim entitlement to sanctions in the form a default judgment.

## CONCLUSION

Based on the foregoing, Plaintiff's motion for an order for a default judgment is not justified. Plaintiff cannot prevail on its draconian request for a default judgment when its entire argument relies entirely upon irrelevant facts and failed entirely to provide evidence or other proof of intentional wrongdoing on the part of Defendant or his counsel in responding to discovery.

Respectfully Submitted,

Dated: February 12, 2010 **SKOLNICK & SHIFF, P.A.**

   /e/ William R. Skolnick
William R. Skolnick #137182
LuAnn M. Petricka #18505X
527 Marquette Avenue South, #2100
Minneapolis, MN 55402
(612) 677-7600
wskolnick@skolnick-shiff.com
petricka@visi.com

ATTORNEYS FOR DENNIS E. HECKER

# UNITES STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:

**DENNIS E. HECKER**                                      Case No. 09-50779-RJK

        **Debtor.**                                                       Chapter 7

---

**CHRYSLER FINANCIAL**                               ADV Pro. No. 09-05019
**SERVICES AMERICAS LLC,**

        **Plaintiff,**

vs.

**DENNIS E. HECKER**

        **Defendant.**

---

## AFFIDAVIT OF WILLIAM R. SKOLNICK

---

STATE OF MINNESOTA  )
                     ) ss.
COUNTY OF HENNEPIN )

      William R. Skolnick hereby deposes as follows:

      1.    That I am the attorney of record for Defendant Dennis E. Hecker ("Hecker"), and am

providing this Affidavit with Hecker's Memorandum of Law Opposing Chrysler's motion for

sanctions. The facts contained herein are based on my personal knowledge.

      2.    Subsequent to the hearing in Court on January 6, 2010, I devoted a significant

amount of my time and energies to addressing the outstanding discovery issues and complying

with this Court's order. At no time did I ever engage in any alleged intentional or wrongful

conduct in complying with the order, as argued by Chrysler. Mr. Hecker assisted me in

addressing these concerns as well and has made himself available to do so.

3. As I stated in open Court on January 6, 2010, the documents in the possession of the U.S. Attorney at all relevant times that were seized in the various raids were ordered prior to the hearing at a cost of $11,000.00. (*See* pg. 25 of Hearing Trans.) There was no guarantee when the documents would all be made available, but I agreed to make them available as soon as they were received. I even offered to have the government's vendor (K&B) made a concurrent second set for simultaneous production. These voluminous documents were scanned in and placed on searchable discs at a significant cost to Defendant rather than just produced in manual form, as required by the Rules.

4. Immediately after returning to my office after the hearing of January 6, 2010, I contacted K&B directly and informed them of my Court deadline of January 19, 2010. I then instructed Mr. Hecker to go back to his office and provide me with any emails and other documents that were responsive to the outstanding document requests, which he had not previously provided. We then devoted our time to preparing new responses to outstanding discovery and revising the privilege log. I did not engage in any sort of discovery at all on behalf of Mr. Hecker with respect to this matter during the relevant period of time. To state otherwise is simply untrue.

5. The same individual who prepared the privilege log for the Bowser emails devoted his time and efforts to addressing the Bower email mail privilege log, as ordered by the Court. *See* Affidavit of Andrew H. Barwell ("Bardwell Aff.") of same date. Mr. Bardwell to the best of my knowledge fully complied with the special requests of Plaintiff. *See* the attached Exhibit 6, which evidences full compliance.

6. That on Saturday, January 16, 2010, I received the first disc from the U.S.

Attorney's selected vendor with images numbered SIR 00001 through SIR 31,458. "SIR" is a reference to "seized in raid". I personally reviewed these images over that weekend, which took in excess of 20 hours and on Monday, January 18, 2010, I made it my priority to review the documents so that they could be timely produced and a privilege log prepared, if necessary.

7. On the morning of Tuesday, January 19, 2010, I received a second disc from the government's vendor with images numbered SIR 31,459 through SIR 34,580. I immediately reviewed these images and produced the second disc to Chrysler's attorney on that same day, January 19, 2010 in compliance with the deadline. There was no privilege log prepared since I did not withhold any documents.

8. Attached hereto and marked Exhibit 1 is my letter of January 19, 2010 (together with the written discovery responses as already found in the Court's file for ease of reference) identifying the documents that were produced and delivered to Mr. Nierengarten, as well as true and accurate reproductions of full, complete and unequivocal responses except for the right to assert the Fifth Amendment to certain interrogatories, which was done per the advice of criminal counsel.

9. Wednesday, January 20, 2010, I received another disc of images from the government's vendor containing images numbered SIR 36,960 through SIR 39,088. As stated above I informed Chrysler's attorneys on January 19, 2010 that I was informed by K&B that was the final disc that would be delivered to me the next morning. See Id. at ¶ 8. As promised, I immediately reviewed and produced this disc to Chrysler's attorney that same day. Attached hereto and marked Exhibit 2 is a reproduction of the transmittal letter evidencing the manual delivery of the disc to Chrysler's attorneys.

10. On January 21, 2010, I provided hard copies of documents that were provided to

me by Bruce Parker, who was Mr. Hecker's corporate counsel over the years. These documents were previously requested and were not provided until recently. I promptly reviewed them for privilege and made hard copies for Plaintiff. Attached hereto and marked Exhibit 3 is a true and accurate reproduction of the transmittal letter containing these disclosures bates labeled HP001-HP1048.

11. I was scheduled to be out of the state of Minnesota from the evening of January 20 through Sunday, February 24. I was unable to complete my privilege log prior to leaving town for the hard copies produced, but did so promptly upon my return. On February 4, 2010, I provided my privilege log for Mr. Parker's documents containing 24 documents, which was the earliest I could have it done taking into account the ongoing examinations of Mr. Hecker by the trustee and court appearances in Mr. Hecker's dissolution matter. Attached hereto and marked Exhibit 7 is a true and accurate reproduction of the privilege log provided.

12. On January 27, 2010, or over one week after January 19, 2010, I was informed by Chrysler that it was "now in the process of reviewing documents" produced after assembling its review team. Attached hereto and marked Exhibit 4 is a true and accurate reproduction of the letter. This meant that all of the above discovery was provided so as not to prejudice this review process that did not even begin until an entire week later. Plaintiff's counsel brought up discovery and for the first time began to place limitations on the actual taking of said depositions. During this communication, Plaintiff's counsel requested that I provide a copy of the search warrant inventory prepared by the government, which represents something that Defendant was not required to provide. Id. This document was provided by me in the overall spirit of cooperation by Defendant.

13. On January 29, 2010, I informed Chrysler that to the best of my knowledge and

4

after due inquiry, Defendant had produced all available documents. Attached hereto and marked Exhibit 5 is a true and accurate reproduction of my letter to Plaintiff's counsel, which was sent to ascertain what, if any, problems still existed with discovery. Based on the fact that I sincerely believe that Defendant had complied with the Court's Order, I then requested dates for needed discovery so that I could schedule these future depositions. I have been prevented from obtaining deposition dates from Chrysler's attorneys. I was attempting to coordinate our schedules.

14. At no time did I take any depositions in this case and I have most certainly not engaged in any "aggressive offensive" discovery tactics since January 6, 2010, if ever.

15. On February 3, 2010 I received a telephone call from Mr. Nierengarden to discuss discovery and the scheduling of depositions, which both parties had to schedule in advance of actually taking them. During this telephone conversation, Mr. Neirengarten informed me for the first time that he did not believe that we had produced the emails that he believed existed on Mr. Hecker's computers located in his office. I then informed Mr. Neirengarten that he could come to either my office of Mr. Hecker's office to review these documents at their convenience. He then pretended to get Mr. Roin on the phone as though Mr. Roin was in Chicago (my legal assistant had seen Mr. Roin in the skyway earlier).

16. After outright refusing to accept my offer to review the computers containing literally hundreds of thousands of emails from the Hecker offices, I was then informed that Chrysler was going to file its present motion. There was no effort or attempts on the part of Chrysler's attorneys to engage in the requisite conference call or to provide for cooperation to avoid having to come to Court. I repeatedly asked Chrysler's lawyers what specifically they wanted. They refused to identify any documents. They asked about ESI the government had. I

explained that only hard copy files were reviewed not the government's imaging of all of the Hecker entities servers and hard drives. They informed me that I should have reviewed the ESI in the government's possession as all I had to do was ask to review it. I said if they wanted I would supply them with a waiver to obtain it from the government. They said no. In fact, immediately after the call with Chrysler's lawyers, I called Assistant U.S. Attorney to see if it was available to me and she said no. She said Mr. Hecker would not and could not obtain that from the government, except in a criminal case through discovery.

17. Within hours I received the filed massive submissions by Plaintiff, which obviously took some time to prepare. I then prepared the attached letter dated February 4, 2010 setting forth my invitation, which was declined.

18. I honestly am not aware of any actual discovery deficiencies that exist at this time. To the best of my knowledge and belief, everything that Defendant has or has access to has either been provided and/or access provided to independently of retaining a computer forensic specialist that could obtain the voluminous records found on the 12 servers and 24 hard drives at business. There are presently no employees in the office except Mr. Hecker. At the time of the raids there had between 40 and 50 people in his office.

19. In the interim, although not required to, at my own expense, I hired an independent computer forensic contractor to attempt to produce a flash drive of the existing emails in their current form. I have already paid the $5,000 retainer to the contractor, but am informed it will be more than that. I just received this flash drive this afternoon, but am presently tied up in a court-ordered mediation for the Hecker dissolution matter.

20. Late on February 10, 2010 I received another disc from the government's authorized vendor informing me of another disc containing documents bates labeled SIR 39,098 through

SIR 43,968. Attached hereto and marked as Exhibit 8 is a true and accurate reproduction of the transmittal letter evidencing our prompt production of these documents as they became available. Also attached as Exhibit 9 is a true and accurate reproduction of an email communication string between Ms. Petricka and Mr. Nierengarten regarding his questions as to source.

21. Contrary to Chrysler's argument to this Court, Mr. Hecker and I have been working closely with the bankruptcy trustee's attorney, Matthew Burton, to provide access to requested documents and several documents have been provided. Additionally, Mr. Burton accepted my invitation to personally inspect the computers of Mr. Hecker by remotely accessing them at my offices and obtain reproductions of those documents he determined or decided he needed, which to the best of my knowledge fully addressed the remaining issues with the turnover of records to the Trustee. Counsel for the Trustee is in the process of reviewing the documents and has continued the contempt motion to verify he has everything he requested and needs. It has been a cooperative effort that I believe has successfully resolved the issues.

