UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

In re:                                                          Chapter 7

    Dennis E. Hecker,

            Debtor.                                      BKY 09-50779
_____

Chrysler Financial Services Americas LLC,                       ADV 09-5019

            Plaintiff,
                                                                MEMORANDUM
v.                                                              OPINION AND ORDER

Dennis E. Hecker,

            Defendant.
_____

At Minneapolis, Minnesota, February 23, 2010.

      This proceeding came on for hearing on February 17, 2010 on the motion of the plaintiff for sanctions. Stephen F. Grinnell, Nicholas N. Nierengarten and Howard J. Roin appeared for the plaintiff. William R. Skolnick and LuAnn M. Petricka appeared for the defendant. This court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157(a) and (b)(1), and 1334(a) and (b); and Local Rule 1070-1. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I).

FACTS

1.      Dennis E. Hecker owned and operated dozens of auto dealerships, car rental franchises, and other businesses until 2009.

2.      During the course of his business, Hecker and entities owned or controlled by him borrowed hundreds of millions of dollars from Chrysler Financial under a series of loan agreements. Hecker personally guaranteed repayment of the loans.

1

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *02/23/2010*
Lori Vosejpka, Clerk, by LMH

3. Hecker and his entities defaulted on the loans in the summer and fall of 2008. First, Chrysler Financial responded by accelerating the indebtedness. Second, Chrysler Financial exercised its rights against the collateral. Third, Chrysler Financial sued Hecker in Hennepin County District Court, alleging breach of contract based on Hecker's failure to honor his personal guarantees and failure to repay the accelerated indebtedness.

4. On April 27, 2009, the district court entered a judgment against Hecker for the full amount requested: $476,926,874.60, plus attorneys' fees and minus any net amounts realized through the sale of collateral.

5. Hecker filed a voluntary chapter 7 petition on June 4, 2009.

6. Chrysler Financial filed this dischargeability action against Hecker on July 8, 2009. Chrysler Financial alleges that on June 4, 2009, Hecker still owed $364,880,913.42 under the April 27, 2009 judgment. Chrysler Financial alleges that $83,070,987.00 of the remaining debt is nondischargeable under 11 U.S.C. § 523(a) because Hecker allegedly obtained it through the use of false pretenses, false representations, fraud, defalcation, and embezzlement.

7. Specifically, Chrysler Financial alleges that Hecker personally presented a forged, doctored document to Chrysler Financial in order to obtain $65 million in loan advances. Chrysler Financial also alleges that Hecker misappropriated tens of millions of dollars in vehicle sale proceeds, which were to be held by Hecker in trust for Chrysler Financial.

8. On July 17, 2009, Hecker filed his bankruptcy schedules. In a note filed with the schedules, Hecker stated: "On June 17, 2009, law enforcement officials seized from Debtor's offices numerous records that are essential to the full and accurate completion of the Schedules of Assets and Liabilities, Statement of Financial Affairs, and other statements […]. To date the records have not been returned to Debtor." This explanation for Hecker's inability to produce

documents to the court and to the chapter 7 trustee has been repeated throughout Hecker's bankruptcy case, including the Chrysler Financial adversary proceeding.[1]

9.  On September 15, 2009, Hecker filed a motion to stay this adversary proceeding indefinitely because he had been informed that the United States Attorney for the District of Minnesota had convened a grand jury to determine if a criminal indictment should be issued arising out of, among other things, the factual allegations set forth in Chrysler Financial's complaint. Hecker's primary stated concern was that he wanted to preserve his Fifth Amendment testimonial privileges.

10. On September 23, 2009, Hecker filed a motion in his bankruptcy case for a protective order relating to his 2004 examination. He requested that his 2004 examination be postponed until "the conclusion of the criminal investigation and any criminal proceeding," or in the alternative, that the court issue a "protective order that declaring that certain topics, including any questions related to the eight on-going adversary proceedings, are off-limits in the 2004 examination."

11. In Hecker's September 28, 2009 combined responses to Chrysler Financial's first sets of continuing interrogatories, requests for production of documents, and requests for admission, Hecker claimed that most of the discovery requests were "impossible to understand," stated general boilerplate objections, and stated that he was refusing to respond to the requests until the court ruled on his motion to stay and for a protective order.

12. On October 2, 2009, in a response to a motion to compel filed by the chapter 7 trustee, Hecker again represented that he "no longer has his own records," that "The vast majority [. . .] including many related to his business interests, their operations, and his financial affairs [were seized by law enforcement]," and that Hecker had "made extensive disclosure to the best of his ability." This response was signed by Hecker. On October 2, 2009, in a separate response to a motion to compel filed by the chapter 7 trustee, Hecker again maintained that he had worked

---

[1] For purposes of background and motive, I have included facts outside of this proceeding. However, in my determination of sanctions under Fed.R.Civ.P. 37(b), I rely only on Hecker's conduct in this adversary proceeding.