22. The motion to compel previously scheduled by the trustee has been continued due directly to the ongoing disclosures and communications with the trustee. Unlike Chrysler's attorneys, Mr. Burton at all times conducted himself in a reasonable manner recognizing the fact that it is both impractical and impossible for Mr. Hecker to personally review each and every one of the estimated over one million communications. At one time Mr. Hecker employed 40 employees and is presently by himself due to his financial situation. This is why I offered Chrysler's attorneys the same opportunity, which they outright declined and instead within hours of the invitation filed their lengthy moving papers without so much as acknowledging this good faith offer.

23. Last year, Chrysler had its own computer team visit all of the dealerships financed

7

with Chrysler and obtained all of the electronically stored information about transactions. The information is not on any of the servers or hard drives located at the offices of the Defendant and he does not have custody or control of this information.

24. In addition, Chrysler does not claim it lacks any of the records concerning Hyundai transactions related to its claims as both my client and Hyundai have provided them with this information.

25.    Again, I have used my best efforts and employed resources at my own expense to comply with the Court's Order of January 13, 2010.  As I attempted to inform the Plaintiff's attorneys, I have every incentive to comply so that I can do needed discovery on behalf of Mr. Hecker.

FURTHER YOUR AFFIANT SAITH NOT.

William R. Skolnick

Sworn and subscribed to before me
A Notary Public this 12th day of
February, 2010.



[Notary Public]

LISA FAY SKOLNICK
Notary Public-Minnesota
My Commission Expires Jan 31, 2013

# SKOLNICK & SHIFF, P.A.
### ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 19, 2010

**VIA MESSENGER**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

     Re:   <u>Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker</u>
            **Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

    Enclosed and hereby served upon you, please find copies of the following documents:

1. A check in the amount of $1,000;
2. Disc containing documents labeled SIR00001 – SIR31458;
3. Disc containing documents labeled SIR31459 – SIR34580;
4. The search warrant and inventory Mr. Grinnell requested. The U.S. Attorneys Office went through the documents seized and its' taint team removed privileged documents. It is my understanding that those documents were in a separate box and are being scanned in. I have not received that box nor the scanned images. If there are documents responsive to your requests and that we assert are privileged, you will receive a separate privilege log.
4. Defendant's Supplemental Responses to Request for Production of Documents;
5. Defendant's Amended Responses to Requests for Admissions;
6. Defendant's Supplemental Answers to Interrogatories;
7. Explanations of Privilege log edits for the Bowser documents using your numbers;
8. The copying service selected by the U.S. Attorneys office will be delivering to me the final disc in the morning. I will provide you with a copy immediately thereafter.
9. I have a couple of boxes of hard copies for you to review. They are available for your inspection and selection for copying. Just call my assistant to arrange a time that is convenient for you. Or if you prefer we will just copy them and have them delivered to you.



EXHIBIT
1

As to deposition scheduling, I have a rather full schedule the rest of this week. If you could please provide dates for the following depositions via email, I will do my best to schedule them accordingly:

1. John Bowker
2. Michael Chumbley
3. Tom Gilman
4. Steve Leach
5. Richard Page
6. Sue Miller
7. Molly Kaplan

Yours truly,

**SKOLNICK & SHIFF, P.A.**

William R. Skolnick

WRS:zmp

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In Re: | ) | Case No. 09-50779 |
| | ) | |
| DENNIS E. HECKER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Hon. Robert J. Kressel |
| | ) | |
| CHRYSLER FINANCIAL SERVICES AMERICAS LLC, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Adv. Pro. No. 09-05019 |
| v. | ) | |
| | ) | |
| DENNIS E. HECKER, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S REQUESTS FOR PRODUCTION OF DOCUMENTS**

TO:   Plaintiff and its attorneys Nicholas N. Nierengarten, GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A., 500 IDS Center, 80 S. Eighth St., Minneapolis, Minnesota 55402

Defendant, Dennis E. Hecker ("Hecker") provides the following supplemental responses to Plaintiff's First Set of Requests for Production of Documents:

## DOCUMENT REQUESTS

**REQUEST NO. 1:**   All documents identified in response to Plaintiff's First Set of Continuing Interrogatories to Defendant.

**RESPONSE:** See documents produced.

**REQUEST NO. 2:**   All documents supporting, negating, or otherwise relevant to Defendant's denial of or affirmative allegations in response to any allegation set forth in the Complaint.

**RESPONSE:** See documents produced.

1

**REQUEST NO. 3:**    All documents supporting, negating, or otherwise relevant to Defendant's affirmative defenses set forth in the Answer to the Complaint.

**RESPONSE:** See documents produced.

**REQUEST NO. 4:**    All documents supporting, negating, or otherwise relevant to Defendant's denial or qualified admission of any of Chrysler Financials First Set of Requests for Admission.

**RESPONSE:** See documents produced.

**REQUEST NO. 5:**    All documents that describe Hecker's direct or indirect ownership interest in Walden and any of the Hecker Borrowers, including but not limited to articles of formation, organization or incorporation; stock, membership, partnership certificates or other evidences of ownership; stock or membership registers, logs or records; operating agreements, shareholder or member control agreements, and corporate or other organization minute books or similar records of meetings of shareholders, members or partners.

**RESPONSE:** See Master List of Hecker Companies that is included in the documents produced. All of the corporate minute books for entities in which Defendant has a direct or indirect ownership interest is in the possession of the Trustee. To the extent additional documents are located, they will be promptly provided.

**REQUEST NO. 6:**    All documents that describe the identities, duties, functions, and roles of the directors, officers, and management of Walden or any of the Hecker Borrowers.

**RESPONSE:** See enclosed documents. Corporate flowcharts are included in the documents produced. To the extent additional documents are located, they will be promptly provided.

2

**REQUEST NO. 7:**   All documents reflecting any Hecker Borrower's sale or other disposition of any vehicle, in or after June 2008, that the Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial.

**RESPONSE:** See documents produced.

**REQUEST NO. 8:**   All documents relating to the failure of any Hecker Borrower to pay to Chrysler Financial any of the proceeds due to Chrysler Financial that any Hecker Borrower received from the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial.

**RESPONSE:** See documents produced.

**REQUEST NO. 9:**   All documents relating to the disposition or use of any proceeds due to Chrysler Financial but unpaid that any Hecker Borrower received from the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial, including but not limited to all documents reflecting deposits into, withdrawals from, or the balances from time to time of any account at any financial institution that ever held such proceeds and the monthly statements for such accounts.

**RESPONSE:** See documents produced.

**REQUEST NO. 10:**  All documents related to any negotiations concerning or offer made or purportedly made by Hyundai in or about November 2007 to January 2008 to sell vehicles to You, including but not limited to (a) contracts entered into as a result, and (b) communications with Chrysler Financial concerning such offers, negotiations or contracts.

**RESPONSE:** See documents produced.

3

**REQUEST NO. 11**:  All documents related to any request for, negotiations concerning, or receipt of financing from Chrysler Financial for the purchase of vehicles from Hyundai by You from 2006 or thereafter.

**RESPONSE:** See documents produced.

**REQUEST NO. 12**:  All copies of all or any portion of any letter or purported letter dated November 7, 2007 that offers or purports to offer to sell Hyundai vehicles to Walden.

**RESPONSE:** See documents produced.

**REQUEST NO. 13**:  All documents related to any modifications that You made or caused to be made to a November 7, 2007 letter from Hyundai offering to sell vehicles to Walden, a copy of which is attached to Chrysler Financials First Set of Requests for Admission as Exhibit 1.

**RESPONSE:** None.

**REQUEST NO. 14**:  All documents reflecting Hecker's whereabouts or activities between November 1, 2007 and November 30, 2007, including but not limited to diaries, calendars, Microsoft Outlook calendars or other electronic calendars, credit or debit card receipts, and flight logs or plans.

**RESPONSE:** See documents produced.

**REQUEST NO. 15**:  All documents related to Your receipt of cash incentives from Hyundai for vehicles that You purchased from Hyundai in 2007 or 2008 using funds loaned or advanced by Chrysler Financial.

**RESPONSE:** See documents produced.

4

**REQUEST NO. 16**:  All documents related to any limitation that Chrysler Financial placed on the availability of loans or advances for the purchase of vehicles that Chrysler Motors did not manufacture or vehicles that the manufacturer did not promise to repurchase.

**RESPONSE:** See documents produced.

**REQUEST NO. 17**:  All documents related to the termination or resignation of Steve Leach, Dick Page, Molly Kaplan, or Cyndi Bowser, including but not limited to all documents reflecting the terms of any severance, retirement, or other compensation agreements or payments.

**RESPONSE:**  See documents produced.

**REQUEST NO. 18**:  All documents related to Your negotiation with Hyundai for the purchase of vehicles from or after 2006.

**RESPONSE:** See enclosed documents.

**REQUEST NO. 19**:  All documents consulted, reviewed or relied upon by any expert You expect to call at trial.

**RESPONSE:** No expert has been retained at this point in time.

**REQUEST NO. 20**:  Any report, summary or analysis prepared by any expert You expect to call at trial relating to or supporting the opinions of such expert in this matter.

**RESPONSE:** No expert has been retained at this point in time.

**REQUEST NO. 21**:  The Curriculum Vitae or resume for any expert You expect to call at trial.

**RESPONSE:** No expert has been retained at this point in time.

**REQUEST NO. 22**:  All documents relating to the November, 2007 meeting between You and representatives of Plaintiff, as alleged in paragraphs 15 – 17 and 19 of Your Answer.

**RESPONSE:** See documents produced.

5

**REQUEST NO. 23**:  All documents relating to your allegations in paragraph 20 of Your Answer, including but not limited to the November 19, 2007 email from John Bowker to Hecker and any related emails, documents, or other communications.

**RESPONSE:** See documents produced

**REQUEST NO. 24**:  Any forensic audit or other accounting analysis of You or the Hecker Borrowers in or after June, 2008.

**RESPONSE:** See documents produced.

**REQUEST NO. 25**:  All documents relating to the allegations in paragraph 30 of Your Answer, including but not limited to the allegation relating to "Plaintiff's breach of promises made to Hecker in conjunction with Hecker purchasing Advantage Rent a Car ...."

**RESPONSE:** See documents produced.

Date:  January 19, 2010

By:

William R. Skolnick #137182
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN  55402-1111
(612) 677-7600
(612) 677-7601 Fax

6

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT'S AMENDED RESPONSES TO REQUESTS FOR ADMISSION

### RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:**   Admit that Hecker received the letter addressed to Walden Fleet Services II, Inc. ("Walden II") from Hyundai dated November 7, 2007, a copy of which is attached hereto as Exhibit G.

**RESPONSE TO NO. 1:** Admitted.

**REQUEST NO. 2:**   Admit that Exhibit G offered to sell 605 Hyundai vehicles to Walden II and repurchase any of those vehicles returned within a year from delivery.

**RESPONSE TO NO. 2:** Admitted.

**REQUEST NO. 3:**   Admit that Exhibit G is a true and correct copy of the November 7, 2007 letter actually received by Hecker from Hyundai.