3

diligently to comply with the trustee's document requests, but implied that his failure to comply was due in large part to the government's seizure of his records. This response was also signed by Hecker.

13. Although this information only came to light in the days before the hearing on the present motion, the government did not actually seize any computers or servers from Hecker or Hecker's business entities. Rather, they created forensic images of the data. The computers and servers have remained in Hecker's possession, custody, and control throughout these proceedings.

14. I denied Hecker's motion for a protective order on October 21, 2009, and denied Hecker's stay motion on October 22, 2009.

15. On November 13, 2009, at a discovery conference with Chrysler Financial's counsel which was transcribed at Hecker's counsel's request, Hecker's counsel promised that he would provide a privilege log on December 4, 2009, and that he would provide written responses to discovery on December 11, 2009. Chrysler Financial's counsel asked when it could expect to receive documents responsive to their discovery requests, and Hecker's counsel responded, "My anticipation is that between now and then I would be able to produce documents. However, [. . .] just so you're clear, I was not aware those documents [seized by the government] were available to us until mid-October. I had a conversation with the U.S. Attorney, at which point she said I could come look at them. But no, I intend to produce documents that are in my client's care, custody and control, to you."

16. Chrysler Financial later agreed to an extension of the agreed date to December 14, 2009.

17. December 14, 2009 passed, and Chrysler Financial's counsel had received nothing.

18. On December 23, 2009, Chrysler Financial filed a motion to compel discovery and for an award of fees and costs. On December 31, 2009, Hecker filed a response which included the following representations: 1) "Hecker through his attorneys has been making ongoing attempts to obtain requested information that was confiscated from his various business locations and by the various investigating authorities. This is not a situation in which Hecker has free and unhindered access to the requested discoverable documents"; and 2) "the majority of the requested

documents are either in the possession and control of the U.S. Attorney's Office or other third parties."

19. On December 31, 2009, Hecker produced 100 pages of documents to Chrysler Financial, most of which were previously attached to pleadings in the case. He continued to assert his right against self-incrimination as a basis for failing to produce documents. In response to the request that he provide "All documents reflecting any Hecker Borrower's sale or other disposition of any vehicle, in or after June 2008, that the Hecker Borrower purchased with funds loaned or advanced by Chrysler Financial," Hecker stated, "Responsive documents are either in the possession, custody and control of the U.S. Attorney's Office, or Reynolds & Reynolds Company. Defendant is in the process of obtaining said documents and will produce responsive documents upon receipt and review."

20. In Hecker's signed answers to Chrysler Financial's interrogatories, which Hecker provided to Chrysler Financial on December 31, 2009, Hecker stated, "The majority of responsive documents are in the possession, custody, and control of the U.S. Attorney's Office and R&B Document Tecnologies [. . .]. Once Defendant obtains possession of these documents they will be produced as appropriate. To the extent that Defendant currently possesses responsive documents they are enclosed."

21. At a hearing on January 6, 2010 on Chrysler Financial's December 23, 2009 motion to compel, Hecker's counsel implied that the only responsive documents not yet produced were those documents in the possession of the U.S. Attorney. He stated, "The interrogatories have now been answered with the exception of the documents which we hope to have within a week or two. The vendor for the government said he couldn't guarantee when we'd get them, but as soon as we get them [. . .] they can have them. We're not trying to shield them from them. We're not trying to say, oh, after we look at them, you'll get them. They can have them. That's the best we can do, Your Honor." Hecker's counsel also told the court, "I will be candid and say [document production] was slow. We didn't get it to them on time. We're doing our best."

22. On January 11, 2010, I granted Chrysler Financial's motion to compel discovery and ordered Hecker to do the following: 1) on or before January 19, 2010, serve full, complete, and

unequivocal answers to Chrysler Financial's interrogatories and requests for production of documents; 2) not assert any general "boilerplate" objections in his answers; 3) only object in response to a specific discovery request and set forth in detail the basis for the objection; and 4) provide a privilege log to Chrysler Financial identifying any documents claimed as privileged. I also 1) overruled Hecker's Fifth Amendment objection to Chrysler Financial's document requests, and prohibited him from withholding documents on that basis; 2) barred Hecker from pursuing any offensive discovery activities until he fully complied with the order; and 3) awarded $1,000 to Chrysler Financial for its fees and costs in making the motion. The order provided that if Hecker failed to comply, Chrysler Financial may seek appropriate relief, including sanctions under Federal Rule of Bankruptcy Procedure 7037, which incorporates Federal Rule of Civil Procedure 37.