**RESPONSE TO NO. 3:** Admitted.

1

**REQUEST NO. 4:**   Admit that Exhibit G is genuine, authentic, and a true and correct copy of the original.

**RESPONSE TO NO. 4:** Admitted.

**REQUEST NO. 5:**   Admit that Exhibit G is admissible at trial in this matter for all purposes.

**RESPONSE TO NO. 5:** Admitted.

**REQUEST NO. 6:**   Admit that Exhibit G was altered to create Exhibit F, a letter addressed to Walden II purportedly from Hyundai dated November 7, 2007.

**RESPONSE TO NO.6:** Denied.

**REQUEST NO. 7:**   Admit that Exhibit F states that Hyundai offered to sell 4,855 Hyundai vehicles to Walden II and repurchase any of those vehicles returned within a year from delivery.

**RESPONSE TO NO. 7:** Admitted.

**REQUEST NO. 8**   Admit that Hyundai never made the offer set forth in Exhibit F.

**RESPONSE TO NO. 8:** Admitted.

**REQUEST NO. 9:**   Admit that Hecker caused Exhibit G to be altered to create Exhibit F.

**RESPONSE TO NO. 9:** Denied.

**REQUEST NO. 10:**   Admit that Hecker delivered Exhibit F to representatives of Chrysler Financial.

**RESPONSE TO NO. 10** Denied.

**REQUEST NO. 11:**   Admit that Exhibit F is a true and correct copy of the letter Hecker actually delivered to representatives of Chrysler Financial.

**RESPONSE TO NO. 11** Denied.

2

**REQUEST NO. 12:** Admit that Exhibit F is genuine, authentic, and a true and correct copy of the original.

**RESPONSE TO NO. 12** Denied.

**REQUEST NO. 13:** Admit that Exhibit F is admissible at trial in this matter for all purposes.

**RESPONSE TO NO. 13** Denied.

**REQUEST NO. 14:** Admit that at the time Hecker delivered Exhibit F to representatives of Chrysler Financial he knew that Hyundai had offered to sell and repurchase (if returned within a year from delivery) only 605 Hyundai vehicles pursuant to Exhibit G, not 4,855 vehicles.

**RESPONSE TO NO. 14** Denied.

**REQUEST NO. 15:** Admit that Hecker delivered Exhibit F to representatives of Chrysler Financial in order to induce Chrysler Financial to loan money to a Hecker Related Entity for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE TO NO. 15** Denied.

**REQUEST NO. 16:** Admit that Chrysler Financial relied on Exhibit F in loaning money to a Hecker Related Entity for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE TO NO. 16** Denied.

**REQUEST NO. 17:** Admit that a Hecker Related Entity used money loaned by Chrysler Financial to purchase Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

3

**RESPONSE TO NO. 17:** Denied.

**REQUEST NO. 18**:  Admit that Hecker knew that Chrysler Financial financed a Hecker Related Entity's purchase of more than 3,600 Hyundai vehicles believing that there was an agreement for Hyundai to repurchase them, when in reality there was no such agreement.

**RESPONSE TO NO. 18** Denied.

**REQUEST NO. 19**:  Admit that neither Hecker nor any Hecker Related Entity repaid the entire amount that Chrysler Financial loaned for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE TO NO. 19** Denied.

**REQUEST NO. 20**:  Admit that Hecker owes to Chrysler Financial the unrepaid portion of the amount that Chrysler Financial loaned for the purchase of Hyundai vehicles that Exhibit F falsely represented as carrying a Hyundai repurchase guarantee.

**RESPONSE TO NO. 20** Denied.

**REQUEST NO. 21**:  Admit that Hecker and certain Hecker Related Entities entered into a Master Loan and Security Agreement, a copy of which is attached hereto as Exhibit I.

**RESPONSE TO NO. 21** Admitted.

**REQUEST NO. 22**:  Admit that Exhibit I is genuine, authentic, and a true and correct copy of the original.

**RESPONSE TO NO. 22:** Admitted that the first 17 pages appear to be are copies of the original.  Additional documents are attached that were not part of the original agreement.

**REQUEST NO. 23**:  Admit that Exhibit I is admissible at trial in this matter for all purposes.

**RESPONSE TO NO. 23:** Admitted.

4

**REQUEST NO. 24**:  Admit that Hecker Borrowers received proceeds from the sale or other disposition of vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO.24:**  Admitted.

**REQUEST NO. 25**:  Admit that some or all of the proceeds that Hecker Borrowers received from the sale or other disposition of vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I were the property of Chrysler Financial.

**RESPONSE TO NO. 25:**  Denied.

**REQUEST NO. 26**:  Admit that Exhibit I required Hecker Borrowers to hold in trust for Chrysler Financial some or all of the proceeds that Hecker Borrowers received from the sale of vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO. 26:**  Admit that Exhibit I page 4 states that.

**REQUEST NO. 27**:  Admit that Exhibit I required Hecker Borrowers to promptly pay over and deliver to Chrysler Financial some or all of the proceeds that Hecker Borrowers received from the sale or other disposition of vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO. 27:**  Admitted.

**REQUEST NO. 28**:  Admit that Hecker Borrowers did not pay over or deliver to Chrysler Financial all proceeds due Chrysler Financial that Hecker Borrowers received from the sale or other disposition of certain vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO. 28:**  Denied.

**REQUEST NO. 29**:  Admit that Hecker directed Hecker Borrowers to not pay-over or deliver to Chrysler Financial all proceeds due Chrysler Financial that Hecker Borrowers received

5

from the sale or other disposition of certain vehicles that they had purchased using money

borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO. 29:** Denied.

**REQUEST NO. 30:** Admit that Hecker Borrowers did not pay over or deliver to

Chrysler Financial approximately $29,989,913 in proceeds due to Chrysler Financial that Hecker

Related Entities received from the sale or other disposition of certain vehicles that they had

purchased using money borrowed from Chrysler Financial under Exhibit I.

**RESPONSE TO NO.30:** Denied.

**REQUEST NO. 31:** Admit that Hecker owes to Chrysler Financial the proceeds due to

Chrysler Financial that Hecker Borrowers received from the sale or other disposition of certain

vehicles that they had purchased using money borrowed from Chrysler Financial under Exhibit I,

but that they did not pay to Chrysler Financial.

**RESPONSE TO NO. 31:** Denied.

**REQUEST NO. 32:** Admit that Rosedale Dodge Inc. ("Rosedale Dodge") entered into a

Lease Financing Agreement, a copy of which is attached hereto as Exhibit J.

**RESPONSE TO NO. 32:** Admitted.

**REQUEST NO. 33:** Admit that Exhibit J is genuine, authentic, and a true and correct

copy of the original.

**RESPONSE TO NO. 33:** Admitted.

**REQUEST NO. 34:** Admit that Exhibit J is admissible at trial in this matter for all

purposes.

**RESPONSE TO NO. 34:** Admitted.

6

**REQUEST NO. 35:**  Admit that Rosedale Dodge received proceeds from the sale or other disposition of vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE TO NO. 35:**  Admitted.

**REQUEST NO. 36:**  Admit that Rosedale Dodge entered into a Security Agreement, an example of which is attached as Exhibit K, each time it receive an advance under Exhibit J.

**RESPONSE TO NO. 36:**  Admitted.

**REQUEST NO. 37:**  Admit that Exhibit K is genuine, authentic, and a true and correct copy of the original.

**RESPONSE TO NO. 37:**  Admitted.

**REQUEST NO. 38:**  Admit that Exhibit K is admissible at trial in this matter for all purposes.

**RESPONSE TO NO. 38:**  Admitted.

**REQUEST NO. 39:**  Admit that the Security Agreements that Rosedale Dodge entered when it borrowed money from Chrysler Financial under Exhibit J required Rosedale Dodge to hold in trust for and promptly pay to Chrysler Financial some or all of the proceeds that Rosedale Dodge received from the sale or other disposition of vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE TO NO. 39:**  Denied.

**REQUEST NO. 40:**  Admit that Rosedale Dodge did not pay to Chrysler Financial all proceeds due Chrysler Financial that Rosedale Dodge received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE TO NO. 40:**  Denied.

7

**REQUEST NO. 41**:  Admit that Hecker directed Rosedale Dodge to not pay to Chrysler Financial all proceeds due Chrysler Financial that Rosedale Dodge received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE TO NO. 41:**  Denied.

**REQUEST NO. 42**:  Admit that Rosedale Dodge did not pay to Chrysler Financial approximately $37,894,074 in proceeds due to Chrysler Financial that Hecker Related Entities received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J.

**RESPONSE TO NO. 42:**  Denied.

**REQUEST NO. 43**:  Admit that Hecker owes to Chrysler Financial the proceeds due to Chrysler Financial that Rosedale Dodge received from the sale or other disposition of certain vehicles that it had purchased using money borrowed from Chrysler Financial under Exhibit J, but that Rosedale Dodge did not pay to Chrysler Financial.

**RESPONSE TO NO. 43:**  Denied.

**REQUEST NO. 44**.  Admit that approximately $13,800,000 is the unrepaid portion of the amount that Chrysler Financial loaned for the purchase of Hyundai vehicles pursuant to a November 2007 letter agreement with Hyundai.

**RESPONSE TO NO. 44:**  Denied.

Dated: January 19, 2010                **SKOLNICK & SHIFF, P.A.**

                                       **/s/ William R. Skolnick**
                                    **William R. Skolnick #137182**
                                    **527 Marquette Avenue South, #2100**
                                    **Minneapolis, MN 55402**
                                    **(612) 677-7600**
                                    **wskolnick@skolnick-shiff.com**
                                    **ATTORNEYS FOR DENNIS E. HECKER**

8

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In Re: | ) Case No. 09-50779 |
| | ) |
| DENNIS E. HECKER, | ) Chapter 7 |
| | ) |
| Debtor. | ) Hon. Robert J. Kressel |
| | ) |
| CHRYSLER FINANCIAL SERVICES | ) |
| AMERICAS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Adv. Pro. No. 09-05019 |
| v. | ) |
| | ) |
| DENNIS E. HECKER, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S SUPPLEMENTAL ANSWERS TO INTERROGATORIES**

TO:    Plaintiff Chrysler Financial Services Americas, LLC and its attorneys Nicholas N.
Nierengarten, Stephen F. Grinnell, GRAY, PLANT, MOOTY, MOOTY & BENNETT,
P.A., 500 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402 and

Defendant, Dennis E. Hecker ("Hecker"), submits the following Amended Answers to

Interrogatories:

## I.  INTERROGATORIES

**INTERROGATORY NO. 1**: With respect to each paragraph of the Complaint that was

denied or for which You made affirmative allegations and for each affirmative defense set forth

in the Answer:

   (a)    State any and all facts that support, negate, or otherwise relate to the denial,
affirmative allegations or affirmative defense;

   (b)    Identify all persons having knowledge of said facts and describe the substance of
their knowledge; and

   (c)    Identify all documents that support, negate, or otherwise relate to the denial,
affirmative allegations or affirmative defense.