23.     On January 19, 2010, the deadline for Hecker's discovery responses, Hecker served supplemental responses to Chrysler Financial's interrogatories, document requests, and requests for admission. He also produced two discs containing copies of documents obtained from the government. The next day, he produced another disc containing copies of more documents obtained from the government. The day after that, he produced more documents. He also violated the court's discovery order by failing to provide a privilege log concerning the documents he produced.

24.     After reviewing the production, Chrysler Financial determined the following: 1) Hecker had produced 7,227 documents; 2) the production consisted entirely of scanned images of printed documents, despite Chrysler Financial's request that they be produced in native format (*see* Fed.R.Civ.P. 34(b)(1)(C)); 3) in response to the request for financial records, 474 emails were produced, of which only 38 were authored by Hecker and 186 were sent prior to the relevant time period; and 4) only 76 of the 179 other emails produced were emails authored by people associated with Chrysler Financial, and only 23 were authored by Hecker.

25.     Chrysler Financial's counsel wrote to Hecker's counsel about the production deficiencies. On January 29, 2010, in a letter to Chrysler Financial's counsel, Hecker's counsel stated, "I do not understand what you referring [sic] to as a 'complete production.' Those are the documents that were copied and provided to us. We provided them to you." He also stated, "We believe the

production is complete." The letter announced that Hecker's counsel would immediately resume offensive discovery. In fact, Hecker's counsel did resume offensive discovery by noticing the deposition of Molly Kaplan.

26. On February 3, 2010, Chrysler Financial filed this motion for sanctions based in part on Hecker's failure to comply with the court's January 11, 2010 order.

27. On February 10, 2010, a federal grand jury indicted Hecker for conspiracy to commit wire fraud, wire fraud, and transactional money laundering, based in part on the transactions that form the basis of Chrysler Financial's dischargeability complaint.

28. On February 12, 2010, Hecker filed a response to Chrysler Financial's motion. In an affidavit attached to the response, Hecker's counsel stated, "On January 29, 2010, I informed Chrysler Financial that to the best of my knowledge and after due inquiry, Defendant had produced all available documents. [. . .] I sincerely believe that Defendant had complied with the Court's Order." He admitted, for the first time, that he had "computers containing literally hundreds of thousands of emails from the Hecker offices," and invited Chrysler Financial's counsel to come to his office to view them. He stated, "I honestly am not aware of any actual discovery deficiencies that exist at this time. To the best of my knowledge and belief, everything that Defendant has or has access to has either been provided and/or access provided to independently of retaining a computer forensic specialist that could obtain the voluminous records found on the 12 servers and 24 hard drives at the business."

29. On February 15, 2010, just three days after representing to this court that he had provided Chrysler Financial with "everything," Hecker's counsel delivered two identical discs of additional documents to Chrysler Financial. The discs contained 12,465 documents. 3,745 of those were created before the relevant time period. 4,187 are fragments of overwritten documents, and represented only a small fraction of the data which would be expected on 12 servers and 24 hard drives. The next day, which was the day before the hearing, Hecker's counsel delivered an external hard drive which contained approximately 1.1 million files and folders. The data was scrambled, and Chrysler Financial has so far not been able to identify the author, recipient or date of any of the emails.

30. Chrysler Financial has been prejudiced by Hecker's delays and refusal to produce responsive documents. With trial scheduled for only a month from now, Chrysler Financial has still not seen thousands of relevant documents, including emails surrounding the Hyundai transaction, which it needs in order to meaningfully prepare for depositions and trial.

DISCUSSION

Federal Rule of Civil Procedure 37, which is made applicable to adversary proceedings by Bankruptcy Rule 7037, provides a number of possible sanctions for a party disobeying a discovery order under Rule 26(f), 35, or 37(a), and provides that a court may issue an order providing any of the following:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

Fed. R. Civ. P. 37(b)(2)(A). Chrysler Financial has limited its request to Fed.R.Civ.P. 37(b)(2)(vi). Although the use of Rule 37(b)(2)(A)(vi) should be rare, the remedy "is appropriate when a party's 'failure to comply [with discovery] has been due to ... willfulness, bad faith, or any fault of [the party].'" *Comiskey v. JFTJ Corp.*, 989 F.2d 1007, 1009 (8th Cir. 1993) (quoting *Societe Internalionale v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958)). "[S]triking a party's pleadings under Rule 37 is within the range of appropriate sanctions when a party demonstrates a 'blatant disregard of the Court's orders and the discovery rules,' engaging in a pattern of deceit by presenting false and misleading answers and testimony under oath in order to prevent their opponent from fairly presenting its case." *Chrysler Corp. v. Carey*, 186 F.3d 1016, 1022 (8th Cir. 1999).