1

**ANSWER:**    1(a): Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

1(b): Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

1(c): Subject to and without voluntarily waiving Defendant's privilege, see documents produced.

**INTERROGATORY NO. 2:** With respect to the letter addressed to Walden Fleet Services II dated November 7, 2007, which is attached to Plaintiff's First Set of Requests for Admissions as Exhibit F, ("Hyundai Letter"):

(a)    Identify all persons who were aware of the Hyundai Letter, had any involvement in the preparation of the Hyundai Letter, or had any role in delivering the letter to Chrysler Financial;

(b)    Describe the role, actions, and knowledge of each such person relating to the Hyundai Letter;

(c)    Describe all communications relating to the Hyundai Letter, any letter from Hyundai dated in or around November 2007 offering to sell vehicles to You, Your purchase of any vehicles from Hyundai in November 2007 or thereafter, or any loan or advance that You sought or received from Chrysler Financial in order to purchase any vehicles from Hyundai in November 2007 or thereafter.

**ANSWER:**    2(a): Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

2(b): Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

2(c): Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

**INTERROGATORY NO. 3:** Identify all communications and persons with knowledge relating to any failure to pay Chrysler Financial any of the proceeds due to Chrysler Financial from the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial.

2

**ANSWER:** Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

**INTERROGATORY NO. 4:** With respect to the sale or other disposition of any vehicle, in or after June 2008, that any Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial and for which the Hecker Borrowers did not remit all of the proceeds due Chrysler Financial from the sale or other disposition, identify all accounts at any financial institution that ever held any proceeds from such sales or other disposition.

**ANSWER:** Defendant objects to this interrogatory as compound and overly broad. Without waiving said objections, contained in the documents being produced multiple lists of bank accounts of Hecker entities. As examples, see SIR 09465, SIR 30773-4, SIR 30784-3-785.

**INTERROGATORY NO. 5:** Identify all communications relating to and persons who have knowledge of any limitations that Chrysler Financial placed on the availability of loans or advances for the purchase of vehicles that Chrysler Motors did not manufacture or vehicles that the manufacturer did not promise to repurchase.

**ANSWER:** Defendant hereby invokes his right against self-incrimination as provided by the 5th Amendment to the United States Constitution.

**INTERROGATORY NO. 6::** Identify each expert You expect to call at trial as an expert witness and for each such expert provide the following:

(a)   State the subject matter on which the expert is expected to testify;

(b)   State the substance of the facts and opinions to which the expert is expected to testify and the grounds for each opinion; and

(c)   Identify all documents consulted, reviewed or relied upon by the expert in forming each opinion.

**ANSWER:** At this time, Defendant has not selected or decided to retain any expert witnesses.

3

_____
                                        Dennis E. Hecker

Sworn to before me this
_____ day of January, 2010.


_____
Notary Public

        **AS TO OBJECTIONS:**

Date:  January 19, 2010              By_____
                                        William R. Skolnick #137182
                                        2100 Rand Tower
                                        527 Marquette Avenue South
                                        Minneapolis, MN  55402-1111
                                        (612) 677-7600
                                        (612) 677-7601 Fax

4

# SKOLNICK & SHIFF, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 20, 2010

**VIA MESSENGER**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

Re:  Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker
**Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

Enclosed is the final disc containing documents labeled SIR34581 – SIR36959.  The remaining hard copies are being copied and will be delivered to you.  I am leaving the state of Minnesota this evening and will not return until next week.  This is why I would like to have you please provide dates for the depositions I listed sent to me via email. I will do my best to schedule them accordingly.

Yours truly,
**SKOLNICK & SHIFF, P.A.**

/zmp

William R. Skolnick

WRS:zmp

EXHIBIT
2

# SKOLNICK & SHIFF, P.A.
### ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 21, 2010

**VIA MESSENGER**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

     Re:   <u>Chrysler Financial Services Americas, LLC, vs Dennis E. Hecker</u>
            **Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

    Enclosed in the above referenced matter, please find documents produced from Dennis E. Hecker, Bates labeled HP0001-HP1048.

    If you have any questions, please feel free to contact me.

                  Yours truly,

                  **SKOLNICK & SHIFF, P.A.**

                  Zachary M. Puchtel
                  Legal Assistant to William R. Skolnick

WRS:zmp

**EXHIBIT**
**3**
tabbies



GRAY
PLANT
MOOTY

500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

January 27, 2010

*VIA* E-MAIL AT WSKOLNICK@SKOLNICK-SHIFF.COM AND
SKOLNICKLAW@VISI.COM AND *VIA* UNITED STATES MAIL

William R. Skolnick, Esq.
Skolnick & Shiff, PA
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, MN 55402

Re: *Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Mr. Skolnick:

This is a follow-up to our recent communications regarding Hecker's document production and deposition scheduling.

First, Chrysler Financial has assembled a team that is now in the process of reviewing the documents produced by Hecker on January 19, 2010 and thereafter. The review team is moving as fast as it can. Based on our preliminary evaluation of the production, we anticipate that it will take at least a week to complete the review process.

Second, we requested that the two boxes of documents referenced in your letter of January 19, 2010 be delivered to your vendor (K&B Document Technologies) for processing in accordance with specific parameters as set forth in my January 22, 2010 email to Mr. Puchtel. To date, we have not yet received the documents. Further delay in the receipt of these materials may affect our ability to complete the review process.

Third, in his January 7, 2010 letter, Mr. Grinnell asked Hecker to provide a copy of the search warrant inventory prepared by the government and identify which categories from the inventory were designated for copying. Hecker produced the search warrant inventory, but did not identify the categories of documents on the inventory that were copied. Please provide this information so that we know that there has been a complete production before we start with depositions.

Fourth, with respect to the depositions of Chrysler Financial employees, we do not believe that any inquiry by Hecker as to what such employees may have communicated to the government as part of its criminal investigation is appropriate or relevant. Accordingly, we ask for your assurance that you will not inquire into any such communications with the government.

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN • ST. CLOUD, MN • WASHINGTON, DC
WWW.GPMLAW.COM



EXHIBIT
4

Fifth, assuming that Hecker's production is complete, that we can complete the review without further complications, and that we receive the information and assurances set forth above, we should be able to start with depositions, including Mr. Hecker's deposition, in mid-to-late February.

Finally, Chrysler Financial's trial preparation has been seriously prejudiced by Hecker's three month delay in responding to discovery. We therefore request that Hecker agrees to a one month delay in the trial date from March 22, 2010 to April 19, 2010 or other date thereafter that is convenient for Judge Kressel. Please let us know whether you are agreeable to such an extension.

Very truly yours,

GRAY, PLANT, MOOTY,
    MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/tll/GP:2720418 v1

c:       Howard J. Roin, Esq. (*via* email)

# SKOLNICK & SHIFF, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

January 29, 2010

**VIA FAX ONLY**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

      Re:   <u>Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker</u>
            **Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

      I hereby respond to the issues as you have numbered them;

      First, I have no response to your review team and how fast or slow they are moving.

      Second, the two boxes that I thought existed turned out to be much smaller and were produced to you in hard copy.

      Third, I do not understand what you referring to as a "complete production". Those are the documents that were copied and provided to us. We provided them to you.

      Fourth, as to depositions of Chrysler Financial employees, if questions are asked at the depositions that you believe are privileged, I am confident you will assert privilege as you deem appropriate. What these witnesses have said to other people about the subject matter of our lawsuit is clearly discoverable. I can understand your concern that the witnesses may have told different versions of the same events to different people, but that is relevant and will be inquired into.

      Fifth, we believe the production is complete and have asked you a number of times for deposition dates to accommodate the witnesses and counsel's schedule. You have refused to provide dates. I will ask one last time, what dates are you and the three Chrysler Financial employees available to take their depositions in Detroit during the week of February 15? I



EXHIBIT
5

understand Mr. Roin is the only one that can defend the depositions of the Chrysler employees, so please see if you can obtain dates that he is available for those. As to the third party witnesses, my office is doing its best to accommodate the witnesses and their counsel in terms of scheduling. Since you have refused to provide any dates that you are available, it leaves me with no choice, but to just schedule them. As you were notified yesterday, Molly Kaplan's deposition will proceed on Wednesday, February 10, 2010 starting at 9 a.m. in my office.

Sixth, I disagree with your self serving claim of prejudice. It has been you that has stopped discovery. That being said, I have no objection to stipulating to move the trial date. However, I would suggest that the trial be held after April 15 as Case #09-05045 regarding the PSA is set for trial on April 13. Would you agree to Monday, April 19 if it is available for the Court? If there are dates after April 19 that are more convenient for Mr. Roin and yourself please let me know of the available trial dates.

Finally, I am requesting that you review your written discovery responses and supplement them as they are inadequate. If you have any questions, please feel free to contact me.

Yours truly,

SKOLNICK & SHIFF, P.A.

William R. Skolnick

WRS:zmp
Cc Dennis Hecker

MODE = MEMORY TRANSMISSION      START=JAN-29 10:06     END=JAN-29 10:07

FILE NO.=289

| STN NO. | COMM. | ONE-TOUCH/ ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ☎ | 16126324040 | 003/003 | 00:01:11 |

            –SKOLNICK & ASSOC    –

∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗∗ –     – ∗∗∗∗∗ –     6126777601– ∗∗∗∗∗∗∗∗∗∗

# SKOLNICK & SHIFF, P.A.

**Attorneys at Law**
**2100 Rand Tower**
**527 Marquette Avenue South**
**Minneapolis, Minnesota 55402**
**(612) 677-7600**

## TELECOPY
**(612) 677-7601**

| | | | |
|---|---|---|---|
| **DATE:** January 29, 2010 | | Telecopy Number: | (612) 632-4040 |
| **TO:** Nicholas N. Nierengarten, Esq. | | Main number of receiving firm: | (612) 632-3040 |
| **FROM:** William R. Skolnick | | | |

**Number of pages including cover sheet: 3**

### MESSAGE:

Please find attached Correspondence.

This telecopy is intended only for the use of the addressee. If the addressee of this telecopy is a client or agent for one of our clients, you are further advised that the telecopy contains legally privileged and confidential information which we intended to send to the addressee only.

In any event, if you are not the intended recipient of the telecopy, you are hereby notified that you have received this telecopy inadvertently and in error. Any review, dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original telecopy to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and in returning the telecopy to us.

**Please call (612) 677-7600 if you do not receive all pages.**

### TELECOPY - INTEROFFICE USE

Client/Matter No.:    Hecker/Chrysler Adversary 09-05019

Attorney:    William R. Skolnick, Esq.

   
**Zach Puchtel**

| | |
|---|---|
| **From:** | Zach Puchtel |
| **Sent:** | Monday, January 25, 2010 10:23 AM |
| **To:** | 'Ott, Michael W.' |
| **Cc:** | Roin, Howard J.; Nierengarten, Nicholas N.; Bill Skolnick; Andrew Bardwell |
| **Subject:** | RE: [CF v. Hecker] Additional Privilege Log Deficiencies |
| **Attachments:** | Dove to Borg.pdf; Hecker to Miller.pdf |
| **Copied:** | -1 |

Dear Mr. Mott,

Attached, please find the two emails that you have requested to complete the privilege log. The first, dated February 10, 2009, from Erik Dove to Molly Borg, has been redacted to protect privileged information. The second, dated August 8, 2008, from Denny Hecker to Susan Miller, has been determined to be non-privileged and therefore is being produced.

If you have any questions, please feel free to contact me.

*Zachary M. Puchtel*
Legal Assistant
Skolnick and Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402-1308
(612)677-7600 TEL. (612) 677-7601 FAX

---

**From:** Ott, Michael W. [mailto:MOtt@mayerbrown.com]
**Sent:** Friday, January 22, 2010 5:20 PM
**To:** Zach Puchtel
**Cc:** Roin, Howard J.; Nierengarten, Nicholas N.
**Subject:** [CF v. Hecker] Additional Privilege Log Deficiencies

Dear Mr. Puchtel,

Please see the attached letter.

Best Regards,
Mike

---

**Michael W. Ott**
Associate, Restructuring, Bankruptcy,
    and Insolvency Practice
Mayer Brown LLP
(312) 701-8903
mott@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
www.mayerbrown.com



EXHIBIT
6

1/25/2010

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

**From:** Erik P. Dove [mailto:edove@dennyhecker.com]
**Sent:** Tuesday, February 10, 2009 9:27 AM
**To:** Borg, Molly; Heckerauto@aol.com
**Cc:** Volk, Paula; Greg P. Orthun
**Subject:** Re: Open items

.

**From:** Borg, Molly <MBorg@Briggs.com>
**To:** Erik P. Dove; Heckerauto@aol.com
**Cc:** Volk, Paula <PVolk@Briggs.com>
**Sent:** Tue Feb 10 09:24:57 2009
**Subject:** FW: Open items

Erik and Denny,

Thanks,

*Molly M. Borg*

BRIGGS AND MORGAN, P.A.

2200 IDS Center

80 South Eighth Street

Minneapolis, MN 55402

612.977.8726 (direct)

mborg@briggs.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly
prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to
clients of the Denny Hecker Automotive Group may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message
unless you are an intended recipient of it. If you have received this message in error, please forward it to the sender and delete it completely from your computer system.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly

prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly
prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

**A Good Credit Score is 700 or Above. See yours in just 2 easy steps!**

From:          Denny Hecker<heckerauto@aol.com>
To:            Susan 1 A. Miller <SMiller@dennyhecker.com>
Sent:          8/8/2008 3:07:00 PM
Subject:       Re:

```
What r u thinking
------Original Message------
From: Susan 1 A. Miller
To: Dh
Sent: Aug 8, 2008 3:01 PM
Subject:

Would like to tweek Chrysler  checks going out a little as clearings Monday and Tuesday need a
little change.  Also needed to pay Toyota's for WFS, $258,000

Let me know.


Sent from my BlackBerry® smartphone with SprintSpeed
```

# SKOLNICK & SHIFF, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

February 4, 2010

**VIA FAX ONLY**

Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
80 South 8th St Suite 500
Minneapolis, MN 55402

Re: Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker
**Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Nierengarten:

Yesterday, I offered you access to all of the servers and hard drives at the former Hecker Automotive Group headquarters to obtain copies of anything you want (except privileged communications). You and Mr. Roin flatly refused the offer. Second, you requested I not go forward with the deposition of Molly Kaplan on February 10, 2010. I am willing to postpone the deposition until the matter can be resolved. Third, you were disingenuous in our phone call when you pretended to have me wait to get Mr. Roin on the phone, as though he was in Chicago. I know he was at your office yesterday. It is clear that the motion you filed was prepared long before our phone conference. You have failed to hold the requisite conference pursuant to the Rules before filing your motion.

I enclose the privilege log on the hard copies recently delivered to you.

Finally, I asked you if you wanted access to electronically stored information the U.S. Attorney had. You said I should already have requested it from the U.S. Attorney's office. Please be advised that Assistant U.S. Attorney Ms. Engisch denied us access to that information. I believe my client has complied with the order and the production is complete.

Yours truly,

SKOLNICK & SHIFF, P.A.

William R. Skolnick

EXHIBIT
7

Privilege Log (Parker Documents)

*CHRYSLER FINANCIAL SERVICES V. DENNIS E. HECKER*

Court File No. ___ 09-050779

| Date | AUTHOR/RECIPIENT: EMAIL | Description | Objection to Production |
|---|---|---|---|
| 11/5/08 8:54 p.m. | Denny Hecker to Bruce Parker | Communication re: Chrysler Financial | Attorney-Client Privilege |
| 11/5/08 9:21 p.m. | Denny Hecker to Bruce Parker | Communication re: Chrysler Financial | Attorney-Client Privilege |
| 11/5/08 6:20 a.m. | Deny Hecker to Bruce Parker | Communication re: Interim Agreement w/ Chrysler | Attorney-Client Privilege |
| 10/22/08 9:58 a.m. | Erik Dove to Clint Cutler, Douglas Kassebaum; cc Bruce Parker | Communication re: Dealership bankruptcies | Attorney-Client Privilege |
| 10/16/08 5:14 p.m. | Denny Hecker to Erik Dove, Bruce Parker | Forwarded message re: Chrysler Audit | Attorney-Client Privilege |
| 10/16/08 9:01 p.m. | Erik Dove to Bruce Parker, Barbara Jerich; cc Hecker | Fwd message from Clint Cutler re: Chrysler | Attorney-Client Privilege |
| 10/17/08 10:17 a.m. | Erik Dove to Bruce Parker | Fwd message re: Titles | Attorney-Client Privilege |
| 10/19/08 7:01 p.m. | Denny Hecker to Bruce Parker, Erik Dove | Communication re: U.S. Bank Financing | Attorney-Client Privilege |
| 10/19/08 7:34 p.m. | Denny Hecker to Bruce Parker, Erik Dove, Clint Cutler | Proposed draft of letter to CFC | Attorney-Client Privilege |
| 10/19/08 7:51 p.m. | Denny Hecker to Bruce Parker, Erik Dove, Clint Cutler | Proposed draft of letter to CFC | Attorney-Client Privilege |
| 10/19/08 7:56 p.m. | Denny Hecker to Clint Cutler, Bruce Parker | Proposed draft of letter to CFC | Attorney-Client Privilege |
| 10/19/08 9:18 p.m. | Erik Dove to Bruce Parker | Fwd Message from Clint Cutler re: Security at dealerships | Attorney-Client Privilege |
| 10/19/08 10:03 p.m. | Erik Dove to Bruce Parker | Communication re: Proposed draft of letter to CFC | Attorney-Client Privilege; Work-Product |
| 10/19/08 10:06 p.m. | Erik Dove to Bruce Parker | Communication re: Proposed draft of letter to CFC | Attorney-Client Privilege; Work-Product |
| 10/20/08 | Denny Hecker to Erik Dove, Bruce Parker, | Communication re: Proposed draft | Attorney-Client Privilege; Work- |

| | Clint Cutler | of letter to CRC | Product |
|---|---|---|---|
| 6:54 a.m. | Denny Hecker to Bruce Parker, Erik Dove, Clint Cutler | Communication re: Proposed draft of letter to CRC | Attorney-Client Privilege; Work-Product |
| 10/20/08 7:20 a.m. | Denny Hecker to Bruce Parker, Clint Cutler | Communication re: Chrysler Guaranty | Attorney-Client Privilege |
| 10/21/08 4:43 p.m. | Erik Dove to Bruce Parker, Clint Cutler, Paula Volk | Communication re: Chrysler Guaranty | Attorney-Client Privilege |
| 10/21/08 11:36 a.m. | Denny Hecker to Barbara Jerich; cc Erik Dove, Bruce Parker | Communication re: Financing | Attorney-Client Privilege |
| 10/21/08 8:08 a.m. | Erik Dove to Bruce Parker, Jim Gustafson; cc Denny Hecker | Communication re: fleet vehicles | Attorney-Client Privilege |
| 10/25/08 12:25 p.m. | Denny Hecker to Cal Kuhlman, Bruce Parker | Communication re: Chrysler and Hyundai | Attorney-Client Privilege |
| 10/24/08 7:02 a.m. | Denny Hecker to Bruce Parker, Erik Dove, Barbara Jerich, Clint Cutler; cc Ralph Strangis | Dealership Operating Requirements Draft | Attorney-Client Privilege; Work-Product |
| 10/21/08 8:47 p.m. | Erik Dove to Douglas Kassebaum; cc Bruce Parker, Clint Cutler | Dealership bankruptcies | Attorney-Client Privilege |
| 11/5/08 9:21 p.m. | Denny Hecker to Bruce Parker | Communication re: Financing | Attorney-Client Privilege |
| 11/5/08 8:54 p.m. | Denny Hecker to Bruce Parker | Communication re: Chrysler Financing | Attorney-Client Privilege |

**************** -COMM. JOURNAL- ****************** DATE FEB-04-2010 ***** TIME 17:39 ********

MODE = MEMORY TRANSMISSION          START=FEB-04 17:37    END=FEB-04 17:39

FILE NO.=329

| STN NO. | COMM. | ONE-TOUCH/ ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ✽ | 6126324040 | 004/004 | 00:01:47 |

-SKOLNICK & ASSOC          -

********************************* -          - ***** -      6126777601- ********

*************** -COMM. JOURNAL- ****************** DATE FEB-04-2010 ***** TIME 16:34 ********

MODE = MEMORY TRANSMISSION          START=FEB-04 16:33    END=FEB-04 16:34

FILE NO.=328

| STN NO. | COMM. | ONE-TOUCH/ ABBR NO. | STATION NAME/EMAIL ADDRESS/TELEPHONE NO. | PAGES | DURATION |
|---|---|---|---|---|---|
| 001 | OK | ✽ | 16126324040 | 002/002 | 00:00:54 |

-SKOLNICK & ASSOC          -

********************************* -          - ***** -      6126777601- ********

# SKOLNICK & SHIFF, P.A.
### Attorneys at Law
### 2100 Rand Tower
### 527 Marquette Avenue South
### Minneapolis, Minnesota 55402
### (612) 677-7600

## TELECOPY
## (612) 677-7601

| DATE: | February 4, 2010 | Telecopy Number: | (612) 632-4040 |
|---|---|---|---|
| TO: | Nicholas N. Nierengarten, Esq. | Main number of receiving firm: | (612) 632-3040 |
| FROM: | William R. Skolnick | | |

Number of pages including cover sheet: 4

MESSAGE:

Please find attached Correspondence.

This telecopy is intended only for the use of the addressee. If the addressee of this telecopy is a client or agent for one of our clients, you are further advised that the telecopy contains legally privileged and confidential information which we intended to send to the addressee only.

In any event, if you are not the intended recipient of the telecopy, you are hereby notified that you have received this telecopy inadvertently and in error. Any review, dissemination, distribution or copying of this telecopy is strictly prohibited. If you have received this telecopy in error, please immediately notify us by telephone and return the original telecopy to us at the address above via the United States Postal Service. We will reimburse any costs you incur in notifying us and in returning the telecopy to us.

**Please call (612) 677-7600 if you do not receive all pages.**

## TELECOPY - INTEROFFICE USE

| Client/Matter No.: | Hecker/Chrysler Adversary 09-05019 |
|---|---|
| Attorney: | William R. Skolnick, Esq. |

# SKOLNICK & SHIFF, P.A.

ATTORNEYS AT LAW
2100 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1308
(612) 677-7600 TEL. (612) 677-7601 FAX
E-MAIL skolnicklaw@visi.com

WILLIAM R. SKOLNICK
ROLIN L. CARGILL III
SEAN A. SHIFF
AMY D. JOYCE*
*ALSO LICENSED IN ILLINOIS

OF COUNSEL:
LUANN M. PETRICKA

February 11, 2010

**VIA MESSENGER**

Stephen F. Grinell
Nicholas Nierengarten
**Gray, Plant & Mooty, P.A.**
500 IDS Center
80 South 8th St
Minneapolis, MN 55402

Re: <u>Chrysler Financial Services Americas, LLC. vs Dennis E. Hecker</u>
**Case File No. 09-CV-50779, Adv Pro No. 09-05019**

Dear Mr. Grinell and Mr. Nierengarten:

Yesterday afternoon we received the attached disc from K & B Document Technologies, documents bates labeled SIR 39,098 through SIR 43,968. The searchable disc contains 1,027 documents consisting of 4,880 pages.

Yours truly,

**SKOLNICK & SHIFF, P.A.**

Zachary M Puchtel
Legal Assistant to William R. Skolnick

WRS:zmp
Enclosure





K&
TE
733
Mi

Searchable PDF

1027 Documents
4880 Pages

UNITES STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

DENNIS E. HECKER                                    Case No. 09-50779-RJK

        Debtor.                                    Chapter 7

CHRYSLER FINANCIAL                                  ADV Pro. No. 09-05019
SERVICES AMERICAS LLC,

        Plaintiff,

vs.

DENNIS E. HECKER

        Defendant.

---

## AFFIDAVIT OF ANDREW H. BARDWELL

---

STATE OF MINNESOTA )
               ) ss.
COUNTY OF HENNEPIN )

      Andrew H. Bardwell hereby deposes as follows:

      1.   That I am a Law Clerk at Skolnick & Shiff, P.A., and will be sitting for the February

2010 Bar. I provide this affidavit in opposition to Plaintiff's motion for sanctions. I have

personal knowledge of the facts stated herein.

      2.   I am one of the people that was involved in conducting the privilege review and

drafting the privilege log for the "Bowser Emails." I have also worked on editing the privilege

log to address the concerns that Chrysler's attorneys have raised in regard to it.

      3.   First, to address Chrysler's assertion that the privilege log did not contain enough

information to locate all of the privileged emails, I conducted a secondary review of the emails that were determined to be privileged and added a time stamp to each entry on the log. Additionally, I added entries for instances when multiple privileged emails were exchanged between the same individuals on the same day. These additions resulted in a substantial increase in the number of entries on the log. This updated privilege log was provided to Chrysler's attorneys on December 21, 2009. Attached hereto as Exhibit A-1 is a true and correct copy of an email from Zachary M. Puchtel to Mr. Nierengarten and Mr. Roin to which the updated privilege log was attached.

4. Next, Chrysler requested that the privilege log be provided in chronological order to facilitate their review. Attached hereto as Exhibit A-2 is a true and correct copy of a December 23, 2009 email from Mr. Nierengarten to Zachary Puchtel.

5. To accommodate Chrysler's request, I arranged the log in chronological order and provided it to Chrysler's attorneys. Attached hereto as Exhibit A-3 is a December, 23, 2009 email I sent to Mr. Nierengarten to which the chronological privilege log was attached.

6. Chrysler also took issue with the December 23 privilege log. Attached hereto as Exhibit A-4 is a true and correct copy of a January 15, 2009 letter form Mr. Nierengarten to Mr. Skolnick requesting that these additional deficiencies be addressed.

7. I examined each of the entries with which Chrysler took issue, and once again edited the privilege log. Attached hereto as Exhibit A-5 is a true and correct copy of a document explaining each of these edits that was provided to Chrysler in connection with Hecker's January 19, 2010 document production.

8. Finally, on January 22, 2010, Chrysler requested additional information regarding two emails that they could not locate. Attached hereto as Exhibit A-6 is a true and correct copy

of a January 22, 2010 email form Michael W. Ott to Zachary Puchtel.

9. In response, I located the two emails in question. One email was determined not to be privileged and was produced to Chrysler. The other was redacted to protect the privileged content, and produced to Chrysler in the redacted form. Attached hereto as Exhibit A-7 is a true and correct copy of a January 25, 2010 email from Zachary Puchtel to Michael Ott with the two emails attached.

10. To the best of my knowledge, there are no outstanding issues regarding the Bowser privilege log.

FURTHER YOUR AFFIANT SAYETH NOT.

_____
Andrew H. Bardwell

Subscribed and sworn before me
this 12th day of February, 2010.

_____
Notary Public



DEBORAH LARSON
Notary Public-Minnesota
My Commission Expires Jan 31, 2015

## Zach Puchtel

| | |
|---|---|
| **From:** | Zach Puchtel |
| **Sent:** | Monday, December 21, 2009 1:30 PM |
| **To:** | 'Nierengarten, Nicholas N.'; 'hroin@mayerbrown.com' |
| **Cc:** | Bill Skolnick; Andrew Bardwell; LuAnn Petricka |
| **Subject:** | New Privilege Log |
| **Attachments:** | 20091221_NEW Priv Log.pdf |
| **Copied:** | -1 |

Gentlemen,

Attached to this email, please find the new Privilege Log. If you have any questions, please feel free to contact me.

Best,

*Zachary M. Puchtel*
Legal Assistant
Skolnick and Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402-1308
(612)677-7600 TEL. (612) 677-7601 FAX


EXHIBIT
A-1

## Andrew Bardwell

**From:** Nierengarten, Nicholas N. [Nicholas.Nierengarten@gpmlaw.com]
**Sent:** Wednesday, December 23, 2009 11:38 AM
**To:** Zach Puchtel
**Cc:** Bill Skolnick; Andrew Bardwell; LuAnn Petricka; hroin@mayerbrown.com
**Subject:** RE: New Privilege Log

While Chrysler Financial reserves all of its rights, we note that there are many more documents on your new privilege log than on the one previously delivered (429 on the original log; 569 entries on the attached log). We also note that the entries on both logs are not in chronological order. Please send us both logs in chronological order or at least as an excel spreadsheet so that we and our consultant can work with the data.

Thank you.

**Nicholas Nierengarten**
Attorney

GRAY
PLANT
MOOTY

Gray Plant Mooty
500 IDS Center
80 South Eighth Street
Minneapolis, MN USA 55402

Phone: 612.632.3040
Fax: 612.632.4040

Nicholas.Nierengarten@gpmlaw.com

---

**From:** Zach Puchtel [mailto:ZPuchtel@skolnick-shiff.com]
**Sent:** Monday, December 21, 2009 1:30 PM
**To:** Nierengarten, Nicholas N.; hroin@mayerbrown.com
**Cc:** Bill Skolnick; Andrew Bardwell; LuAnn Petricka
**Subject:** New Privilege Log

Gentlemen,

Attached to this email, please find the new Privilege Log. If you have any questions, please feel free to contact me.

Best,

*Zachary M. Puchtel*
Legal Assistant
Skolnick and Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402-1308
(612)677-7600 TEL. (612) 677-7601 FAX


EXHIBIT
A-2

2/12/2010

NOTICES: Pursuant to the rules of professional conduct set forth in Circular 230, as promulgated by the United States Department of the Treasury, unless we expressly state otherwise in this communication, nothing contained in this communication was intended or written to be used by any taxpayer for the purpose of avoiding penalties that may be imposed on the taxpayer by the Internal Revenue Code of 1986, and it cannot be used by any taxpayer for such purpose. No one, without our express prior written permission, may use or refer to any tax advice in this communication in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement relating to any one or more taxpayers.

This message is from a law firm, and thus may contain or attach confidential information or an attorney-client communication that is confidential and privileged by law. It is not intended for transmission to, or receipt by, any unauthorized person. If you believe that you have received this message or any attachment in error, simply delete both from your system without reading or copying, and notify the sender by e-mail or by calling 612-632-3000. Thank you.

2/12/2010

# Andrew Bardwell

**From:** Andrew Bardwell
**Sent:** Wednesday, December 23, 2009 4:15 PM
**To:** 'Nierengarten, Nicholas N.'
**Cc:** Bill Skolnick
**Subject:** Chronological Privilege Log

**Attachments:** Document.pdf

Dear Mr. Nierengarten,

Attached please find Mr. Hecker's Privilege Log arranged in chronological order. As you are aware, the current Log has more entries than the original version. This is so because, in many cases, there were multiple e-mails sent on the same day. As you requested, each e-mail has been listed separately with the date and time at which it was sent. Feel free to contact me if you have any questions.

Regards,
     Andrew Bardwell



EXHIBIT
A-3

2/12/2010


500 IDS CENTER
80 SOUTH EIGHTH STREET
MINNEAPOLIS, MN 55402-3796
MAIN: 612.632.3000
FAX: 612.632.4444

NICHOLAS N. NIERENGARTEN
ATTORNEY
DIRECT DIAL: 612.632.3040
DIRECT FAX: 612.632.4040
NICHOLAS.NIERENGARTEN@GPMLAW.COM

January 15, 2009

*VIA* E-MAIL AT WSKOLNICK@SKOLNICK-SHIFF.COM AND
SKOLNICKLAW@VISI.COM AND *VIA* UNITED STATES MAIL

William R. Skolnick, Esq.
Skolnick & Shiff, PA
2100 Rand Tower, 527 Marquette Avenue South
Minneapolis, MN 55402

Re:   *Chrysler Financial Services Americas LLC v. Dennis E. Hecker*, Adv. Pro. No. 09-05019

Dear Mr. Skolnick:

This responds to the email from Andrew Bardwell of your office earlier today inquiring about deficiencies in the privilege log for the Bowser emails. Attached to Mr. Bardwell's email was a copy of the December 23, 2009 privilege log. As I said on the phone this morning, Chrysler Financial's vendor identified additional deficiencies in the December 23, 2009 privilege log. Those deficiencies are set forth in Exhibit 39, attached to my Second Declaration dated January 5, 2010. An additional copy of Exhibit 39 is attached for your ready reference. This analysis of the December 23, 2009 privilege log shows that it lists incorrect dates or times for several emails (or omits necessary information), lists multiple emails that have additional recipients beyond the recipients identified on the privilege log, and provides vague descriptions of emails that could apply to multiple documents. Please address these deficiencies on the new privilege log to be submitted on January 19, 2010.

In connection with Hecker's forthcoming document production pursuant to Judge Kressel's Order compelling discovery, we wish to remind you that Chrysler Financial's request for production of documents requires, pursuant to Fed.R.Civ.P. 34(b)(1)(C), that all electronically stored information responsive to the requests be produced in its native format. Production in the designated format is necessary to enable us to best expedite our review of the information.

Very truly yours,

GRAY, PLANT, MOOTY,
MOOTY & BENNETT, P.A.

Nicholas N. Nierengarten

NNN/pep/GP:2714460v1

c:    Howard J. Roin, Esq. (*via* email)

GRAY, PLANT, MOOTY, MOOTY & BENNETT, P.A.
A FULL-SERVICE LAW FIRM
MINNEAPOLIS, MN • ST. CLOUD, MN • WASHINGTON, DC
WWW.GPMLAW.COM



EXHIBIT
A-4

Analysis of Hecker's Revised Privilege Log for Bowser Emails

| Doc ID | Date | Author/Recipient | Description | Search Result | Notes |
|---|---|---|---|---|---|
| P001 | 01/19/08 10:23:05 AM | Hecker, Parker, Marshall Fein | Candido Trademark Litigation | Actual date 01/19/09 | |
| P569 | 12/03/09 5:27:03 PM | Hecker fwd to Kaplan | Monarch on the Park | Actual date 12/03/08 | |
| P002 | 03/01/08 4:01:00 PM | Danny Hecker/Bruce Parker | Communication | Actual date 3/1/09 | |
| P015 | 09/18/08 12:12:03 PM | Danny Hecker/Dove | Warrant - dog issue | Actual date 9/19/08 | |
| P016 | 09/19/08 1:03:03 PM | Danny Hecker/Dove | Warrant - dog issue | Actual date 9/19/08 | |
| P080 | 10/23/08 12:26:00 PM | Danny Hecker/Bruce Parker | Chrysler EFT Audit | Additional recipients | |
| P133 | 10/30/08 2:45:02 PM | Danny Hecker/Bruce Parker | Hyundai | Additional recipients | |
| P152 | 11/03/08 4:17:00 PM | Hecker to Susan Miller | Legal Strategy | Additional recipients | |
| P156 | 11/04/08 9:42:03 PM | Danny Hecker/Parker | Legal Strategy | Additional recipients | |
| P287 | 11/7/08 6:44:01 PM | Hecker/Parker/Dove/Cutler/Borg | Re: Communication agreement/legal advice | Additional recipients | |
| P291 | 11/7/08 6:36:00 PM | Hecker/Parker/Dove/Cutler/Borg | Communication re: CFC negotiation | Additional recipients | |
| P292 | 11/7/08 6:35:04 PM | Hecker/Parker/Dove/Cutler/Borg | Communication re: CFC negotiation | Additional recipients | |
| P293 | 11/7/08 6:44:05 PM | Danny Hecker/Bruce Parker/Cutler | Communication re: CFC negotiation Questions re: Bank transaction refunds for Chase Bank | Additional recipients | |
| P318 | 11/25/08 1:07:00 PM | Cutler/Keith Phillips/Barbara Jerich | Re: update | Additional recipients | |
| P440 | 12/22/08 4:37:02 PM | Hecker/Cutler | Status of vehicles | Additional recipients | |
| P083 | 06/23/08 5:18:05 | Danny Hecker, fwd to Eric Dove | GMAC/Legal Strategy | Multiple matches | |
| P135 | 10/30/08 6:58:03 PM | Hecker fwd to Hecker | GMAC/Legal Strategy | Multiple matches | |
| P136 | 10/30/08 7:03:01 PM | Repeat of Above | Legal Strategy | Multiple matches | |
| P200 | 11/08/08 10:05:04 PM | Hecker fwd to T Hecker | Legal Strategy | Multiple matches | |
| P201 | 11/08/08 10:05:02 PM | Hecker fwd to T Hecker | Legal Strategy | Multiple matches | |
| P209 | 11/10/08 10:33:05 AM | Danny Hecker fwd to Cindy Bowser Hecker/Cutler/Dove/Parker/Georgia | M&A agreement comments and clarification | Multiple matches | |
| P289 | 11/17/08 5:56:49 PM | Eckhart/Bowser Hecker/Cutler/Fein/Dove/Georgia | Re: meeting/legal advice | Multiple matches | |
| P290 | 11/17/08 5:20:28 PM | Eckhart/Bowser | Re: legal strategy | Multiple matches | |
| P298 | 11/18/08 4:56:05 AM | Danny Hecker fwd to Tom Hecker | Revised Limited Agreement re: licensing | Multiple matches | |
| P320 | 11/25/08 9:08:02 AM | Hecker to Molly Kaplan | Re: Ride Rider documents | Multiple matches | |
| P341 | 11/27/08 12:59:03 PM | Hecker to Molly Kaplan | Re: Eaglerider | Multiple matches | |
| P537 | 03/02/09 8:03:01 AM | Danny Hecker/Eric Dove/Bruce Parker | Communication | Multiple matches | |
| P028 | 09/19/08 11:58:03 AM | Hecker/Molly Kaplan Cutler/Parker/Dove Thomas/Susan | Re: warrant-dog issue | No match - none tagged | |
| P039 | 10/16/08 3:15:01 PM | Miller | Re: legal strategy/advice - CF actions | No match - none tagged | |
| P123 | 10/28/08 2:00:03 PM | Bruce Parker/Danny Hecker | Communication | No match - none tagged | |
| P130 | 10/29/08 11:47 AM | Robert Johnson/Bill Moldrem | Legal Strategy | No match - none tagged | |
| P142 | 10/31/08 3:34:00 PM | Hecker fwd to Molly Kaplan | Legal Strategy | No match - none tagged | |
| P147 | 11/02/08 11:09:00 AM | Danny Hecker/Eric Dove/Bruce Parker/Client Cutler | Legal Strategy | No match - none tagged | |
| P163 | 11/05/08 2:13:55 | Bruce Parker/Danny Hecker/Ralph Strangis Hecker to Dove Parker and Borg | Legal Strategy | No match - none tagged | |
| P175 | 11/05/08 10:58:03 AM | | | No match - none tagged | |
| P180 | 11/06/08 10:17:04 PM | Danny Hecker/Tumble Hecker Danny Hecker/Eric Dove/Bruce Parker/Client Cutler | Chrysler financial - Limited Interim Agreement | No match - none tagged | |
| P239 | 11/12/08 6:01:02 AM | Danny Hecker/Eric Dove/Bruce Parker/Clie Cutler | Legal Strategy | No match - none tagged | |
| P240 | 11/12/08 6:19:04 AM | Danny Hecker fwd to Jerich and Dove Cutler | Legal Strategy | No match - none tagged | |
| P269 | 11/15/08 6:48:02 AM | Danny Hecker/Bruce Parker/Barb | Legal Strategy | No match - none tagged | |
| P270 | 11/15/08 3:57:05 PM | Jerich/Molly Hecker | M&I Bank Re: LOI draft - legal advice | No match - none tagged | |
| P208 | 11/23/08 2:18:03 PM | Parker/Hecker/Cutler/Kaplan | Documents for Danny Attachments including bill of sale for 500 units and letters of resignation Danny/Erik | No match - none tagged | |
| P313 | 11/24/08 5:41:00 PM | Danny Hecker/Bruce Parker/Robert Fitts/Jeff Brewer to Cindy Bridgette Hecker to Cindy Bowser to print, fwd message from Bruce Parker | Re: Hertz materials | No match - none tagged | |
| P388 | 12/15/08 15:52:51 PM | Hecker/Parker/Eric Dove | | No match - none tagged | |
| P389 | 12/15/08 6:54 AM | | Re: legal advice / CFC creditors | No match - none tagged | |

Exhibit 39

# Analysis of Hecker's Revised Privilege Log for Bowser Emails

| ID | Date/Time | Names | Subject | Notes |
|---|---|---|---|---|
| P454 | 01/18/09 9:44:03 PM | Parker, Cutler, Dove | Advantage IO1 | No match - none tagged |
| P456 | 01/19/09 9:01:03 AM | Parker, Hecker | Advantage IO1 | No match - none tagged |
| P470 | 01/22/09 8:51:00 PM | Hecker, Rhode | Update of status | No match - none tagged |
| P471 | 01/22/09 10:56:05 AM | Parker, Hecker | Totaled Land Rover | No match - none tagged   Should this be listed as Hecker -> Parker? |
| P502 | 02/10/09 9:27 AM | Dove/Brog/Hecker/Paula Volz/Greg Orthun | Communications re: Hecker financial info | No match - none tagged |
| P532 | 03/01/09 15:57:22 | Bruce Parker/Randal Engdof | Legal Documents | No match - none tagged |
| P567 | 08/08/09 3:07:00 PM | Hecker Miller | Payments going out | No match - none tagged |
| P570 | 12/19/09 4:47:00 PM | Hecker/Cutler/Parker/Dove | Communication re: legal strategy | No match - none tagged |
| P208 | 11/00/08 | Denny Hecker fwd to Tamblin Hecker | Communication | Time stamp 10:00 |
| P383 | 12/12/08 12:26:04 AM | Denny Hecker/Bruce Parker/Eric Dove | Forbearance Agreement - GMAC | Time stamp 12:26 PM |
| P536 | 03/02/09 7:34:04 PM | Hecker to Tam Hecker | Communication re: Advantage | Time stamp 7:39 PM |
| P227 - P233 | 11/1/08 10:59(varies) AM | | Legal Strategy | Unclear which is which - multiple matches |
| P236 - P238 | 11/1/08 10:58(varies) AM | | Legal Strategy | Unclear which is which - multiple matches |

2

Explanation of Privilege Log Edits



| Doc. ID | Action Taken |
|---|---|
| P001 | Changed Date – 1/19/09 |
| P569 | Changed Date – 12/03/08 |
| P002 | Changed Date – 3/1/09 |
| P015 | Changed Date – 9/19/08 |
| P016 | Changed Date – 9/19/08 |
| P080 | Additional Recipients – Dove and Cutler |
| P133 | Additional Recipient – Dove |
| P152 | Additional Recipient – Dove |
| P156 | Additional Recipient – Dove |
| P287 | No additional recipients, no change made |
| P291 | No additional recipients, no change made |
| P292 | No additional recipients, no change made |
| P293 | No additional recipients, no change made |
| P318 | No additional recipients, no change made |
| P440 | Additional Recipient – Dove |
| P083 | Changed time – 5:18:04 p.m. |
| P135 | No Change Made |
| P136 | No Change Made |
| P200 | No Change Made |
| P201 | No Change Made |
| P209 | No Change Made |
| P289 | No Change Made |
| P290 | No Change Made |
| P298 | No Change Made |
| P320 | No Change Made |
| P343 | No Change Made |
| P537 | No Change Made |
| P028 | Time Changed – 11:56:03 a.m. |
| P039 | Delete |
| P123 | Sent from Hecker to Parker, not Parker to Hecker |
| P130 | Delete |
| P142 | Changed Time – 3:34:00 p.m. |
| P147 | Delete |
| P163 | Delete |
| P175 | Delete |
| P180 | Delete |
| P239 | Delete |
| P240 | Delete |
| P269 | Delete |
| P270 | Changed Date – 11/16/08 |
| P308 | Sent from Hecker to Parker, Cutler, Kaplan |

| P313 | Delete |
|---|---|
| P388 | Changed Time – 12:52:51 p.m. |
| P389 | Delete |
| P454 | Sent from Hecker to Parker and Cutler, cc Dove |
| P456 | Sent from Hecker to Parker |
| P470 | Changed Date – 1/25/09 |
| P471 | Sent from Hecker to Parker |
| P502 | Dove to Borg and Hecker, cc Volk and Orthun |
| P532 | Delete |
| P567 | Changed Date – 8/8/08 |
| P570 | Changed Date – 12/19/08 |
| P208 | Added time stamp – 10:40:04 a.m. |
| P383 | Changed Time – 12:26:04 p.m. |
| P536 | Delete |
| P227 – P233 | Delete |
| P236 | Delete |
| P237 | Forwarded message re: Chrysler Financial letter |
| P238 | Delete |

MAYER·BROWN

Mayer Brown LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel +1 312 782 0600
Main Fax +1 312 701 7711
www.mayerbrown.com

January 22, 2010

**Michael W. Ott**
Direct Tel +1 312 701 8903
Direct Fax +1 312 706 8677
mott@mayerbrown.com

BY ELECTRONIC MAIL

Zach Puchtel
Skolnick & Shiff
2100 Rand Tower
527 Marquette Ave S
Minneapolis, MN 55402
612-677-7600
Email: zpuchtel@skolnick-shiff.com

Re:  Chrysler Financial Services Americas LLC v.
     Hecker; Adv. No. 09-05019; Privilege Log
     Deficiencies

Dear Mr. Puchtel:

        Our vendor is in the process of reviewing your most recent changes to the privilege log of
the Bowser emails and has informed us that it is unable to locate two emails numbered P502 and
P567.  Please provide us any additional information you can about these two emails by noon
Monday, January 25, so that we can complete the sequestration of the emails over which you
have claimed privilege.  The two emails that are still missing are the following:

| **Email no. P502** | **Email no. P567** |
|---|---|
| Dated 2/10/2009 at 9:27 a.m. | Dated 08/08/2008 at 3:07 p.m. |
| From: Dove   To: Borg and Hecker | From: Hecker        To: Miller |
| CC: Volk and Orthun | |
| Description: Communications re: | Description: Payments going out |
|          Hecker financial info. | Problem:  No such time stamp. |
| Problem:  No such time stamp. | |

        Our vendor's review is continuing, as is our review of the privilege log.  Further review
may reveal additional deficiencies—including insufficient substantive descriptions—that would
render us unable to assess the validity of the claim of privilege.  As such, we reserve the right to
request more information regarding your claims of privilege at a later date.

                                    Sincerely,

                                    M. W. Ott

                                    Michael W. Ott

Mayer Brown LLP operates in combination with our associated English limited liability partnership
and Hong Kong partnership (and its associated entities in Asia).



EXHIBIT
A-6

cc:     Howard Roin
        Nicholas N. Nierengarten

## Zach Puchtel

| | |
|---|---|
| **From:** | Zach Puchtel |
| **Sent:** | Monday, January 25, 2010 10:23 AM |
| **To:** | 'Ott, Michael W.' |
| **Cc:** | Roin, Howard J.; Nierengarten, Nicholas N.; Bill Skolnick; Andrew Bardwell |
| **Subject:** | RE: [CF v. Hecker] Additional Privilege Log Deficiencies |
| **Attachments:** | Dove to Borg.pdf; Hecker to Miller.pdf |
| **Copied:** | -1 |

Dear Mr. Mott,

Attached, please find the two emails that you have requested to complete the privilege log. The first, dated February 10, 2009, from Erik Dove to Molly Borg, has been redacted to protect privileged information. The second, dated August 8, 2008, from Denny Hecker to Susan Miller, has been determined to be non-privileged and therefore is being produced.

If you have any questions, please feel free to contact me.

### Zachary M. Puchtel

Legal Assistant
Skolnick and Shiff, P.A.
2100 Rand Tower
527 Marquette Avenue South
Minneapolis, Minnesota 55402-1308
(612)677-7600 TEL. (612) 677-7601 FAX

---

**From:** Ott, Michael W. [mailto:MOtt@mayerbrown.com]
**Sent:** Friday, January 22, 2010 5:20 PM
**To:** Zach Puchtel
**Cc:** Roin, Howard J.; Nierengarten, Nicholas N.
**Subject:** [CF v. Hecker] Additional Privilege Log Deficiencies

Dear Mr. Puchtel,

Please see the attached letter.

Best Regards,
Mike

---

**Michael W. Ott**
Associate, Restructuring, Bankruptcy,
   and Insolvency Practice
Mayer Brown LLP
(312) 701-8903
mott@mayerbrown.com
71 S. Wacker Drive
Chicago, IL 60606
www.mayerbrown.com


EXHIBIT
A-7

1/25/2010

IRS CIRCULAR 230 NOTICE. Any tax advice expressed above by Mayer Brown LLP was not intended or written to be used, and cannot be used, by any taxpayer to avoid U.S. federal tax penalties. If such advice was written or used to support the promotion or marketing of the matter addressed above, then each offeree should seek advice from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

**From:** Erik P. Dove [mailto:edove@dennyhecker.com]
**Sent:** Tuesday, February 10, 2009 9:27 AM
**To:** Borg, Molly; Heckerauto@aol.com
**Cc:** Volk, Paula; Greg P. Orthun
**Subject:** Re: Open items

**From:** Borg, Molly <MBorg@Briggs.com>
**To:** Erik P. Dove; Heckerauto@aol.com
**Cc:** Volk, Paula <PVolk@Briggs.com>
**Sent:** Tue Feb 10 09:24:57 2009
**Subject:** FW: Open items

Erik and Denny,

Thanks,

*Molly M. Borg*

BRIGGS AND MORGAN, P.A.

2200 IDS Center

80 South Eighth Street

Minneapolis, MN 55402

612.977.8726 (direct)

mborg@briggs.com

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly
prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

IMPORTANT NOTICE: This e-mail message is intended to be received only by persons entitled to receive the confidential information it may contain. E-mail messages to
clients of the Denny Hecker Automotive Group may contain information that is confidential and legally privileged. Please do not read, copy, forward, or store this message
unless you are an intended recipient of it. If you have received this message in error, please forward it to the sender and delete it completely from your computer system.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly

prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

CONFIDENTIALITY NOTICE: The information contained in this e-mail
communication and any attached documentation may be privileged,
confidential or otherwise protected from disclosure and is
intended only for the use of the designated recipient(s). It
is not intended for transmission to, or receipt by, any unauthorized
person. The use, distribution, transmittal or re-transmittal by
an unintended recipient of this communication is strictly
prohibited without our express approval in writing or by e-mail.
If you are not the intended recipient of this e-mail, please delete
it from your system without copying it and notify the above sender
so that our e-mail address may be corrected. Receipt by anyone other
than the intended recipient is not a waiver of any attorney-client
or work-product privilege.

This email has been scanned for all viruses by the MessageLabs SkyScan
service. (http://www.messagelabs.com)

A Good Credit Score is 700 or Above. See yours in just 2 easy steps!

From:              Denny Hecker<heckerauto@aol.com>
To:                  Susan 1 A. Miller <SMiller@dennyhecker.com>
Sent:           8/8/2008 3:07:00 PM
Subject:      Re:

What r u thinking
------Original Message------
From: Susan 1 A. Miller
To: Dh
Sent: Aug 8, 2008 3:01 PM
Subject:

Would like to tweek Chrysler  checks going out a little as clearings Monday and Tuesday need a little change.  Also needed to pay Toyota's for WFS, $258,000

Let me know.


Sent from my BlackBerry® smartphone with SprintSpeed

In re:

Dennis E. Hecker                                    BKY No. 09-50779 RJK

          Debtor.

Chrysler Financial Services
Americas LLC,

          Plaintiff,

v.                                                  Adversary No. 09-05019

Dennis E. Hecker,

          Defendant.

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on February 12, 2010, I caused

**HECKER'S MEMORANDUM OF LAW OPPOSING PLAINTIFF'S MOTION
FOR SANCTIONS**

**AFFIDAVIT OF WILLIAM R. SKOLNICK**

**AFFIDAVIT OF ANDREW H. BARDWELL**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-notice of the electronic filing to the following listed below:

| | |
|---|---|
| Matthew R. Burton | mburton@losgs.com |
| Jordan S. Kushner | kushn002@umn.edu |
| Robert J. Hennessey | rhennessey@lindquist.com |
| Stephen F. Grinnell | stephen.grinnell@gpmlaw.com |
| Nicholas N. Nierengarten | nicholas.nierengarten@gpmlaw.com |

I also certify that I caused a copy of to be mailed directly via U.S. Mail, postage paid to the following non-ECF participants:

Mayer Brown LLP
Howard J. Roin
Stuart M. Rozen
71 South Wacker Drive
Chicago, Illinois 60606

Dated: February 12, 2010                     **SKOLNICK & SHIFF, P.A.**


                                             /e/ William R. Skolnick
                                             William R. Skolnick #137182
                                             LuAnn M. Petricka #18505X
                                             2100 Rand Tower
                                             527 Marquette Avenue South
                                             Minneapolis, MN 55402
                                             (612) 677-7600
                                             wskolnick@skolnick-shiff.com
                                             **ATTORNEY FOR DENNIS E. HECKER**