Chrysler Financial has provided four independent grounds in support of its motion. Chrysler Financial alleges that Hecker failed to provide a privilege log covering the documents he produced on and after January 19, 2010. It is clear that Hecker has not provided a privilege log since before January 19, 2010. Chrysler Financial alleges that Hecker has resumed offensive discovery even though he has not fully complied with the court's discovery order. Unquestionably, Hecker has resumed offensive discovery by serving a deposition notice for Molly Kaplan prior to complying with this court's discovery order. Chrysler Financial further alleges that Hecker has failed to produce documents in two categories: electronically stored information (such as emails) that are in the possession of the government, but which Hecker has had access to since October of 2009; and information in Hecker's own possession, including emails on his computers and exchange servers.

After months of repeated assurances by Hecker that he has fully responded to Chrysler Financial's discovery requests, I am convinced of the truth of Chrysler Financial's allegations. Hecker has behaved dishonestly in his representations to Chrysler Financial and to this court. Although the law favors deciding matters on their merits, the behavior of the defendant and his counsel in this case is shocking. As detailed above, the defendant repeatedly represented to Chrysler Financial and to this court that he could not comply with Chrysler Financial's discovery requests because the government was in possession of his records. In fact, throughout these proceedings, the hard drives and servers (which contain the majority of the documents Chrysler Financial has been seeking) remained in Hecker's possession. Perhaps his attorneys were not initially aware of that fact, but Hecker was. Despite his knowledge that he remained in possession of the computers and servers, Hecker repeatedly stated, directly and by implication, that he had produced everything he had. That representation was dishonest. Hecker himself has provided no explanation for the sudden appearance of the computers and servers following this motion. It is also clear that Hecker could have produced the paper documents seized in the government's raid much earlier than he did. He has not provided a satisfactory explanation for his delay. Hecker has intentionally withheld relevant, admissible evidence in order to delay and obfuscate. Perhaps he believed that he could hamper Chrysler Financial's discovery efforts so severely that they would agree to continue the March 22, 2010 trial until sometime after his criminal trial, or perhaps his intent has been simply to frustrate Chrysler Financial's trial

preparation. Regardless, after months of inexcusable delay and dishonesty, I am forced to conclude that Hecker has acted in bad faith and willfully abused the discovery process.

There are factors which would weigh against the entry of a default judgment as a discovery sanction, but those are not present here. As in *Comiskey*, this is "not a case where the information requested by [the plaintiff's] interrogatories was unknown to or not available to [the defendant]." *Comiskey*, 989 F.2d at 1008. The defendant now admits that he had the computers and servers the entire time, and had access to the records seized in the raid as early as October of 2009. This is not a case of a "marginal failure to comply with the time requirements" of discovery either, but rather a situation involving "willful violations of court rules, contumacious conduct, or intentional delays." *U.S. v. Harre*, 983 F.2d 128, 130 (8th Cir. 1993). Hecker has not blamed his failures on his counsel, but even if Hecker's obstinacy and dishonesty were solely attributable to his counsel, "It is a 'well-established principle that a party is responsible for the actions and conduct of his [or her] counsel and that, under appropriate circumstances, dismissal or default may be entered against a party as a result of counsel's actions.'" *Comiskey* at 1010 (quoting *Boogaerts v. Bank of Bradley,* 961 F.2d 765, 768 (8th Cir.1992)). I issued an order compelling discovery, Hecker willfully violated that order, and Chrysler Financial has been prejudiced by the violation. It is within my discretion to select "the most appropriate sanction under the circumstances." *Chrysler Corp. v. Carey*, 186 F.3d at 1022. Because I am certain that no order of this court would secure Hecker's cooperation in this proceeding, the entry of a default judgment is the most appropriate sanction under the circumstances.

## CONCLUSION

Although Rule 37(b)(ii) provides a number of sanctions for discovery misconduct, Chrysler Financial has requested the most severe. Less severe sanctions have not motivated the defendant to comply with his discovery obligations, and after numerous hearings over these issues, I am certain than there is no lesser sanction which would result in the defendant's compliance.

ORDER

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for sanctions is granted.
2. $83,070,987.00 of the plaintiff's judgment against the defendant, together with accrued interest, is not dischargeable in the defendant's case.

LET JUDGMENT BE ENTERED ACCORDINGLY.

/e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE